# CRAVATH, SWAINE & MOORE LLP

| | | | | |
|---|---|---|---|---|
| JOHN W. WHITE | RICHARD J. STARK | WORLDWIDE PLAZA | LAUREN ANGELILLI | OMID H. NASAB |
| EVAN R. CHESLER | THOMAS E. DUNN | 825 EIGHTH AVENUE | TATIANA LAPUSHCHIK | DAMARIS HERNÁNDEZ |
| RICHARD W. CLARY | MARK I. GREENE | NEW YORK, NY 10019-7475 | ALYSSA K. CAPLES | JONATHAN J. KATZ |
| STEPHEN L. GORDON | DAVID R. MARRIOTT | | JENNIFER S. CONWAY | MARGARET SEGALL D'AMICO |
| DANIEL L. MOSLEY | MICHAEL A. PASKIN | TELEPHONE: +1-212-474-1000 | MINH VAN NGO | RORY A. LERARIS |
| ROBERT H. BARON | ANDREW J. PITTS | FACSIMILE: +1-212-474-3700 | KEVIN J. ORSINI | KARA L. MUNGOVAN |
| DAVID MERCADO | MICHAEL T. REYNOLDS | | MATTHEW MORREALE | NICHOLAS A. DORSEY |
| CHRISTINE A. VARNEY | ANTONY L. RYAN | | JOHN D. BURETTA | ANDREW C. ELKEN |
| PETER T. BARBUR | GEORGE E. ZOBITZ | | J. WESLEY EARNHARDT | JENNY HOCHENBERG |
| SANDRA C. GOLDSTEIN | GEORGE A. STEPHANAKIS | CITYPOINT | YONATAN EVEN | VANESSA A. LAVELY |
| THOMAS G. RAFFERTY | DARIN P. MCATEE | ONE ROPEMAKER STREET | BENJAMIN GRUENSTEIN | G.J. LIGELIS JR. |
| MICHAEL S. GOLDMAN | GARY A. BORNSTEIN | LONDON EC2Y 9HR | JOSEPH D. ZAVAGLIA | MICHAEL E. MARIANI |
| RICHARD HALL | TIMOTHY G. CAMERON | TELEPHONE: +44-20-7453-1000 | STEPHEN M. KESSING | |
| JULIE A. NORTH | KARIN A. DEMASI | FACSIMILE: +44-20-7860-1150 | LAUREN A. MOSKOWITZ | |
| ANDREW W. NEEDHAM | LIZABETHANN R. EISEN | | DAVID J. PERKINS | |
| STEPHEN L. BURNS | DAVID S. FINKELSTEIN | | JOHNNY G. SKUMPIJA | |
| KEITH R. HUMMEL | DAVID GREENWALD | WRITER'S DIRECT DIAL NUMBER | J. LEONARD TETI, II | SPECIAL COUNSEL |
| DAVID J. KAPPOS | RACHEL G. SKAISTIS | +1-212-474-1260 | D. SCOTT BENNETT | SAMUEL C. BUTLER |
| DANIEL SLIFKIN | PAUL H. ZUMBRO | | TING S. CHEN | |
| ROBERT I. TOWNSEND, III | ERIC W. HILFERS | WRITER'S EMAIL ADDRESS | CHRISTOPHER K. FARGO | |
| WILLIAM J. WHELAN, III | GEORGE F. SCHOEN | jburetta@cravath.com | KENNETH C. HALCOM | |
| PHILIP J. BOECKMAN | ERIK R. TAVZEL | | DAVID M. STUART | |
| WILLIAM V. FOGG | CRAIG F. ARCELLA | | AARON M. GRUBER | OF COUNSEL |
| FAIZA J. SAEED | DAMIEN R. ZOUBEK | | O. KEITH HALLAM, III | MICHAEL L. SCHLER |

January 31, 2018

<u>O'Sullivan, et al., v. Deutsche Bank AG, et al.</u>
17-cv-08709-LTS-GWG

Dear Judge Swain:

The Moving Defendants[1] respectfully write in response to Plaintiffs' letter to the Court, dated January 29, 2018 (the "January 29 Letter"). On December 19, 2017, the Court entered the following briefing schedule: motions to dismiss to be filed on March 2, 2018, and no earlier; opposition papers to be filed on or before May 2 and replies due on or before June 1. (Dkt. No. 58.) Moving Defendants do not oppose Plaintiffs' request for a discovery conference with the Court; however, for the reasons set forth below, we respectfully request a stay of discovery during the pendency of the motions to dismiss.

In deciding whether to stay discovery, a court should consider "the strength of the dispositive motion that is the basis for the discovery stay application" as well as "the breadth of discovery sought and the burden of responding to it". *Spencer Trask Software and Info Servs. LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002). Both considerations favor staying discovery in this matter.

First, the Moving Defendants' motion to dismiss is strong. Controlling precedent in this Circuit establishes that Plaintiffs' Complaint fails plausibly to state a claim under the Anti-Terrorism Act ("ATA"). Plaintiffs allege that Moving Defendants violated Section 2333(a) of the ATA by conspiring with Iranian banks to evade U.S.

---

[1] The "Moving Defendants" are Deutsche Bank AG; HSBC Bank plc; HSBC Holdings plc; HSBC Bank Middle East Limited; HSBC Bank USA, N.A.; HSBC North America Holdings, Inc.; Barclays Bank PLC; Standard Chartered Bank; The Royal Bank of Scotland N.V.; The Royal Bank of Scotland plc; Commerzbank AG; Commerzbank AG, New York Branch; BNP Paribas S.A.; Credit Suisse AG; and Crédit Agricole Corporate & Investment Bank.

economic sanctions by providing financing to Iran, which then allegedly provided unspecified funds to terrorist organizations, which then used funds of unspecified origin to finance and carry out terrorist attacks that injured Plaintiffs.  (*See* Compl., Dkt. No. 1.)  These attenuated allegations are insufficient as a matter of law to plausibly allege that Moving Defendants' conduct proximately caused injury to Plaintiffs under *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013).  In *Rothstein*, the Second Circuit affirmed dismissal of ATA claims against UBS AG because there was not a plausible allegation that UBS AG's conduct in transferring U.S. currency to Iran proximately caused the injuries sustained by the plaintiffs from five bombings carried out by Hezbollah and Hamas in Israel.  The Court found that (i) the bank defendant did not participate in the terrorist attacks, (ii) the bank defendant did not provide bank notes directly to terrorists, (iii) the bank defendant was not itself necessary to Iran's terrorism funding and (iv) Iran has legitimate needs for financial services.  708 F.3d at 96-98.  The allegations here are, as a legal matter, no different than those alleged in *Rothstein* or those dismissed in numerous other ATA cases brought against financial institutions that allegedly engaged in U.S. sanctions violations.  *See, e.g.*, *O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013); *Ofisi v. BNP Paribas, S.A.*, No. 15–2010 (JDB), 2017 WL 4355922 (D.D.C. Sept. 29, 2017), *vacated in part on other grounds*, 2018 WL 385408 (D.D.C. Jan. 11, 2018), *and reconsideration denied,* 2018 WL 396234 (D.D.C. Jan. 11, 2018).

In addition, *Rothstein* held that secondary theories of liability, including the conspiracy and aiding-and-abetting theories on which Plaintiffs' Complaint in part rests, are not available as a matter of law under Section 2333(a).  708 F.3d at 97-98; *accord Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 95 (D.D.C. 2017); *Linde v. Arab Bank PLC*, 944 F. Supp. 2d 215, 217 (E.D.N.Y. 2013).  *Rothstein* held that because Congress was "silent as to the permissibility of aiding and abetting liability", Section 2333(a) does not permit a civil cause of action premised on an aiding-and-abetting theory of liability.  708 F.3d at 97-98.  While Congress added a provision allowing for secondary liability in narrow circumstances involving designated foreign terrorist organizations after *Rothstein* was decided, *see* the Justice Against Sponsors of Terrorism Act ("JASTA") (Pub. L. 114-222, Sept. 28, 2016, 130 Stat. 852), codified at 18 U.S.C. § 2333(d), to the extent that Plaintiffs rely on Section 2333(d), their allegations fail to meet the requirements of that provision.  The secondary liability created by Section 2333(d) is limited to persons who conspire with the persons who actually commit the acts of terrorism that harm the plaintiffs.  Because the Complaint fails plausibly to allege that the Moving Defendants conspired with any foreign terrorist organization, Plaintiffs have no legal basis for their claims based on secondary theories of liability.  *See Shaffer v. Deutsche Bank AG*, 16-CV-497-MJR-SCW, Mem. & Order, Dkt. No. 69, at 2 n.1 (S.D. Ill. Dec. 7, 2017) (rejecting JASTA secondary liability claim because the plaintiffs "allege a conspiracy with Iran . . . not with [a foreign terrorist organization]").  Further, Plaintiffs have failed plausibly to allege that the Moving Defendants joined in the purpose of committing terrorist acts, or knowingly abetted such acts.  *See*, *e.g.*, *id.* at 10 (dismissing complaint on ground that plaintiffs had failed to allege facts "that establish that Deutsche Bank participated in any conspiracy other than perhaps to evade economic sanctions").

The clear and binding Second Circuit precedent established in *Rothstein* itself provides the "substantial arguments for dismissal" that weigh in favor of a stay of discovery. *See Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (granting stay of discovery pending resolution of motion to dismiss); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("When the allegations in a complaint, however true, could not raise a claim of entitlement to relief this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.").

A stay of discovery may be granted in advance of the actual filing of motions to dismiss, contrary to Plaintiffs' suggestion otherwise. (January 29 Letter at 4.) *See, e.g.*, *Kanowitz v. Broadridge Fin. Sols., Inc.*, No. CV 13-649 (DRH) (AKT), 2014 WL 1338370, at *12 (E.D.N.Y. Mar. 31, 2014) (granting in part motion to stay discovery on the basis of anticipated motion to dismiss). Indeed, in *Freeman v. HSBC Holdings, PLC*, 14-cv-06601-DLI-CLP (E.D.N.Y.), another ATA case containing allegations substantially similar to those in this matter, Defendants filed motions to dismiss relying on, among other cases, *Rothstein*. (*Freeman*, Dkt. No. 120.) The court, aware of the *Rothstein* decision, stayed discovery before the defendants filed those motions to dismiss (which remain pending). (*Id.*, Dkt. No. 37.) Likewise, in another substantially similar ATA case, in 2016 the U.S. District Court for the Southern District of Illinois stayed all discovery pending decision of the defendant's motion to dismiss, which the court subsequently granted. *See Shaffer v. Deutsche Bank AG*, 3:16-cv-00497-MJR-SCW, Dkt. Nos. 42, 69 (S.D. Ill.). These precedents illustrate both the appropriateness of staying discovery pending the Moving Defendants' motions to dismiss and the strength of the arguments that Moving Defendants will assert in their motions—arguments that, if prevailing, will obviate the need for the parties ever to engage in any discovery.[2]

Second, Plaintiffs seek broad and burdensome discovery from each of the 15 Moving Defendants, and from third parties, that should not be contemplated until after motions to dismiss have been decided in this matter. During a meet and confer on January 18, 2018, Plaintiffs indicated that they were unprepared to enumerate every category of documents they planned to request, but would seek, among other things, (i) documents produced by Moving Defendants to various government agencies in response to subpoenas regarding the conduct alleged in the Complaint; (ii) various policies, procedures and manuals each of the Moving Defendants had in place during the relevant time period, which Plaintiffs assert dates from 2003 to 2011; (iii) corporate organization charts of the Moving Defendants during the relevant time period and (iv) consent from the Moving Defendants to allow Plaintiffs to engage in third-party discovery. In their January 29 Letter, Plaintiffs' "proposal for limited discovery" includes categories (i) to (iv), as well as auditing reports, SWIFT messages related to the transactions described in the Complaint, and Suspicious Activity Reports ("SARs") filed by the Moving Defendants. (January 29 Letter at 5.) Plaintiffs have thus broadened their

---

[2] In this case, the Court has set a schedule for motion briefing on consent by Plaintiffs. (Dkt. 58.)

already broad discovery requests from those enumerated during the meet and confer on January 18 to those enumerated in the January 29 Letter.

Plaintiffs' request for immediate discovery is not "limited" in any way that avoids undue burden, especially given the strength of the motions to dismiss. (*See id.*) Plaintiffs themselves concede that the requested documents are voluminous: One regulatory agency alone possesses approximately 2787.08 GB of data, including over 9 million files. (*See id.* at 5 n.3.) Plaintiffs further state that multiple regulatory agencies "have confirmed the existence of similar amounts of information". (*Id.*) Nor is it true that the Moving Defendants "would suffer no undue burden" in having to produce documents previously produced to law enforcement and regulatory agencies. (*See id.* at 5.) The productions made to different governmental authorities involved investigations of varying scope and encompassed many countries and matters not involved here. Moving Defendants could not simply make new copies of the production for Plaintiffs, but would have to review their prior productions to governmental authorities and make an appropriate selection of materials for production to Plaintiffs based on relevancy and legal considerations, including applicable data privacy laws and other confidentiality issues. These privacy and confidentiality requirements are substantially stricter and more complex than U.S. privacy rules in some of the European countries in which the Moving Defendants are based and where relevant evidence resides. Collection of policies, procedures and manuals and SWIFT messages from up to 15 years ago would also be unduly burdensome and would require considerable hours to cull and review those documents by many teams of attorneys. Plaintiffs allege that the Moving Defendants each engaged in hundreds of millions of dollars' worth of transactions on behalf of sanctioned entities (Compl. ¶ 56), which would likely translate into tens of thousands of individual transactions that must be reviewed at this early stage of litigation. Lastly, Plaintiffs' request for the production of SARs further illustrates the extent of their overreaching discovery requests, as the "[d]isclosure of even the filing of a SAR, let alone disclosure of its substance, is prohibited by law". *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999); *see also* 31 U.S.C. § 5318(g); 12 C.F.R. § 208.62(j). In short, the burden that would be placed on Moving Defendants to undertake the wide-ranging production requested by Plaintiffs at this stage in these proceedings is unreasonable, particularly in light of the strength of Moving Defendants' motion to dismiss.

The undue burden of Plaintiffs' contemplated discovery applies equally to the "enormous amounts of information and material" that Plaintiffs seek from third parties (*see* January 29 Letter at 5), whose resources must be considered in assessing requests for third-party discovery. *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (explaining that courts must weigh the probative value of the information against the burden of production on non-parties). The third parties would be required to review the millions of files in their possession to determine if any privileges, including regulatory privileges, may apply. *See MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322 (HB) (JFC), 2013 WL 5437354, at *1 (S.D.N.Y. Sept. 27, 2013) (discussing bank examination privilege); *see also In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (discussing law enforcement privilege). Imposing such a time-consuming task on government agencies is

unwarranted at this stage of the litigation. Plaintiffs' allegations also implicate numerous foreign third-parties, raising a potential need for international discovery devices such as treaty-based discovery or the issuance of letters rogatory, which would impose an additional substantial burden on the parties and the Court. *See, e.g.*, *Société Nationale Industrielle Aérospatiale v. United States District Court for Southern District of Iowa*, 482 U.S. 522, 544 (1987) (determination of whether to apply procedures of Hague Convention on the Taking of Evidence Abroad requires judicial "scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective").

Further, the requested time-limited stay of discovery will not prejudice Plaintiffs. "A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Spencer Trask Software*, 206 F.R.D. at 368; *see also Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934 (AT), 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (granting stay pending resolution of motion to dismiss); *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2013) (granting stay pending resolution of motion to dismiss where "plaintiffs failed to demonstrate that a short delay in discovery will impose any unfair prejudice on them").

Finally, Moving Defendants are not obligated to participate in a Rule 26(f) conference with Plaintiffs at this time. Rule 26(f) does not require an immediate conference; instead, "the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)". Fed. R. Civ. P. 26. A scheduling conference has not yet been calendared; rather, in this matter, the parties submitted on consent, and the Court approved, a schedule for motions to dismiss.

Like Plaintiffs, Moving Defendants would like to have this case promptly determined. However, as is clear from controlling Second Circuit authorities such as *Rothstein*, resolution of this case should occur at the motion to dismiss stage. Given the strength of Moving Defendants' motions to dismiss, the breadth of, and burden associated with, the requested discovery and the lack of prejudice to Plaintiffs, Moving Defendants respectfully request a stay of discovery during the pendency of Moving Defendants' motions to dismiss.

Respectfully,

John D. Buretta

Hon. Laura Taylor Swain
  United States District Judge
    Daniel Patrick Moynihan
      United States Courthouse
        500 Pearl Street
          New York, NY 10007-1312

VIA ECF

Copy to:

Hon. Gabriel W. Gorenstein
  Chief United States Magistrate Judge
    Daniel Patrick Moynihan
      United States Courthouse
        500 Pearl Street
          New York, NY 10007-1312

VIA ECF

Copy to:

All Counsel

VIA ECF