UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY O'SULLIVAN, et al., | |
| Plaintiffs, | |
| -against- | 17-CV-08709-LTS-GWG |
| DEUTSCHE BANK AG, et al., | |
| Defendants. | |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY DISCOVERY DURING THE PENDENCY OF THE MOTIONS TO DISMISS**

February 7, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................1

BACKGROUND ........................................................................................................3

FACTS .....................................................................................................................5

ARGUMENT ............................................................................................................6

I.      THE MOVING DEFENDANTS' MOTIONS TO DISMISS ARE STRONG .......7

II.     PLAINTIFFS' DISCOVERY REQUESTS IMPOSE AN UNNECESSARY
        BURDEN ON THE MOVING DEFENDANTS AND THIRD PARTIES AT
        THIS EARLY STAGE OF THE LITIGATION.....................................................12

III.    A STAY OF DISCOVERY WILL NOT PREJUDICE PLAINTIFFS.................19

CONCLUSION.........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................11

*Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934 (AT), 2016 WL
  361554 (S.D.N.Y. Jan. 28, 2016) ...............................................................................19

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113
  (E.D.N.Y. 2006) ..........................................................................................................13

*Freeman v. HSBC Holdings, PLC*, 14-cv-06601-DLI-CLP (E.D.N.Y.) ..........................11

*Fuller v. BNP Paribas*, 16-cv-05167-LTS (S.D.N.Y. Sept. 26, 2016) ..............................17

*Gandler v. Nazarov*, No. 94 CIV. 2272 (CSH), 1994 WL 702004
  (S.D.N.Y. Dec. 14, 1994) ........................................................................................7, 18

*Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297
  F.R.D. 69 (S.D.N.Y. 2013) ......................................................................................7, 11

*In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72 (S.D.N.Y. 2007) .......................................18

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581
  (S.D.N.Y. 2015) ...........................................................................................................14

*In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC)
  (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ..................................................19

*In re The City of N.Y.*, 607 F.3d 923 (2d Cir. 2010) .........................................................18

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874
  (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ............................................ 12-13

*Johnson v. New York Univ. Sch. of Educ.*, 205 F.R.D. 433 (S.D.N.Y. 2002) .....................6

*Kanowitz v. Broadridge Fin. Sols. Inc.*, No. CV 13-649 (DRH) (AKT),
  2014 WL 1338370 (E.D.N.Y. Mar. 31, 2014) ......................................................... 6-7

*Lee v. Bankers Trust Co.*, 166 F.3d 540 (2d Cir. 1999) .....................................................18

*Linde v. Arab Bank PLC*, 944 F. Supp. 2d 215 (E.D.N.Y. 2013) .......................................9

*MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec.
  Inc.*, No. 12 Civ. 7322 (HB) (JFC), 2013 WL 5437354 (S.D.N.Y. Sept.
  27, 2013) ......................................................................................................................18

*O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013) ...................................................8, 9

*Ofisi v. BNP Paribas, S.A.*, No. 15-2010 (JDB), 2017 WL 4355922
(D.D.C. Sept. 29, 2017) ...............................................................................................8

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ..................................................... passim

*Shaffer v. Deutsche Bank AG*, 16-cv-00497-MJR-SCW (S.D. Ill. Dec. 7,
2017) ............................................................................................................. passim

*Société Nationale Industrielle Aérospatiale v. U.S. District Court for S.D.
Iowa*, 482 U.S. 522 (1987)............................................................................................19

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D.
367 (S.D.N.Y. 2002) ..............................................................................................6, 7, 19

**Statutes & Rules**

12 C.F.R. § 208.62(j) ......................................................................................................18

18 U.S.C. § 2333(a) ...................................................................................................4, 7, 9

18 U.S.C. § 2333(d) ......................................................................................................9, 10

31 U.S.C. § 5318(g) ........................................................................................................18

The Moving Defendants[1] respectfully submit this joint memorandum of law in support of their motion for an order staying all discovery until the Court has ruled on the Moving Defendants' forthcoming motions to dismiss.  In two cases involving many of the same banks and substantially the same legal theories, both courts stayed discovery pending motions to dismiss (and one of those motions to dismiss has already been decided in the defendant's favor).  Given the strong legal arguments for dismissal and the significant burdens that immediate discovery would impose, this Court should do the same.

## BACKGROUND

The Complaint is premised on an alleged conspiracy among the Moving Defendants, "Iran and its Agents and Proxies" to evade U.S. economic sanctions against Iran (the "Conspiracy").  *See* Compl. ¶¶ 1371-84.  The Complaint fails to define these "Agents and Proxies" in full, but instead loosely applies the phrase to include over two dozen entities including Iranian banks, various Iranian state organizations, and various named and unnamed terrorist groups.  *Id.* ¶ 1371.  The Complaint asserts that, as part of the Conspiracy, "Defendants knowingly agreed to transfer hundreds of billions of dollars and conduct billions of dollars in illicit trade-finance transactions, as well as provide expert advice, all in violation of U.S. international laws and sanctions".  *Id.*  Plaintiffs further claim in conclusory fashion that the Conspiracy "enabl[ed] Iran and its Agents

---

[1] The "Moving Defendants" are Deutsche Bank AG; HSBC Bank USA, N.A.; HSBC Holdings plc; HSBC Bank plc; HSBC Bank Middle East Limited; HSBC North America Holdings, Inc.; Commerzbank AG; Commerzbank AG, New York Branch; Barclays Bank PLC; BNP Paribas S.A.; Standard Chartered Bank; The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.); The Royal Bank of Scotland plc; Crédit Agricole Corporate & Investment Bank; and Credit Suisse AG.

and Proxies to authorize, plan, and commit acts of international terrorism". *Id.* ¶ 1386.

Based on these conclusory allegations, Plaintiffs contend that the Moving Defendants are

civilly liable under 18 U.S.C. § 2333(a) for injuries caused to U.S. military personnel in

Iraq.

On December 18, 2017, the Moving Defendants and Plaintiffs submitted a

joint proposed schedule for briefing motions to dismiss.  (Dkt. No. 52.)  On

December 19, Judge Swain entered the following briefing schedule:  motions to dismiss

to be filed on March 2, 2018, and no earlier; opposition papers to be filed on or before

May 2 and replies due on or before June 1.  (Dkt. No. 58.)

The Moving Defendants' motions to dismiss will argue, among other

things, that Plaintiffs' allegations fail plausibly to allege that the Moving Defendants'

alleged provision of financial services to Iranian banks was the proximate cause of

Plaintiffs' injuries. *See Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013).  A ruling

granting the motions to dismiss would be dispositive of all of Plaintiffs' claims against

the Moving Defendants.

On January 16, 2018, nearly a month after the Court entered the schedule

for briefing motions to dismiss, Plaintiffs advised that they would seek discovery before a

decision on the motions to dismiss.  (Buretta Decl. ¶ 2.[2])  Plaintiffs indicated during a

meet and confer on January 18 that they intended to seek discovery of:  (i) documents

produced by the Moving Defendants to various government agencies in response to

subpoenas regarding the conduct alleged in the Complaint; (ii) various policies,

---

[2] "Buretta Decl." refers to the Declaration of John D. Buretta, dated February 7, 2018.

procedures and manuals each of the Moving Defendants had in place during the relevant time period, which Plaintiffs assert dates from 2003 to 2011, *see* Compl. ¶ 11; (iii) corporate organization charts of the Moving Defendants during the relevant time period, and (iv) third-party discovery.  (Buretta Decl. ¶ 3.)

On January 29, 2018, Plaintiffs requested a discovery conference with the Court.  (Dkt. No. 91.)  In response, the Moving Defendants did not oppose a conference, but requested a stay of discovery during the pendency of their motions to dismiss.  (Dkt. No. 92.)  On February 1, the Court entered an order setting a schedule for briefing a motion to stay discovery.  (Dkt. No. 93.)

## FACTS

Plaintiffs' allegations are based on alleged violations of economic sanctions by the Moving Defendants that occurred up to over twenty years ago.  *See, e.g.*, Compl. ¶¶ 1520-23, 1582, 1631.  Numerous U.S. federal and state authorities, as well as foreign authorities in some instances, conducted extensive, multi-year investigations into these alleged economic sanctions violations.  (*See, e.g.*, Hruska Decl. ¶ 7 (relating to the Credit Suisse investigations).[3])  As part of these investigations, the Moving Defendants made multiple productions to numerous government authorities within and outside the United States.  (*See, e.g.*, *id.* ¶¶ 10-11.)  The investigations focused not only on the Moving Defendants' Iran-related banking transactions, but also on alleged economic sanctions violations concerning other countries; as just one example, the investigation relating to Credit Suisse involved U.S. dollar-clearing transactions in Iran, Sudan, Libya,

---

[3] "Hruska Decl." refers to the Declaration of Andrew Hruska, dated February 7, 2018.  Facts relating to Credit Suisse are described by way of example.

Burma, Cuba and the former Liberian Regime of Charles Taylor.  (*See, e.g.*, *id.* ¶ 9.)

Thus, many of the documents produced by the Moving Defendants to various

government authorities relate to transactions involving countries other than Iran and do

not pertain to the allegations in the Complaint at all.  (*See infra* at 14-16.)  Moreover,

portions of the Moving Defendants' prior productions to government authorities contain

personal information for the Moving Defendants' clients, including names and account

numbers.  (*See, e.g.*, *id.* ¶ 14.)  The documents came from, among other locations, the

Moving Defendants' offices overseas and many were produced in hard copy form.  (*See,*

*e.g.*, *id.* ¶¶ 11-12.)

## ARGUMENT

It is well established that where a motion has the potential to be

dispositive of the entire case or of all claims against a single defendant, the court may

properly stay discovery until resolution of that motion.  *See Spencer Trask Software &*

*Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (holding that

courts should consider the strength of the motion that is the basis of the discovery stay

application, and grant the stay where the motion is *potentially* dispositive); *Johnson v.*

*New York Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("Courts in this

district have held that a stay of discovery is appropriate pending resolution of a

potentially dispositive motion where the motion appears to have substantial grounds, or

stated another way, does not appear to be without foundation in law.").  A stay of

discovery may be granted in advance of the actual filing of a motion to dismiss.  *See*, *e.g.*,

*Kanowitz v. Broadridge Fin. Sols. Inc.*, No. CV 13-649 (DRH) (AKT), 2014 WL

1338370, at *12 (E.D.N.Y. Mar. 31, 2014) (granting in part motion to stay discovery on the basis of anticipated motion to dismiss).

In deciding whether to stay discovery, a court should consider "the strength of the dispositive motion that is the basis for the discovery stay application" as well as "the breadth of discovery sought and the burden of responding to it". *Spencer Trask*, 206 F.R.D. at 368; *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72-73 (S.D.N.Y. 2013) (explaining that "substantial arguments for dismissal" weigh in favor of granting a motion for a stay); *Gandler v. Nazarov*, No. 94 CIV. 2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (granting stay of discovery where "pending motion to dismiss might avoid the need for costly and time-consuming discovery"). The Court should grant this motion to stay discovery because (1) the Moving Defendants' motions to dismiss the Complaint will provide strong grounds for dismissal; (2) the discovery sought by Plaintiffs will impose an undue burden at this early stage of litigation; and (3) delaying discovery until the dismissal motions are resolved will not prejudice Plaintiffs.

## I.     THE MOVING DEFENDANTS' MOTIONS TO DISMISS ARE STRONG

Controlling precedent in this Circuit establishes that Plaintiffs' Complaint fails plausibly to state a claim under the ATA. Plaintiffs allege that the Moving Defendants violated Section 2333(a) of the ATA by conspiring with "Iran and its Agents and Proxies" to evade U.S. economic sanctions by providing financing to Iran, which then allegedly provided funds of unspecified origin to terrorist organizations, which then used funds of unspecified origin to finance and carry out terrorist attacks that injured Plaintiffs. Compl. ¶¶ 1371-84. These attenuated allegations are insufficient as a matter

of law to plausibly allege that Moving Defendants' conduct proximately caused injury to Plaintiffs under *Rothstein*.

In *Rothstein*, the Second Circuit affirmed dismissal of ATA claims against defendant UBS AG because there was not a plausible allegation that UBS AG's conduct in transferring U.S. currency to Iran proximately caused the injuries sustained by the plaintiffs from bombings carried out by Hezbollah and Hamas in Israel.  The Court found that (i) UBS AG did not participate in the terrorist attacks, (ii) UBS AG did not provide bank notes directly to terrorists, (iii) UBS AG was not itself necessary to Iran's terrorism funding and (iv) Iran has legitimate needs for financial services.  708 F.3d at 96-98.  The allegations here are, as a legal matter, no different than those alleged in *Rothstein* or those dismissed in numerous other ATA cases brought against financial institutions that allegedly engaged in U.S. economic sanctions violations.  *See, e.g.*, *O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013) (applying *Rothstein* to affirm dismissal of civil ATA claims alleging that financial institutions provided support and resources to Osama Bin Laden and al Qaeda); *Ofisi v. BNP Paribas, S.A.*, No. 15-2010 (JDB), 2017 WL 4355922 (D.D.C. Sept. 29, 2017), *vacated in part on other grounds*, 2018 WL 385408 (D.D.C. Jan. 11, 2018), *and reconsideration denied,* 2018 WL 396234 (D.D.C. Jan. 11, 2018) (applying *Rothstein* to dismiss civil ATA claims alleging a conspiracy among BNPP, Sudan, Sudanese banks and al Qaeda which allegedly provided material support to al Qaeda); *Shaffer v. Deutsche Bank AG*, 16-CV-497-MJR-SCW, Mem. & Order, Dkt. No. 69, at 9-11 (S.D. Ill. Dec. 7, 2017) (applying *Rothstein* to dismiss civil ATA claims alleging a conspiracy among Deutsche Bank, Iran and Iranian banks which allegedly provided material support to Hezbollah).

As in *Rothstein*, Plaintiffs fail plausibly to allege that the Moving Defendants "participated in the . . . attacks[,] or that they provided money directly to" the individuals or entities that carried out the attacks, or that the money from the U.S. dollar-denominated transactions conducted by the Moving Defendants for Iranian banks was "transferred" to the unidentified individuals or entities that committed the attacks. *Al Rajhi*, 714 F.3d at 124 (analyzing *Rothstein*). Under *Rothstein* and its progeny, the theory of causation pleaded by Plaintiffs here—far more attenuated than in *Rothstein* itself—fails as a matter of law.

In addition, *Rothstein* and its progeny held that secondary theories of liability, such as conspiracy and aiding and abetting theories, are not available as a matter of law under Section 2333(a). 708 F.3d at 97-98; *Linde v. Arab Bank PLC*, 944 F. Supp. 2d 215, 217 (E.D.N.Y. 2013). The ATA was amended through the addition of Section 2333(d) to provide for secondary liability in limited circumstances, but Plaintiffs have failed to plead a claim under that provision. Under Section 2333(d)'s narrow conspiracy provision, conspiracy liability is available only for an act of international terrorism "committed, planned, or authorized" by a designated foreign terrorist organization ("FTO"), *and* if the defendant conspires with the person who "*committed* such act of international terrorism". 18 U.S.C. § 2333(d) (emphasis added). Section 2333(d) also created limited liability for those that aid and abet an act of international terrorism committed, planned, or authorized by an FTO by *knowingly providing* substantial assistance to *the person who committed* such an act. *Id.* Plaintiffs do not— and cannot plausibly—allege that the Moving Defendants' asserted conduct met either statutory prerequisite. *See Shaffer*, Mem. & Order, Dkt. No. 69, at 2 n.1 (holding that plaintiffs

failed to state a claim under Section 2333(d) where the bank allegedly entered "a conspiracy with Iran" rather than an FTO).

Finally, Plaintiffs have failed plausibly to allege that the Moving Defendants joined in the *purpose* of committing terrorist acts, or knowingly provided support for such acts.  In *Shaffer*, for example, plaintiffs alleged that Deutsche Bank "knowingly conspired with [Iran] and its banking agents to evade U.S. economic sanctions and disguise financial payments, thereby foreseeably enabling Iran's involvement in the terrorist acts that injured the Plaintiffs".  *Shaffer*, Compl., Dkt. No. 1 ¶ 1.  The *Shaffer* court dismissed the complaint, holding that "Plaintiffs, by their own allegations, describe the object of the conspiracy as completing the dollar-clearing transactions.  For a claim to be viable under the ATA, the object of the participants' conspiracy must be to provide material support for terrorism, and Plaintiffs have not plausibly pleaded that Deutsche Bank intended to do so."  *Shaffer*, Mem. & Order, Dkt. No. 69, at 10.

Similarly, here, Plaintiffs allege that Moving Defendants conspired to evade economic sanctions in order to profit, *see* Compl. ¶ 1414 ("Defendants' specific aims and objectives were to profit by keeping U.S. depository institutions, law enforcement, and counter-terrorism agencies blind to Iran's and/or its Agents' and Proxies' movement of USD through the U.S. and international financial systems"), not to commit acts of terrorism.  Plaintiffs' allegations thus fail plausibly to allege that the Moving Defendants joined in the *purpose* of committing terrorist acts or knowingly provided support for such acts.

The clear and binding precedent established in *Rothstein* and its progeny provide the "substantial arguments for dismissal" that weigh in favor of a stay of discovery.  *See Hong Leong Finance Ltd. (Singapore)*, 297 F.R.D. at 72 (granting stay of discovery pending resolution of motion to dismiss); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("When the allegations in a complaint, however true, could not raise a claim of entitlement to relief this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.").  In *Freeman v. HSBC Holdings, PLC*, 14-cv-06601-DLI-CLP (E.D.N.Y.), another ATA case containing allegations substantially similar to those in this matter, defendants filed a motion to dismiss relying on, among other cases, *Rothstein*.  *Freeman*, Dkt. No. 120.  The court, aware of the *Rothstein* decision, stayed discovery before defendants filed their motions to dismiss, and those motions remain pending.  *Id.*, Dkt. No. 37.  Likewise, in another substantially similar ATA case, in 2016 the U.S. District Court for the Southern District of Illinois stayed all discovery pending the outcome of the defendant's motion to dismiss, which the court subsequently granted.  *See Shaffer*, Dkt. Nos. 42, 69.  These precedents illustrate both that staying discovery pending the Moving Defendants' motions to dismiss is appropriate and that the same strong arguments in the Moving Defendants' motions to dismiss have led to dismissal of substantially similar ATA allegations.  Accordingly, a stay of discovery pending the motions to dismiss is appropriate here given the Moving Defendants' likelihood of success.

## II. PLAINTIFFS' DISCOVERY REQUESTS IMPOSE AN UNNECESSARY BURDEN ON THE MOVING DEFENDANTS AND THIRD PARTIES AT THIS EARLY STAGE OF THE LITIGATION

Plaintiffs seek broad and burdensome discovery from each of the 15 Moving Defendants, and from third parties, that should not be contemplated in this matter until after motions to dismiss have been decided.  Plaintiffs have now expanded the discovery they seek to extend to:  (i) documents produced by Moving Defendants to various government agencies in response to subpoenas regarding the conduct alleged in the Complaint; (ii) various policies, procedures and manuals each of the Moving Defendants had in place during the relevant time period; (iii) corporate organization charts of the Moving Defendants during the relevant time period; (iv) third-party discovery; (v) auditing reports; (vi) SWIFT messages related to the transactions described in the Complaint; and (vii) Suspicious Activity Reports ("SARs") filed by the Moving Defendants.  (*Compare* Buretta Decl. ¶ 3 (identifying categories (i) to (iv), *with* Dkt. No. 91 at 5 (identifying categories (i) to (vii).)

Plaintiffs' request for immediate discovery is not "limited" in a way that avoids undue burden, especially given the strength of the motions to dismiss.  (*See* Dkt. No. 91 at 5.)  Plaintiffs themselves concede that the requested documents are voluminous:  One regulatory agency alone possesses approximately 2787.08 GB of data, including over 9 million files.  (*See id.* at 5 n.3.)  Plaintiffs further state that multiple regulatory agencies "have confirmed the existence of similar amounts of information".  (*Id.*)  In cases involving allegations spanning a period of several years, a large number of parties, or potentially extensive amounts of discoverable materials, courts have found discovery pending motions to dismiss to be unreasonable.  *See, e.g.*, *Integrated Sys. &*

12

*Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1

(S.D.N.Y. Sept. 1, 2009) (staying discovery that would cover a "six-year period" and

"multiple distributors in the New York City area", and be "costly and time-consuming");

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 116 (E.D.N.Y.

2006) ("At this point, there are some sixteen (16) entities or individuals named in the

complaint, and the complaint purports to set forth more than twenty (20) distinct federal

and state causes of action.  To set a discovery schedule and require all of the named

defendants, institutional and individual, to participate would, in my opinion, be

unreasonable and inappropriate under the circumstances presented here.").

   The Declaration of Andrew Hruska (relating to Credit Suisse) provides an

example from just one of the Moving Defendants of the significant burden involved with

Plaintiffs' discovery requests.  The sanctions investigations that culminated in Credit

Suisse's settlements with multiple U.S. government authorities concerned U.S. dollar-

clearing transactions processed by Credit Suisse from as early as 1995 to 2006 involving

entities located in Sudan, Libya, Burma, Cuba, the former Liberian Regime of Charles

Taylor, and Iran.  (Hruska Decl. ¶ 8.)  In connection with these investigations, Credit

Suisse reviewed at least 4 Terabytes (4,000 Gigabytes) of data, including over 12 million

SWIFT messages and over 1 million pages of documents, and produced documents,

almost entirely in hard copy form, to each of the U.S. Department of Justice ("DOJ"),

U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"), District

Attorney of the County of New York ("DANY") and the Federal Reserve Bank of New

York.  (*Id.* ¶¶ 10-11.)  Nearly all of the documents produced came from Credit Suisse's

offices in Switzerland, and the use and disclosure of those documents are governed by

Swiss data privacy laws.  (*Id.* ¶ 12.)  Due to such restrictions, Credit Suisse worked with

DOJ, DANY, the Federal Reserve Bank of New York, and relevant Swiss authorities to

develop an approach to the document collection and production that complied with Swiss

law and also allowed U.S. government authorities to obtain documents concerning the

sanctions investigations.  (*Id.* ¶ 13.)  Accordingly, disclosure of Credit Suisse's prior

document productions to Plaintiffs would have to comply with Swiss data privacy laws.

(*Id.* ¶ 14.)  Documents that were produced to U.S. government authorities in unredacted

form would have to be re-reviewed and appropriately redacted to remove any personally

identifiable information, such as client names and account and identification numbers.

(*Id.*)  Input from Swiss counsel on the appropriate redactions would also be necessary to

ensure full compliance with Swiss laws.  (*Id.*)

        The various government investigations into each of the other the Moving

Defendants' U.S. dollar-clearing transactions similarly involved significant volumes of

documents concerning many different countries over a period of several years.  For

example:

- **Barclays Bank PLC**:  The investigation resulting in Barclays Bank PLC's settlement with OFAC concerned transactions related to four sanctioned countries over a five-year period.[4]

---

    [4] *See* OFAC Settlement Agreement, Aug. 18, 2010, https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Documents/08182010.pdf.  The Complaint incorporates by reference each of the settlement agreements.  *See, e.g.*, Compl. ¶¶ 1519-23, 1581-82, 1643, 1764-65, 1768, 1841-43, 2073-75, 2162-63, 2166, 2168, 2193, 2195-97, 2303-05.  In any event, the Court may take judicial notice of settlements with government authorities based on government authorities' press releases and the underlying orders.  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 588 n.4 (S.D.N.Y. 2015).

- **BNP Paribas S.A.**:  The investigation resulting in BNP Paribas S.A.'s settlement with OFAC concerned transactions related to four sanctioned countries over a seven-year period.[5]

- **Commerzbank AG**:  The investigation resulting in Commerzbank AG's settlement with OFAC concerned transactions related to four sanctioned countries over a five-year period.[6]

- **Crédit Agricole Corporate & Investment Bank**:  The investigation resulting in Crédit Agricole Corporate & Investment Bank's settlement with OFAC related to four sanctioned countries over a five-year period.[7]

- **Deutsche Bank AG**:  The investigation resulting in Deutsche Bank AG's Consent Order with the New York State Department of Financial Services concerned transactions related to five sanctioned countries over an eight-year period.[8]

- **HSBC Holdings plc and HSBC Bank USA N.A.**:  The investigation resulting in these two HSBC entities' deferred prosecution agreement ("DPA") concerned transactions related to five sanctioned countries over at least a ten-year period and involved the production of more than 9 million pages of documents.[9]

---

[5] *See* OFAC Settlement Agreement, June 30, 2014, https://www.treasury.gov/resource-center/sanctions/CivPen/Documents/20140630_bnp_settlement.pdf.

[6] *See* OFAC Settlement Agreement, March 11, 2015, https://www.treasury.gov/resource-center/sanctions/CivPen/Documents/20150312_commerzbank_settlement.pdf.

[7] *See* OFAC Settlement Agreement, Oct. 19, 2015, https://www.treasury.gov/resource-center/sanctions/CivPen/Documents/20151020_cacib_settlement.pdf.

[8] *See In the Matter of Deutsche Bank AG, Deutsche Bank New York Branch*, Consent Order Under New York Banking Law §§ 39 and 44 (Nov. 3, 2015), http://www.dfs.ny.gov/about/ea/ea151103.pdf.

[9] *See United States v. HSBC Bank USA, N.A.*, 12-cr-763, Statement of Facts ¶ 78 (E.D.N.Y. Dec. 11, 2012); *see also* DOJ Press Release, Dec. 11, 2012, https://www.justice.gov/opa/pr/hsbc-holdings-plc-and-hsbc-bank-usa-na-admit-anti-money-laundering-and-sanctions-violations.

- **Standard Chartered Bank**:  The investigation resulting in Standard Chartered Bank's DPA concerned transactions related to four sanctioned countries over a six-year period.[10]

- **The Royal Bank of Scotland plc**:  The investigation resulting in The Royal Bank of Scotland plc's settlement with OFAC concerned transactions related to four sanctioned countries over a four-year period.[11]

- **ABN Amro Bank N.V. (now known as The Royal Bank of Scotland N.V.)**:  The investigation resulting in ABN Amro Bank N.V.'s DPA concerned transactions related to four sanctioned countries over a twelve-year period.[12]

Accordingly, it is patently untrue that the Moving Defendants "would suffer no undue burden" in having to produce documents previously produced to law enforcement and regulatory agencies.  (*See* Dkt. No. 91 at 5.)  The productions made to different governmental authorities involved investigations of varying scope and encompassed many countries and matters not involved here.  While the Complaint contains allegations regarding Iran (and, as to one Moving Defendant, Sudan, *see* Compl. ¶¶ 2550-53), these prior productions contain information relating to countries entirely unconnected to the Complaint's conclusory allegations.  The Moving Defendants could not simply make new copies of the productions for Plaintiffs, but would have to review their prior productions to governmental authorities, and make an appropriate selection of materials for production to Plaintiffs based on relevancy and legal considerations,

---

[10] *See* DOJ Press Release, Dec. 10, 2012, https://www.justice.gov/opa/pr/standard-chartered-bank-agrees-forfeit-227-million-illegal-transactions-iran-sudan-libya-and.

[11] *See* OFAC Settlement Agreement, Dec. 11, 2013, https://www.treasury.gov/resource-center/sanctions/CivPen/Documents/12112013_rbs_settle.pdf.

[12] *See* DOJ Press Release, May 10, 2010, https://www.justice.gov/opa/pr/former-abn-amro-bank-nv-agrees-forfeit-500-million-connection-conspiracy-defraud-united.

16

including applicable foreign data privacy laws and other confidentiality issues.  (*See, e.g.*, Hruska Decl. ¶ 14.)

Critically, the Moving Defendants' prior productions were based on an analysis of the foreign data privacy restrictions that were in place at the time, and production to Plaintiffs now would require a new analysis of those foreign data privacy restrictions.  Further, current foreign privacy and confidentiality requirements are substantially stricter and more complex than U.S. privacy rules in some of the European countries in which the Moving Defendants are based and where relevant evidence resides.  Among other things, Moving Defendants would be required to redact personal information of Moving Defendants' clients, such as names, addresses, identification numbers and account numbers.  (*See, e.g.*, *id.*)  Additionally, collection of policies, procedures, manuals and SWIFT messages from up to twenty years ago would take significant time, be unduly burdensome and would require considerable hours to cull and review those documents by many teams of attorneys, including attorneys located overseas.  Plaintiffs allege that the Moving Defendants each engaged in hundreds of billions of dollars' worth of transactions on behalf of sanctioned entities, Compl. ¶ 866, which would translate into tens of thousands of individual transactions that would need to be reviewed at this early stage of litigation while motions to dismiss will be pending.[13]

---

[13] In a case before Judge Swain in which the plaintiff sought civil damages based on plea and settlement agreements that BNPP entered into for violations of U.S. sanctions laws with respect to Cuba, the court stayed discovery pending its disposition of BNPP's motion to dismiss.  *See Fuller v. BNP Paribas*, 16-cv-05167-LTS (S.D.N.Y. Sept. 26, 2016), Dkt. No. 26 at 4 (staying discovery notwithstanding plaintiff's argument that discovery would not burden BNPP because it had previously produced documents to government agencies in connection with investigations concerning sanctions violations).

Lastly, Plaintiffs' request for the production of SARs further illustrates the extent of their overreaching discovery requests, as the "[d]isclosure of even the filing of a SAR, let alone disclosure of its substance, is prohibited by law". *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999); *see also* 31 U.S.C. § 5318(g); 12 C.F.R. § 208.62(j). In sum, the burden that would be placed on the Moving Defendants to undertake the wide-ranging production requested by Plaintiffs at this stage in these proceedings is unreasonable, particularly in light of the strength of the Moving Defendants' motion to dismiss. *See Gandler*, 1994 WL 702004, at *4.

The undue burden of Plaintiffs' contemplated discovery applies equally to the "enormous amounts of information and material" that Plaintiffs seek from third parties (*see* Dkt. No. 91 at 5), whose resources must be considered in assessing requests for third-party discovery. *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (explaining that courts must weigh the probative value of the information against the burden of production on non-parties). The third parties would be required to review the millions of files in their possession to determine if any privileges, including regulatory privileges, may apply. *See MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322 (HB) (JFC), 2013 WL 5437354, at *1 (S.D.N.Y. Sept. 27, 2013) (discussing bank examination privilege); *see also In re The City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010) (discussing law enforcement privilege). Imposing such a time-consuming task on government agencies is unwarranted at this stage of the litigation. Plaintiffs' allegations also implicate numerous foreign third parties, raising a potential need for international discovery devices such as treaty-based discovery or the issuance of letters rogatory, which would impose an additional

18

substantial burden on the parties and the Court.  *See, e.g.*, *Société Nationale Industrielle Aérospatiale v. U.S. District Court for S.D. Iowa*, 482 U.S. 522, 544 (1987) (determination of whether to apply procedures of Hague Convention on the Taking of Evidence Abroad requires judicial "scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective").

## III.    A STAY OF DISCOVERY WILL NOT PREJUDICE PLAINTIFFS

The requested time-limited stay of discovery will not prejudice Plaintiffs. "A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Spencer Trask*, 206 F.R.D. at 368 (internal citation and quotations omitted); *see also Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934 (AT), 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (granting stay pending resolution of motion to dismiss); *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2013) (granting stay pending resolution of motion to dismiss where "plaintiffs failed to demonstrate that a short delay in discovery will impose any unfair prejudice on them").

Moreover, a stay of discovery at this juncture will not preclude Plaintiffs from seeking document productions after the motions to dismiss have been decided, if they are decided in Plaintiffs' favor.  Nor have Plaintiffs argued they would be prejudiced in any way.  In light of this, all relevant considerations at this stage weigh heavily in favor of the Moving Defendants' request to stay discovery.

## <u>CONCLUSION</u>

For the reasons set forth above, the Moving Defendants respectfully request the Court stay discovery during the pendency of the Moving Defendants' motions to dismiss.

Respectfully submitted,

COVINGTON & BURLING LLP,                    MAYER BROWN LLP,

by                                          by
   */s/ John E. Hall*                               */s/ Mark G. Hanchet*

    John E. Hall                              Mark G. Hanchet
    Mark P. Gimbel                            Robert W. Hamburg
The New York Times Building              1221 Avenue of the Americas
620 Eighth Avenue                        New York, NY 10020-1001
New York, New York 10018                 (212) 506-2500
(212) 841-1000                           mhanchet@mayerbrown.com
jhall@cov.com                            rhamburg@mayerbrown.com
mgimbel@cov.com

    David M. Zionts                           Andrew J. Pincus
One CityCenter                               Marc R. Cohen
850 Tenth Street NW                          Alex C. Lakatos
Washington, DC 20001                     1999 K Street, N.W.
(202) 662-6000                           Washington, DC 20006-1101
dzionts@cov.com                          (202) 263-3000
                                         apincus@mayerbrown.com
                                         mcohen@mayerbrown.com
*Attorneys for Defendant Deutsche*       alakatos@mayerbrown.com
*Bank AG*

                                         *Attorneys for Defendants HSBC Bank*
                                         *USA, N.A., HSBC Holdings plc, HSBC*
                                         *Bank plc, HSBC Bank Middle East*
                                         *Limited and HSBC North America*
                                         *Holdings, Inc.*

21

CLEARY GOTTLIEB STEEN &
HAMILTON LLP,

by
   */s/ Jonathan I. Blackman*

    Jonathan I. Blackman
    Carmine D. Boccuzzi, Jr.
    Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jblackman@cgsh.com
cboccuzzi@cgsh.com
aluft@cgsh.com

*Attorneys for Defendants
Commerzbank AG, Defendants
Commerzbank AG and BNP Paribas,
S.A.*

SULLIVAN & CROMWELL LLP,

by
   */s/ Michael T. Tomaino, Jr.*

    Michael T. Tomaino, Jr.
    Jeffrey T. Scott
    Jonathan M. Sedlak
125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com

*Attorneys for Defendant Barclays
Bank PLC*

SULLIVAN & CROMWELL LLP,

by
   */s/ Sharon L. Nelles*

    Sharon L. Nelles
    Bradley P. Smith
    Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard
Chartered Bank*

CLIFFORD CHANCE US LLP,

by
   */s/ Robert G. Houck*

    Robert G. Houck
    Michael G. Lightfoot
31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

    Jeffrey J. Golimowski
2001 K Street NW
Washington, DC 20006-1001
(202) 912-5000
jeff.golimowski@cliffordchance.com

*Attorneys for Defendants The Royal Bank
of Scotland N.V. (formerly known as ABN
Amro Bank N.V.) and The Royal Bank of
Scotland plc*

22

SULLIVAN & CROMWELL LLP,

by

   */s/ Joseph E. Neuhaus*

      Joseph E. Neuhaus
      Alexander J. Willscher
      Colin A. Chazen
125 Broad Street
New York, NY 10004
(212) 558-4000
neuhausj@sullcrom.com
willschera@sullcrom.com
chazenc@sullcrom.com

*Attorneys for Defendant Crédit Agricole Corporate & Investment Bank*

CRAVATH, SWAINE & MOORE LLP,

by

   */s/ John D. Buretta*

      Richard W. Clary
      John D. Buretta
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*