**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TIMOTHY O'SULLIVAN, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 1:17-cv-08709 – LTS - GWG** |
| | ) |
| **DEUTSCHE BANK AG, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY**

## TABLE OF CONTENTS

**Page**

FACTS AND BACKGROUND ................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

A MOTION TO STAY IS THE EXCEPTION, NOT THE RULE ........................................ 4

DEFENDANTS CANNOT MAKE A STRONG SHOWING SUFFICIENT TO JUSTIFY A STAY OF ALL DISCOVERY ............................................................................................... 5

*Rothstein* Does Not Govern and Dismissal of the Complaint Is Unlikely ........................... 5

Plaintiffs' Proposed Discovery Is Not Unduly Broad or Burdensome ............................... 11

A Stay Would Cause Plaintiffs to Suffer Significant Prejudice ........................................ 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Camreta v. Greene*, 563 U.S. 692 n. 7 (2011) ................................................................. 9

*Chesney v. Valley Stream Union Free Sch. Dist*. No. 24, 236 F.R.D. 113, 116 (E.D.N.Y. 2006) 15

*Discover Fin. Servs., Inc. v. Visa U.S.A., Inc*., No. 04 CIV. 7844 BSJ DFE, 2006 WL 1699566 (S.D.N.Y. June 20, 2006) ........................................................................................ 12

*Escareno ex rel. A.E. v. Lundbeck*, LLC, No. 3:14-CV-257-B, 2014 WL 1976867 (N.D. Tex. May 15, 2014) .................................................................................................... 4, 11

*Fuller v. BNP Paribas*, 16-cv-05167-LTS (S.D.N.Y. Sept. 26, 2016) ........................................ 16

*Gerald Chamales Corp. v. Oki Data Americas, Inc*., 247 F.R.D. 453 (D.N.J. 2007) ................... 5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ....................................................... 6, 9, 10

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) .................................................. 10

*Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69 (S.D.N.Y. 2013)
.................................................................................................................. 5, 11

*Howard v. Galesi*, 107 F.R.D. 348 (S.D.N.Y. 1985) ....................................................... 5

*In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007).......................................... 14

*In re Chase Manhattan Corp. Securities Litigation,* No. 90 CIV. 6092, 1991 WL 79432 (S.D.N.Y. May 7, 1991) .................................................................................. 18

*In re WRT Energy Sec. Litig.*, No. 96 CIV. 3610, 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996) ...... 4

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) .................................................................. 14

*Linde v. Arab Bank*,
No. 16-2119, Dkt. 233-1, slip op. (2d Cir. Feb. 9, 2018)................................................ passim

*Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913 (S.D.N.Y. Sept.25, 1992)..................... 4

*O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013) .................................................... 8

*Ofisis v. BNP Paribas, S.A.*, No. 15-2010 (JDB), 2017 WL 4355922 (D.D.C. Sep. 29, 2017) ..... 9

*Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85 (D.D.C. 2017)........................................... 8

*Rosemond v. United States*, 134 S. Ct. 1240, 1248 (2014) ......................................................... 10

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ........................................................ 5

*Rothstein*, 708 F.3d at 98 ............................................................................... 8

*Shaffer v. Deutsche Bank AG*, 16-CV-497-MJR-SCW, Mem. & Order, Dkt. No. 69 (S.D. Ill. Dec. 7, 2017) .................................................................................................. 9

## Statutes

18 U.S.C. § 2331 et seq.................................................................................................. 1

18 U.S.C. § 2333(d)(2) .................................................................................... 10

18 U.S.C. §2333(d) ................................................................................................. 7, 9

N.Y.S. Education Law § 3031 ............................................................................... 15-16

**Other Authorities**

*Ann. Manual Complex Lit.* § 11.423 (4th ed.) .......................................................... 12

Iran Out to Remake Mideast With Arab Enforcer: Hezbollah, *New York Times*, Aug. 27, 2017, available at https://www.nytimes.com/2017/08/27/world/middleeast/hezbollah-iran-syria-israel-lebanon.html (last visited January 28, 2018) .............................................. 2

Justice Against Sponsors of Terrorism Act ("JASTA") (Pub. L. 114-222, Sept. 28, 2016, 130 Stat. 852) ................................................................................................... 3, 6

**Rules**

FED. R .CIV. P. 26 ........................................................................................................ passim

FED. R. CIV. P. 37 ...................................................................................................... 4

Plaintiffs respectfully submit this opposition to Defendants' motion for a protective order staying discovery pending resolution of their yet-to-be-filed motion to dismiss. The current motion should be denied because, as confirmed by the Second Circuit as recently as this morning, and as more fully discussed below, Defendants' arguments are based on an outdated understanding of the Anti-Terrorism Act ("ATA") (18 U.S.C. § 2331 et seq.).[1]   Therefore, Defendants are unable to carry their heavy burden of making a strong showing that their motion to dismiss will prevail and that limited discovery will pose an undue burden on them. A complete stay of discovery would, moreover, cause Plaintiffs to suffer unfair prejudice by depriving them of evidence essential to their claims, increasing the risk that case-critical documents will be destroyed in the normal course of business by third parties, and otherwise halting the forward progress and speedy resolution of this case.

## I.      FACTS AND BACKGROUND

Defendants are global banks, among the wealthiest in the world, who illegally conducted business with Iran, the world's foremost State Sponsor of Terror.  Plaintiffs are U.S. soldiers and Gold Star families who were wounded or killed in terror attacks committed by Iranian-sponsored terrorists.  This case arises out of terror attacks committed in Iraq between 2003 and 2011 against U.S. soldiers serving in Iraq as part of the U.N. authorized peacekeeping mission designed to stabilize the country and establish a free, democratic government. The attacks were part of a systematic campaign of terror coordinated, planned, and authorized by Iran through foreign terrorist organizations, and made possible by Defendants' illegal actions. Iran's terrorism campaign, which involved thousands of attacks costing tens of thousands of lives, was (not surprisingly) very expensive. But the currency of international terrorism is U.S. dollars (not the

---

[1] *See* Exhibit A - *Linde v. Arab Bank*, No. 16-2119, Dkt. 233-1, slip op. (2d Cir. Feb. 9, 2018) ("*Arab Bank*").

Iranian Rial), and to obtain U.S. dollars to pay for the terrorism—the munitions, the training, the incentive fees and bounties paid to the terrorists—Iran needed access to the U.S. financial system. Defendants provided that access.

As set forth in the Complaint, Defendants engaged in a scheme to violate U.S. criminal laws and economic sanctions to deceive the federal government in order to launder hundreds of billions of U.S. dollars for Iran, Iranian front companies, foreign terrorist organizations (including Al Qaeda, Ansar al Islam, and Hezbollah, Iran's de facto terrorism arm in the Middle East[2]), and the on-the-ground terrorists who injured and killed U.S. soldiers, including Plaintiffs. Defendants' illegal conduct led to criminal investigations by law enforcement, which resulted in Defendants' entering into criminal plea agreements and deferred prosecution agreements with the U.S. government. Dkt. No. 1, paras. 1-67.

On January 16, 2018, Plaintiffs contacted Defendants and requested that a meeting be scheduled to discuss discovery and to conduct the Rule 26(f) Conference. Declaration of Christopher G. Paulos in Support of Plaintiffs' Opposition to Defendants' Motion to Stay Discovery ("Paulos Decl.") at ¶ 2.

---

[2] As a *Times* article recently noted:

> Hezbollah is involved in nearly every fight that matters to Iran and, more significantly, has helped recruit, train and arm an array of new militant groups that are also advancing Iran's agenda…. Hezbollah has evolved into a virtual arm of Iran's Islamic Revolutionary Guards Corps, providing the connective tissue for the growing network of powerful militia… The roots of that network go back to the American invasion of Iraq in 2003, when Iran called on Hezbollah to help organize Iraqi Shiite militias that in the coming years killed hundreds of American troops and many more Iraqis.

"Iran Out to Remake Mideast With Arab Enforcer: Hezbollah," *New York Times*, Aug. 27, 2017, available at https://www.nytimes.com/2017/08/27/world/middleeast/hezbollah-iran-syria-israel-lebanon.html (last visited January 28, 2018).

On January 18, 2018, Plaintiffs conducted a telephone call with Defendants, and indicated the need to conduct discovery and the requisite Rule 26(f) conference. At that time, Plaintiffs suggested limited and targeted discovery, and provided a few examples of potential topics and information that could facilitate the discussion. Defendants were noncommittal and stated that they needed to confer amongst themselves before proceeding. (Paulos Decl. ¶ 3.)

On January 24, 2018, Plaintiffs again participated in a conference call during which Defendants stated they did not agree discovery should proceed and would not engage in any further discussion. The call lasted less than 5 minutes. (Paulos Decl. ¶ 4.)

Pursuant to the Court's Order on February 1, 2018, Defendants filed a motion to stay discovery pending the resolution of their motion to dismiss. Plaintiffs oppose such a stay and respectfully request that the Court order the parties to meet and confer as required and permit limited discovery at this time.

## II.     ARGUMENT

Defendants' conduct makes them civilly liable under the ATA, as recently amended by the Justice Against Sponsors of Terrorism Act ("JASTA") (Pub. L. 114-222, Sept. 28, 2016, 130 Stat. 852). JASTA imposes liability on conspirators and aiders and abettors of international terrorism and was intended by Congress "to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States."  JASTA, 130 Stat. at 853.

Plaintiffs commenced this lawsuit on November 9, 2017, and subsequently effectuated or otherwise negotiated service of their Complaint, and have stipulated to a briefing schedule

related to Defendants' anticipated motion to dismiss. Since the service and scheduling issues were resolved on January 16, 2018, Plaintiffs have attempted to engage in a Rule 26(f) conference, which, under the Federal Rules of Civil Procedure, is a prerequisite to discovery. FED. R .CIV. P. 26 ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)…."). Rule 26(f)(1) of the Federal Rules of Civil Procedure directs the parties to confer "as soon as practicable" to develop a plan for discovery. FED. R. CIV. P. 26(f)(1). The conference is mandatory in all cases, unless the court excuses the conference by order. *See* FED. R. CIV. P. 26(f), 37(f); Advisory Committee Notes to 1980 Amendment of FED. R. CIV. P. 37 ("Rule 26(f) imposes a duty on parties to participate in good faith in the framing of a discovery plan by agreement upon the request of any party.").

### III.     A MOTION TO STAY IS THE EXCEPTION, NOT THE RULE

Defendants refuse to participate in the Rule 26(f) conference and have filed a motion to stay all discovery pending ruling on their yet-to-be-filed motion to dismiss. But "no federal rule, statute, or binding case law applies here to automatically stay discovery pending a ruling on Defendants' anticipated motion to dismiss. Filing a Rule 12(b)(6) motion to dismiss does not automatically stay discovery or require postponing a Rule 26(f) conference until the motion is resolved." *Escareno ex rel. A.E. v. Lundbeck*, LLC, No. 3:14-CV-257-B, 2014 WL 1976867, at *2 (N.D. Tex. May 15, 2014).

Such a stay is the exception, not the rule. *See In re WRT Energy Sec. Litig.*, No. 96 CIV. 3610, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996) ("While discovery may in a proper case be stayed pending the outcome of a motion to dismiss, the issuance of a stay is by no means automatic."); *Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept.25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss

has been filed."); *Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) ("[I]t is well settled that the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay."). Had the Federal Rules of Civil Procedure "contemplated an automatic stay upon the filing of a motion to dismiss, [they] would have so provided." *Moran*, 1992 WL 276913, at *1. They do not.

## IV.    DEFENDANTS CANNOT MAKE A STRONG SHOWING SUFFICIENT TO JUSTIFY A STAY OF ALL DISCOVERY

In order to justify a departure from the rule and be excused from their discovery obligations, Defendants must satisfy a high burden, as "courts do not generally grant protective orders without a ***strong showing*** of 'good cause.'" *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985) (emphasis added); *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72-73 (S.D.N.Y. 2013) (requiring defendants to make a "strong showing" that they will prevail on the motion to dismiss before granting a stay). Courts look at several factors, including the breadth of discovery sought, any prejudice that would result, and the strength of the motion to dismiss. *Hong Leong*, 297 F.R.D. at 72. Defendants have not made a strong showing sufficient to warrant a complete stay of discovery.

### A.  *Rothstein* Does Not Govern and Dismissal of the Complaint Is Unlikely

Defendants' principal argument is that "[c]ontrolling precedent in this Circuit establishes that Plaintiffs' Complaint fails plausibly to state a claim under the ATA."  (Dkt. 95, p. 7.) They are referring to *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), in which victims of terrorism in Israel sued the bank, UBS AG, for transferring U.S. dollars to Iran. The Second Circuit dismissed the case because the complaint failed to plausibly allege that the plaintiffs' injuries were proximately caused by UBS's conduct. The ruling was based on a now outdated version of the ATA, which was silent about secondary liability for aiders and abettors of international

5

terrorism. *Id.* at 97-98. In view of this silence, the Second Circuit concluded there was no secondary liability under the ATA. *Id.* at 95, 97-98.

The Second Circuit indicated the case would fare differently if the law allowed an aiding-and-abetting claim, *Id.* at 97-98, and the opinion ended by inviting Congress—if it wished—to amend the ATA to create that kind of secondary liability:

> We doubt that Congress, having included in the ATA several express provisions with respect to aiding and abetting in connection with the criminal provisions, can have intended § 2333 to authorize civil liability for aiding and abetting through its silence….***It of course remains within the prerogative of Congress to create civil liability on an aiding-and-abetting basis and to specify the elements, such as mens rea, of such a cause of action.***

*Id.* at 98 (emphasis added).

**Congress did just that**. It enacted JASTA and declared it "necessary to recognize the substantive causes of action for aiding and abetting and conspiracy liability under Chapter 113B of Title 18, United States Code." 130 Stat. 852, 853. Congress was crystal clear about its intent to make civil liability as broad as possible:

> The purpose of this Act is to provide civil litigants with ***the broadest possible basis***, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, ***directly or indirectly***, to foreign organizations or persons that engage in terrorist activities against the United States.

*Id.* (emphasis added).

To further assist courts, Congress specified the case law that applies to these secondary liability claims:

> The decision of the United States Court of Appeals for the District of Columbia in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), which has been widely recognized as the leading case regarding Federal civil aiding and abetting and conspiracy liability, including by the Supreme Court of the United States, provides the proper legal framework for how such liability should function…

*Id.* at 852.

Plaintiffs' Complaint asserts secondary liability claims under JASTA for both conspiracy and aiding and abetting. *See* Dkt No. 1, paras. 2466-2512. Accordingly, *Halberstam*, not *Rothstein* (as Defendants contend), is the controlling precedent for these claims.

Defendants acknowledge JASTA, but mischaracterize its scope. They claim JASTA added a provision but only in "narrow circumstances" through a "narrow conspiracy provision." (Dkt. No. 92, p. 2;  Dkt. No. 95, p. 9.) Not so. As the quotes above from JASTA prove, Congress intended to provide secondary liability on "***the broadest possible basis***."

Defendants further misstate the law when they imply that a conspiracy claim requires proof that Defendants conspired with a foreign terrorist organization. *See* Dkt. No. 92, p. 2 ("Because the Complaint fails plausibly to allege that the Moving Defendants conspired with any foreign terrorist organization, Plaintiffs have no legal basis for their claims based on secondary theories of liability."). Actually, as far as foreign terrorist organizations are concerned, JASTA requires only that the plaintiff's injury "aris[e] from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization."  18 U.S.C. §2333(d). Conspiracy with a foreign terrorist organization is ***not*** an element of secondary liability under JASTA, as Defendants improperly suggest.

Nevertheless, the Complaint does allege—and in great detail—a conspiracy with foreign terrorist organizations, especially Hezbollah, Iran's *de facto* terrorism arm in Iraq, as well as Al Qaeda, Ansar Al Islam, and Katib Hezbollah, and the persons who committed the terrorist attacks. *See* Dkt. No. 1, paras. 1371-2400.

Defendants fail to address—except for passing reference to—Plaintiffs' aiding-and-abetting claims. *Se*e Dkt. No. 95, p. 9. Their reticence is remarkable considering the Second

Circuit indicated in *Rothstein*—a case Defendants describe as "no different" from this one—that the complaint would survive a motion to dismiss if the law authorized a claim for aiding and abetting. *Rothstein*, 708 F.3d at 98; Dkt. No. 95, p. 8. JASTA now authorizes such a claim.[3]

The other cases Defendants rely on are inapposite and otherwise have no precedential value:

- *O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013), and *Linde v. Arab Bank PLC*, 944 F. Supp. 2d 215 (E.D.N.Y. 2013), like *Rothstein*, were decided pre-JASTA and are therefore inapplicable to Plaintiffs' secondary liability claims.

- JASTA did not apply in *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85 (D.D.C. 2017), because the terrorist attacks giving rise to the complaint occurred before September 11, 2001, and JASTA is limited to terrorist attacks occurring after that date. *Id.* at 95 (observing that "Congress just months ago amended the ATA to specifically include aiding and abetting liability" but concluding that the JASTA amendment does not apply since the plaintiffs' injuries occurred before

---

[3] As further evidence of the unreliability of Defendants' brief, they state on page 8 that the allegations in Plaintiffs' Complaint are "no different than those alleged in *Rothstein*" but then state on the next page that "the theory of causation pleaded by Plaintiffs" is "far more attenuated" than in *Rothstein* itself." Dkt. No. 95, pp. 8-9.

Defendants also appear to be less than candid about their criminal conduct that resulted in deferred prosecution agreements. Defendants portray their violations of economic sanctions as mere allegations, suggesting they are untrue or unsubstantiated. They claim that "Plaintiffs' ***allegations*** are based on ***alleged*** violations of economic sanctions by the Moving Defendants" and repeatedly use the phrase "***alleged*** economic sanctions violations" to describe their conduct. Dkt. No. 95, p. 5 (emphases added). Lest there be any confusion, Defendants have admitted to this conduct, and have agreed with the government to not dispute these facts. Thus, their oblique denials here seem at odds with the promise they made to the U.S. government when they entered into their deferred prosecution agreements, wherein they admitted to "systematically violat[ing] both U.S. and New York laws by moving" billions of dollars illegally through the U.S. financial system on behalf of entities subject to economic sanctions and promised to never "make any public statement contradicting, excusing, or justifying" those facts. *See, e.g.,* Dkt. No. 96-1, at ¶ 2; Dkt. No. 96-3, at ¶ 7; Dkt. No. 96-5, at ¶ 2.

September 11, 2001). *See* JASTA, 130 Stat. 855 ("The amendments made by this Act shall apply to any civil action—(1) pending on, or commenced on or after, the date of enactment of this Act; and (2) arising out of an injury to a person, property, or business on or after September 11, 2001."). The same is true for *Ofisis v. BNP Paribas, S.A.*, No. 15-2010 (JDB), 2017 WL 4355922 (D.D.C. Sep. 29, 2017), as the terrorist attacks in that case occurred in 1998.

Defendants also cite *Shaffer v. Deutsche Bank AG*, 16-CV-497-MJR-SCW, Mem. & Order, Dkt. No. 69 (S.D. Ill. Dec. 7, 2017). The court dismissed the complaint after finding JASTA inapplicable because the plaintiffs did not allege a conspiracy with a foreign terrorist organization. *Shaffer*, at 2 n. 1. Plainly stated, that was wrongly decided, and the case is on appeal. As noted above, conspiracy with a foreign terrorist organization is ***not*** an element of secondary liability under JASTA. *See* 18 U.S.C. §2333(d). Moreover, a decision by a federal district court judge is not binding precedent on this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). This case is factually different from *Shaffer* (Plaintiffs in this case adequately allege a conspiracy with a foreign terrorist organization), which is in any event not precedent and wrongly interpreted the requirements under JASTA—an error Defendants seem to invite.

Indeed, the Second Circuit has now confirmed that *Halberstam*, not *Rothstein*, is the controlling precedent for conspiracy and aiding and abetting liability claims under the ATA:

> Congress, in enacting JASTA, instructed that the "proper legal framework for how [aiding and abetting] liability should function" under the ATA is that identified in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5). . . .

> Because this case was tried prior to JASTA's enactment, the jury was not instructed, and made no findings, as to the *Halberstam* elements of civil aiding and abetting, or the factors relevant to the substantial assistance element… Aiding and abetting requires the secondary actor to be "aware" that, by assisting the principal, it is itself assuming a "role" in terrorist activities. *Halberstam v. Welch*, 705 F.2d at 477. Such awareness may not require proof of the specific intent demanded for criminal aiding and abetting culpability, i.e., defendant's intent to participate in a criminal scheme as "something that he wishes to bring about and seek by his action to make it succeed." *Rosemond v. United States*, 134 S. Ct. 1240, 1248 (2014) (internal quotation marks omitted). Nor does awareness require proof that Arab Bank knew of the specific attacks at issue when it provided financial services for Hamas. What the jury did have to find was that, in providing such services, the bank was "generally aware" that it was thereby playing a "role" in Hamas's violent or life-endangering activities. *Halberstam v. Welch*, 705 F.2d at 477.

*Linde v. Arab Bank*, No. 16-2119, Dkt. 233-1, slip op., pp. 30-32 (2d Cir. Feb. 9, 2018) ("*Arab Bank*") (declining to find aiding and abetting liability as a matter of law when the jury was not instructed on aiding and abetting liability at trial).

The Second Circuit also recognized (unlike Defendants in their motion) that the causation inquiry for aiding and abetting liability under the ATA is significantly different post-JASTA:

> [T]he substantiality inquiry for causation is not identical to the substantiality inquiry for aiding and abetting. Causation focuses on the relationship between an alleged act of international terrorism and a plaintiff's injury. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (explaining that, at common law, proximate causation demands "some direct relation between the injury asserted and the injurious conduct alleged"). By contrast, aiding and abetting focuses on the relationship between the act of international terrorism and the secondary actor's alleged supportive conduct. *See Halberstam v. Welch*, 705 F.2d at 488 (explaining that aiding and abetting requires proof that defendant "knowingly and substantially assist the principal violation").

*Id*. at 34.

> After JASTA, plaintiffs are not limited to proving their ATA claim on a theory of Arab Bank's primary liability. They can now urge Arab Bank's liability on the alternative theory that it aided and abetted acts of terrorism by others, which acts caused plaintiffs' injuries. *See* 18 U.S.C. § 2333(d)(2), Statutory Note (Effective and Applicability Provisions).

*Id*. at 36.

In sum, Defendants do not have a strong and substantial argument for dismissal. To the contrary, the law, as foreshadowed in *Rothstein*, then effectuated by JASTA, and as just confirmed by the Second Circuit in *Arab Bank*, supports Plaintiffs' secondary liability claims, making Defendants' motion to dismiss unlikely to win. *Cf. Hong Leong Finance*, 297 F.R.D. at 73-74 (granting a stay of discovery pending resolution of defendants' motion to dismiss for lack of diversity jurisdiction after concluding that the plaintiffs had "no logical argument—let alone case law" to support their argument in favor of diversity).

**B.  Plaintiffs' Proposed Discovery Is Not Unduly Broad or Burdensome**

Defendants claim Plaintiffs' proposed discovery is unduly broad. Yet, Defendants refuse to even participate in the Rule 26(f) conference, the purpose of which is to allow the parties to develop a discovery plan, which naturally involves compromises and concessions, and can under the right circumstances limit discovery when the procedural posture of the case warrants it. Indeed, consistent with Rule 26(f), the parties can agree "to a discovery plan that stages discovery in a manner that allows for the possibility that the Court's ruling on the Motion to Dismiss could impact the relevant claims and defenses and scope of discovery in this matter, whether by dismissing the Complaint entirely, dismissing some claims, or requiring certain claims or allegations to be re-pleaded." *Escareno*, 2014 WL 1976867, at *2. Defendants have raised numerous issues related to the proposed discovery that they allege creates a burden but refuse to even discuss the matter so that the burden (if any) can be adequately gauged and appropriately addressed by the parties. Defendants on the one hand balk at conducting a Rule 26(f) conference while on the other complain that Plaintiffs' proposed discovery would be unduly burdensome. The positions are not consistent.

Plaintiffs are not in fact requesting full, unbridled discovery. Plaintiffs are mindful that, under the circumstances, limited discovery may be appropriate, which is why Plaintiffs have made an initial proposal for limited discovery. And the limited discovery plan would be reciprocal in nature: Plaintiffs get documents and information from Defendants; and Defendants receive information from Plaintiffs.

Plaintiffs have proposed that Defendants engage in the requisite discussions to develop a plan for discovery, and, in a good faith attempt to start this dialogue, Plaintiffs provided examples of information and evidence that could be produced in early discovery to facilitate the speedier resolution of many of the issues Defendants now, in their motion, claim exist. Early discussion of these issues and any resultant early discovery, sufficiently limited and targeted, will not be detrimental to the progress, and ultimately the resolution, of the case. Much of the limited information sought at this time by Plaintiffs is routinely provided at the nascent stage of discovery in complex cases, including:

1. Information and material related to organizational design and corporate structure[4];
2. Information and material already collected, produced and provided to third-parties and government agencies and related to the specific issues in this case[5];
3. Information and material related to Standard Operating Procedures, Policies and Training Materials relevant to the economic sanctions and financial transactions at issue; and
4. The ability to serve subpoenas to seek and preserve information and materials in the possession of third parties and government agencies presently at risk of destruction and

---

[4] *See Discover Fin. Servs., Inc. v. Visa U.S.A., Inc*., No. 04 CIV. 7844 BSJ DFE, 2006 WL 1699566, at *1-2 (S.D.N.Y. June 20, 2006) (ruling "it is reasonable to request organizational charts or other documents that will identify all the high-level and mid-level individuals who were involved" and allowing production of documents previously provided to the Department of Justice). Obtaining this corporate organizational information at this stage of the case would actually reduce many of the purported burdens Defendants allege exist, specifically, in identifying the location of various departments and branches so that the parties can assess extraterritorial discovery needs or international privacy laws.

[5] *See* §11.423 Other Practices to Save Time & Expense, *Ann. Manual Complex Lit*. § 11.423 (4th ed.)

related to the conduct of Defendants that gives rise to the claims asserted in the Complaint.

Plaintiffs' proposal is not a one-way street. If permitted, Plaintiffs' proposed discovery also provides for Defendants to seek limited information from Plaintiffs. Plaintiffs have proposed the following:

1. Developing a Plaintiff Fact Sheet that streamlines and provides information about each Plaintiff and their respective claims;
2. Providing authorizations to Defendants to request and obtain medical and military records relevant to Plaintiffs' claims;
3. The ability of Defendants to serve subpoenas to seek and preserve information and materials in the possession of third parties and government agencies presently at risk of destruction and related to any defenses that they may seek to assert; and
4. Open discussions related to other areas of potential discovery contemplated by Defendants.

Defendants have, in their motion (but in no discussion with Plaintiffs), raised a litany of issues they perceive will arise during discovery. But, Defendants have actually revealed their strategy to delay and dispute discovery, no matter its timing. The issues they point to will exist in the discovery phase of this case whether it begins now or later. Delaying discovery does nothing to resolve them. If any of the issues that Defendants raise do actually exist, that militates in favor of the parties tackling them now, not later. If the Court finds Plaintiffs' proposal too broad, it can of course narrow discovery further. At the very least, the parties should be required to meet and confer as required by Rule 26(f) and be allowed to seek written discovery from third parties through the subpoena process.

In advance of filing the Complaint, Plaintiffs sought information and documents from numerous third parties and agencies. This included numerous requests under Freedom of Information Act ("FOIA"), New York Freedom of Information Law ("FOIL"), and other public records request mechanisms. These requests remain pending, delayed, denied and on appeal, or in active status. In discussions with these various entities, Plaintiffs' counsel has been invited and

13

encouraged to serve subpoenas for the information being sought. According to some of the Agencies, the use of subpoenas will result in faster and more complete responses (Paulos Decl. ¶¶ 6-8, & 10.) Use of subpoenas will also obviate the burdens and delays inherent in public records requests and will result in the speedier receipt of material. Subpoena responses will not require being placed in long queues behind other public records requests, nor will subpoenas result in information being redacted or withheld because of statutory exemptions specific to public disclosures, which may not be applicable in the course of discovery. As such, many of the burdens Defendants speculate these third parties might experience if faced with Plaintiffs' discovery requests are significantly reduced by the use of subpoenas.[6]  Moreover, any burdens that these third parties may raise (if any) can only be assessed after the subpoenas have been served and the third parties have had an opportunity to object or to negotiate their responses. The mere specter of a speculative burden is not sufficient to deny or stay discovery.

To further support their claim of undue burden, Defendants rely on *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009), due to the fact that it involved "allegations spanning a period of several years, a large number of parties, or potentially extensive amounts of discoverable materials." Dkt. No. 95. at 12-13.  But, Defendants' argument implies that all complex cases should be subject to an

---

[6] Defendants cite *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007), to support their speculative argument related to third party burdens but fail to note that: 1) this decision was based upon subpoenas that had already been served; 2) the court in that matter found the pending requests "far too broad… unlimited in time… [and] unnecessary and irrelevant"; 3) the burden of production was far outweighed because there was "no suggestion of evidentiary support for Biovail's proposed defenses" in the information sought; and 4) the court, in denying the motion to compel, was "mindful that [the] motion must be assessed against Biovail's previous obvious violation of an agreed-upon protective order whereby Biovail wrongfully used documents obtained during discovery in this case and limited to use in this case to initiate and pursue the parallel litigation in New Jersey."

automatic stay simply due to their inherent complexities. Such an approach is simply contrary to the Federal Rules of Civil Procedure and precedent. Particularly when, as in this case here, Plaintiffs have not sought unbridled discovery and when the agreed-upon motion to dismiss briefing schedule spans many months. In *Integrated Sys. & Power* the motion to dismiss schedule was stipulated to last a mere 57 days, and the plaintiffs appear not to have attempted to narrow or target the scope of their discovery in any fashion. Here, the parties have agreed to a motion to dismiss schedule that will span a total **167 days**, not including the time for the Court to review the papers and decide the issues. This agreement did not contemplate a stay of discovery. In fact, a stay was never proposed by Defendants during the negotiations of the schedule. This is a substantial amount of time for the parties to sit idle and not work to advance the case.

Defendants similarly rely upon cherry-picked quotes from *Chesney v. Valley Stream Union Free Sch. Dist.* No. 24, 236 F.R.D. 113, 116 (E.D.N.Y. 2006), to suggest that the number of entities, and number allegations militate in favor of the stay; that, however, is an incorrect reading of this case. The court in *Chesney* was clear that there were "substantial issues with many, if not all" of the plaintiff's claims, such that the defendant's likelihood of success on its motion to dismiss was extremely high. *Id*. First, the defense was cut and dry: surveillance conducted during the period that Chesney was out on Worker's Compensation established that Chesney continued to work his second job as a taxi cab driver during the time that he was supposed to be working for the defendant. *Id*. Second, Chesney failed to file proper notices of his claims as required by the statutes upon which he based his claims. *Id*. Third, "there [was] a substantial issue with respect to whether any legal process was issued…which would serve as the necessary underlying 'process' for an abuse of process action." *Id*. Fourth, "a substantial issue exists with respect to Chesney's Fair Dismissal action, which statute, N.Y.S. Education Law

§ 3031, on its face, applies to untenured probationary teachers, rather than to custodial personnel. *Id*. And finally, "the defendants assert[ed] that the individual Board Members, named in the First Amended Complaint, were never served in [the] action, and that there [was] no cause of action alleged as to the co-plaintiff spouse." *Id*. Based on the foregoing circumstances, the court determined a stay was proper. *Id*. at 115-116. No such circumstances exist here.

Defendants also call the Court's attention to a prior case involving Defendant BNP Paribas. In pointing to Judge Swain's decision to stay discovery in *Fuller v. BNP Paribas*, 16-cv-05167-LTS (S.D.N.Y. Sept. 26, 2016), Defendants again ask the Court to read beyond the plain meaning of the Court's decision for a proposition that the *Fuller* case does not support. In *Fuller*, the decision to stay discovery was not based merely upon the burden of producing documents that BNP Paribas had already produced to U.S. government agencies, but rather the balancing of that burden with the defendant's ability to sufficiently demonstrate a very high likelihood of succeeding in its motion to dismiss. The main defense in that case was based on *res judicata* stemming from a prior identical case that was dismissed on the merits, as well as the fact that Fuller's claims for fraudulent conveyance had "no support in the case law." *Id*. at 1. Furthermore, the documents the plaintiff sought were irrelevant to the case.[7] Here, Defendants do not have an iron-clad defense based upon *res judicata*, nor do Plaintiffs' claims fail to find support in the case law. In fact, Plaintiffs' claims are based upon laws that were designed to make *Rothstein* and its progeny irrelevant to the analysis of the claims in this case. Plaintiffs have adequately pleaded the causes of action now statutorily provided by JASTA.

Defendants, by their own admission, knowingly violated U.S. economic sanctions intended to prevent international terrorism and engaged in criminal conduct in violation of U.S

---

[7] Interestingly, the documents at issue in *Fuller*, though not relevant to that case, are directly relevant to this case, as they relate to BNP Paribas's financial transaction with Iran. *Id*. at 3.

and New York State laws.[8] Defendants do not dispute that they have already produced evidence to U.S authorities that are directly related to this conduct. That evidence is highly relevant to Plaintiffs' case. If Plaintiffs cannot obtain this information from Defendants at this time (though they should be allowed to), then Plaintiffs would request a preservation order to preclude material already produced to these agencies by Defendants from being lost or destroyed.

## C.  A Stay Would Cause Plaintiffs to Suffer Significant Prejudice

A stay of discovery before the adjudication of the motion to dismiss would cause Plaintiffs to suffer significant prejudice. Plaintiffs have already been informed by third parties that, without subpoenas, requests to preserve documents are not binding and that documents in their possession may be destroyed in the ordinary course. (Paulos Decl. 5, 7, & 9.)  Those third parties include the Office of the Controller of the Currency ("OCC"), and the Office of Foreign Asset Control ("OFAC") of the United States Treasury, important records custodians because Defendants submitted at least some of the Iranian monetary transactions at issue to these agencies. (Paulos Decl. ¶¶ 5 &7.)

A stay would also unfairly and unreasonably delay the case. After all, Defendants' motion to dismiss will not be fully briefed until June 1, 2018, which is the deadline for Defendants to file their reply. Dkt. No. 58. Once the briefs are in, the Court will undoubtedly need time to review the briefs, the Complaint, and the law before ruling. A stay would thus delay discovery by potentially a year or more since commencement of the case. This would undermine Plaintiffs' entitlement to discovery and the potential benefit of early discovery in moving the case toward an expeditious resolution.

---

[8] *See, e.g.,* Declaration of Andrew Hruska, Ex. E - Statement of Facts appended to Deferred Prosecution Agreement of Credit Suisse AG.

As the court noted in a similar context *In re Chase Manhattan Corp. Securities Litigation,* No. 90 CIV. 6092, 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991), discovery could actually move the case along toward a speedier resolution:

> Should the complaint (or an amended complaint) be sustained (but nothing contained herein is intended to reflect in any way on this question), commencement of the discovery process, while no doubt imposing some burden on defendants, will advance the ultimate disposition of this action.

*Id.* The same is true here.

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully submit that Defendants' motion should be denied, the Rule 26(f) discovery conference should proceed, and the parties should begin limited discovery. If, however, the Court decides not to permit discovery at this stage, Plaintiffs' would respectfully request the Court permit Plaintiffs to serve subpoenas on non-parties known to be in possession of potential evidence, or at the very minimum, enter a Preservation Order directing those in possession of potential evidence to preserve the information in their custody and control.

Dated: February 9, 2018.                                    Respectfully submitted,

_____
Seth A. Katz (SK 4518)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
Phone: 303-792-5595
Fax: 303-708-0527
Email: skatz@burgsimpson.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Seth A. Katz, hereby certify that on the date listed below the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notifications of such filing to all registered attorneys of record.

Dated:  February 9, 2018

/s/ Seth A. Katz

Seth A. Katz

19