UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

TIMOTHY O'SULLIVAN, et al.,

Plaintiffs,

-against-

DEUTSCHE BANK AG, et al.,

Defendants.

17-CV-08709-LTS-GWG

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO STAY DISCOVERY DURING THE PENDENCY OF THE MOTIONS TO DISMISS**

February 12, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. THE COURT SHOULD STAY DISCOVERY PENDING THE RULING ON THE POTENTIALLY DISPOSITIVE MOTIONS TO DISMISS ........ 3

 A. The Moving Defendants' Motions to Dismiss Are Strong ........ 4

 B. Plaintiffs' Discovery Requests Impose an Undue Burden ........ 8

 C. A Stay of Discovery Will Not Prejudice Plaintiffs ........ 11

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................1, 7

*Bell Atl. Corp. v. Tombly*, 550 U.S. 544 (2007)....................1

*Bethpage Water Dist. v. Northrop Grumman Corp.*, No. 13-CV-6362 SJF WDW, 2014 WL 6883529 (E.D.N.Y. Dec. 3, 2014)....................12

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113 (E.D.N.Y. 2006)....................9

*Freeman v. HSBC Holdings plc*, 14-cv-06601 (E.D.N.Y.)....................4

*Fuller v. BNP Paribas SA*, 16-cv-05167-LTS (S.D.N.Y.)....................4, 10

*Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453 (D.N.J. 2007)....................3

*Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69 (S.D.N.Y. 2013)....................3, 4

*In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72 (S.D.N.Y. 2007)....................10, 11

*In re Chase Manhattan Corp. Sec. Litig.*, No. 90 CIV. 6092 (LMM), 1991 WL 79432 (S.D.N.Y. May 7, 1991)....................11

*In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013)....................11, 12

*In re WRT Energy Sec. Litig.*, No. 96 CIV. 3610, 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996)....................3

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009)....................9

*Johnson v. NYU Sch. of Educ.*, 205 F.R.D. 433 (S.D.N.Y. 2002)....................3

*Kanowitz v. Broadridge Fin. Sols. Inc.*, No. CV 13-649 (DRH) (AKT), 2014 WL 1338370 (E.D.N.Y. Mar. 31, 2014)....................3

*Linde v. Arab Bank, PLC*, 16-2119-cv (L) (2d Cir. Feb. 9, 2018).................... passim

*Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913 (S.D.N.Y. Sept. 25, 1992)....................3

*Owens v. BNP Paribas, S.A.*, 15–1945 (D.D.C.) ....................4

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ....................1, 4, 5

*Shaffer v. Deutsche Bank AG*, 16-cv-00497 (S.D. Ill.) ....................4, 6, 7, 10

*Spencer Trask*, 206 F.R.D. 367 (S.D.N.Y. 2002) ....................3, 9, 11

**Statutes & Rules**

18 U.S.C. § 2331 ....................5

18 U.S.C. § 2333 ....................2, 5, 6, 7

**INTRODUCTION**

The Moving Defendants[1] respectfully submit this joint reply memorandum of law in further support of their motion for an order staying all discovery until the Court has ruled on the Moving Defendants' forthcoming motions to dismiss. As set forth in the Moving Defendants' Joint Memorandum of Law in Support of Motion to Stay Discovery During the Pendency of the Motions to Dismiss ("Joint Memorandum") and below, the Court should grant the motion to stay discovery. (*See* Dkt. No. 95.)

*First*, as the Moving Defendants will argue in their motions to dismiss, under *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), and its progeny, Plaintiffs' allegations fail plausibly to allege that the Moving Defendants' alleged provision of financial services to Iranian banks[2] was the proximate cause of Plaintiffs' injuries. *See Rothstein*, 708 F.3d at 96-97 (2d Cir. 2013). Plaintiffs do not even attempt to argue otherwise, thereby essentially conceding that their primary liability claims fail as a matter

[1] The "Moving Defendants" are Deutsche Bank AG; HSBC Bank USA, N.A.; HSBC Holdings plc; HSBC Bank plc; HSBC Bank Middle East Limited; HSBC North America Holdings, Inc.; Commerzbank AG; Commerzbank AG, New York Branch; Barclays Bank PLC; BNP Paribas S.A.; Standard Chartered Bank; The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.); The Royal Bank of Scotland plc; Crédit Agricole Corporate & Investment Bank; and Credit Suisse AG.

[2] Plaintiffs accuse the Moving Defendants of contradicting the admissions contained in their respective deferred prosecution agreements ("DPAs") or civil consent orders by referring to the allegations in the Complaint as "mere allegations." *See* Opp'n Br. at 8 n.3. The Moving Defendants have not contradicted any admissions. The conclusory allegations in the Complaint go well beyond the facts contained in the DPAs and consent orders, which relate solely to sanctions violations and non-transparent banking practices. *See, e.g.*, *id.* at 7 (referencing the Complaint's conclusory allegations of conspiracy between Moving Defendants and Hezbollah, among others). Plaintiffs' allegations must therefore be analyzed under the standards articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny.

of law. Plaintiffs instead insist that the Second Circuit's decision this past Friday in *Linde v. Arab Bank, PLC*, 16-2119-cv (L) (2d Cir. Feb. 9, 2018), somehow supports their secondary liability claims, which they purport to assert under the Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333(d) ("JASTA"), a 2016 amendment to the Anti-Terrorism Act ("ATA"). But such purported secondary liability claims fail as well as a matter of law under the plain meaning of JASTA and as applied by *Linde*, including because the Complaint fails plausibly to allege that any Moving Defendant conspired with or aided and abetted the person or organization that committed the attacks, or that any Moving Defendant was aware of such Defendant's purported role in terrorist activities, as JASTA and *Linde* require. A ruling granting the motions to dismiss would be dispositive of all of Plaintiffs' claims against the Moving Defendants and would obviate the need to engage in discovery.

*Second*, the discovery sought by Plaintiffs is broad and burdensome, particularly given the nascent stage of this litigation, and Plaintiffs' Opposition to Defendants' Motion to Stay Discovery (Dkt. No. 98 ("Opposition Brief")) does not meaningfully argue otherwise.

*Third*, Plaintiffs fail to articulate how a time-limited stay would prejudice them. Given the strong legal arguments for dismissal, the significant burdens that discovery would impose and the absence of prejudice to Plaintiffs, this Court should follow the decisions in other similar ATA cases, *see infra* § I, and grant the motion to stay during the pendency of the motions to dismiss.

## I.   THE COURT SHOULD STAY DISCOVERY PENDING THE RULING ON THE POTENTIALLY DISPOSITIVE MOTIONS TO DISMISS

Plaintiffs do not contest that, in deciding whether to stay discovery, a court should consider "the strength of the dispositive motion that is the basis for the discovery stay application" as well as "the breadth of discovery sought and the burden of responding to it".  *Spencer Trask Software & Info. Servs. v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002); *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72-73 (S.D.N.Y. 2013).  Instead, Plaintiffs argue that "[s]uch a stay is the exception, not the rule".  Opp'n Br. at 4; *but see Kanowitz v. Broadridge Fin. Sols. Inc.*, No. CV 13-649 (DRH) (AKT), 2014 WL 1338370, at *12 (E.D.N.Y. Mar. 31, 2014) (granting stay); *Hong Leong*, 297 F.R.D. at 72-73 (granting stay); *Johnson v. NYU Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (granting stay); *Spencer Trask*, 206 F.R.D. at 368 (S.D.N.Y. 2002) (granting stay).  Each of the three cases cited by Plaintiffs for this proposition is inapposite, *see* Opp'n Br. at 4-5, and does not weigh against granting a stay here.  In *In re WRT Energy Sec. Litig.*, No. 96 CIV. 3610, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996), the court did not address the strength of the pending motion or the burden of discovery, but nonetheless granted in part the motion to stay.  In *Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992), the court stated simply that issuing a stay is "not mandated".  Finally, in *Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007), the potentially dispositive motion was one for summary judgment, and the court found that defendants had simply asserted "without any supporting evidence" that discovery would be "costly and time consuming".  Here, by contrast, the Moving Defendants submitted an exemplar declaration along with other evidentiary material

detailing the immense burden associated with Plaintiffs' proposed discovery requests. (*See generally* Dkt. No. 96, Hruska Decl.; *see also* Joint Mem. at 14-16.)

Moreover, in ATA cases containing allegations similar to those in this matter, staying discovery during the pendency of the motion to dismiss has become the norm, rather than the exception. *See, e.g.*, *Freeman v. HSBC Holdings plc*, 14-cv-06601 (E.D.N.Y.), Dkt. No. 120; *Owens v. BNP Paribas, S.A.*, 15–1945 (D.D.C.), Dkt. No. 25; *Shaffer v. Deutsche Bank AG*, 16-cv-00497 (S.D. Ill.), Dkt. Nos. 42, 69; *Fuller v. BNP Paribas SA*, 16-cv-05167 (S.D.N.Y.), Dkt. No. 26.[3]

**A. The Moving Defendants' Motions to Dismiss Are Strong**

Controlling precedent in this Circuit, including *Rothstein* and now *Linde*, provides "substantial arguments for dismissal" that weigh in favor of granting a time-limited stay of discovery. Plaintiffs argue that *Rothstein* and its progeny are "based on a now outdated version of the ATA, which was silent about secondary liability for aiders and abettors of international terrorism." Opp'n Br. at 5-6. In so arguing, Plaintiffs do not even attempt to defend their primary liability claims, (Compl. ¶¶ 2408-65, 2513-69 (Claims I-IV, VII-X)), which advance claims based on the supposedly "outdated" version of the ATA, and thus are plainly governed by *Rothstein*'s holding that proximate cause requires a direct connection between the defendant and the terrorist acts that allegedly caused the plaintiff's injury. *See* Joint Mem. 7-9; *Rothstein*, 708 F.3d at 96-97; *Linde*, at

[3] Plaintiffs argue that "good cause" is required to warrant a stay. This is not an additional requirement, but instead is the same as the standard described in the Joint Memorandum. *See* Joint Mem. at 7 (citing *Hong Leong*, 297 F.R.D. at 72 ("In determining whether there is 'good cause . . . . Courts consider '[(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion.'") (citation omitted)).

27. Because the Complaint fails plausibly to allege that the Moving Defendants' violations of economic sanctions proximately caused Plaintiffs' injuries, Plaintiffs' primary liability claims must be dismissed under *Rothstein* and its progeny. *See* Joint Mem. at 8-9.

Plaintiffs' primary liability claims are also subject to dismissal because there are no well pled facts that the Moving Defendants' activities constituted acts of international terrorism. *See* 18 U.S.C. § 2331. The Complaint fails plausibly to allege that the Moving Defendants engaged in acts of violence or endangered human life, or that the Moving Defendants' activities appeared to be intended to intimidate or coerce a civilian population, or to influence or affect a government, as the Second Circuit requires. *See Linde*, at 23.

Plaintiffs' secondary liability claims also fail for the reasons stated in the Joint Memorandum and under *Linde*. *See* Joint Mem. at 9-10; *Linde*, at 29-35. At the threshold, Plaintiffs must plausibly allege facts meeting JASTA's requirements in order for their secondary liability claims to survive dismissal, as it is the law of this Circuit that there is no secondary liability under Section 2333(a) for claims to which JASTA does not apply. *See Rothstein*, 708 F.3d at 97-98. Plaintiffs' assertion that JASTA does not require them to plead a conspiracy with a statutorily defined Foreign Terrorist Organization ("FTO") or other person or entity who committed the act of terrorism, Opp'n Br. at 7, has no basis in the statute's clear language or in caselaw. Contrary to Plaintiffs' assertions, JASTA's civil conspiracy provision has two significant limitations. *See* Joint Mem. at 9. *First*, it applies only to injuries caused by a specific type of terrorist act, namely, one that is "committed, planned, or authorized" by an officially designated

FTO. 18 U.S.C. § 2333(d). *Second*, a defendant is liable under JASTA only if it "aids and abets, by knowingly providing substantial assistance, or . . . *conspires with the person who committed such an act of international terrorism*." *Id.* (emphasis added).

The clear meaning of this provision is that Plaintiffs must plausibly allege both that an FTO "committed, planned or authorized" the attacks that injured Plaintiffs *and* that the Moving Defendants conspired with the person or entity who actually committed those terrorist attacks. *See id.* *Shaffer* so held, dismissing a complaint under JASTA where plaintiffs alleged that Deutsche Bank entered into "a conspiracy with Iran" rather than an FTO (or some other entity that committed an act of terrorism that was "planned or authorized" by an FTO). *Shaffer*, at 2 n.1, 10; *see also id.* at 2 n.1 ("JASTA added conspiracy liability for parties who conspire *with* a Foreign Terrorist Organization" (emphasis added)). *Shaffer* further demonstrates that Plaintiffs' conspiracy claims fail as a matter of law. Unable to defend their reading of JASTA, Plaintiffs resort to merely asserting that *Shaffer* "was wrongly decided". Opp'n Br. at 9. Nothing in *Linde*, which discussed the potential application of JASTA to a jury finding that the defendant had provided material support directly to Hamas, the FTO that committed the terrorist attacks at issue, is inconsistent with *Shaffer*. *See Linde*, at 7-10, 13-14.

By contrast, in this case, the Complaint does not plausibly allege specific facts showing that the Moving Defendants conspired with any entity, FTO or otherwise, that "committed" any of the terrorist attacks at issue. For the vast majority of the attacks the Complaint does not even specify the terrorist group that "committed" the attack. *See, e.g.*, Compl. ¶¶ 145-49. For others, Plaintiffs make vague allegations that a particular group was "operating in the area" at the time of the attack. *See, e.g.*, *id.* ¶ 129. Even for

the few attacks in which the alleged perpetrator of the attack is actually identified, there are no allegations detailing any connection to the Moving Defendants or the purported financial services they provided to Iran.  The Complaint attempts to plead around this flaw by making conclusory assertions that the conspiracy was with "Iran and its Agents and Proxies," which they define to include unnamed "Terrorist Groups" that committed the attacks.  *E.g.*, Compl. ¶ 1371.  But conclusory assertions are not enough, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and Plaintiffs' argument that such allegations detail a conspiracy with FTOs and the persons who committed the terrorist attacks does not pass muster.  *See* Opp'n Br. at 7.  As in *Shaffer*, "the complaint does not establish that [the banks] participated in any conspiracy other than perhaps to evade economic sanctions."  *Shaffer*, at 10.  There is not a single factual allegation showing that Defendants had any relationship at all with the various groups that allegedly "committed" the attacks—let alone allegations that demonstrate how Defendants "conspired with" those groups.  Accordingly, Plaintiffs' conspiracy claims fail as a matter of law.

Plaintiffs' aiding-and-abetting claim fails for the same reason.  JASTA likewise requires such a claim to be based on an act of terrorism "committed, planned, or authorized" by an FTO, *and* requires that the defendant "aids and abets . . . *the person who committed* such an act of international terrorism."  18 U.S.C. § 2333(d)(2) (emphasis added).  As the Moving Defendants have explained—and Plaintiffs do not refute—the Complaint does not allege "that the money from the U.S. dollar-denominated transactions conducted by the Moving Defendants for Iranian banks was 'transferred' to the unidentified individuals or entities that committed the attacks", *see* Joint Mem. at 9, let alone plausibly allege that the Moving Defendants were aware of such a transfer.

Accordingly, there is plainly no basis for Plaintiffs to claim that Defendants provided any assistance, much less substantial assistance, to the "person who committed" the terrorist attacks.

Moreover, Plaintiffs ignore *Linde*'s holding that, for purposes of an aiding and abetting claim, JASTA requires a defendant to have more than just knowledge that they were providing material support to an FTO (which, in any event, Plaintiffs fail plausibly to allege).  *See Linde*, at 31 ("[A]iding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization.").  Rather, Plaintiffs must plead that the Moving Defendants were "'aware' that, by assisting the principal, [they were] assuming a 'role' in terrorist activities."  *Id.* The Complaint contains no plausible allegations that the Moving Defendants provided any "substantial assistance" to the terrorists or terrorist organizations who committed the attacks, which Plaintiffs must also allege, much less that the Moving Defendants were aware of their purported role in the terrorist attacks.  Accordingly, the Moving Defendants' arguments in favor of dismissing Plaintiffs' aiding-and-abetting claims are strong and support staying discovery.

**B.     Plaintiffs' Discovery Requests Impose an Undue Burden**

Plaintiffs do not rebut the Moving Defendants' showing that the proposed discovery would be broad and burdensome.  Nor do Plaintiffs dispute that they seek "significant volumes of documents concerning many different countries over a period of several years", or that such documents "would have to be re-reviewed and appropriately redacted to remove any personally identifiable information".  Joint Mem. at 14-15; Opp'n Br. at 15.  Accordingly, "the breadth of discovery sought and the burden of

responding to it" weigh strongly in favor of granting the stay. *See Spencer Trask*, 206 F.R.D. at 368.

Plaintiffs' attempts to distinguish the relevant caselaw are unavailing. Plaintiffs argue that *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009), is distinguishable because "the motion to dismiss schedule was stipulated to last a mere 57 days", as opposed to 167 days in this matter. Opp'n Br. at 15. This minor difference in the length of the briefing schedule (a schedule Plaintiffs negotiated and jointly submitted (*see* Dkt. No. 52)), does not in any way touch on the burden associated with the discovery sought here. Nor does it refute the *Integrated Systems* holding that allegations spanning a period of several years, a large number of parties, or potentially extensive amounts of discoverable materials—each of which exists here—weigh in favor of granting a stay. 2009 WL 2777076, at *1.

Plaintiffs argue that the Joint Memorandum "cherry-picked quotes" from *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113 (E.D.N.Y. 2006), Opp'n Br. at 15, but ignore that the *Chesney* court plainly stated that in determining whether to grant a stay, a court may consider "the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation". *Chesney*, 236 F.R.D. at 115. Here, all three factors identified in *Chesney* support granting a stay: the discovery sought relates to an attenuated, complex alleged conspiracy with foreign entities to evade economic sanctions that purportedly took place for dozens of years (*see* Joint Mem. at 13-14), 15 bank

defendants have joined in the request for a stay and Judge Swain has entered an order scheduling the briefing of motions to dismiss.

As to *Fuller v. BNP Paribas SA*, 16-cv-05167-LTS, Dkt. No. 26 (S.D.N.Y. Sept. 26, 2016), Judge Swain's decision to grant the motion to stay was in the form of a brief response to a letter submitted to the court. To conclude that the dispositive factor was defendant's *res judicata* argument, is to, in Plaintiffs' words, "read beyond the plain meaning of the Court's decision". *See* Opp'n Br. at 16. In *Fuller*, as explained in the Joint Memorandum, Judge Swain granted the stay notwithstanding plaintiffs' argument that discovery would not burden BNPP because it had previously produced documents to government agencies in connection with investigations concerning sanctions violations. Further, Plaintiffs note that in *Fuller*, discovery was stayed where a "prior identical case . . . was dismissed on the merits". Opp'n Br. at 16. This lends further support to the Moving Defendants' position that the dismissal on the merits in *Shaffer*, which contained substantially similar ATA claims, weighs in favor of granting a stay. *See* Joint Mem. at 11.

With respect to third-party discovery, Plaintiffs assert that issuing subpoenas, rather than requesting documents through the Freedom of Information Act or other means, will somehow "obviate the burdens", presumably on third parties. *See* Opp'n Br. at 14. Plaintiffs do not contest that their requests would require third parties to review the millions of files in their possession to determine if any privileges, including regulatory privileges, may apply. *See* Joint Mem. at 18. Given that this significant burden would be eliminated by the granting of the motions to dismiss, this Court should stay discovery during the pendency of the motions to dismiss. *See id.*; *see also In re*

*Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (explaining that courts must consider the burden of production on non-parties).

Finally, although it has no bearing on burden, Plaintiffs choose to mischaracterize the Moving Defendants' position with regard to discovery. While Plaintiffs are correct that "a stay was never proposed by Defendants during the negotiations of the schedule", Opp'n Br. at 15, Plaintiffs did not raise the issue of discovery during those negotiations. Further, the Moving Defendants did not initially refuse to engage with Plaintiffs' request for a Rule 26(f) conference, but instead met and conferred to understand the scope of discovery contemplated by Plaintiffs. (Dkt. No. 98-2 Paulos Decl. ¶ 3.) Nor did the Moving Defendants oppose Plaintiffs' request for a discovery conference—made nearly a month after Judge Swain entered the briefing schedule for motions to dismiss—but requested a stay of discovery during the pendency of their motions to dismiss. (Dkt. No. 92.)

**C. A Stay of Discovery Will Not Prejudice Plaintiffs**

A time-limited stay of discovery will not prejudice Plaintiffs, and they do not meaningfully argue otherwise. Plaintiffs assert that a stay would "unreasonably" delay the case, as "Defendants' motion to dismiss will not be fully briefed until June 1, 2018" (less than four months from now). To the contrary, courts have held that a time-limited stay does not constitute prejudice. *See* Joint Mem. at 19; *Spencer Trask*, 206 F.R.D. at 368; *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2013).

Plaintiffs cite one case for the proposition that "discovery could actually move the case along toward a speedier resolution". Opp'n Br. at 18 (citing *In re Chase*

*Manhattan Corp. Sec. Litig.*, No. 90 CIV. 6092 (LMM), 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991)). In that case, the parties did not have "an agreed briefing schedule", 1991 WL 79432, at *1, whereas here the parties submitted a joint letter proposing a briefing schedule for motions to dismiss. (Dkt. No. 52.)

Plaintiffs also contend that they would be prejudiced by a stay because documents possessed by third parties "may be destroyed in the ordinary course". Opp'n Br. at 17. As an initial matter, Plaintiffs rightly do not suggest any risk that the Moving Defendants themselves might destroy documents, making clear that Plaintiffs could suffer no conceivable prejudice by a stay of any discovery obligations on the part of the Moving Defendants. Even as to third parties, Plaintiffs' speculation falls flat. *First*, Plaintiffs' assertion that documents may be destroyed is speculative. Plaintiffs do not claim that any third party has indicated that it is planning to destroy any documents. (*See generally* Dkt. No. 98-2, Paulos Decl.) *Second*, in the context of a time-limited stay, the risk of document destruction does not demonstrate "any unfair prejudice". *In re Term Commodities*, 2013 WL 1907738, at *7; *see also Bethpage Water Dist. v. Northrop Grumman Corp.*, No. 13-CV-6362 SJF WDW, 2014 WL 6883529, at *3 (E.D.N.Y. Dec. 3, 2014) (rejecting plaintiffs' argument that they would be prejudiced by potential destruction of evidence and granting a stay of discovery). *Third*, the documents sought by Plaintiffs date back to as early as 1995, (Hruska Decl. ¶ 8), and thus the additional delay of discovery by "a year or more"—if the motions to dismiss are denied—would not prejudice Plaintiffs. Finally, Plaintiffs by their own admission were aware as early as September 2017 of the position taken by third parties with regard to discovery. (*See* Dkt. No. 98-2, Paulos Decl. ¶ 5.) Nonetheless, Plaintiffs chose to wait until late January 2018

before first raising the issue of discovery with the Moving Defendants. (Dkt. No. 97, Buretta Decl. ¶ 2.)

## CONCLUSION

For the reasons set forth above and in the Joint Memorandum, the Moving Defendants respectfully request the Court stay discovery during the pendency of the Moving Defendants' motions to dismiss.

Respectfully submitted,

COVINGTON & BURLING LLP,

by

*/s/ John E. Hall*
(with permission)

John E. Hall
Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
jhall@cov.com
mgimbel@cov.com

David M. Zionts
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
dzionts@cov.com

*Attorneys for Defendant Deutsche Bank AG*

MAYER BROWN LLP,

by

*/s/ Mark G. Hanchet*
(with permission)

Mark G. Hanchet
Robert W. Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mhanchet@mayerbrown.com
rhamburg@mayerbrown.com

Andrew J. Pincus
Marc R. Cohen
Alex C. Lakatos
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
apincus@mayerbrown.com
mcohen@mayerbrown.com
alakatos@mayerbrown.com

*Attorneys for Defendants HSBC Bank USA, N.A., HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited and HSBC North America Holdings, Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP,

by

   */s/ Jonathan I. Blackman*
     (with permission)

     Jonathan I. Blackman
     Carmine D. Boccuzzi, Jr.
     Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jblackman@cgsh.com
cboccuzzi@cgsh.com
aluft@cgsh.com

*Attorneys for Defendants
Commerzbank AG, Defendants
Commerzbank AG and BNP Paribas,
S.A.*

SULLIVAN & CROMWELL LLP,

by

   */s/ Michael T. Tomaino, Jr.*
     (with permission)

     Michael T. Tomaino, Jr.
     Jeffrey T. Scott
     Jonathan M. Sedlak
125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com

*Attorneys for Defendant Barclays
Bank PLC*

SULLIVAN & CROMWELL LLP,

by

*/s/ Sharon L. Nelles*
(with permission)

Sharon L. Nelles
Bradley P. Smith
Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard Chartered Bank*

CLIFFORD CHANCE US LLP,

by

*/s/ Robert G. Houck*
(with permission)

Robert G. Houck
Michael G. Lightfoot
31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

Jeffrey J. Golimowski
2001 K Street NW
Washington, DC 20006-1001
(202) 912-5000
jeff.golimowski@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.) and The Royal Bank of Scotland plc*

SULLIVAN & CROMWELL LLP,

by

*/s/ Joseph E. Neuhaus*
(with permission)

Joseph E. Neuhaus
Alexander J. Willscher
Colin A. Chazen
125 Broad Street
New York, NY 10004
(212) 558-4000
neuhausj@sullcrom.com
willschera@sullcrom.com
chazenc@sullcrom.com

*Attorneys for Defendant Crédit Agricole Corporate & Investment Bank*

CRAVATH, SWAINE & MOORE LLP,

by

*/s/ John D. Buretta*

Richard W. Clary
John D. Buretta
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*