UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY O'SULLIVAN, *et al.*,<br><br>                      Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK AG; HSBC BANK USA, N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc; HSBC BANK MIDDLE EAST LIMITED; HSBC NORTH AMERICA HOLDINGS, INC.; COMMERZBANK AG; COMMERZBANK AG, NEW YORK BRANCH; BARCLAYS BANK Plc; BNP PARIBAS S.A.; STANDARD CHARTERED BANK; THE ROYAL BANK OF SCOTLAND N.V.; THE ROYAL BANK OF SCOTLAND PLC; CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK; CREDIT SUISSE AG; and BANK SADERAT Plc,<br><br>                      Defendants. | No. Civ. 17-8709 (LTS) (GWG) |

**DEFENDANT STANDARD CHARTERED BANK'S SUPPLEMENTAL<br>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

 

Sharon L. Nelles (*nelless@sullcrom.com*)
Bradley P. Smith (*smithbr@sullcrom.com*)
Alyssa A. Hill (*hilla@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Standard Chartered Bank*

March 2, 2018

-i-

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... *II*

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

ARGUMENT ...................................................................................................................................4

I.     THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT SCB'S
       CONDUCT PROXIMATELY CAUSED THE ATTACKS THAT
       INJURED PLAINTIFFS. ....................................................................................................4

II.    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT SCB ENGAGED
       IN AN ACT OF INTERNATIONAL TERRORISM. .........................................................9

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ahmad* v. *Christian Friends of Israeli Communities*,
   No. 13 CIV. 3376 JMF, 2014 WL 1796322 (S.D.N.Y. May 5, 2014) ......................................6

*Bank of America Corp.* v. *City of Miami*,
   137 S. Ct. 1296 (2017) ................................................................................................6, 7

*Linde* v. *Arab Bank, PLC*,
   No. 16-2098-CV (CON), 2018 WL 797454 (2d Cir. Feb. 9, 2018) ....................................9, 10

*Mike Vaughn Custom Sports, Inc.* v. *Piku*,
   15 F. Supp. 3d 735 (E.D. Mich. 2014) ..............................................................................8

*O'Neill* v. *Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*,
   714 F.3d 118 (2d Cir. 2013) ..........................................................................................6, 8

*Oei* v. *Citibank, N.A.*,
   957 F. Supp. 492 (S.D.N.Y. 1997) ..................................................................................2, 7

*Ofisi* v. *BNP Paribas, S.A.*,
   No. CV 15-2010 (JDB), 2017 WL 4355922 (D.D.C. Sept. 29, 2017) ....................................6

*Owens* v. *BNP Paribas S.A.*,
   No. 15-1945 (JDB), 2017 WL 394483 (D.D.C. Jan. 27, 2017) ............................................10

*Republic Nat. Bank of Miami* v. *Fid. & Deposit Co. of Md.*,
   894 F.2d 1255 (11th Cir. 1990) ......................................................................................1, 2

*Rothstein* v. *UBS AG*,
   708 F.3d 82 (2d Cir. 2013) ........................................................................................ *passim*

*Sistrunk* v. *Dake Corp.*,
   No. 13-2983, 2015 WL 4164910 (E.D. La. July 9, 2015) ....................................................8

*Strauss* v. *Credit Lyonnais, S.A.*,
   925 F. Supp. 2d 414 (E.D.N.Y. 2013) ..............................................................................8

*Stutts* v. *De Dietrich Grp.*,
   No. 03 Civ. 4059 (IGL), 2006 WL 1867060 (E.D.N.Y. June 30, 2006) ........................5, 7, 10

*TDY Holdings, LLC* v. *United States*,
   122 F. Supp. 3d 998 (S.D. Cal. 2015) ..............................................................................8

**Statutes**

Anti-Terrorism Act, 18 U.S.C. § 2331(1), 2333(a) ................................................................1, 9, 10

18 U.S.C. § 2339A ...................................................................................................................9, 10

18 U.S.C. § 2339B .........................................................................................................................9

Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333(d) ..................................................9

**Other Authorities**

1 Burton V. McCullough, *Letters of Credit* (2017) ........................................................................2

Eleanor L. Grossman, 50 Am. Jur. 2d *Letters of Credit* (2017) ..................................................1, 2

U.S. Dep't of State, *Foreign Terrorist Orgs.*, *available at*
    http://www.state.gov/j/ct/rls/other/des/123085.htm..................................................................3

## INTRODUCTION

Standard Chartered Bank ("SCB") respectfully submits this supplemental memorandum in support of its motion to dismiss the Complaint ("Compl.").

As demonstrated in the Joint Memorandum of Law in Support of Motion To Dismiss, dated March 2, 2018 ("Joint Memorandum"), all of Plaintiffs' claims against SCB fail as a matter of law. While the Joint Memorandum addresses the allegations against the Moving Defendants collectively, SCB submits this supplemental memorandum to address Plaintiffs' Third Claim for Relief, concerning SCB's alleged role in transactions involving letters of credit ("LCs"). The Third Claim for Relief fails to allege that SCB proximately caused plaintiffs' injuries, and also fails to allege that SCB committed an act of international terrorism as required under the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2331(1), 2333(a). Thus, the Third Claim for Relief should be dismissed.

## BACKGROUND

In the Complaint, Plaintiffs seek to allege a conspiracy in which SCB and the other Defendants agreed with the government of Iran and Iranian banks to evade U.S. economic sanctions. Compl. ¶¶ 687-702, 2395-2400. Plaintiffs allege that, in furtherance of that conspiracy, SCB altered or omitted information from payment messages, a process they refer to as "stripping." *E.g.*, *id.* ¶¶ 47-48, 1386, 1413, 1418-22, 1486, 1850. Plaintiffs also allege that SCB "facilitated" LCs in trade finance transactions involving Iranian entities in connection with the same conspiracy, *see, e.g.*, *id.* ¶¶ 1902-04, 1912-14, 1942, 1952, 1967, and assert the Third Claim for Relief against SCB based on these LC allegations, *see id.* ¶¶ 2447-60.

LCs are issued by one bank to another essentially to guarantee payment for the purchase of goods. *See* Eleanor L. Grossman, 50 Am. Jur. 2d *Letters of Credit* § 2 (2017); *Republic Nat. Bank of Miami* v. *Fid. & Deposit Co. of Md.*, 894 F.2d 1255, 1257-58 (11th Cir.

1990).  Typically, the transaction is initiated by a purchaser, who requests an LC from an "issuing" bank.  *See* 50 Am. Jur. 2d *Letters of Credit* § 2.  The issuing bank then sends the LC to an "advising" bank, which notifies the seller that an authentic LC has been issued, at which point the seller ships the goods to the purchaser.  *See Oei* v. *Citibank, N.A.*, 957 F. Supp. 492, 498 & n.1 (S.D.N.Y. 1997); 50 Am. Jur. 2d *Letters of Credit* § 43.  The seller then presents the shipping documents to a "negotiating" bank, which sends them to the issuing bank.  *See* 50 Am. Jur. 2d *Letters of Credit* §§ 9, 19, 45.  If the issuing bank accepts the shipping documents, it authorizes the negotiating bank to pay the seller.  *See Republic Nat. Bank of Miami*, 894 F.2d at 1257-58; *Oei*, 957 F. Supp. at 498-99.  The negotiating bank then claims reimbursement from a "reimbursing" bank, which pays the negotiating bank on behalf of the issuing bank, which was the holder of the purchaser's funds.  *See* 1 Burton V. McCullough, *Letters of Credit* § 3.02 (2017).  Often, the reimbursing bank pays the negotiating bank through correspondent banks, which facilitate dollar-denominated payments through a U.S. clearing bank.

Plaintiffs allege that, from at least 1998 to 2009, SCB participated in LC transactions that involved certain Iranian entities' purchase of aircraft, aircraft parts, unspecified "U.S. origin goods," and, in one case, "electromotors for hydraulic presses."[1]  *See* Compl. ¶¶ 1921-27, 1947, 1967-68, 1993, 2007, 2026, 2038-39, 2042, 2046, 2051.  Plaintiffs allege that SCB conspired with the Iranian entities to evade U.S. sanctions in connection with these transactions, and that SCB used "stripping or cover payment methods" to avoid detection in furtherance of that alleged conspiracy.  *See id.* ¶ 1902.

---

[1] Plaintiffs base their LC allegations on a confidential report prepared by Promontory Financial Group, which SCB's outside counsel engaged to analyze SCB transaction data and prepare written reports of such analyses.  Final versions of Promontory's reports were shared by SCB with government agencies subject to certain understandings about confidentiality, and remained non-public until parties in another ATA action attached one such report to their public filings.

Plaintiffs allege that for certain LCs, non-U.S. branches of SCB acted as the negotiating bank, the advising bank, and/or the reimbursing bank. *See, e.g.*, *id.* ¶¶ 1948, 1969, 2024, 2031.  Plaintiffs allege in a conclusory fashion that when non-U.S. branches of SCB acted as the negotiating bank, SCB "received the detailed documentation for the shipment of goods, and knew that it was helping Iran's military and terrorist apparatus acquire prohibited U.S. goods and dual-use technologies." *Id.* ¶ 2098.  In all of the LC transactions, SCB New York's alleged role was limited to the provision of U.S. dollar clearing services. *See id.* ¶¶ 1923, 1948, 1950, 1969, 2025, 2040, 2043, 2047, 2056.  But Plaintiffs do not allege that any documentation SCB received indicated that the goods would be used by terrorist organizations, nor any facts to support an allegation that SCB knew the transacting parties were supporting terrorist groups.[2]

Plaintiffs try to establish some link between their LC allegations and support for terrorism by alleging that some of the purchasers and sellers involved in the underlying transactions to which those LCs related were designated by the United States Office of Foreign Assets Control ("OFAC") as Specially Designated Global Terrorists ("SDGTs") for their ties to terrorist organizations or as proliferators of weapons of mass destruction ("WMDs").[3] *See id.* ¶¶ 1905-11.  But these entities were designated long after the LC transactions. *Compare id.* ¶¶ 1261 (2011 Mahan Air designation), *with* 1914 (LCs involving Mahan Air between 2000-2006).  The Complaint's bare assertions do not allege that the transactions at issue occurred after these designations or findings, nor do they allege any facts suggesting that SCB knew of the LC

---

[2]  The Promontory report did not find—nor did any of SCB's settlements with government authorities find—that SCB engaged in transactions connected to terrorist activity.

[3]  These designations are distinct from the designations of Foreign Terrorist Organizations ("FTOs") by the United States Secretary of State pursuant to Section 219 of the Immigration and Nationality Act.  None of the purchasers or sellers involved in the LC transactions have been designated as FTOs.  *See* U.S. Dep't of State, *Foreign Terrorist Orgs.*, *available at* http://www.state.gov/j/ct/rls/other/des/123085.htm; *see also* Compl. ¶¶ 2415-22.

counterparties' connections to terrorism. *See, e.g.*, *id.* ¶¶ 1928, 1938, 1972. Plaintiffs also allege that some of the entities that purchased or sold the underlying goods (or the owners or directors of such entities) were indicted for, and in a few instances convicted of, violating U.S. export controls. *See id.* ¶¶ 1954-67, 1975-98, 2000-09, 2046-49. But the Complaint does not allege that these entities were themselves terrorist organizations, supporters of terrorism, involved in the attacks that injured Plaintiffs, or that SCB knew of the export violations.

The Complaint does not allege that SCB directly participated in any terrorist attacks. *Id.* ¶¶ 1848-2110. Nor does it allege that SCB "facilitated" any specific transaction with a terrorist group or otherwise provided banking services to terrorists. *Id.* The Complaint also does not identify a single LC transaction involving SCB that allegedly resulted in the provision of support or transfer of funds or goods to any FTO or group that allegedly committed the attacks. *Id.* In addition, the Complaint does not allege that SCB facilitated transactions for the purchase of improvised explosive devices ("IEDs"), explosively formed penetrators ("EFPs"), or any other type of weapon. *Id.* Nor does it allege facts suggesting that *any* of the purchasers or sellers in the LC transactions or that any of the goods that were purchased in connection with the LCs were used in—or were in any way tied to—the attacks that injured Plaintiffs. *Id.*

## ARGUMENT

**I.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT SCB'S CONDUCT PROXIMATELY CAUSED THE ATTACKS THAT INJURED PLAINTIFFS.**

The Complaint should be dismissed because it does not plausibly allege that SCB proximately caused Plaintiffs' injuries. As outlined in the Joint Memorandum, *Rothstein* v. *UBS AG*, 708 F.3d 82, 92, 97 (2d Cir. 2013), and its progeny plainly hold that a primary liability claim under the ATA requires a plaintiff to allege facts that substantiate an actual connection between a defendant's conduct and either the terrorist act that injured the plaintiff or the terrorist

organization that funded or perpetrated that act. *See also id.* at 91-92 ("[T]he central question . . . is whether the alleged violation led directly to the plaintiff's injuries.") (quoting *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  The Complaint here makes no such allegations—nowhere do Plaintiffs allege any actual connection between SCB's conduct and the attacks that injured Plaintiffs or the largely unidentified perpetrators of those attacks.  Plaintiffs' allegations concerning LC transactions in the Third Claim for Relief are no different.

Notably, the theory underlying the Third Claim for Relief has already been rejected.  In *Stutts* v. *De Dietrich Grp.*, No. 03 Civ. 4059 (IGL), 2006 WL 1867060 (E.D.N.Y. June 30, 2006), plaintiffs were injured by exposure to chemical weapons developed or obtained by the government of Iraq that were detonated by Coalition Forces during the First Gulf War.  Plaintiffs brought an ATA action against banks that acted as correspondent banks in connection with LCs issued for the purchase of chemical precursors and manufacturing equipment by the Iraqi government.  *Id.* at *1.  The court dismissed the complaint for lack of proximate cause, holding that "general publicity" concerning Iraq's stockpiling and use of chemical weapons and "connections and cooperation between agents of the Iraqi regime and known terrorist organizations" were insufficient to plausibly allege proximate cause.  *Id.* at *4.

The absence of proximate cause is even starker here.  In *Stutts*, the purchaser in the LC transactions was the Iraqi government—the very entity known to have stockpiled the chemical weapons that caused the plaintiffs' injuries—and the goods involved in the LC transactions were chemical precursors used to manufacture those weapons.  Here, by contrast, Plaintiffs do not allege that any of the sellers or purchasers in the LC transactions carried out any of the attacks that caused their injuries.  Compl. ¶¶ 1848-2110.  In fact, Plaintiffs do not identify a single transaction through which funds or goods of any type were transferred, directly or

indirectly, to any terrorist group, let alone to the largely unidentified groups that attacked Plaintiffs. *Id.*; *see also Ahmad* v. *Christian Friends of Israeli Communities*, No. 13 CIV. 3376 JMF, 2014 WL 1796322, at *4 (S.D.N.Y. May 5, 2014) (dismissing ATA claims when the complaint did not allege "that [the defendants] provided money to the specific organizations or individuals that engaged in terrorist activities").[4]  Nor do Plaintiffs allege that any of the goods purchased using the LCs at issue were used in the attacks that injured Plaintiffs. Compl. ¶¶ 1848-2110.  There are simply no non-conclusory allegations of *any* connection between the LC transactions and the detonation of explosive devices in Iraq by largely unidentified groups.

Moreover, the Second Circuit has made clear that allegations that SCB violated U.S. laws restricting trade with Iran are not sufficient to establish proximate cause. *Rothstein*, 708 F.3d at 96 (such an argument would mean that "any provider of U.S. currency to a state sponsor of terrorism would be strictly liable for injuries subsequently caused by a terrorist organization associated with that state"); *O'Neill* v. *Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting plaintiffs' argument that "providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . . proximately caused" their injuries).  Nor can Plaintiffs' conclusory allegations that their injuries were a "foreseeable" consequence of defendants' conduct, *see, e.g.*, Compl. ¶¶ 601, 1388, 1396, 1912, cure their failure to plead proximate cause. *See Bank of America Corp.* v. *City of Miami*, 137 S. Ct. 1296, 1301 (2017) ("[T]o establish proximate cause . . . a plaintiff must do more than show that its injuries foreseeably flowed from the alleged statutory violation."); *see also Stutts*,

---

[4] *See also Ofisi* v. *BNP Paribas, S.A.*, No. CV 15-2010 (JDB), 2017 WL 4355922, at *9 (D.D.C. Sept. 29, 2017) (granting motion to dismiss where "plaintiffs ha[d] made no detailed factual allegations showing, for example, that [the defendant] participated in the attacks or provided money directly to any terrorist group, that any money [the defendant] processed for Sudan or Sudanese banks was transferred to al Qaeda prior to the attacks, or that Sudan would have been unable to assist al Qaeda without the funds that [the defendant] processed").

2006 WL 1867060 at *4 n.8 (finding plaintiffs' allegation that bank defendants were "essential" to Iraq's stockpiling of chemical weapons insufficient to establish proximate cause).[5]

The Complaint's allegations with respect to particular purchasers, sellers and goods only confirm the shortcomings of the Plaintiffs' theory of causation. Plaintiffs allege that certain of the purchasers and sellers of goods underlying the LCs were designated by OFAC as SDGTs or WMD proliferators, *see, e.g.*, Compl. ¶¶ 1905-11, but these allegations do not establish any causal link between SCB's conduct and Plaintiffs' injuries because the designated entities allegedly involved in the LC transactions were designated years after the LCs were issued. *Compare id.* ¶ 1261 (2011 Mahan Air designation), *with* ¶ 1914 (LCs involving Mahan Air between 2000-2006); *compare id.* ¶ 1940 (2007 MODAFL designation), *with* ¶¶ 1967-68, 1993, 2008 (LCs involving MODAFL subsidiaries between 1998-2005); *compare id.* ¶ 1941 (2005 AIO designation), *with* ¶ 1942 (LC involving AIO in 2002). Plaintiffs do not allege that these entities supported terrorist groups at the time of the LCs. *See id.* ¶¶ 1914-40. Plaintiffs acknowledge some of these temporal inconsistencies, but assert that SCB's own conduct of assisting entities in evading sanctions through the use of stripping and cover payments was illegal, *see id.* ¶¶ 2448-49, and that the commission of terrorist acts against Americans was somehow a foreseeable consequence of this conduct, *id.* ¶ 2458.[6] But this precise argument—

---

[5] Plaintiffs' assertion that SCB had knowledge of the underlying transactions through its role as negotiating bank does not remedy this causal deficiency. Compl. ¶ 2098. "[I]ssuers of letters of credit are third parties ignorant of the specifics of the transactions who merely deal in documents describing the terms of the credit extended." *Stutts*, 2006 WL 1867060, at *13 (quoting *Oei*, 957 F. Supp. 492 at 503).

[6] Only one allegation involves post-designation LCs. Compl. ¶ 1900. The Complaint, however, does not identify the goods involved in these transactions, nor does it allege that the goods purchased through the LCs were involved in the attacks that injured Plaintiffs. Moreover, none of the entities involved in the LC transactions had been designated as FTOs. This is "meaningful" because the "Supreme Court's finding that FTOs are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct is specific to FTOs"

that a defendant's violation of U.S. laws restricting trade with Iran is sufficient to establish proximate cause—was flatly rejected in *Rothstein*. 708 F.3d at 96-97; *Al Rajhi*, 714 F.3d at 124.[7]

Plaintiffs' allegations concerning one particular transaction for the purchase of electromotors for hydraulic presses also do not allege any actual connection between SCB's alleged conduct and Plaintiffs' injuries. Plaintiffs trumpet their allegation that hydraulic presses are "the precise type of machinery required to manufacture EFPs," Compl. ¶ 2058, but they fail to acknowledge that such presses also are used to manufacture kitchen appliances, automotive parts, and an array of other products.[8] Nowhere do Plaintiffs allege that the electromotors that were the subject of the transaction involving SCB were used to manufacture hydraulic presses that, in turn, manufactured EFPs. *See id.* ¶¶ 2051-61. Nor do they allege that the electromotors were purchased by, transferred to, or otherwise used by terrorist groups, much less the largely unnamed groups that committed the attacks against Plaintiffs.[9] *Id.* These allegations therefore fail to allege proximate cause. *See Al Rajhi*, 714 F.3d at 124; *Rothstein*, 708 F.3d at 97.

At most, the Complaint makes two entirely distinct sets of allegations: *first*, that SCB violated U.S. sanctions by altering payment messages in banking and LC transactions for

---

and does not apply to other entities, even if they are involved in funding terrorism. *See Strauss* v. *Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 433 (E.D.N.Y. 2013) (quoting *Rothstein* v. *UBS AG*, 772 F. Supp. 2d 511, 516 (S.D.N.Y. 2011)).

[7] Similarly, allegations that SCB "facilitated" LC transactions involving entities that were indicted for or convicted of export controls violations, *see, e.g.*, Compl. ¶¶ 1975-98, are insufficient to establish proximate cause—there is still no link whatsoever to terrorist acts or terrorist groups. *See Rothstein*, 708 F.3d at 96-97.

[8] *See Sistrunk* v. *Dake Corp.*, No. 13-2983, 2015 WL 4164910, at *1 (E.D. La. July 9, 2015) (noting that a "generic hydraulic press . . . can be used for a number of purposes"); *TDY Holdings, LLC* v. *United States*, 122 F. Supp. 3d 998, 1009 (S.D. Cal. 2015) (noting use of hydraulic presses by aeronautical products manufacturer); *Mike Vaughn Custom Sports, Inc.* v. *Piku*, 15 F. Supp. 3d 735, 742 (E.D. Mich. 2014) (noting use of a hydraulic press to manufacture hockey equipment).

[9] The Promontory report upon which Plaintiffs base their claims makes no connection between the electromotors and EFPs or other terrorist weapons or activity.

the purchase of U.S.-origin goods involving Iranian and non-Iranian entities, *see, e.g.*, Compl. ¶¶ 1371-1486, 1848-2110; and *second*, that largely unknown or unidentified groups attacked Plaintiffs in Iraq, *see id.* ¶¶ 95-597.  Because there is no link between those two sets of allegations, the Third Claim for Relief must be dismissed.  *See Rothstein*, 708 F.3d at 96-97.[10]

## II. THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT SCB ENGAGED IN AN ACT OF INTERNATIONAL TERRORISM.

The Third Claim for Relief fails for the independent reason that Plaintiffs do not allege that SCB committed an "act of international terrorism" as required under the ATA.  *See* 18 U.S.C. §§ 2331(1), 2333(a).  The Second Circuit recently made clear that an alleged violation of the ATA's material support statutes, including 18 U.S.C. §§ 2339A and 2339B, "does not invariably equate to an act of international terrorism."  *Linde* v. *Arab Bank, PLC*, No. 16-2098-CV (CON), 2018 WL 797454, at *9 (2d Cir. Feb. 9, 2018).  Instead, under Section 2331(1), an act of "international terrorism" must (a) "involve violent acts or acts dangerous to human life . . ."; and (b) "appear to be intended" "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping."  18 U.S.C. § 2331(1).

Plaintiffs do not allege that SCB committed violent or dangerous acts.  At most, Plaintiffs allege that SCB provided banking and financing services to entities in Iran, *see, e.g.*, Compl. ¶¶ 1851, 1914, 1945, 1967, but the Complaint does not allege that such banking services or LC transactions themselves were violent or dangerous to human life, *see Linde*, 2018 WL 797454, at *9. Additionally, Plaintiffs fail to allege that SCB possessed the requisite intent—*i.e.*, that SCB intended to intimidate or coerce civilians or a government.  Indeed, the Complaint

---

[10]  The Third Claim for Relief should also be dismissed because it is premised on a conspiracy theory of liability, which is not cognizable under the ATA except in claims brought pursuant to the Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333(d) ("JASTA").  *See* Joint Memorandum at 4-5, 31-32.

makes clear that SCB's "aims and objectives were *to profit*." Compl. ¶ 1414 (emphasis added); *see also id.* ¶¶ 3, 1377, 1469, 1851. This type of activity is not "designed to coerce civilians or government entities as required under § 2331." *See Stutts*, 2006 WL 1867060, at *3.[11]

## CONCLUSION

For the foregoing reasons, SCB respectfully submits that Plaintiffs' claims against SCB should be dismissed with prejudice.

Dated:  March 2, 2018
          New York, New York

Respectfully submitted,

*/s/ Sharon L. Nelles*
Sharon L. Nelles (*nelless@sullcrom.com*)
Bradley P. Smith (*smithbr@sullcrom.com*)
Alyssa A. Hill (*hilla@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Standard Chartered Bank*

---

[11] The Third Claim for Relief must be dismissed for the additional reason that it fails to allege that the SCB acted with the knowledge required to state a violation of Section 2339A. *See* Joint Memorandum at 26-28. Under Section 2339A, "plaintiffs must plausibly allege that defendants provided financial services . . . with the *knowledge or intent* that the services 'are to be used in preparation for, or in carrying out' a terrorist act." *Owens* v. *BNP Paribas S.A.*, 235 F. Supp. 3d 85, 98 (D.D.C. 2017) (emphasis added). Plaintiffs allege that SCB knowingly assisted various Iranian entities *in evading U.S. sanctions* and that the "foreseeable consequence of that assistance was to enable Iran, the IRGC and Hezbollah to kill or wound . . . more Americans in Iraq." Compl. ¶ 1912. These allegations, however, do not amount to the requisite scienter under Section 2339A. *See Owens*, 235 F. Supp. 3d at 87, 98 (granting motion to dismiss where plaintiffs did not plausibly allege that the defendant banks knew that Sudan or any Sudanese bank was acting as an agent of any terrorist, or that the ultimate beneficiaries of any financial services provided would be a terrorist organization).