UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY O'SULLIVAN, et al.,<br><br>          Plaintiffs,<br><br>    -against-<br><br>DEUTSCHE BANK AG; HSBC BANK USA, N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc; HSBC BANK MIDDLE EAST LIMITED; HSBC NORTH AMERICA HOLDINGS, INC.; COMMERZBANK AG; COMMERZBANK AG, NEW YORK BRANCH; BARCLAYS BANK Plc; BNP PARIBAS S.A.; STANDARD CHARTERED BANK; THE ROYAL BANK OF SCOTLAND N.V.; THE ROYAL BANK OF SCOTLAND PLC; CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK; CREDIT SUISSE AG; and BANK SADERAT Plc,<br><br>          Defendants. | 17-CV-08709-LTS-GWG |

**MEMORANDUM OF LAW OF DEFENDANT CREDIT SUISSE AG
IN SUPPORT OF MOTION TO DISMISS**

          Richard W. Clary
          John D. Buretta
         CRAVATH, SWAINE & MOORE LLP
           Worldwide Plaza
           825 Eighth Avenue
            New York, NY 10019-7475
             (212) 474-1000
             rclary@cravath.com
             jburetta@cravath.com

        *Attorneys for Defendant Credit Suisse AG*

March 2, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
INTRODUCTION ..............................................................................................................1
FACTUAL STATEMENT ..................................................................................................1
ARGUMENT ......................................................................................................................7
    I.    PLAINTIFFS' PRIMARY LIABILITY CLAIMS FAIL AS A MATTER OF LAW AS TO CREDIT SUISSE ...............................................................7
    II.    PLAINTIFFS' SECONDARY LIABILITY CLAIMS FAIL AS A MATTER OF LAW AS TO CREDIT SUISSE ...................................................9
        A.    Plaintiffs' Conspiracy Claim Fails as a Matter of Law as to Credit Suisse ..........................................................................................................9
        B.    Plaintiffs' Aiding-and-Abetting Claim Fails as a Matter of Law as to Credit Suisse ........................................................................................10
CONCLUSION .................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 10

*Linde v. Arab Bank, PLC*, No. 17-2098-CV (CON), 2018 WL 797454 (2d Cir. Feb. 9, 2018) ............................................................................................................................. 9

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118 (2d Cir. 2013) ............................................................................................................................. 9

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) .................................................................... 1, 5

*Wright-Upshaw v. Nelson*, No. 13 Civ. 3367, 2014 WL 692870 (E.D.N.Y. Feb. 19, 2014) ............................................................................................................................. 9

**Statutes & Rules**

18 U.S.C. § 2331(1) ..................................................................................................................... 1, 8

18 U.S.C. § 2332d ...................................................................................................................... 9, 10

18 U.S.C. § 2333 .......................................................................................................................... 1, 9

18 U.S.C. § 2339A ............................................................................................................................ 1

**INTRODUCTION**

As demonstrated in the Joint Memorandum, the four Claims for Relief (Claims I, V, VII and IX) in which Credit Suisse is named as a defendant each fail to state a claim as a matter of law.[1]  Credit Suisse respectfully submits this separate memorandum of law to highlight the deficiencies in those four claims as they pertain specifically to Credit Suisse.  *First*, Plaintiffs' primary liability claims, Claims I and IX, fail plausibly to plead proximate cause as to Credit Suisse as required by *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013).  *Second*, Plaintiffs' primary liability claims fail plausibly to allege that Credit Suisse committed an "act of international terrorism".  18 U.S.C. § 2331(1).  *Third*, primary liability Claim I fails for the independent reason that Plaintiffs do not allege that Credit Suisse possessed the requisite knowledge or provided material support to a terrorist group as required under Section 2339A.  *Fourth*, primary liability Claim IX fails for the independent reason that Credit Suisse is not a United States person.  *Finally*, Plaintiffs' secondary liability claims, Claims V and VII, must be dismissed because the Complaint fails plausibly to allege that Credit Suisse conspired with, or aided and abetted, the person or entity that "committed" the attack.  18 U.S.C. § 2333(d).

**FACTUAL STATEMENT**

Plaintiffs spare no words in their 516-page Complaint, but offer no plausible allegations that Credit Suisse's alleged banking transactions or provision of "expert advice" to

---

[1] The following abbreviations are used in this memorandum of law:  "Credit Suisse" for Credit Suisse AG; "Joint Mem." for the Joint Memorandum in Support of Motion to Dismiss; "Compl." for the Complaint filed on November 9, 2017 (Dkt. No. 1); "ATA" for the Anti-Terrorism Act; "JASTA" for the Justice Against Sponsors of Terrorism Act; "MODAFL" for the Ministry of Defense and Armed Forces Logistics; "IRISL" for the Islamic Republic of Iran's Shipping Lines; "FTO" for Foreign Terrorist Organization; "IRGC-QF" for the Islamic Revolutionary Guard Corps Qods Force; "SDGTs" for Specially Designated Global Terrorists; "OFAC" for the Office of Foreign Assets Control; and "USD" for U.S. dollars.

Iranian banks proximately caused the attacks identified in the Complaint.  *See* Compl. ¶¶ 2239-2313.  Nor does the Complaint plausibly allege that Credit Suisse engaged—or conspired to engage—in an act of international terrorism, provided material support to any terrorist organization, or had any dealings with an FTO.  *See id.*

The Complaint avers that, from "at least the mid-1990s to 2006", Credit Suisse conspired with "Iran and its Agents and Proxies" to evade U.S. economic sanctions by allegedly transferring USD funds, and providing expert advice, to Iranian banks (the "Conspiracy").  *Id.* ¶¶ 812, 1371, 2387.  Credit Suisse allegedly participated in the purported Conspiracy by acting as a correspondent bank clearing USD-denominated transactions for Iranian entities and persons, including Bank Melli and Bank Saderat, *id.* ¶¶ 2242, 2247, 2251, and by advising unidentified "countries, banks, and persons" on how to evade filters at U.S. financial institutions, *id.* ¶ 809.  The Complaint does not allege that Credit Suisse processed USD-denominated transactions for, or provided advice to, any terrorists or terrorist groups, such as Hezbollah, Al Qaeda, the IRGC-QF or any of the named or unnamed terrorist groups that those entities allegedly supported.  *See id.* ¶¶ 890-99 (*Iran's* sponsorship and material support of terrorism in Iraq, not involving Credit Suisse); *id.* ¶¶ 907-30 (*Iran's* support of Hezbollah and IRGC-QF, not involving Credit Suisse); *id.* ¶¶ 960-1112 (*Iran's* support of FTOs and other terrorist groups in Iraq, not involving Credit Suisse); *id.* ¶¶ 2239-2313 (describing Credit Suisse's alleged banking transactions, with no reference to terrorism).  Nor is Credit Suisse alleged to have dealt with various agencies of the Government of Iran mentioned in the Complaint, such as MODAFL, the IRISL or Iran's Defense Industries Organization, which allegedly provided support to Hezbollah and IRGC-QF, which, in turn, allegedly provided support to terrorist groups in Iraq.  *See id.* ¶¶ 931-59, 1212-42, 2239-2313.  Additionally, the Complaint fails to allege that Credit Suisse's banking transactions were

2

violent acts or dangerous to human life, or evinced an intent to influence, intimidate or coerce. *See id.* ¶¶ 2239-2313 (describing Credit Suisse's alleged participation in the purported conspiracy, with no mention of any act that constitutes violence, endangerment to human life, influence, intimidation or coercion). In short, the Complaint makes no allegation of any actual connection between Credit Suisse's alleged banking transactions and the terrorist organizations or acts identified in the Complaint.

As to Credit Suisse's USD-denominated banking transactions with Iranian banks (not involving any terrorist groups), the Complaint concedes that, by January 2006, Credit Suisse had decided to terminate all such banking services. *Id.* ¶¶ 2297-98. Credit Suisse is alleged to have completed most of that wind-down by September 2006 and to have ceased all of its transactions with Iranian banks by November 2006. *Id.* ¶ 2297. Thus, while none of the funding or support for any of the alleged attacks in Iraq is linked in any way to Credit Suisse, nearly two thirds of those alleged attacks occurred after Credit Suisse is alleged to have terminated all USD-clearing transactions with Iranian banks. *See id.* ¶¶ 101-597.

As the Complaint further acknowledges, during the period when Credit Suisse allegedly acted as a correspondent bank for Iranian banks, processing USD-denominated transactions was lawful under certain circumstances, known as the "U-Turn" exemption. *Id.* ¶¶ 1426-29. This exemption was revoked as to Bank Saderat in September 2006 (Credit Suisse is alleged to have ceased almost all Iranian banking transactions by this time), *id.* ¶¶ 2295, 2298, 2314, and as to Bank Melli in October 2007 (11 months after Credit Suisse is alleged to have stopped all Iranian banking transactions), *id.* ¶¶ 2295, 2298, 2368. The Complaint further concedes that Bank Melli and Bank Saderat were not designated as sanctioned—*i.e.*, entirely

3

prohibited—entities until October 2007, well after Credit Suisse terminated all USD-clearing transactions for Iranian banks. *Id.* ¶¶ 828-29, 1174, 2297, 2368.

The Complaint alleges that when processing USD transactions for Iranian banks under the U-Turn exemption, Credit Suisse altered, falsified or omitted certain information from bank-to-bank payment orders (known as "stripping"). *See id.* ¶¶ 47, 1371. The Complaint does not, however, allege that any of these transactions involved any terrorist group or were directly linked to the attacks at issue. *See id.* ¶ 1413. The Complaint also acknowledges that, in March 2007, Credit Suisse initiated an internal investigation of its USD-clearing transactions, entered a deferred prosecution agreement ("DPA") with the U.S. Government and agreed to a $536 million civil forfeiture relating to banking transactions in several countries, including Iran. *See id.* ¶¶ 2302-13. The DPA does not suggest that Credit Suisse processed any USD-denominated transactions that supported any terrorist group or act. *Id.*

The Complaint further alleges that Credit Suisse participated in three "illicit transactions" as part of a scheme to "violat[e] . . . the U.S. trade embargo against Iran" and "enable Iran's acquisition" of export-controlled items. *Id*. ¶ 1386. Specifically, the Complaint alleges that, between 2004 and 2006, Credit Suisse made U.S.-dollar payments as part of a series of payments and repayments that were originally set in motion by three letters of credit issued by Iranian banks. *See id.* ¶¶ 1205-06, 1926, 2381-85. The only specific allegation is that Credit Suisse instructed Bank of New York and Defendant Standard Chartered Bank to make payments or issue credits in connection with letters of credit issued by Bank Melli, Bank Refah and Bank Sepah, *id.* ¶¶ 2381-85, and that these payments purportedly "facilitated" the "illegal purchase", *id*. ¶¶ 2299-2300, by Iranian-owned companies of (i) one U.S.-origin commercial aircraft engine, *id*. ¶¶ 2381-82, (ii) one Airbus commercial aircraft and "several aircraft engines", *id*. ¶¶ 1205-06,

4

and (iii) aircraft parts, *id.* ¶¶ 2383-85.  The Complaint alleges that these letters of credit were issued—by someone other than Credit Suisse—to Mahan Air and Blue Sky Aviation and that these entities were designated by OFAC as SDGTs.  *Id.* ¶¶ 1934, 1940.  However, these designations did not occur until years *after* Credit Suisse is alleged to have made the USD payments.  *See id.* ¶ 1179 (Mahan Air designated in 2011, seven years after the alleged USD-denominated payments to Bank of New York); *id.* ¶ 1935 (Blue Sky Aviation designated in 2014, eight years after the alleged USD-denominated payments to Defendant Standard Chartered Bank); *id.* ¶ 1938 ("[N]either Mahan Air nor Blue Sky Aviation was designated as a terrorist at the time the [letters of credit] . . . were financed.").  The Complaint thus alleges no connection between these few alleged USD-denominated transactions and any terrorist group or act, much less any of the attacks alleged in the Complaint.  *See id.* ¶¶ 1205-06, 1926, 2381-85.

The Complaint makes wholly conclusory, generalized allegations about the alleged "Conspiracy", which do not connect Credit Suisse's alleged conduct in any way to attacks in Iraq.  Plaintiffs broadly claim (i) that the alleged Conspiracy "substantially assisted", *id.* ¶ 2498, "facilitated", *id.* ¶¶ 1149, 1386, "enabled", *id.* ¶ 1386, or "provid[ed]" "the means" for, *id.* ¶ 59, Iran's support for terrorism; (ii) that "[w]ithout the vital assistance of Defendants, Iran and its Agents and Proxies could not have conducted their terror campaign to the same extent and magnitude, and Iran would have been severely hampered in its terror financing", *id.* ¶ 1333; and (iii) that without the Conspiracy, "Iran's goals of directing lethal terrorist attacks against U.S. nationals, including Plaintiffs, could not have occurred", *id.* ¶ 64.  These are the same kinds of generalized allegations that *Rothstein* rejected as far too attenuated to support an inference of proximate cause.  708 F.3d at 97.  The Complaint does not allege that any of Credit Suisse's USD-denominated transactions involved even one dollar being funneled to terrorist

5

organizations, or that its payments on letters of credit directly aided any terrorist groups, much less relate to the alleged attacks on Plaintiffs.  *See* Compl. ¶¶ 890-99 (*Iran's* sponsorship and material support of terrorism in Iraq, not involving Credit Suisse); *id.* ¶¶ 907-30 (*Iran's* support of Hezbollah and IRGC-QF, not involving Credit Suisse); *id.* ¶¶ 960-1112 (*Iran's* support of FTOs and other terrorist groups in Iraq, not involving Credit Suisse); *id.* ¶¶ 1205-06, 1926, 2381-85, 2239-2313 (Credit Suisse's USD-clearing and letters-of-credit transactions, with no reference to terrorism).  In sum, whatever the purported interactions were between the Iranian banks and the Government of Iran concerning alleged funding of terrorism, none of Credit Suisse's banking services are actually alleged to have been part of that funding.  *See id.*

        The Complaint also makes conclusory allegations that each defendant "knew" of or was "deliberately and/or recklessly indifferent to", the fact that Iran allegedly used dollar-clearing transactions "to provide material support and resources to designated FTOs", *id.* ¶ 693, including those responsible for the attacks that killed or injured Plaintiffs, *id.* ¶ 696, and for the purpose of "prepar[ing] for and in carrying out" attacks in Iraq, *id.* ¶ 1396.  Regarding Credit Suisse, Plaintiffs conclusorily allege that Credit Suisse "knew" that funds transferred by its U.S. correspondent banks were "being used to fund the Terrorist Attacks that are the subject of this Complaint".  *Id.* ¶ 808.  But the Complaint offers no substantiating facts relating to Credit Suisse to support any of these conclusory allegations.  *Compare id.* ¶¶ 890-99 (*Iran's* sponsorship and material support of terrorism in Iraq, not involving Credit Suisse), *id.* ¶¶ 907-30 (*Iran's* support of Hezbollah and IRGC-QF, not involving Credit Suisse); *id.* ¶¶ 960-1112 (*Iran's* support of FTOs and other terrorist groups in Iraq, not involving Credit Suisse); *id.* ¶¶ 1205-06, 1926, 2381-85, 2239-2313 (Credit Suisse's dollar-clearing transactions and payments on letters of credit, with no reference to terrorism); *with id.* ¶¶ 2307-09 (Credit Suisse's deferred prosecution

6

agreement and related documents with no reference to terrorism).  Nor does the Complaint contain any non-conclusory allegations that, absent Credit Suisse's handling of USD-denominated transactions for Iranian banks, the Government of Iran would not have supported Hezbollah or IRGC-QF, that Hezbollah or IRGC-QF would not have trained or sponsored named and unnamed terrorist groups in Iraq, or that the attacks on Plaintiffs would not have otherwise been financed by Iran or its related entities.  *Id.* ¶¶ 907-30, 2239-2313.

Lastly, the Complaint makes conclusory allegations that Credit Suisse "had a continuous, ongoing relationship with Iran and its Agents and Proxies", *id.* ¶ 2240, and "worked closely with" Iran's Atomic Energy Organization ("AEOI") "for many years", *see id.* ¶ 2247, but fails to provide any details regarding the nature of these alleged relationships.  As to "Iran and its Agents and Proxies" (defined to include upwards of two dozen named and unnamed entities), the Complaint contains no substantiated allegations as to Credit Suisse's purported "relationship" with these unspecified "Agents and Proxies".  Further, the AEOI is not alleged to have anything whatsoever to do—directly or indirectly—with attacks in Iraq.  Thus, Credit Suisse is alleged, at most, to have participated in Iran's separate and (insofar as it relates to the alleged attacks) irrelevant nuclear development activities, although again the nature of this alleged relationship is undefined and unsubstantiated.  *See id.*

**ARGUMENT**

**I.   PLAINTIFFS' PRIMARY LIABILITY CLAIMS FAIL AS A MATTER OF LAW AS TO CREDIT SUISSE**

Claims I and IX—the only primary liability claims against Credit Suisse—fail to state a claim as a matter of law.  *First*, Claims I and IX fail plausibly to plead that Credit Suisse's actions were the proximate cause of Plaintiffs' injuries.  The Complaint contains no allegation that Credit Suisse's processing of electronic wire transfers in USD for Iranian banks (even if

7

allegedly "stripped") involved any terrorist group in Iran, Iraq or elsewhere. *See id.* ¶¶ 2239-2313. The Complaint also does not allege that Credit Suisse processed transactions for anyone else—including any arm of the Government of Iran—that allegedly used money processed by Credit Suisse to in turn fund any terrorist group. *See id.* Nor does the Complaint allege that the few USD-denominated transfers purportedly related to letters of credit for aircraft and aircraft parts had any connection to terrorist groups or acts, much less proximately caused any of the attacks in Iraq alleged in the Complaint.

*Second*, Claims I and IX fail plausibly to allege that Credit Suisse committed an "act of international terrorism" as required under 18 U.S.C. § 2331(1). The Complaint provides a lengthy recitation of Credit Suisse's alleged participation in the purported conspiracy, *see* Compl. ¶¶ 2239-2313, but it only alleges facts in support of an alleged conspiracy to evade economic sanctions. The Complaint fails plausibly to allege that those efforts (which are alleged to consist of stripping and unclear involvement with certain letters of credit, *see, e.g., id.* ¶¶ 2255, 2275) constituted violence, endangerment to human life or evinced an intent to influence, intimidate or coerce others—a showing that is required by 18 U.S.C. § 2331(1).

*Third*, Claim I fails for the independent reason that the Complaint fails plausibly to allege that Credit Suisse possessed the requisite knowledge or provided material support to a terrorist group as required under Section 2339A. The Complaint provides conclusory allegations that Credit Suisse "knew" that its services were used for terrorist attacks, *see, e.g.*, Compl. ¶ 808, but fails to offer any substantiating facts. The Complaint's lengthy description of Credit Suisse's role in the purported conspiracy makes no mention that Credit Suisse knew that the purported ultimate beneficiary of (and far removed from) its banking services was a terrorist group. *See, e.g., id.* ¶¶ 2239-2313. *Fourth*, Claim IX fails for the independent reason that Credit Suisse—an

8

entity incorporated under the laws of Switzerland—is not a United States person under 18 U.S.C. § 2332d(b)(2).[2]

## II. PLAINTIFFS' SECONDARY LIABILITY CLAIMS FAIL AS A MATTER OF LAW AS TO CREDIT SUISSE

Claims V and VII—the only secondary liability claims against Credit Suisse—fail to state a claim as a matter of law under JASTA. *See* 18 U.S.C. § 2333(d); *Linde v. Arab Bank, PLC*, No. 16-2098-CV (CON), 2018 WL 797454, at *9-*10 (2d Cir. Feb. 9, 2018).[3] JASTA applies only to injuries caused by a terrorist act that is "committed, planned, or authorized" by an officially designated FTO. *See* 18 U.S.C. § 2333(d)(2). As discussed in the Joint Memorandum, 50 of the 55 attacks alleged in the Complaint fail to meet this threshold requirement. *See* Joint Mem. § VI.A. As to the five attacks alleged to have been "committed, planned, or authorized" by a designated FTO, liability under JASTA is limited to "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). As explained below, the Complaint fails to satisfy these pleading requirements as to Credit Suisse.

### A. Plaintiffs' Conspiracy Claim Fails as a Matter of Law as to Credit Suisse

As to Claim V (conspiracy), the Complaint fails plausibly to allege that Credit Suisse conspired with the person who committed an act of international terrorism that was "committed, planned, or authorized" by a designated FTO as required by JASTA. The

---

[2] The Court may take judicial notice of Credit Suisse's jurisdiction of incorporation based on its filings with the U.S. Securities and Exchange Commission. *See Wright-Upshaw v. Nelson*, No. 13 Civ. 3367, 2014 WL 692870, at *1, n.1 (E.D.N.Y. Feb. 19, 2014).

[3] There is no secondary liability under Section 2333(a) for claims to which JASTA does not apply. *See Linde*, 2018 WL 797454, at *3; *accord O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118, 123 (2d Cir. 2013).

9

Complaint does not contain a single allegation that Credit Suisse conspired with any terrorist organization, let alone with any of the FTOs allegedly involved in the attacks described in the Complaint. *See* Compl. ¶¶ 2239-2313. The Complaint's conclusory allegations that, as part of the purported Conspiracy, "Credit Suisse had a continuous, ongoing relationship with Iran and its Agents and Proxies", *id.* ¶ 2240, *see also id.* ¶ 4 n.5 (defining "Agents and Proxies" to include numerous named and unnamed groups) fail as a matter of law under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[N]aked assertions devoid of further factual enhancement" do not suffice.) (internal quotation marks omitted).

### B. Plaintiffs' Aiding-and-Abetting Claim Fails as a Matter of Law as to Credit Suisse

As to Claim VII (aiding and abetting an act of international terrorism committed, planned, or authorized by an FTO), the only allegation specific to Credit Suisse is that Credit Suisse "agreed to assist Iran in carrying out the Conspiracy", Compl. ¶ 2251, an allegation that fails plausibly to plead that Credit Suisse's alleged "assistance" involved "the person who committed such an act of international terrorism", 18 U.S.C. § 2332d. The Complaint also alleges that each Defendant "purposely provid[ed] Iran and its proxies and agents with . . . assistance in an illegal manner knowing[] . . . that their actions would, and in fact did, aid and abet the FTOs", Compl. ¶ 2498, an allegation that fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", *Iqbal*, 556 U.S. at 678.

### CONCLUSION

For the foregoing reasons, as well as those in the Joint Memorandum, Credit Suisse respectfully submits that Claims I, V, VII and IX should be dismissed with prejudice as to Credit Suisse.

Dated:  March 2, 2018

                              Respectfully submitted,

                              CRAVATH, SWAINE & MOORE LLP,

                by

                                  */s/ John D. Buretta*
                                  Richard W. Clary
                                  John D. Buretta

                                Members of the Firm

                                Worldwide Plaza
                                825 Eighth Avenue
                                New York, NY 10019
                                (212) 474-1000
                                rclary@cravath.com
                                jburetta@cravath.com

                              *Attorneys for Defendant Credit Suisse AG*