UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY O'SULLIVAN, et al.,<br><br>      Plaintiffs,<br><br>    -against-<br><br>DEUTSCHE BANK AG; HSBC BANK USA, N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc; HSBC BANK MIDDLE EAST LIMITED; HSBC NORTH AMERICA HOLDINGS, INC.; COMMERZBANK AG; COMMERZBANK AG, NEW YORK BRANCH; BARCLAYS BANK Plc; BNP PARIBAS S.A.; STANDARD CHARTERED BANK; THE ROYAL BANK OF SCOTLAND N.V.; THE ROYAL BANK OF SCOTLAND PLC; CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK; CREDIT SUISSE AG; and BANK SADERAT Plc,<br><br>      Defendants. | 17-CV-08709-LTS-GWG |

**DEFENDANT COMMERZBANK AG'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS**

March 2, 2018

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

SUMMARY OF RELEVANT ALLEGATIONS ..........................................................................2

      A.     Commerzbank's Alleged Material Support To IRISL (Claim II) ..........................3

      B.     Commerzbank's Alleged Material Support To Its Customer, Orphans Project Lebanon (Claims IV and VI) ..................................................................4

ARGUMENT ..................................................................................................................................5

I.     THE COURT SHOULD DISMISS THE IRISL CLAIM (CLAIM II) ..............................5

II.    THE COURT SHOULD DISMISS THE ORPHANS PROJECT LEBANON CLAIMS (CLAIMS IV AND VI) ........................................................................................7

      A.     The Complaint Fails To State a Primary Liability Claim For Commerzbank's Transactions with Orphans Project Lebanon (Claim IV) ............7

      B.     The Complaint Fails To State an Aiding and Abetting Claim Based On Commerzbank's Transactions with Orphans Project Lebanon (Claim VI) ............8

      C.     The Complaint In Any Event Fails To Plead Personal Jurisdiction As To The Orphans Project Lebanon Claims (Claims IV and VI) ..................................9

III.   THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE NEW YORK BRANCH ..............................................................................................................10

CONCLUSION ..............................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Rules and Statutes**

18 U.S.C. § 2331(1) .................................................................................................. 1, 2, 6, 7

18 U.S.C. § 2332(d) .................................................................................................. 2

18 U.S.C. § 2339A .................................................................................................... 2

18 U.S.C. § 2339B .................................................................................................... 2

Antiterrorism Act, 18 U.S.C. § 2333(a) ................................................................... 1, 2, 5

Justice Against Sponsors of Terrorism Act,
Pub. L. No. 114-222, (2016).................................................................................... 2, 7, 8

N.Y. Banking Law § 200 (2006) .............................................................................. 10

**Cases**

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017) .............................................................................................. 9

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*,
137 S. Ct. 1773 (2017) .............................................................................................. 9-10

*Buffalo Laborers Sec. Fund v. J.P. Jeanneret Assocs., Inc. (In re Beacon Assocs. Litig.)*,
818 F. Supp. 2d 697 (S.D.N.Y. 2011)....................................................................... 10

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ................................................................................................ 9

*First Nat'l Bank of Bos. (Int'l) v. Banco Nacional de Cuba*,
658 F.2d 895 (2d Cir. 1981) ..................................................................................... 10

*Greenbaum v. Handlesbanken*,
26 F. Supp. 2d 649 (S.D.N.Y. 1998)......................................................................... 10

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010) ..................................................................................... 8, 9

*Linde v. Arab Bank PLC*,
-- F.3d --, Case Nos. 16-2119-cv (L), 16-2098-cv (CON), 16-2134-cv (CON), 2018 WL 797454 (2d Cir Feb. 9, 2018) ........................................................................................ passim

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*,
714 F.3d 118 (2d Cir. 2013) ........................................................................................ 1, 5-6

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
714 F.3d 659 (2d Cir. 2013) ........................................................................................ 6

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) .......................................................................................... 5, 7-8

*Strauss v. Crédit Lyonnais, S.A.*,
175 F. Supp. 3d 3, 23 (E.D.N.Y. 2016) ....................................................................... 9

**Other Authorities**

Executive Order 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) ......................................... 3

Executive Order 13382, 70 Fed. Reg. 38565 (July 1, 2005) ............................................ 3

U.S. Dep't of State, *Foreign Terrorist Organizations*,
http://www.state.gov/j/ct/rls/other/des/123085.htm ......................................................... 3

U.S. Dep't of the Treasury, *Major Iranian Shipping Company Designated for Proliferation Activity* (Sept. 10, 2008), http://www.treasury.gov/press-center/press-releases/Pages/hp1130.aspx ....................................................................................... 3

United Nations, *Security Council Imposes Additional Sanctions on Iran, Voting 12 in Favour to 2 Against, with 1 Abstention* (June 9, 2010),
https://www.un.org/press/en/2010/sc9948.doc.htm ........................................................ 3

Defendant Commerzbank AG fully joins Defendants' Joint Memorandum in Support of the Motion to Dismiss (the "Joint Memorandum") and respectfully submits this supplemental memorandum in support of its motion to dismiss claims asserted only against Commerzbank.[1]

## PRELIMINARY STATEMENT

The attacks on U.S. soldiers alleged in the Complaint are abhorrent. But Commerzbank is not responsible for those attacks, and Plaintiffs have not properly pleaded any claims against Commerzbank based on those attacks. The Court should therefore dismiss the First, Fifth, Seventh and Ninth Claims for Relief against Commerzbank for the reasons shown in the Joint Memorandum. As shown below, the Court should also dismiss the remaining claims against Commerzbank—the Second Claim for Relief (the "IRISL Claim"), and the Fourth and Sixth Claims for Relief (the "Orphans Project Lebanon Claims")—because they too impermissibly seek to stretch the civil liability provision of the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a), beyond its bounds, as construed by the Second Circuit.

Claims II and IV assert that Commerzbank is primarily liable under the ATA based on allegations that Commerzbank itself committed an "act of international terrorism," 18 U.S.C. § 2331(1), by providing (at most) <u>indirect</u> support for foreign terrorist organizations, including Hezbollah, that Plaintiffs allege are "responsible" (among others) for the attacks by which Plaintiffs were injured. Like the other indirect claims addressed in the Joint Memorandum, these claims are not supported by any well-pleaded facts that are sufficient to satisfy the indispensable proximate cause element under controlling Second Circuit precedent, including *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118 (2d Cir. 2013). Moreover,

---

[1] Capitalized terms, unless otherwise defined herein, have the meaning given to them in the Joint Memorandum. Plaintiffs have also named as a defendant "Commerzbank AG New York Branch" (the "New York Branch"), which is not a separate legal entity. The Court should dismiss Plaintiffs' claims against the New York Branch for the reasons shown in Part III, *infra* at 10.

these primary liability allegations against Commerzbank also fail to plausibly allege that Commerzbank committed an act of international terrorism, as defined in 18 U.S.C. § 2331(1) and construed in *Linde v. Arab Bank PLC*, -- F.3d --, Case Nos. 16-2119-cv (L), 16-2098-cv (CON), 16-2134-cv (CON), 2018 WL 797454, at *8 (2d Cir Feb. 9, 2018).

Claim VI contends that Commerzbank is secondarily liable under JASTA for aiding and abetting Hezbollah in perpetrating the attacks, but the Complaint neither alleges that Hezbollah "committed" any of the attacks, nor plausibly alleges any facts suggesting that Commerzbank provided knowing and substantial assistance to Hezbollah in perpetrating the attacks, as required to state an aiding and abetting claim under JASTA. Accordingly, and for the reasons below, all claims against Commerzbank should be dismissed.

## SUMMARY OF RELEVANT ALLEGATIONS

The claims against Commerzbank allege that Commerzbank is civilly liable under 18 U.S.C. § 2333(a) for injuries Plaintiffs suffered in attacks in Iraq because Commerzbank allegedly provided material support to the IRGC, Hezbollah, and other terrorist groups through its transactions with IRISL and Orphans Project Lebanon e.V. ("Orphans Project Lebanon"), purportedly while Commerzbank either knew or was deliberately indifferent to whether that support would be used in preparation for, or in carrying out, acts of international terrorism, purportedly in violation of 18 U.S.C. §§ 2339A and 2339B. *See* Compl. ¶¶ 1637-1719. The Complaint further alleges that Commerzbank's transactions with Orphans Project Lebanon give rise to secondary liability under JASTA, 18 U.S.C. § 2332(d).

Commerzbank is a financial institution headquartered in Frankfurt, Germany. *Id.* ¶ 117. In 2015, it entered into a number of settlement agreements with federal and state regulators in connection with financial transactions it processed for entities in Iran (including IRISL, but not including Orphans Project Lebanon) and elsewhere that violated U.S. sanctions laws. However,

2

nothing in those agreements links Commerzbank, or alleges that it provided any support, to any terrorists, terrorist organizations or terrorist activity, or any attacks perpetrated by any terrorist. *See id.* ¶¶ 1698-1719.

### A.   Commerzbank's Alleged Material Support To IRISL (Claim II)

On September 10, 2008, the United States Treasury's Office of Foreign Asset Control ("OFAC") designated IRISL as a Specially Designated National ("SDN"), *id.* ¶ 1219, pursuant to Executive Order 13382, entitled "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters."[2]  The Complaint alleges that Commerzbank "directly coordinated with IRISL in laundering USD through the United States," Compl. ¶ 1664, in violation of § 2339A, *id.* ¶ 2442.  Based on this contention, the Complaint then leaps to the conclusory allegation that the dollar-clearing services Commerzbank provided to IRISL foreseeably allowed IRISL to provide "substantial assistance" to Hezbollah and the terrorists allegedly responsible for Plaintiffs' injuries.  *Id.* ¶ 2444.  But the Complaint does not contain a single allegation that any of the proceeds of the dollar-clearing transactions between Commerzbank and IRISL were in fact transferred to—or that Commerzbank otherwise substantially assisted, much less knowingly—Hezbollah or any terrorists who committed the

---

[2] 70 Fed. Reg. 38565 (Jul. 1, 2005).  The Complaint alleges that IRISL "*did*, in fact, facilitate shipments of military cargo to Hezbollah," Compl. ¶ 1241, but IRISL has not been designated under any terrorism sanctions programs.  The SDN designation is distinct from OFAC's counterterrorism designations pursuant to Executive Order 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001), and from the designations of foreign terrorist organizations ("FTOs") by the Secretary of State, *see* U.S. Dep't of State, *Foreign Terrorist Organizations*, http://www.state.gov/j/ct/rls/other/des/123085.htm.  OFAC's press release concerning IRISL's designation does not mention Hezbollah at all, *see* U.S. Dep't of the Treasury, *Major Iranian Shipping Company Designated for Proliferation Activity* (Sept. 10, 2008), http://www.treasury.gov/press-center/press-releases/Pages/hp1130.aspx, and the United Nations Security Council Resolution 1929 cited in the Complaint ¶ 1231 also targeted Iran's nuclear program and contained no mentions of terrorism, *see* United Nations, *Security Council Imposes Additional Sanctions on Iran, Voting 12 in Favour to 2 Against, with 1 Abstention* (June 9, 2010), https://www.un.org/press/en/2010/sc9948.doc.htm.  While the Complaint alleges that IRISL was used to transport munitions, Compl. ¶¶ 1213-42, these allegations do not plausibly link IRISL to any of the attacks at issue.

3

attacks by which Plaintiffs were injured, or that these attacks would not have occurred without Commerzbank's transactions with IRISL.

### B. Commerzbank's Alleged Material Support To Its Customer, Orphans Project Lebanon (Claims IV and VI)

The Complaint alleges that Orphans Project Lebanon is a "Hezbollah fundraising organization" that maintained an account with Commerzbank in Germany, and that the "primary recipient of funds" from that account was the "Martyrs Foundation." *Id*. ¶¶ 1691-92. The Complaint states that the Martyrs Foundation (but not Orphans Project Lebanon) was designated by the United States on July 24, 2007 as a Specially Designated Global Terrorist ("SDGT") (but not as an FTO) for its alleged support to Hezbollah and other terrorist groups. *Id.* ¶ 1692. Based solely on these allegations, the Complaint makes the conclusory assertion that Commerzbank "violated § 2339B by providing material support to Hezbollah," *id.* ¶ 2462-65, and thus foreseeably provided substantial assistance to the attacks that injured Plaintiffs, *id.* ¶¶ 2267-68. As with the IRISL Claim, however, there are no non-conclusory allegations that funds provided by Commerzbank on behalf of Orphans Project Lebanon actually were transferred to Hezbollah, or were a but-for cause of the attacks by which Plaintiffs were injured.

In describing Claim VI, but nowhere in the body of the Complaint, the Complaint includes conclusory allegations that Commerzbank provided Orphans Project Lebanon with "illegal expert advice and assistance" in the form of "technical and highly specialized knowledge," *id.* ¶ 2487, which the Complaint further alleges was "substantial" because it enabled Orphans Project Lebanon "to transfer USDs to Hezbollah," *id.* ¶ 2488. But these conclusions

4

have no basis in the factual allegations in the Complaint, which say nothing about "specialized knowledge" or "USD" services given by Commerzbank to Orphans Project Lebanon.[3]

## ARGUMENT

## I. THE COURT SHOULD DISMISS THE IRISL CLAIM (CLAIM II)

*Failure to Plead Proximate Causation.* As explained in the Joint Memorandum, an indispensable element of any primary liability claim under Section 2333(a) is that the defendant proximately caused the plaintiff's injuries. Joint Mem. at 15-20. The Second Circuit has ruled that where a complaint alleges only that the defendant provided <u>indirect</u> support to the FTO that purportedly committed the attack by which the plaintiff was injured, the proximate cause requirement can be satisfied only by showing that funds provided by the defendant <u>actually were transferred</u> to that FTO <u>or</u> that such funds were otherwise a <u>but-for</u> cause of that attack. *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013); *Al Rajhi*, 714 F.3d at 124.

Claim II is a claim for <u>indirect</u> support of terrorist acts, like those in *Rothstein* and *Al Rajhi*, because it alleges only that (1) Commerzbank provided support in the form of dollar clearing services to IRISL (an SDN); (2) IRISL in turn provided material support to the IRGC and Hezbollah (an FTO); and (3) Hezbollah and the IRGC, among others, were somehow "responsible" for the attacks by which Plaintiffs were injured. *See* Compl. ¶¶ 2441-46. The Second Circuit squarely ruled in *Al Rajhi* that such allegations are insufficient to satisfy the proximate cause element of an ATA claim absent factual allegations that the funds provided by the defendant actually were transferred to the FTO or were used in carrying out the attack perpetrated by that FTO. In *Al Rajhi*, the complaint alleged that the defendants, including Al

---

[3] Presumably, only Plaintiffs injured in attacks allegedly perpetrated by Hezbollah assert Claims IV and VI, because the Complaint does not attempt to connect Orphans Project Lebanon to other attacks. But the Complaint contains no non-conclusory allegations that Hezbollah perpetrated <u>any</u> of the attacks. *See* Joint Mem. at 32-33 & n.12.

5

Rajhi Bank, were civilly liable for plaintiffs' injuries in the September 11, 2001 terrorist attacks because the defendants knowingly provided financial support and banking services "to purported charities that supported al Qaeda." 714 F.3d at 122, 123. For example, the complaint alleged that Al Rajhi Bank provided financial services to, among others, Al-Haramain Islamic Foundation ("Al-Haramain"), which had been designated by OFAC as an SDGT for its alleged support of al Qaeda. *O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 668 (2d Cir. 2013).[4] Nonetheless, the Second Circuit held that this allegation did not suffice to plausibly plead proximate cause because there were no "factual allegations" that the funds provided by defendants to Al-Haramain were transferred to al Qaeda or that such funds were a but-for cause of the September 11, 2001 attacks. *See Al Rajhi*, 714 F.3d at 124. *Al Rajhi* is therefore dispositive here. The Complaint contains no allegations that proceeds of the dollar clearing transactions between Commerzbank and IRISL were transferred to Hezbollah or to any other FTO that committed the attacks by which Plaintiffs were injured, or that such transactions were a but-for cause of those attacks.

*Failure to Plead Act of International Terrorism.* The IRISL Claim should also be dismissed because plaintiffs do not plausibly allege that Commerzbank committed an act of international terrorism as defined in Section 2331(1). As explained in the Joint Memorandum at 24-26, plaintiffs must plausibly allege that Commerzbank's actions "involve[d] violence or endanger[ed] human life" and "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government," *Linde*, 2018 WL 797454, at *8 (citing

---

[4] The *Asat Trust* decision was issued by the same panel of the Second Circuit on the same day and in the same multi-district litigation as the *Al Rajhi* decision, which noted that "[t]he background of the case is discussed in detail in the two [other] opinions issued today . . . . We need not elaborate further here, and we assume the parties['] familiarity with the facts and procedural history of this sprawling multi-district litigation." *Al Rajhi*, 714 F.3d at 122.

6

§ 2331(1)), but Plaintiffs make no factual allegations that plausibly—or even remotely—show that Commerzbank's dollar-clearing transactions with IRISL satisfy either of these elements. The Complaint contends that Commerzbank's "callous level of intent" is demonstrated by the higher fees it charged to IRISL, Compl. ¶ 1710, but a profit motive or an intent to evade U.S. sanctions do not even begin to satisfy the apparent terrorist intent requirement of Section 2331(1). *See Linde*, 2018 WL 797454, at *11 (holding that the knowing provision of financial support to Hamas did not as a matter of law satisfy the elements of Section 2331(1)).[5]

## II. THE COURT SHOULD DISMISS THE ORPHANS PROJECT LEBANON CLAIMS (CLAIMS IV AND VI)

### A. The Complaint Fails To State a Primary Liability Claim For Commerzbank's Transactions with Orphans Project Lebanon (Claim IV)

*Failure to Plead Proximate Causation.* Like the IRISL Claim, Claim IV asserts that Commerzbank is primarily liable based only on allegations of indirect support for terrorist acts, because it alleges that (1) Commerzbank provided commercial banking services to Orphans Project Lebanon; (2) Orphans Project Lebanon, from its Commerzbank account, provided funds to the Martyrs Foundation; (3) the Martyrs Foundation provided support to Hezbollah; and (4) Hezbollah, in turn, is (among others) responsible for the attacks by which Plaintiffs were injured. Compl ¶ 1692. The claim therefore fails to plead the requisite proximate cause element. Neither Orphans Project Lebanon nor Martyrs Foundation was designated by the Secretary of State as an FTO, and thus Commerzbank's provision of financial services for or to them does not make it

---

[5] The Complaint contains conclusory allegations that IRISL was part of a broad conspiracy among the government of Iran, Iranian financial institutions and certain western banks. *See* Compl. ¶ 687. The IRISL Claim, however, is asserted as a primary liability claim, *see id.* ¶¶ 2441-46. Even if Plaintiffs were permitted to amend this claim to assert secondary liability, the Court would still need to dismiss the IRISL Claim because, as the Joint Memorandum demonstrates, Plaintiffs have failed to plausibly allege the elements of either aiding and abetting or conspiracy under JASTA. *See* Joint Mem. at 31-40; *infra* Section II.B.

7

*per se* liable to Plaintiffs. *See Rothstein*, 708 F.3d at 96; *supra* at 5. Moreover, there are no non-conclusory allegations concerning the purported link between Orphans Project Lebanon and Hezbollah, that any funds transferred by Commerzbank on behalf of Orphans Project Lebanon actually were transferred on to Hezbollah or to any other terrorist group responsible for Plaintiffs' injuries, or that Commerzbank's provision of banking services to Orphans Project Lebanon was a but-for cause of Plaintiffs' injuries. *See* Compl. ¶¶ 2461-65.

*Failure to Plead Act of International Terrorism.* The Complaint fails to plausibly allege that Commerzbank's provision of financial services to Orphans Project Lebanon constituted an act of international terrorism because it does not plausibly allege that such conduct involved violence or endangered life or exhibited an apparent intent to intimidate a government or population. *See supra* at 6-7. Among other defects, the Complaint does not allege that by maintaining accounts for, and providing routine banking services to, Orphans Project Lebanon, Commerzbank knowingly supported terrorists or terrorist attacks. *See* Compl. ¶¶ 1694-92; *cf. Linde*, 2018 WL 797454, at *11.

### B. The Complaint Fails To State an Aiding and Abetting Claim Based On Commerzbank's Transactions with Orphans Project Lebanon (Claim VI)

As explained in the Joint Memorandum, in order to state an aiding and abetting claim under JASTA, Plaintiffs must plausibly allege that Commerzbank (i) provided substantial assistance (ii) to the person or entity that "committed" the attacks (iii) with general awareness of its role in such primary violator's terrorist activity. *See* Joint Mem. at 36.

Claim VI fails to plead facts supporting any of these elements. Because there are no facts pled to support it, the bald legal conclusion that Commerzbank agreed to help Orphans Project Lebanon transfer funds to Hezbollah, Compl. ¶ 2490, is "not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

8

679 (2009)). Nor is the allegation that Commerzbank provided substantial assistance to Hezbollah by providing "expert advice" to Orphans Project Lebanon, for the same reason. Compl. ¶ 2487. Moreover, there are no factual allegations tying Commerzbank or Orphans Project Lebanon or even Hezbollah itself directly to any attacks. There is consequently no plausible allegation that Commerzbank's actions somehow "substantially assist[ed] the principal violation." *Linde*, 2018 WL 797454, at *12 (quoting *Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983)).

### C. The Complaint In Any Event Fails To Plead Personal Jurisdiction As To The Orphans Project Lebanon Claims (Claims IV and VI)

This Court cannot exercise general personal jurisdiction over Commerzbank, a German corporation with its principal place of business in Germany. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-62 & n.19 (2014); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017). Instead, Plaintiffs allege that the Court may exercise specific personal jurisdiction over Commerzbank and the other Defendants based on their processing of U.S. dollar transactions through the United States. *See* Compl. ¶ 71. Specific jurisdiction must be alleged for each claim asserted in the case. *See Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 23 (E.D.N.Y. 2016). The body of the Complaint and Claim IV do not allege that any of the transactions that Commerzbank processed for Orphans Project Lebanon—not even a single one—transited the United States or even was in U.S. dollars. Compl. ¶¶ 1691-92, 2461-65. Claim VI, however, nevertheless concludes that Commerzbank aided and abetted Hezbollah by helping Orphans Project Lebanon "transfer USDs to Hezbollah." Compl. ¶ 2488. "[B]ecause they are no more than conclusions," these pleadings "are not entitled to the assumption of truth." *Hayden*, 594 F.3d at 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Without any nexus between the Orphans Project Lebanon Claims and the forum, there is no personal jurisdiction. *Bristol-Myers*

9

*Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017). The Court should dismiss Claims IV and VI for this reason, in addition to the failure to state a claim discussed above.

### III. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE NEW YORK BRANCH

Plaintiffs' claims against the New York Branch rely on a misconception about the legal status of a bank branch and should be dismissed. It is "well-settled" that, for purposes of being sued, "the domestic branch of a foreign bank is not a separate legal entity under either New York or federal law." *Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649, 651-52, 654 (S.D.N.Y. 1998); *see also First Nat'l Bank of Bos. (Int'l) v. Banco Nacional de Cuba*, 658 F.2d 895, 900 (2d Cir. 1981). Commerzbank's New York Branch is licensed as a domestic branch of a foreign bank.[6] The Court should therefore dismiss the New York Branch from this action.

### CONCLUSION

For all of the foregoing reasons and those stated in the Joint Memorandum, the Court should dismiss the Complaint in its entirety as against Commerzbank.

---

[6] *See* Commerzbank AG, Consent Order Under New York Banking Law §§ 39 and 44 at 1 (Mar. 11, 2015), http://www.dfs.ny.gov/about/ea/ea150312.pdf (noting "Commerzbank is a major international banking institution . . . licensed by the [New York State Department of Financial Services] to operate a foreign bank branch in New York State"); *see also* N.Y. Banking Law § 200 (2006).

Dated: March 2, 2018
      New York, New York

                                    Respectfully submitted,

                                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                    By:  /s/ *Jonathan I. Blackman*

                                         Jonathan I. Blackman

                                    One Liberty Plaza
                                    New York, New York 10006
                                    (212) 225-2000

                                  Attorneys for Defendant Commerzbank AG