UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TIMOTHY O'SULLIVAN, et al.,

                                        Plaintiffs,

                    -against-

DEUTSCHE BANK AG; HSBC BANK USA,
N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc;
HSBC BANK MIDDLE EAST LIMITED; HSBC
NORTH AMERICA HOLDINGS, INC.;
COMMERZBANK AG; COMMERZBANK AG,
NEW YORK BRANCH; BARCLAYS BANK Plc;
BNP PARIBAS S.A.; STANDARD CHARTERED
BANK; THE ROYAL BANK OF SCOTLAND
N.V.; THE ROYAL BANK OF SCOTLAND PLC;
CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE
CORPORATE & INVESTMENT BANK; CREDIT
SUISSE AG; and BANK SADERAT Plc,

                                        Defendants.

17-CV-08709-LTS-GWG

---

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' OBJECTIONS TO THE STAY OF DISCOVERY**

May 21, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

APPLICABLE LAW ........................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.      JUDGE GORENSTEIN CORRECTLY CONCLUDED THAT THE MOTIONS
       TO DISMISS ARE STRONG............................................................................................ 4

      A.    Judge Gorenstein Properly Applied *Rothstein* and *O'Neill* to Plaintiffs'
           Primary-Liability Claims....................................................................................... 4

      B.    Judge Gorenstein Properly Applied JASTA to Plaintiffs' Secondary-
           Liability Claims ................................................................................................... 9

II.     JUDGE GORENSTEIN'S FINDINGS AS TO THE BREADTH OF THE
       PROPOSED DISCOVERY AND THE LACK OF MEANINGFUL PREJUDICE
       TO PLAINTIFFS FURTHER SUPPORT THE STAY.................................................... 13

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu-Nassar v. Elders Futures, Inc.*,
   1994 WL 445638 (S.D.N.Y. Aug. 17, 1994)........................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................9

*Freeman v. HSBC Holdings, PLC*,
   14-cv-06601-DLI-CLP (E.D.N.Y. Jan. 16, 2015).................................................1

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ............................................................... 10, 11, 12

*Hong Leong Fin. Ltd. v. Pinnacle Performance Ltd. (Singapore)*,
   297 F.R.D. 69  (S.D.N.Y. 2013) ......................................................................3, 13

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018) .................................................................... 10, 11

*Martinez v. Connelly*,
   2011 WL 5252749 (S.D.N.Y. Nov. 3, 2011).........................................................4

*Moore v. Publicis Groupe SA*,
   2012 WL 517207 (S.D.N.Y. Feb. 14, 2012)..........................................................3

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   2003 WL 21872389 (S.D.N.Y. Aug. 7, 2003)........................................................3

*O'Neill v. Al Rajhi Bank*,
   714 F.3d 118 (2d Cir. 2013) ......................................................................passim

*Ofisi v. BNP Paribas, S.A.*,
   2017 WL 4355922 (D.D.C. Sept. 29, 2017) .........................................................5

*Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998) .........................................12

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) ........................................................................passim

*Shaffer v. Deutsche Bank AG*,
   2017 WL 8786497 (S.D. Ill. Dec. 7, 2017) .....................................................1, 5

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
    206 F.R.D. 367 (S.D.N.Y. 2002) ............................................................................3

*In re Term Commodities Cotton Future Litig.*,
    2013 WL 1907738 (S.D.N.Y. May 8, 2013) ......................................................13

*Tiffany & Co. v. Costco Wholesale Corp.*,
    2013 WL 5677020 (S.D.N.Y. Oct. 18, 2013) ......................................................3

**Statutes & Rules**

18 U.S.C. § 2331 ..................................................................................................10

18 U.S.C. § 2333 ..............................................................................................passim

Fed. R. Civ. P. 72 ..................................................................................................3

## INTRODUCTION

The Moving Defendants[1] respectfully submit this joint memorandum of law in opposition to Plaintiffs' Objections to Magistrate Judge Gorenstein's Opinion and Order Granting Defendants' Motion to Stay Discovery.  (Dkt. No. 120 ("Obj. Br.").)  Judge Gorenstein correctly found both that "the defendants have made a strong showing that they are likely to succeed on their motion to dismiss with respect to liability under 18 U.S.C. § 2333", (Dkt. No. 118 ("Stay Dec.") at 14), and that "the breadth of discovery sought by plaintiffs would impose a significant burden on both the defendants and third parties", *id.* at 17-18.  In granting a stay, Judge Gorenstein plainly did not abuse his discretion, weighing these considerations alongside the lack of meaningful prejudice to Plaintiffs that would result.

Plaintiffs do not object to Judge Gorenstein's findings regarding burden or prejudice.  Instead, they limit their arguments to Judge Gorenstein's findings that the motions to dismiss are strong.  Plaintiffs' arguments are without merit.  Judge Gorenstein correctly applied Second Circuit precedent and the plain language of the Justice Against Sponsors of Terrorism Act ("JASTA") to find that the Moving Defendants' motions to dismiss are strong, and committed no error, much less clear error or a decision contrary to law.  Judge Gorenstein's findings are consistent with the discovery stays entered in two other similar Anti-Terrorism Act ("ATA") cases: *Freeman v. HSBC Holdings, PLC*, 14-cv-06601-DLI-CLP, Dkt. No. 37 (E.D.N.Y. Jan. 16, 2015) and *Shaffer v. Deutsche Bank AG*, 16-cv-00497-MJR-SCW, Dkt.

---

[1] The "Moving Defendants" are Deutsche Bank AG; HSBC Bank USA, N.A.; HSBC Holdings plc; HSBC Bank plc; HSBC Bank Middle East Limited; HSBC North America Holdings, Inc.; Commerzbank AG; Commerzbank AG, New York Branch; Barclays Bank PLC; BNP Paribas S.A.; Standard Chartered Bank; The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.); The Royal Bank of Scotland plc; Crédit Agricole Corporate & Investment Bank; and Credit Suisse AG.

No. 42 (S.D. Ill. Aug. 5, 2016).  Plaintiffs' request to vacate or modify Judge Gorenstein's Order should be denied.

## BACKGROUND

The Complaint is premised on an alleged conspiracy among the Moving Defendants, "Iran and its Agents and Proxies" to evade U.S. economic sanctions against Iran (the "Conspiracy").  *See* Compl. ¶¶ 1371-84.  The Complaint fails to define these "Agents and Proxies" in full, but instead loosely applies the phrase to include over two dozen named and unnamed Iranian entities.  *Id.* ¶ 1371.  The Complaint asserts that, as part of the Conspiracy, "Defendants knowingly agreed to transfer hundreds of billions of dollars and conduct billions of dollars in illicit trade-finance transactions, as well as provide expert advice, all in violation of U.S. international laws and sanctions".  *Id.*  Plaintiffs further claim in conclusory fashion that the Conspiracy "enabl[ed] Iran and its Agents and Proxies to authorize, plan, and commit acts of international terrorism".  *Id.* ¶ 1386.  Based on these conclusory allegations, Plaintiffs contend that the Moving Defendants are civilly liable under the ATA for injuries caused to U.S. military personnel in Iraq.

Motions to dismiss the Complaint will be fully briefed with the filing of the Moving Defendants' reply briefs on June 1, 2018.  On February 7, the Moving Defendants filed a joint memorandum of law in support of their motion to stay discovery during the pendency of the motions to dismiss, (Dkt. No. 95 ("Stay Br.")), along with an exemplar declaration detailing the significant burden that would be associated with the discovery sought by Plaintiffs, (Dkt. No. 96).  On April 26, after full briefing by the parties, Judge Gorenstein entered an Opinion and Order granting the Moving Defendants' motion to stay discovery.  (Stay Dec.)  On May 10, Plaintiffs filed their objections to Judge Gorenstein's Order.  (Obj. Br.)

## APPLICABLE LAW

"Under Rule 72(a), the district judge . . . must consider timely objections to the magistrate judge's decision and modify or set aside any part of the order that is clearly erroneous or contrary to law.  A ruling is clearly erroneous where on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed.  An order is considered to be contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tiffany & Co. v. Costco Wholesale Corp.*, 2013 WL 5677020, at *1 (S.D.N.Y. Oct. 18, 2013) (Swain, J.) (citations and quotation marks omitted).  "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Id*.  "Moreover, it is well-settled that a magistrate judge's resolution of discovery disputes deserves substantial deference." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 2003 WL 21872389, at *2 (S.D.N.Y. Aug. 7, 2003) (Swain, J.). Accordingly, "a party seeking to overturn a discovery order bears a heavy burden." *Moore v. Publicis Groupe SA*, 2012 WL 517207, at *1 (S.D.N.Y. Feb. 14, 2012).

Where a motion has the potential to be dispositive of the entire case or of all claims against a single defendant, the court may properly stay discovery until resolution of that motion. *See Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).  In deciding whether to stay discovery, "courts consider: (1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citations omitted).[2]

---

[2] While Plaintiffs assert that Judge Gorenstein reached a "conclusion without the benefit of Plaintiffs' brief in opposition to Defendants' motion to dismiss", Obj. Br. at 1, Plaintiffs had ample opportunity to make their arguments in opposing the motion to stay.

3

**ARGUMENT**

Judge Gorenstein appropriately exercised discretion in granting the Moving Defendants' motion to stay discovery, carefully considering all of the Complaint's allegations and correctly applying each of the three discovery stay factors. As to the only stay factor that Plaintiffs challenge—the strength of the Moving Defendants' motions to dismiss—Judge Gorenstein properly applied *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), *O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013), and JASTA, and Judge Gorenstein's decision was not "clearly erroneous" or "contrary to law".[3]

## I.   JUDGE GORENSTEIN CORRECTLY CONCLUDED THAT THE MOTIONS TO DISMISS ARE STRONG

### A.   Judge Gorenstein Properly Applied *Rothstein* and *O'Neill* to Plaintiffs' Primary-Liability Claims

It is well settled that, to state a primary liability claim under the ATA, a plaintiff must establish that a defendant's actions proximately caused their injuries. *See Rothstein*, 708 F.3d at 95-97; *O'Neill*, 714 F.3d at 123-24. In *Rothstein*, the Second Circuit affirmed dismissal of ATA claims against defendant UBS AG because there was not a plausible allegation that UBS AG's conduct in transferring U.S. currency to Iran proximately caused the injuries sustained by the plaintiffs from bombings carried out by Hezbollah and Hamas in Israel. 708 F.3d at 92. The

---

[3] In challenging Judge Gorenstein's findings, Plaintiffs raise several arguments noted below that were not made to Judge Gorenstein in Plaintiffs' opposition to the Moving Defendants' motion to stay discovery. The Court should disregard these arguments, as they are not objections to Judge Gorenstein's decision and cannot be considered in deciding whether that decision was "clearly erroneous" or "contrary to law". *See Martinez v. Connelly*, 2011 WL 5252749, at *2 (S.D.N.Y. Nov. 3, 2011) (rejecting Rule 72 objections to a magistrate judge's findings because "new arguments raised for the first time in objections and not presented to the Magistrate Judge cannot be considered"); *Abu-Nassar v. Elders Futures, Inc.*, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (explaining that "arguments not raised before the magistrate judge" "are not submitted as objections but as new arguments" and accordingly are "untimely").

Second Circuit found that (i) UBS AG did not participate in the terrorist attacks, (ii) UBS AG did not provide bank notes directly to terrorists, (iii) UBS AG was not itself necessary to Iran's terrorism funding and (iv) Iran has legitimate needs for financial services.  *Id.* at 96-98.  Here, Judge Gorenstein analyzed Plaintiffs' primary-liability claims and concluded that Plaintiffs' "allegation of proximate cause is similar to the allegations at issue in *Rothstein*".  (Stay Dec. at 11.)  Accordingly, as numerous other courts that have applied *Rothstein* to similar primary-liability ATA claims have found, Judge Gorenstein concluded that "plaintiffs' allegations of proximate cause with respect to their claims of primary liability are insufficient."  (Stay Dec. at 12); *see also, e.g.*, *O'Neill*, 714 F.3d 118; *Ofisi v. BNP Paribas, S.A.*, 2018 WL 396234 (D.D.C. Jan. 11, 2018); *Shaffer v. Deutsche Bank AG*, 2017 WL 8786497 (S.D. Ill. Dec. 7, 2017).

      The crux of Plaintiffs' argument here is that Judge Gorenstein "overlooked" "critical differences" between their allegations and those in *Rothstein* and *O'Neill*, and, as a result, reached a conclusion that was "clearly erroneous" or "contrary to law".  (Obj. Br. at 6.)  In fact, Judge Gorenstein did not "overlook" these purported differences, which do not alter the proximate cause analysis or insufficiency of the allegations.

      ***Alleged Volume of U.S. Dollars.***  Plaintiffs argue that the defendant in *Rothstein*, UBS AG, allegedly provided Iran with "hundreds of millions of dollars", whereas the Moving Defendants here allegedly provided Iran with "hundreds of billions of dollars".  (Obj. Br. at 2-3.)[4]  The deficiencies that the Second Circuit identified in *Rothstein*, however, were not based on the volume of U.S. dollars transferred to Iran, but rather on a series of causal gaps between the provision of funds and plaintiffs' injuries, including that—as here—"the complaint fails to show

---

    [4] Judge Gorenstein's order states that in *Rothstein* the defendant allegedly transferred "billions" to Iran, (Stay Dec. at 11), although the amount alleged to be transferred to Iran was "hundreds of millions", *Rothstein*, 708 F.3d at 92-93—a difference that is immaterial here.

that any defendant 'was a participant in the terrorists attacks that injured plaintiffs, . . . provided money to [the terrorist organizations that carried out the attacks] [,] . . . that U.S. currency the defendants transferred to Iran was given to those terrorist organizations[,] . . . [or] that if [defendants] had not transferred U.S. currency to Iran, Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured'". (Stay Dec. at 11 (quoting *Rothstein*, 708 F.3d at 97) (alterations in original).)  There is no suggestion in *Rothstein* or *O'Neill* that any particular volume of funds would have plausibly established proximate cause given the obvious causal gaps present in those cases and in the Complaint.  *See Rothstein*, 708 F.3d at 97; *O'Neill*, 714 F.3d at 124.  Accordingly, Judge Gorenstein properly found that "plaintiffs' allegations of proximate cause with respect to their claims of primary liability are insufficient".  (Stay Dec. at 12.)

      ***Funds Allegedly Transferred to Terrorists*.**  Plaintiffs also raise here, but elected not to raise in their opposition brief before Judge Gorenstein, that they allege "(1) more than $150 million Eurodollars cleared through the United States and then transferred to Hezbollah and Iran's Islamic Revolutionary Guard Corps; [and] (2) numerous transactions directly with Bank Saderat (a Specially Designated Global Terrorist and a major facilitator of Hezbollah's financial activities) and Bank Melli (a Specially Designated National that transferred at least $100 million to the Qods Force[)]".  (Obj. Br. at 4.)  Plaintiffs provide only one citation to a single paragraph in their Complaint for these assertions, and the paragraph cited provides no support for them. (*See* Obj. Br. at 4-5 (citing Complaint ¶ 911 (describing the Qods Force but providing no link between the Moving Defendants and the Qods Force)).)  Moreover, even this new argument tacitly admits that it was Bank Saderat and Bank Melli, and not the Moving Defendants, that allegedly transferred such funds.  *See id.*  Finally, the bare allegation that funds were transferred

to entities on OFAC sanctions lists does not mean, as Plaintiffs imply, that those funds were provided to terrorists.  *See id.* at 5 (alleging "tens of thousands of admitted transactions valued at hundreds of billions of dollars for entities on the OFAC sanctions lists").  As Judge Gorenstein correctly found, Plaintiffs do not plausibly allege that the Moving Defendants transferred funds to terrorist organizations, (*see* Stay Dec. at 12), nor do Plaintiffs' allegations fill any of the other causal gaps identified in *Rothstein* and *O'Neill*.

> **Expert Advice Allegations.**  Plaintiffs assert that "Defendants provided expert advice to Iran, its bankers, and other terrorists about how to covertly access the U.S. financial system, enabling these individuals and entities to continue financing terrorism."  (Obj. Br. at 3.)  Although Plaintiffs did not raise these "expert advice" allegations before Judge Gorenstein, Judge Gorenstein considered them.  (*See* Stay Dec. at 4.)  The Complaint does not specify to which groups the Moving Defendants are alleged to have provided expert advice, other than some Iranian banks and unnamed "Iranian entities".  *See, e.g.*, Compl. ¶ 1730.  Moreover, the purported expert advice alleged in the Complaint pertains to sanctions evasion, not terrorist acts.  If the plaintiffs in *Rothstein* or *O'Neill* had alleged that the defendants had given expert advice to Iranian entities regarding economic sanctions, that still would not fill any of the causal gaps identified in those cases because the Second Circuit requires some direct relation between the plaintiff's injury and the defendant's conduct.  *See Rothstein*, 708 F.3d at 97; *O'Neill*, 714 F.3d at 123-24.  Accordingly, Judge Gorenstein correctly found that "plaintiffs' allegations of proximate cause with respect to their claims of primary liability are insufficient."  (Stay Dec. at 11-12.)

> **Trade Financing Allegations.**  Plaintiffs assert that "unlike Plaintiffs in this case, the plaintiff in *Rothstein* did not allege the defendant-bank provided trade financing for materials

specifically designed for use in terror attacks." (Obj. Br. at 5.)  Again, Plaintiffs' briefing to Judge Gorenstein did not raise these "trade financing" allegations.  Moreover, the Complaint alleges trade financing only for commercial aircraft, aircraft parts and other dual-use goods, and contains no non-conclusory allegations that such materials were obtained for use in any attacks. *See, e.g.*, Compl. ¶¶ 1205-06, 1921-37.  Nor does the alleged trade financing fill any of the causal gaps that were present in *Rothstein* and *O'Neill*.  At most, the Complaint alleges financing services to Iranian entities, an allegation materially indistinguishable from the allegations in *Rothstein* and *O'Neill*.

      ***Iran's Legitimate Uses of Financial Services.***  Plaintiffs assert—again raising an argument they did not make to Judge Gorenstein—that *Rothstein* and *O'Neill* are inapplicable because plaintiffs there raised no plausible allegation that the funds that the defendants allegedly transferred to Iran were used for non-legitimate purposes, and that, in contrast, Plaintiffs here have done so.  (Obj. Br. at 3-4.)  Plaintiffs contend that the Moving Defendants' transfer of funds to Iran could not have had any legitimate purpose because, if they did, the Moving Defendants would have relied on the U-Turn exemption, and, according to Plaintiffs, the Moving Defendants were instead allegedly "concealing and disguising" the transfers.  In fact, these allegations are analogous to those in *Rothstein*, where all alleged transfers of funds to Iran "were forbidden by OFAC regulations [if conducted by U.S. persons] and had not been reported to OFAC or the Federal Reserve [as required by UBS's agreement with the Federal Reserve]".  708 F.3d at 87 (citation omitted).  Despite the fact that UBS AG breached its agreement with the Federal Reserve to apply OFAC regulations in transferring U.S. bank notes, *Rothstein* recognized that the currency still could have been used for legitimate purposes.  *Id.* at 97.  Likewise, in this case, Judge Gorenstein noted that "Iran is a government, and as such it has many legitimate agencies,

operations, and programs to fund", (Stay Dec. at 12-13 (quoting *Rothstein*, 708 F.3d at 97)), and

found a lack of plausible allegations that the processing of U.S.-dollar denominated transactions

for Iran plausibly equated to, or proximately caused, the alleged terrorist acts.  In sum, none of

these purported differences between the allegations in *Rothstein* and *O'Neill* and Plaintiffs'

Complaint establishes that Judge Gorenstein's opinion is incorrect, much less that the application

of *Rothstein* and *O'Neill* was "clearly erroneous" or "contrary to law".[5]

    Finally, Plaintiffs assert that Judge Gorenstein "fail[ed] to take the allegations in

the Complaint as true and construe them (and all reasonable inferences to be drawn from them)

in the light most favorable to Plaintiffs".  (Obj. Br. at 6.)  In fact, Judge Gorenstein explicitly

accepted the Complaint's allegations as true, (*see, e.g.*, Stay Dec. 12 ("Accepting these

statements as true . . . .")); *id.* at 14, and undertook a thorough review of the Complaint, *id.* at

13-14 (discussing a detailed and searching review of the Complaint), and also assessed, as the

Court must, the plausibility of the claims premised on non-conclusory factual allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

### B. Judge Gorenstein Properly Applied JASTA to Plaintiffs' Secondary-Liability Claims

    JASTA created limited civil conspiracy liability where:  (1) a plaintiff's injuries

arise from an act of international terrorism that has been "committed, planned, or authorized" by

an organization that has been officially designated an FTO as of the date on which the act was

"committed, planned, or authorized", 18 U.S.C. § 2333(d)(2) *and* (2) the defendant "'aids and

---

[5] Plaintiffs also assert that because certain of their "allegations are based on government findings", the allegations in their Complaint are plausible.  (Obj. Br. at 5.)  Judge Gorenstein credited the prior government findings, (Stay Dec. at 5), but those findings do not go to the crux of Plaintiffs' proximate-causation problem because the findings involved sanctions violations and non-transparent banking practices, not terrorist acts, (*see* Stay Br. at 10).

abets, by knowingly providing substantial assistance [to], or who conspires with the person who committed such an act of international terrorism'", *Linde v. Arab Bank, PLC*, 882 F.3d 314, 320 (2d Cir. 2018) (alteration in original) (quoting 18 U.S.C. § 2333(d)(2)).  Judge Gorenstein properly applied both aiding-and-abetting and conspiracy law to find that "[a]s to secondary liability, defendants have also made a strong showing that plaintiffs' claims are unmeritorious." (Stay Dec. at 12.)

(1)    <em>Application of Aiding-and-Abetting Law Under JASTA</em>

Plaintiffs assert that "[c]ontrary to the Magistrate Judge's assertion, an aiding-and-abetting claim under JASTA does not require allegations (and, at trial, evidence) that Defendants '*knew* that the financial services they provided to Iran and its Agents and Proxies would in turn be given to terrorist organizations to carry out violent or life-endangering activities.'"  (Obj. Br. at 7 (emphasis in original).)  However, the plain text of JASTA indicates that it applies only where a defendant "aids and abets, by *knowingly providing substantial assistance [to]* . . . the person who committed such an act of international terrorism'", as defined in 18 U.S.C. § 2331(1).  *Linde*, 882 F.3d at 320 (alteration in original) (emphasis added). Plaintiffs assert that Judge Gorenstein misapplied *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), which instructs on, for example, the "factors relevant to the substantial assistance element".  *See Linde*, 882 F.3d at 329.  As Plaintiffs acknowledge, *Halberstam* requires that "'the defendant must knowingly and substantially assist the principal violation.'"  (Obj. Br. at 7 (quoting *Halberstam*, 705 F.2d at 487).)  Accordingly, to state a claim under JASTA, a plaintiff must plausibly allege that the defendant knowingly provided substantial assistance to a person that carried out a violent act that appears to have been intended to intimidate, coerce or to influence the policy of a government (and was committed, planned, or authorized by an FTO)—which is exactly the standard that Judge Gorenstein applied.  (*See* Stay Dec. at 12-13.)

10

Further, Plaintiffs cite *Linde* for the proposition "that aiding and abetting does not 'require proof that [the defendant-bank] knew of the specific attacks at issue when it provided financial services' nor does it require proof that the defendant wished to bring about the attacks." (Obj. Br. at 8 (alteration in original).) But Judge Gorenstein did not conclude that the defendant banks were required either to know of the specific attacks at issue, or to wish to bring about the attacks. As JASTA requires, Judge Gorenstein concluded that the banks had to know only that the funds would be given to terrorist organizations to carry out violent or life-endangering activities. (*See* Stay Dec. at 12 ("The complaint alleges that the defendants knew that they were circumventing sanctions by providing Iran with financial services. It also alleges that the defendants 'knew that sanctions were imposed against Iran with the sole and specific purpose of stopping Iran's sponsorship of terrorism.' Accepting these statements as true, however, they do not show that the defendants knew that the financial services they provided to Iran and its Agents and Proxies would in turn be given to terrorist organizations to carry out violent or life-endangering activities." (citations omitted)).)[6]

(2)     *Application of Conspiracy Law under JASTA*

Plaintiffs assert that, "[u]nder established conspiracy law, consistent with *Halberstam*, a defendant may be secondarily liable for the wrongful acts of his co-conspirator, despite never having any direct dealings with the co-conspirator or even being aware of his identity." (Obj. Br. at 10.) Plaintiffs thus contend that Judge Gorenstein committed error by

---

[6] Plaintiffs also assert that Judge Gorenstein committed error by citing *Rothstein* in the secondary liability analysis because *Rothstein* was a primary liability case. (Obj. Br. at 9-10.) Plaintiffs are correct that *Rothstein* is a primary liability case, but they are wrong in arguing that it was error to cite that case. As is plain from Judge Gorenstein's opinion, *Rothstein* was quoted in the secondary-liability discussion for the proposition that "Iran is a government" and thus has many legitimate governmental programs to fund. (Stay Dec. at 12-13 (citations omitted)).

"wrongly suggesting Plaintiffs must allege a direct transactional relationship between Defendants and the FTOs responsible for the terrorist attacks". *Id.*

Contrary to Plaintiffs' argument, the plain language of JASTA states that where a plaintiff plausibly alleges that an act of international terrorism was "committed, planned, or authorized" by a designated FTO, a defendant is liable for conspiracy only if it "conspires *with the person who committed* such an act of international terrorism". 18 U.S.C. § 2333(d)(2) (emphasis added). The "Findings and Purpose" text of JASTA does not, through its mention of *Halberstam*, contradict these plain terms and create a common-law-based civil conspiracy action through its mention of *Halberstam*. *See Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 211-12 (1998) (explaining that the "findings and purpose" section is "irrelevant" in "the context of an unambiguous statutory text"). Indeed, the clear meaning of JASTA's conspiracy provision is that Plaintiffs must plausibly allege that the Moving Defendants conspired with the person or entity that actually committed the act of international terrorism (and not even, for example, the FTO that "planned" or "authorized" the act of international terrorism) to state a claim under JASTA. *See* 18 U.S.C. § 2333(d)(2). Plaintiffs argue that "[r]equiring Plaintiffs to plead that Defendants conspire *directly* with a FTO entirely destroys secondary liability and, if applied here, would place the conduct squarely in the realm of Primary Liability". (Obj. Br. at 11 (emphasis in original).) That is simply not the case—a conspiracy claim is not a primary-liability claim—but this is in any case a quarrel with JASTA's statutory terms, not Judge Gorenstein's opinion.

Finally, Plaintiffs' assertions that "Defendants have admitted to joining the criminal enterprise with Iran" and that they "knowing[ly]" engaged in an "illegal . . . conspiracy with Iran and its Agents and Proxies", (Obj. Br. at 13), are simply not plausibly supported by the

Complaint, which merely pleads economic sanctions violations and non-transparent banking practices through the DPAs and Consent Orders, *see infra* at 9 n.5.  As Judge Gorenstein found, these allegations, even accepted as true, do not establish in any way that the Moving Defendants entered into a conspiracy related to acts of international terrorism.  (Stay Dec. at 14.)

## II.   JUDGE GORENSTEIN'S FINDINGS AS TO THE BREADTH OF THE PROPOSED DISCOVERY AND THE LACK OF MEANINGFUL PREJUDICE TO PLAINTIFFS FURTHER SUPPORT THE STAY

Judge Gorenstein also properly addressed the stay considerations of "(1) [the] breadth of discovery sought, [and] (2) any prejudice that would result".  Stay. Op. at 7 (quoting *Hong Leong Fin. Ltd.*, 297 F.R.D. at 72).  Analyzing the first factor, Judge Gorenstein "agreed with defendants that the breadth of discovery here would pose a significant burden on defendants", as plaintiffs sought "discovery regarding over two thousand allegations in the complaint (covering 514 pages) involving seventeen defendants and thousands of financial transactions".  (Stay Dec. at 15.)  Judge Gorenstein also concluded that "there is some potential that plaintiffs will be prejudiced by the institution of a stay", but found that any potential harm did not outweigh the other factors.  *Id.* at 19.  Plaintiffs do not challenge the application of either of these stay considerations as "clearly erroneous" or "contrary to law".  (*See generally*, Obj. Br.)  This alone is reason to overrule Plaintiffs' objections.  *See In re Term Commodities Cotton Future Litig.*, 2013 WL 1907738, at *5-*6 (S.D.N.Y. May 8, 2013) (considering the burden of discovery and prejudice to plaintiffs, but not the strength of the motion, and granting a stay).

## CONCLUSION

For the reasons set forth above, the Moving Defendants respectfully submit that Plaintiffs' request to vacate or modify Judge Gorenstein's Order granting a stay of discovery during the pendency of the motions to dismiss should be denied in its entirety.

Dated: May 21, 2018

Respectfully submitted,

COVINGTON & BURLING LLP,                    MAYER BROWN LLP,

by                                           by

   */s/ John E. Hall*                           */s/ Mark G. Hanchet*               
     (with permission)                           (with permission)

     John E. Hall                                Mark G. Hanchet
     Mark P. Gimbel                              Robert W. Hamburg
The New York Times Building                  1221 Avenue of the Americas
620 Eighth Avenue                            New York, NY 10020-1001
New York, New York 10018                     (212) 506-2500
(212) 841-1000                               mhanchet@mayerbrown.com
jhall@cov.com                                rhamburg@mayerbrown.com
mgimbel@cov.com

     David M. Zionts                             Andrew J. Pincus
One CityCenter                                    Marc R. Cohen
850 Tenth Street NW                               Alex C. Lakatos
Washington, DC 20001                         1999 K Street, N.W.
(202) 662-6000                               Washington, DC 20006-1101
dzionts@cov.com                              (202) 263-3000
                                             apincus@mayerbrown.com
                                             mcohen@mayerbrown.com
*Attorneys for Defendant Deutsche*           alakatos@mayerbrown.com
*Bank AG*

                                             *Attorneys for Defendants HSBC Bank*
                                             *USA, N.A., HSBC Holdings plc, HSBC*
                                             *Bank plc, HSBC Bank Middle East*
                                             *Limited and HSBC North America*
                                             *Holdings, Inc.*

14

CLEARY GOTTLIEB STEEN & HAMILTON LLP,

by

   */s/ Jonathan I. Blackman*
      (with permission)

      Jonathan I. Blackman
      Carmine D. Boccuzzi, Jr.
      Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jblackman@cgsh.com
cboccuzzi@cgsh.com
aluft@cgsh.com

*Attorneys for Defendants Commerzbank AG, Commerzbank AG, New York Branch, and BNP Paribas, S.A.*

SULLIVAN & CROMWELL LLP,

by

   */s/ Michael T. Tomaino, Jr.*
      (with permission)

      Michael T. Tomaino, Jr.
      Jeffrey T. Scott
      Jonathan M. Sedlak
125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC*

SULLIVAN & CROMWELL LLP,

by

   */s/ Sharon L. Nelles*
     (with permission)

    Sharon L. Nelles
    Bradley P. Smith
    Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard Chartered Bank*

CLIFFORD CHANCE US LLP,

by

   */s/ Robert G. Houck*
     (with permission)

    Robert G. Houck
    Michael G. Lightfoot
31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.) and The Royal Bank of Scotland plc*

16

SULLIVAN & CROMWELL LLP,

by

   */s/ Joseph E. Neuhaus*
      (with permission)

      Joseph E. Neuhaus
      Alexander J. Willscher
      Colin A. Chazen
125 Broad Street
New York, NY 10004
(212) 558-4000
neuhausj@sullcrom.com
willschera@sullcrom.com
chazenc@sullcrom.com

*Attorneys for Defendant Crédit Agricole
Corporate & Investment Bank*


CRAVATH, SWAINE & MOORE LLP,

by

   */s/ John D. Buretta*

      Richard W. Clary
      John D. Buretta
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*