UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TIMOTHY O'SULLIVAN, et al.,

Plaintiffs,

-against-

DEUTSCHE BANK AG; HSBC BANK USA,
N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc;
HSBC BANK MIDDLE EAST LIMITED; HSBC
NORTH AMERICA HOLDINGS, INC.;
COMMERZBANK AG; COMMERZBANK AG,
NEW YORK BRANCH; BARCLAYS BANK Plc;
BNP PARIBAS S.A.; STANDARD CHARTERED
BANK; THE ROYAL BANK OF SCOTLAND
N.V.; THE ROYAL BANK OF SCOTLAND PLC;
CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE
CORPORATE & INVESTMENT BANK; CREDIT
SUISSE AG; and BANK SADERAT Plc,

Defendants.

17-CV-08709-LTS-GWG

---

## DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS

June 1, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

I.      PLAINTIFFS' PRIMARY LIABILITY CLAIMS (CLAIMS I-IV AND VIII-X) ARE NOT MEANINGFULLY DIFFERENT FROM THOSE DISMISSED IN *ROTHSTEIN* AND *O'NEILL*............................................................................................ 1

II.     PLAINTIFFS' PRIMARY LIABILITY CLAIMS (CLAIMS I-IV AND VIII-X) FAIL PLAUSIBLY TO ALLEGE THAT THE MOVING DEFENDANTS ENGAGED IN AN ACT OF INTERNATIONAL TERRORISM ................................... 6

III.    PLAINTIFFS' PRIMARY LIABILITY CLAIMS I-III FAIL PLAUSIBLY TO PLEAD THE KNOWLEDGE REQUIRED TO VIOLATE SECTION 2339A ................. 8

IV.    PLAINTIFFS' PRIMARY LIABILITY CLAIMS VIII-X FAIL PLAUSIBLY TO ALLEGE THAT NON-U.S. MOVING DEFENDANTS ARE "UNITED STATES PERSON[S]" OR THAT THEY ENGAGED IN A "FINANCIAL TRANSACTION WITH THE GOVERNMENT" OF IRAN UNDER SECTION 2332d........................................................................................................................ 10

        A.     "U.S. Person" Does Not Include Companies Organized Outside the U.S............ 10

        B.     Plaintiffs Fail Plausibly To Allege that the Moving Defendants Engaged in "a Financial Transaction with the Government" of Iran........................................ 12

V.     PLAINTIFFS' SECONDARY LIABILITY CLAIMS (CLAIMS V-VII) FAIL AS A MATTER OF LAW ..................................................................................................... 12

        A.     Nearly All of the Attacks Do Not Meet JASTA's Threshold Requirement of An Act of International Terrorism "Committed, Planned, or Authorized" by a Designated FTO ....................................................................... 13

        B.     *Halberstam* Does Not Alter JASTA's Express Statutory Requirements............... 14

        C.     The Complaint Fails Plausibly To Allege the Moving Defendants Aided and Abetted an Act of International Terrorism ...................................................... 16

        D.     The Complaint Fails Plausibly To Plead the Elements of a Conspiracy .............. 19

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abecassis v. Wyatt*, 785 F. Supp. 2d 614 (S.D. Tex. 2011) .................................................9, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................14

*Bank of America v. City of Miami,* 137 S. Ct. 1296 (2017) .......................................................5, 6

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) ........................................................................8

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) ................................7

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .....................................................11

*Dean v. United States*, 556 U.S. 568 (2009) ...............................................................................12

*Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018) ................................................................4, 6

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009) ........................................................5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ........................................................ passim

*Hall v. United States*, 566 U.S. 506 (2012) ................................................................................12

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................................5

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) .............................................................4, 5

*Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) ....................................................................12

*In re Agape Litig.*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011) ............................................................8

*In re Chiquita Brands Int'l*, 284 F. Supp. 3d 1284 (S.D. Fla. 2018) .....................................5, 7, 8

*In re M. Fabrikant & Sons, Inc.*, 541 F. App'x 55 (2d Cir. 2013)..................................................8

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007)...........................................................8, 9

*Jesner v. Arab Bank*, 138 S. Ct. 1386 (2018) .......................................................................11, 16

*Linde v. Arab Bank*, 882 F.3d 314 (2d Cir. 2018) ............................................................... passim

*O'Neill v. Al Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013) .....................................................2, 3, 4, 5

*Ofisi v. BNP Paribas, S.A.*, 2018 WL 396234 (D.D.C. Jan. 11, 2018).........................................18

ii

*Ofisi v. BNP Paribas S.A.*, 278 F. Supp. 3d 84 (D.D.C. 2017), *order vacated in part on other grounds and reconsideration denied*, 2018 WL 385408 (D.D.C. Jan. 11, 2018) ...................................................................................................8, 9, 10, 11

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) .......................................................................15

*Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874 (N.D. Cal. 2017) .....................................................15

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ................................................................. passim

*Shaffer v. Deutsche Bank AG*, 2017 WL 8786497 (S.D. Ill. Dec. 7, 2017) ........................3, 19, 20

*Shatsky v. Palestine Liberation Org.*, 2017 WL 2666111 (D.D.C. June 20, 2017) ........................6

*United States v. Chalmers*, 474 F. Supp. 2d 555 (S.D.N.Y. 2007) ...............................................11

*Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014) .......................................5, 18

*Youmans v. Schriro*, 2013 WL 6284422 (S.D.N.Y. Dec. 3, 2013) ..................................................2

*Zito v. Leasecomm Corp.*, 2003 WL 22251352 (S.D.N.Y. Sept. 30, 2003) ..................................20

**Statutes & Rules**

15 U.S.C. § 78dd-1 .........................................................................................................................12

18 U.S.C. § 2331 .........................................................................................................................6, 7

18 U.S.C. § 2332d ...........................................................................................................1, 10, 11, 12

18 U.S.C. § 2333 .................................................................................................................... passim

18 U.S.C. § 2339A ..............................................................................................................1, 8, 9, 10

Pub. L. No. 95-213 (1977) ............................................................................................................12

## ABBREVIATIONS AND CAPITALIZED TERMS

The following abbreviations and capitalized terms are used in this brief:

| | |
|---|---|
| "Complaint" or "Compl." | The Complaint filed on November 9, 2017 (Dkt. No. 1) |
| "Moving Defendants" | Deutsche Bank AG; HSBC Bank USA, N.A.; HSBC Holdings plc; HSBC Bank plc; HSBC Bank Middle East Limited; HSBC North America Holdings, Inc.; Commerzbank AG; Commerzbank AG, New York Branch; Barclays Bank PLC; BNP Paribas S.A.; Standard Chartered Bank; The Royal Bank of Scotland N.V. (f/k/a ABN AMRO Bank N.V.); The Royal Bank of Scotland plc; Crédit Agricole Corporate & Investment Bank; and Credit Suisse AG |
| "Joint Memorandum" or "Jt. Mem." | The Moving Defendants' Joint Memorandum in Support of Motion to Dismiss (Dkt. No. 103) |
| "Opposition" or "Opp'n" | Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Dkt. No. 119) |
| "Stay Dec." | Judge Gorenstein's Opinion and Order Granting Defendants' Motion for a Stay of Discovery (Dkt. No. 118) |
| "ATA" | The Anti-Terrorism Act |
| "JASTA" | The Justice Against Sponsors of Terrorism Act |
| "FTO" | Foreign Terrorist Organization |
| "SDN" | Persons on the Specially Designated Nationals and Blocked Persons List |
| "SDGT" | Persons designated as a Specially Designated Global Terrorist |

## INTRODUCTION

The Complaint fails to state a claim under clear Second Circuit authority, and Plaintiffs' Opposition fails to address the deficiencies of their factual allegations. *First*, Plaintiffs' primary liability claims (Claims I-IV and VIII-X) fail plausibly to allege proximate cause under *Rothstein* and *O'Neill*, and the attenuated causal theory Plaintiffs describe in their Complaint and Opposition is not legally distinguishable from the allegations dismissed in those cases. Jt. Mem. 15-24. *Second*, Plaintiffs fail plausibly to allege that the Moving Defendants committed an act of international terrorism, as there is no plausible allegation that the Moving Defendants' alleged banking activities involved violent acts or appeared to be intended to intimidate a civilian population or influence a government. Jt. Mem. at 24-26. *Third*, Plaintiffs fail plausibly to allege that the Moving Defendants knew that any banking services provided to Iranian banks would be used to support terrorist activities, as required to state a claim under Section 2339A. Jt. Mem. at 26-28. *Fourth*, Plaintiffs fail plausibly to allege that certain of the Moving Defendants are "United States persons", or that they engaged in "a financial transaction with the government" of Iran, as required to state a claim under Section 2332d. Jt. Mem. at 28-31. *Finally*, Plaintiffs' secondary liability claims (Claims V-VII) fail plausibly to allege that the Moving Defendants aided and abetted, by knowingly providing substantial assistance to, or conspired with, an entity that committed an act of international terrorism, as required by the plain language of JASTA and *Linde*. Jt. Mem. at 31-40. Accordingly, the Court should dismiss the Complaint with prejudice as to each Moving Defendant.

## I.   PLAINTIFFS' PRIMARY LIABILITY CLAIMS (CLAIMS I-IV AND VIII-X) ARE NOT MEANINGFULLY DIFFERENT FROM THOSE DISMISSED IN *ROTHSTEIN* AND *O'NEILL*

To state a primary liability claim under the ATA, Plaintiffs must plausibly allege that the Moving Defendants' conduct was the "proximate cause" of their injuries. *Rothstein v.*

*UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013); *O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 123-24 (2d Cir. 2013).  Plaintiffs seek to relax the proximate cause standard, suggesting that proximate cause under the ATA only "requires a showing that a defendant's conduct was a substantial factor in the sequence of events causing plaintiff's injury."  Opp'n at 39.  Plaintiffs are incorrect— *Rothstein* and its progeny require a direct relation between a defendant's conduct and a plaintiff's injuries, and a "substantial factor" is legally insufficient.

> *First*, Plaintiffs' Opposition fails to address (and therefore concedes)[1] that several of the key causal gaps in *Rothstein* are present here, including that (i) the Moving Defendants did not participate in the attacks; (ii) the Moving Defendants did not provide banking services to terrorists; (iii) the Moving Defendants' alleged actions were not necessary to any terrorism funding by Iran; and (iv) Iran, as a government, has legitimate uses for financial services.  *See* Jt. Mem. at 21; Stay Dec. at 11 ("This allegation of proximate cause is similar to the allegations at issue in *Rothstein*.").  Plaintiffs' efforts to distinguish *Rothstein* are unavailing:

- ***Alleged Volume of U.S. Dollars.***  Plaintiffs argue that *Rothstein* is distinguishable because the defendant, UBS, allegedly provided Iran with "hundreds of millions of dollars", whereas the transactions here allegedly involved "hundreds of billions of dollars".  Opp'n at 35, 37.  The causal deficiencies in *Rothstein*, however, were not based on the volume of the U.S. dollars, but rather on a series of causal gaps between the provision of currency and the plaintiffs' injuries.  708 F.3d at 97; *see also* Jt. Mem. at 17-18.  Whatever the amount Iran allegedly received, it is the causal link to terrorism that has not been pleaded with any non-conclusory allegations.  Further, Plaintiffs make plain that, unlike in *Rothstein*, the financial services allegedly provided in violation of economic sanctions were not incremental to Iran's reserves, and thus did not make terrorism even arguably more likely, because "Iranian parties could have obtained the banking services legally through the U-Turn exemption."  Opp'n at 59.

---

[1] Plaintiffs concede all points in the Moving Defendants' Joint Memorandum to which they fail to respond.  *See, e.g.*, *Youmans v. Schriro*, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) (a "plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of those claims").

- **_Alleged Transfers to SDNs and SDGTs._**  Plaintiffs contend that _Rothstein_ involved transfers to "unspecified Iranian Government Agencies", whereas certain Moving Defendants allegedly "[d]ealt [d]irectly with SDNs and SDGTs", including "FTOs responsible for Plaintiffs' injuries."  Opp'n at 37-38.  But there is simply no non-conclusory allegation that the Moving Defendants engaged in transactions with the FTOs responsible for the attacks at issue.  _See, e.g._, Compl. ¶ 2396 (failing to allege any link between Moving Defendants and FTOs).  That certain of the Moving Defendants allegedly provided financial services to SDNs or SDGTs does not mean that funds were provided to FTOs, much less to FTOs (or anyone) responsible for Plaintiffs' injuries.

- **_Alleged Evasion of Economic Sanctions_**.  Plaintiffs assert that _O'Neill_ is not controlling because the defendants there provided "routine banking services" to alleged al-Qaeda affiliates, whereas here the Moving Defendants allegedly evaded economic sanctions.  Opp'n at 38.  Plaintiffs thus argue, for example, that if the Moving Defendants' financial transactions were to have been used for Iran's legitimate activities, they would have relied on the U-Turn exemption.  Opp'n at 37.  However, these allegations are analogous to _Rothstein_, in which UBS breached its agreement to comply with U.S. economic sanctions, and the Second Circuit recognized that the currency transferred from UBS to Iran still could have been used for legitimate purposes.  708 F.3d at 97; _see also Shaffer v. Deutsche Bank AG_, 2017 WL 8786497, at *1 (applying _Rothstein_ to dismiss complaint "alleging that Deutsche Bank conspired with Iranian financial institutions to transfer U.S. currency to Iranian banks in violation of U.S. economic sanctions"); _id._ at *4 (stating that _Rothstein_ provided a "clear statement warning of the importance of separating illegal processing of financial transactions from civil liability for terrorist attacks").

- **_Alleged Provision of Expert Advice_**.  Plaintiffs assert that "[u]nlike the instant case, neither _Rothstein_ nor _O'Neill_ involved allegations that defendants provided expert advice to sponsors of terrorism."  Opp'n at 38.  But the Complaint does not specify to which groups the Moving Defendants are alleged to have provided expert advice, other than some Iranian banks and unnamed "Iranian entities".  _See, e.g._., Compl. ¶¶ 1385(c), 1444, 1524, 1729.  Nor does the Complaint allege that Iran or any Iranian entity actually shared this advice with other banks to "continue its scheme" with those banks.  Opp'n at 38.  Moreover, the purported expert advice alleged in the Complaint pertains to sanctions evasion, not terrorist acts.  Alleged expert advice to Iranian entities regarding economic sanctions does not fill any of the causal gaps identified by the Second Circuit.  _See Rothstein_, 708 F.3d at 97; _O'Neill_, 714 F.3d at 123-24; _see also Shaffer_, 2017 WL 8786497, at *5.

- **_Alleged Provision of Raw Materials_**.  Plaintiffs assert that _Rothstein_ did not include trade financing allegations as Plaintiffs' Complaint does.  Opp'n at 38.  However, these allegations do not concern "materials specifically designed for use in terror attacks", _id._ at 38, nor do they involve "[r]aw [m]aterials for [c]reating [w]eapons", _id._  _See, e.g._, Compl. ¶¶ 1178, 1206, 1207, 1210, 1999,

2051, 2299, 2300, 2455 (all involving aircraft, aircraft engines or parts, and other dual-use goods); *id.* ¶¶ 1325, 1381, 1391, 1635 (no allegation concerning trade financing or specific goods); *id.* ¶¶ 1974, 1999 (aircraft parts and unspecified "machinery", "equipment", or "military spare parts"). The Complaint contains no non-conclusory allegations that such materials were obtained for use in any attacks. *See, e.g., id.* ¶¶ 1205-06, 1921-37.

- ***Alleged Funding and Effect on the Degree of Attacks.*** Plaintiffs further contend that the Complaint is "factually specific" with regard to allegations that the Moving Defendants' conduct allowed Iran "to fund more terrorism" on an increased "scale" and with heightened "lethality". Opp'n at 38. However, Plaintiffs' allegations are conclusory. *See, e.g.,* Compl. ¶ 2403 (mirroring Plaintiffs' Opposition with no factual specificity). *Rothstein* held such allegations to be too remote. 708 F.3d at 97 (allegation that UBS's transfer of currency to Iran made it "more likely that the moneys would be used for terrorism" did not adequately plead proximate cause); *see also* Jt. Mem. at 23.

In sum, the purported differences between the Complaint and *Rothstein* and *O'Neill* are illusory and do not establish any proximate causal link between the Moving Defendants' alleged conduct and the attacks that injured or killed Plaintiffs.

*Second*, Plaintiffs contend that the ATA imposes liability on a defendant whose conduct was a "substantial factor" in the "sequence" of events leading up to a plaintiff's injuries. Opp'n at 34. However, *Rothstein* and its progeny in fact require a direct relation between the Moving Defendants' conduct and Plaintiffs' injuries—a "substantial factor" is not sufficient. *See Rothstein*, 708 F.3d at 97; *O'Neill*, 714 F.3d at 123-24; *Fields v. Twitter, Inc.*, 881 F.3d 739, 748 (9th Cir. 2018) (requiring "at least some direct relationship"); *see also Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (at common law, requiring "some direct relation").

In *Rothstein*, the Second Circuit applied directness principles by carefully considering the complaint's allegations concerning the relationship between the defendant, on the one hand, and Iran, the relevant terrorist groups, and the perpetrators of the attacks that caused the plaintiffs' injuries, on the other hand, and determined that the plaintiffs' indirect causal allegations were legally insufficient. 708 F.3d at 97. Nowhere did the Second Circuit

suggest that, if the defendant's conduct were a "substantial factor" in the plaintiffs' injuries, that would plausibly plead proximate cause. *O'Neill*, too, applied directness principles in its assessment of relationships similar to those in *Rothstein*, and reached the same conclusion as *Rothstein*. 714 F.3d at 124. The concept of a "substantial factor" appears nowhere in *O'Neill*. It is not the law in this Circuit that the ATA's proximate cause requirement is the equivalent of a substantial factor test.

None of the other cases cited by Plaintiffs, *see* Opp'n at 35 n.18, establishes that the ATA uses the substantial factor test they assert for proximate cause. *See Linde v. Arab Bank*, 882 F. 3d 314, 328 (2d Cir. 2018)[2] (to the extent there is a "substantiality inquiry", proximate causation demands "some direct relation between the injury asserted and the injurious conduct alleged") (citing *Holmes*, 503 U.S. at 268); *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014) ("substantial factor" does not appear in the opinion); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) (pre-*Rothstein* and considered directness principles); *see also In re Chiquita Brands Int'l*, 284 F. Supp. 3d 1284, 1313 (S.D. Fla. 2018) (*Rothstein* requires a plaintiff "to establish a direct causal relationship"); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 2 (2010) (not discussing proximate cause or ATA civil liability, and instead addressing the constitutionality of Section 2339B).

*Bank of America v. City of Miami,* 137 S. Ct. 1296 (2017), reinforces that the proximate cause analysis under the ATA focuses on directness principles. *Id.* at 1306 (plaintiff

---

[2] Plaintiffs incorrectly state that the *Linde* court found the jury had been properly instructed on the substantial factor test. Opp'n at 35 n.18. While *Linde* overturned the lower court's jury instructions on a different ground, it cast doubt on the "substantial factor" instruction and expressly recognized that proximate cause demands a "direct relation" between a plaintiff's injuries and the conduct at issue. *See Linde*, 882 F.3d at 330-31 ("Even if we assume arguendo the correctness of this instruction . . . [c]ausation focuses on the relationship between an alleged act of international terrorism and a plaintiff's injury.") (citing *Holmes*, 503 U.S. at 268).

must allege a "direct relation between the injury asserted and the injurious conduct" that forms

the basis of its Fair Housing Act ("FHA") claim. Plaintiffs assert that "the scope of the

'directness' analysis depends upon the statute at issue", Opp'n at 34, but *Bank of America* held

that the required directness analysis applies in statutes that are "analagous" to "tort actions

recognized at common law". 137 S. Ct. at 1306 (citation omitted). Like the FHA, the ATA is a

"federal cause of action akin to tort action". *Shatsky v. Palestine Liberation Org.*, 2017 WL

2666111, at *6 (D.D.C. June 20, 2017); *see also Fields*, 881 F.3d at 748 (applying *Bank of

America* to affirm dismissal of ATA claims).

      Moreover, Plaintiffs do not even meet their own "substantial factor" standard

because the Complaint offers only conclusory allegations that do not plausibly allege that the

Moving Defendants' conduct was a substantial factor as to Plaintiffs' injuries. *See* Jt. Mem. at

21-24.

## II. PLAINTIFFS' PRIMARY LIABILITY CLAIMS (CLAIMS I-IV AND VIII-X) FAIL PLAUSIBLY TO ALLEGE THAT THE MOVING DEFENDANTS ENGAGED IN AN ACT OF INTERNATIONAL TERRORISM

      Plaintiffs' primary liability claims also fail plausibly to allege that the Moving

Defendants' purported activities both involved violent acts or acts dangerous to human life, 18

U.S.C. §§ 2331(1)(A), 2333(a), and would lead an objective observer to infer from the Moving

Defendants' alleged financial transactions with Iran and/or Iranian banks that the Moving

Defendants had the intent to "intimidate or coerce a civilian population", "influence the policy of

a government by intimidation or coercion", or "affect the conduct of a government by mass

destruction, assassination or kidnapping", 18 U.S.C. §§ 2331(1)(B), 2333(a). The cases cited by

Plaintiffs, Opp'n at 38-40, do not support a conclusion that the alleged provision of banking

services to Iran and/or Iranian Banks constitutes an act of international terrorism.

      *First*, Plaintiffs quote *Rothstein* for the proposition that "[i]t is reasonable to infer

that Iran's ability to amass U.S. currency was increased by UBS's transfer. . . . [and] the more

U.S. currency Iran possessed, the greater its ability to fund Hizbollah and Hamas for the conduct

of terrorism . . . [and] the more frequent and more violent the terrorist attacks [Hizbollah and

Hamas] could conduct". Opp'n at 39 (alterations in original). The heavily-edited language

Plaintiffs rely on concerned Article III standing, not the ATA's statutory requirements to plead

an act of international terrorism. *Id.; see also Rothstein*, 708 F.3d at 91-93. *Rothstein* did not

address the scope of an act of international terrorism under 18 U.S.C. § 2331(1), and *Rothstein*

did not hold that UBS's alleged conduct was dangerous to human life or appeared to be intended

to intimidate a civilian population or influence a government, 708 F.3d at 82.

       *Second*, Plaintiffs also rely on inapposite cases involving the provision of funds to

designated FTOs, which is not plausibly alleged here. *Linde* compels dismissal: there, plaintiffs

alleged that the defendant provided financial services to Hamas, a designated FTO. 882 F.3d at

321. The Second Circuit held that demonstrating that a bank "provid[ed] financial services to a

known terrorist organization" was *not* itself sufficient to satisfy the act of international terrorism

requirement. *Id.* at 326. As discussed above, here there are no plausible allegations that the

Moving Defendants provided financial services to terrorist organizations, much less those

responsible for the attacks that killed or injured Plaintiffs. *See, e.g.*, Compl. ¶¶ 649-84

(discussing terrorist organizations with no reference to the Moving Defendants). By contrast, in

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008), defendants were

alleged to have made donations to Hamas, a designated FTO, thereby enabling Hamas to kill or

wound more people in Israel. *Id.* at 694. *Boim* concluded that those donations satisfied Section

2331(1)(B)'s definition of an act of international terrorism. *Id. In re Chiquita Brands* also

involved the defendant's direct payments to FARC, a designated FTO, 284 F. Supp. 3d at 1301-

02, and even then the court found that there was a "debatable fact question . . . as to whether Chiquita's nine-year payment stream to the FARC is conduct which objectively 'appears to be intended' to intimidate or coerce a civilian population, or to influence a government by coercion or intimidation", *id.* at 1319.

## III.   PLAINTIFFS' PRIMARY LIABILITY CLAIMS I-III FAIL PLAUSIBLY TO PLEAD THE KNOWLEDGE REQUIRED TO VIOLATE SECTION 2339A

Claims I-III must also be dismissed because Plaintiffs fail plausibly to allege the knowledge required to violate Section 2339A.  Section 2339A requires Plaintiffs plausibly to allege that the Moving Defendants knew the banking services they were allegedly providing to Iran and/or Iranian banks would be used to support terrorist activities.  Plaintiffs argue that "knowledge allegations are rarely suited for" dismissal on the pleadings, and that *Ofisi v. BNP Paribas S.A.*, 278 F. Supp. 3d 84 (D.D.C. 2017), *order vacated in part on other grounds and reconsideration denied*, 2018 WL 385408 (D.D.C. Jan. 11, 2018), is inapposite because *Ofisi* contained less detailed allegations than those in the Plaintiffs' Complaint.  Opp'n at 40-42. Plaintiffs' arguments are without merit.

*First*, courts have dismissed Section 2339A claims at the pleading stage, *see Ofisi*, 278 F. Supp. 3d at 100-02, and courts regularly dismiss knowledge-based claims at the pleading stage.  *See, e.g.*, *In re M. Fabrikant & Sons, Inc.*, 541 F. App'x 55, 57 (2d Cir. 2013) (affirming dismissal where plaintiffs failed plausibly to plead that defendants had knowledge of fraudulent conveyance scheme); *In re Agape Litig.*, 773 F. Supp. 2d 298, 310 (E.D.N.Y. 2011) (dismissing insufficient knowledge allegations regarding aiding and abetting fraud scheme); *see also Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (explaining that *Twombly* and *Iqbal* require state of mind allegations to be plausibly pleaded and supported by factual allegations).  Plaintiffs rely on *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007), Opp'n at 40, which, unlike *Ofisi*, is

not an ATA case, and did not hold that knowledge allegations should never be dismissed at the

pleading stage, 482 F.3d at 149.  *ITC* merely noted that intent is "rarely amenable to summary

judgment", but added in the sentence directly following the language Plaintiffs quote, "the

summary judgment rule would be rendered sterile if the mere incantation of intent or state of

mind would operate as a talisman to defeat an otherwise valid motion."  482 F.3d at 150

(quotation marks and alteration omitted).

        *Second*, Plaintiffs mischaracterize both *Ofisi* and their Complaint in arguing that

*Ofisi* is inapposite.  *See* Opp'n at 40-41.  Under Section 2339A, Plaintiffs must plausibly allege

that Defendants knew either that (1) Iranian banks were acting as agents of a terrorist, or (2) the

ultimate beneficiaries of the financial services allegedly provided to Iranian banks would be a

terrorist organization.  *See* Jt. Mem. at 27-28.  Plaintiffs assert that *Ofisi* is not analogous because

the instant Complaint devotes hundreds of paragraphs to explaining Iran's alleged connection to

terrorist organizations.  *See* Opp'n at 40.  But the length of Plaintiffs' Complaint does not equate

to legal sufficiency.[3]  *See, e.g.*, Stay Dec. at 13-14 (analyzing the "more than 240 pages of the

complaint" Plaintiffs cited and determining that "[t]hose 240 pages of the Complaint" do not

support the relevant proposition).  Plaintiffs' voluminous paragraphs boil down to simply

---

[3] Plaintiffs assert that the Complaint's allegations concerning knowledge "far exceed even those in *Abecassis*".  Opp'n at 40.  *Abecassis* involved allegations that the defendants, companies involved in the oil and gas business, through sidestepping the U.N. Oil For Food Program ("OFP"), paid kickbacks to Saddam Hussein.  *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 619-20 (S.D. Tex. 2011).  The complaint alleged that defendants "expected and intended" the payments "would go to Hussein", and that "the very object of sidestepping the OFP was to provide money for Hussein to achieve ends *other than providing for the welfare of Iraqi civilians*", *id.* at 647 (emphasis added), that is, exclusively for improper purposes, including funding terrorism.  There is no such intention plausibly pleaded here.  The Moving Defendants are alleged to have processed financial transactions for various entities in Iran, which as a state has "many legitimate agencies, operations, and programs to fund".  *See Rothstein*, 708 F.3d at 97.

asserting that it was "widely-known" that Iran was a state sponsor of terrorism. *See* Opp'n at 40 (citing Compl. ¶¶ 834-1406). These allegations are insufficient under Section 2339A because they "do not establish that [the Moving Defendants] knew that [Iran] was utilizing the transactions processed by [the Moving Defendants] to provide funding to terrorists, or that [Iran] was acting on [terrorist groups'] behalf in conducting financial transactions with [the Moving Defendants]". *Ofisi*, 278 F. Supp. 3d at 101 (internal quotation marks omitted).

## IV.   PLAINTIFFS' PRIMARY LIABILITY CLAIMS VIII-X FAIL PLAUSIBLY TO ALLEGE THAT NON-U.S. MOVING DEFENDANTS ARE "UNITED STATES PERSON[S]" OR THAT THEY ENGAGED IN A "FINANCIAL TRANSACTION WITH THE GOVERNMENT" OF IRAN UNDER SECTION 2332d

Nothing in Plaintiffs' Opposition changes the fact that certain of the Moving Defendants do not qualify as a "United States person" under the ATA, or that the Complaint fails plausibly to allege "a financial transaction with the government" of Iran. 18 U.S.C. § 2332d.

### A.   "U.S. Person" Does Not Include Companies Organized Outside the U.S.

*Ofisi* held that a company incorporated outside the U.S. is not a U.S. person under 18 U.S.C. § 2332d.[4] 278 F. Supp. 3d at 98-100. *Ofisi* concluded that subparagraph (D) of Section 2332d's definition of "United States person"—"any person in the United States"— applies only to "natural persons who are physically present in U.S. territory". *Id.* at 99. Without citing any supporting case law, Plaintiffs contend that *Ofisi*'s reasoning is defective, because it purportedly renders subparagraphs (A) and (B) superfluous vis-à-vis subparagraph (D). Opp'n at 43. But Plaintiffs' assertion is based on faulty logic. Subparagraph (A) refers to any "United States citizen or national", and subparagraph (B) refers to any "permanent resident alien". 18 U.S.C. § 2332d(b)(2). Subparagraphs (A) and (B) are not rendered superfluous—an individual

---

[4] Plaintiffs incorrectly state that *Ofisi* is pending appeal. Opp'n at 43. On February 26, 2018, an order was entered dismissing the case. *Ofisi*, No. 18-7007 (D.C. Cir. Feb. 26, 2018).

may be a U.S. citizen, national or permanent resident alien without simultaneously being physically present in the U.S.  Conversely, an individual who is a non-U.S. citizen, national or permanent resident alien may still be "in the United States", and thus a "United States person", under subparagraph (D).  Each of subparagraphs (A), (B), (C) and (D) encompasses different and distinct categories of "United States persons".

Plaintiffs' misplaced reliance on the definition of "person" in Section 2331, *see* Opp'n at 42-43, cannot overcome *Ofisi*.  In *Ofisi*, the plaintiffs made the very same arguments articulated by Plaintiffs here that Section 2331(3)'s definition of "person" includes "individual[s] or entit[ies] capable of holding a legal or beneficial interest in property".  *Ofisi*, No. 15-CV-02010 (JDB), Dkt. No. 19 at 26 (D.D.C. Mar. 2, 2016).  *Ofisi* rejected this argument, 278 F. Supp. 3d at 99, and Plaintiffs offer no basis to depart from *Ofisi*.

Nor can Plaintiffs distinguish *United States v. Chalmers*, 474 F. Supp. 2d 555 (S.D.N.Y. 2007), which held that subparagraph (D) reaches only natural persons located within the territory of the United States.  Relying on *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000), *Chalmers* held that, when federal laws seek to hold foreign corporations liable, they "have been crafted so as to make [that] clear".  *Chalmers*, 474 F. Supp. 2d at 565.  Under both *Chalmers* and *Crosby*, liability should not be extended to foreign corporations unless the pertinent federal laws explicitly do so.  *Id.*; *see also Jesner v. Arab Bank*, 138 S. Ct. 1386, 1405 (2018) (observing that the limits of liability under the ATA were carefully drawn by Congress, and cautioning against allowing plaintiffs to "bypass Congress' express limitations on liability under the [ATA] simply by bringing [a lawsuit under the Alien Tort Statute]").  Plaintiffs do not even attempt to distinguish *Abecassis*, which held that two foreign companies were not liable under Section 2332d "because they are foreign entities".  785 F. Supp. at 648.

11

**B.     Plaintiffs Fail Plausibly To Allege that the Moving Defendants Engaged in "a Financial Transaction with the Government" of Iran**

To violate Section 2332d, a defendant must engage in "a financial transaction with the government" of a country designated as a state sponsor of terrorism.  Plaintiffs contend that Section 2332d encompasses "instrumentalities and entities controlled by" the Iranian government, s*ee* Opp'n at 45, but this reading of Section 2332d ignores the plain language of the statute.  If Congress had intended to include "instrumentalities and entities", it would have used those terms.  *See Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (explaining that if Congress intended a term to have a particular meaning, "it easily could have drafted language to that effect"); *Dean v. United States*, 556 U.S. 568, 572 (2009) ("Congress acts intentionally and purposely in the disparate inclusion or exclusion" of language).  Indeed, Congress has previously used those terms in other federal laws, such as the Foreign Corrupt Practices Act, *see* 15 U.S.C. § 78dd-1 (prohibiting bribes to influence "foreign government or instrumentality"), which predated the ATA.  *See* Pub. L. No. 95-213 (1977); *see also Hall v. United States*, 566 U.S. 506, 516 (2012) ("This Court assumes that Congress is aware of existing law when it passes legislation.").

Plaintiffs assert that the *Abecassis* complaint sufficiently pled a violation of Section 2332d by alleging that a defendant indirectly transferred money to an account held by a company that was allegedly owned and controlled by Saddam Hussein, Opp'n at 45, but *Abecassis* did not address whether Section 2332d includes a government's instrumentalities and entities, and many of the payments alleged in *Abecassis* were to the government of Iraq, *see* 785 F. Supp. 2d at 619.

**V.     PLAINTIFFS' SECONDARY LIABILITY CLAIMS (CLAIMS V-VII) FAIL AS A MATTER OF LAW**

Prior to the enactment of JASTA, there was no secondary liability under the ATA.

12

*See Rothstein*, 708 F.3d at 97.  In enacting JASTA, Congress created limited secondary ATA liability under narrow circumstances:  where (1) a plaintiff's injuries arise from an act of international terrorism that has been "committed, planned, or authorized" by an organization that has been officially designated an FTO and (2) the defendant "aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism".  18 U.S.C. § 2333(d)(2).  The Complaint fails to meet both of JASTA's independent statutory requirements.  *See* Jt. Mem. at 31-40.  This is dispositive, as it is the law of this Circuit that there is no secondary liability under Section 2333(a) for claims to which JASTA does not apply.  *See Linde*, 882 F.3d at 320.  Plaintiffs, however, argue that JASTA supplanted its own statutory requirements with a supposedly less demanding common-law based standard of secondary liability because JASTA's "Findings and Purpose" section cites a case from the D.C. Circuit as providing an appropriate measure of the scope of secondary liability.  Opp'n at 41-42. But the instruction in the "Findings and Purpose" section of JASTA that *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), "provides the proper legal framework" as to how secondary liability should function under the ATA cannot, and does not, displace the statute's express statutory requirements, but rather provides the model of analysis, filling any gaps once those requirements have been met.  *Linde* confirms that a plaintiff must plausibly allege the statutory requirements of JASTA to state a secondary liability ATA claim.

> **A.**  **Nearly All of the Attacks Do Not Meet JASTA's Threshold Requirement of An Act of International Terrorism "Committed, Planned, or Authorized" by a Designated FTO**

JASTA limits liability to cases where the plaintiff's injury arises from an act of international terrorism that is "committed, planned, or authorized" by an entity designated as an FTO as of the date of the attack.  18 U.S.C. § 2333(d)(2).  Despite this threshold statutory requirement, Plaintiffs concede that, for 50 of the 55 alleged attacks, they attribute responsibility

to a non-FTO, or do not identify the specific entity responsible for the attack.  Opp'n at 54; *see*

Jt. Mem. at 32-33.  Plaintiffs argue that they do not need to "name specific FTOs", and that the

Complaint plausibly "allege[s] generally that the 'Terrorist Attacks were committed, planned,

and/or authori[z]ed by FTOs'".  Opp'n at 54.[5]  But "general" allegations are exactly the

"formulaic recitation of the elements" of a JASTA claim that cannot suffice.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  Thus, for nearly all of the attacks that killed or injured

Plaintiffs, the Complaint's allegations do not even clear the first statutory hurdle of JASTA.

### B.   *Halberstam* Does Not Alter JASTA's Express Statutory Requirements

Plaintiffs do not even attempt to establish JASTA's second statutory requirement,

that any of the Moving Defendants is a "person who aids and abets, by knowingly providing

substantial assistance [to], or who conspires with the person who committed such an act of

international terrorism."  *Linde*, 882 F.3d at 320 (quoting 18 U.S.C. § 2333(d)(2)).  Instead,

Plaintiffs seize on JASTA's reference to *Halberstam* in the Findings and Purpose section in an

effort to evade JASTA's express statutory requirement and instead plead a common-law theory

of liability.  *See, e.g.*, Opp'n at 53.

The Findings and Purpose section of JASTA does not eliminate the unambiguous

statutory requirements of JASTA or create some kind of "alternative" common-law theory of

---

[5] Plaintiffs assert that the Moving Defendants "ignore[] the Complaint['s] detail and sophistication, including definitions of 'Special Groups,' 'Iran and/or its Agents and Proxies,' and 'Terrorist Groups.'"  Opp'n at 55.  Plaintiffs thus reinforce that their allegations are conclusory, as the term "Agents and Proxies"—referred to in the Complaint over 200 times— includes over two dozen entities, including various named and unnamed "Terrorist Groups".  Jt. Mem. at 5-6 (citing Compl. ¶ 4 n.4).  The term "Terrorist Groups" is defined to include over fifteen entities, including "Foreign Terrorist Organizations" and "other terrorists".  Compl. ¶ 4 n.5.  Thus, for most of the allegations in the Complaint, Plaintiffs do not even attempt to specify the entity that was allegedly involved, but instead allege that it was a member of an ambiguously defined group that includes numerous entities that were not terrorist groups, let alone FTOs.

secondary liability under the ATA.  In *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874 (N.D. Cal.

2017), the court rejected the same argument and held that the Findings and Purpose section

"do[es] not change the plain meaning of [JASTA's] operative clause".  281 F. Supp. 3d at 889;

*see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211-12 (1998) ("findings and purpose"

section is "irrelevant" in "the context of an unambiguous statutory text").

   In *Linde*, the Second Circuit was "mindful" of *Halberstam*, and explained that

under JASTA, civil liability reaches "any person who aids and abets, by knowingly providing

substantial assistance [to], or who conspires with the person who committed such an act of

international terrorism."  882 F.3d at 320 (alteration in original).  *Linde* applied JASTA's

statutory requirements, as well as "the *Halberstam* elements of civil aiding and abetting", that is,

"[a]iding and abetting requires the secondary actor to be 'aware' that, by assisting the principal,

it is itself assuming a 'role' in terrorist activities."  *Id.* at 329 (quoting *Halberstam*, 705 F.2d at

477); *see also Linde*, 882 F.3d at 330 ("*Halberstam* explains that whether a defendant's

assistance is substantial enough to constitute aiding and abetting requires consideration of

multiple factors.").  But nothing in the plain text of JASTA, or in *Linde*, supports Plaintiffs'

attempted misuse of *Halberstam* to dilute JASTA's explicit terms.[6]

   Plaintiffs also cite "[s]ubsequent case law" that purportedly "establishes that

secondary liability does not require coconspirators to deal directly with each other or even know

---

[6] Plaintiffs mischaracterize the defendant in *Halberstam* as an unknowing individual who did not participate in her boyfriend's decades-long burglary spree, but was nonetheless held liable under a civil conspiracy theory for a murder during one of his burglaries "because the murder was a reasonably foreseeable consequence of the burglary enterprise".  Opp'n at 63.  In fact, *Halberstam* affirmed the district court's finding that the defendant "knew full well the purpose of [her boyfriend's] evening forays and the means" by which he provided for her, "was a willing partner in his criminal activities", and performed various tasks, "knowingly to assist [her boyfriend] in his illicit trade"—the very illicit trade that led to plaintiff's death.  705 F.2d at 486.

of each other's existence."  Opp'n at 49.  But the cases on which Plaintiffs rely—none of which

postdates *Linde*—are not ATA cases and do not address JASTA's requirements for alleging

secondary liability.  JASTA's statutory requirements for alleging secondary liability govern.

*See, e.g.*, *Jesner*, 138 S. Ct. at 1403 (explaining that "courts should not deviate" from a statutory

model "absent a compelling justification").

> ### C.     The Complaint Fails Plausibly To Allege the Moving Defendants Aided and Abetted an Act of International Terrorism

Aiding-and-abetting liability under JASTA is limited to cases where the defendant

"'aids and abets, by knowingly providing substantial assistance [to] . . . the person who

committed such an act of international terrorism'".  *Linde*, 2018 WL 797454, at *3 (alteration in

original) (quoting 18 U.S.C. § 2333(d)(2)).  These statutory requirements are not plausibly

pleaded here.  As explained in the Joint Memorandum and above, *see* Section I, *supra*, Plaintiffs

do not plausibly allege that the Moving Defendants provided any assistance to the named and

unnamed terrorist groups that carried out the attacks.  Plaintiffs' allegations regarding the alleged

provision of assistance to unspecified "Agents and Proxies" do not meet the pleading standard

set by *Iqbal* and must be disregarded.  Jt. Mem. at 37.  In addition to JASTA's express statutory

requirements, Plaintiffs must *also* allege either the "*Halberstam* elements of civil aiding and

abetting, or the factors relevant to the substantial assistance".  *Linde*, 882 F.3d at 320.  JASTA

requires that (i) "'the defendant must generally be aware of his role as part of an overall illegal or

tortious activity at the time'", *id.* (quoting *Halberstam*, 705 F.2d at 487), and (ii) "the defendant

must knowingly and substantially assist the principal violation", *Linde* 882 F.3d at 320.

Plaintiffs fail plausibly to plead either of these requirements.

*First*, Plaintiffs assert that "Defendants knew" "the money they were illegally

transferring to Iran in violation of U.S. law and banking regulations was being used by Iran to

fund terrorism, including FTOs" and "the conspiracy in which they were participating was funding Iran's sponsorship of terrorist activities".  Opp'n at 57-58.  But Plaintiffs provide no citation to their Complaint for these unsupported assertions, and Plaintiffs have not pled any facts plausibly supporting that the Moving Defendants knew that the financial transactions they processed were furthering any acts of terrorism.  Plaintiffs quote *Linde*'s note that "[t]here is some record evidence that might permit a jury, properly instructed as to aiding and abetting, to infer the requisite awareness", 882 F.3d at 331, but the *Linde* plaintiffs alleged the provision of financial services to Hamas, an FTO, and the "record evidence" "could have alerted [Arab Bank] that the transfer being requested therein were payments for suicide bombings", *id.*  Here, by contrast, Plaintiffs allege at most the provision of funds to Iran, a government that "has many legitimate agencies, operations, and programs to fund." *See Rothstein*, 708 F.3d at 97.[7]  The Complaint here contains no non-conclusory allegations from which the Court could plausibly infer that the Moving Defendants "knew full well" that the U.S. dollars they allegedly helped Iranian banks acquire would be diverted to the terrorist groups that killed or injured Plaintiffs, or that the Moving Defendants were "willing partners" with, or acted "knowingly to assist"—much less offer substantial assistance to—such named and unnamed groups.  *See* Jt. Mem. at 33-40.

       *Second*, Plaintiffs assert that "Defendants provided substantial assistance to the Terrorist Groups that committed the Terrorist Attacks by knowingly facilitating the transfer of hundreds of billions of USD to terrorist organizations through Iranian front companies."  Opp'n at 58-59.  The Complaint contains no plausible allegations that the Moving Defendants were

---

[7] Plaintiffs assert with no supporting authority that "the analysis used by courts to evaluate primary liability plausibility in pre-JASTA cases like *Rothstein*, *Ofisi*, and others, is not applicable to the post-JASTA plausibility standard".  Opp'n at 51.  Plaintiffs' argument is without merit, and *Rothstein*'s conclusion that Iran is a government with legitimate programs to fund is not affected by whether the liability at issue is primary or secondary liability.

aware that, by providing financial services to Iranian banks, they were assuming a role in the terrorist activities of other entities.  *See* Jt. Mem. at 37-38.  Plaintiffs acknowledge the *Halberstam* factors a court must consider in determining whether a defendant's assistance is "substantial enough" to constitute aiding-and-abetting, but assert that the Moving Defendants' analysis of those factors is "shallow and misleading".  Opp'n at 59.  Plaintiffs respond to the Moving Defendants' analysis, as they often do, by invoking the voluminous nature of Plaintiffs' allegations.  *See, e.g.*, *id.* at 60 ("[M]ore than 2,500 allegations detail . . . .").  As explained in further detail in the Joint Memorandum, the *Halberstam* factors further support dismissal of Plaintiffs' conclusory allegations, *see* Jt. Mem. at 39-40, as they require, for example, analysis of "defendant's relation to the principal", *Halberstam*, 705 F.2d at 484-85, and no such relation to the wrongdoer is alleged here.

Plaintiffs assert that "[t]he *Ofisi* court dismissed the plaintiffs' aiding and abetting claim because that claim was not available under the ATA at that time."  Opp'n at 61.  Plaintiffs are wrong.  The court in *Ofisi* applied *Halberstam* and found that "Plaintiffs' aiding-and-abetting claim was deficient because the complaint failed to plausibly allege that BNPP had the requisite knowledge or provided substantial assistance to the terrorist attacks on the U.S. injuries."  *Ofisi v. BNP Paribas, S.A.*, 2018 WL 396234, at *5 (D.D.C. Jan. 11, 2018).  Just like the allegations against BNPP in *Ofisi*, there are no plausible allegations that the Moving Defendants "directly funded any terrorist group", had knowledge that the funds they allegedly provided were used "to sponsor terrorist activities", or that their purported conduct "actually enabled the attacks".[8] Jt. Mem. at 39 (quoting *Ofisi*, 2018 WL 396234, at *5).

---

[8] Plaintiffs also assert that there is "a lenient pleading standard in the Second Circuit concerning scienter allegations".  Opp'n at 58 (citing *Weiss*, 768 F.3d at 211).  Even assuming that a pleading standard may be "lenient", it does not subvert the plausibility standard of *Iqbal*.

### D.      The Complaint Fails Plausibly To Plead the Elements of a Conspiracy

Plaintiffs appear to abandon their JASTA-based civil conspiracy claim, asserting instead that only *Halberstam* applies and "requires 'an injury caused by an unlawful overt act performed by one of the parties to the' scheme and 'which overt act was done pursuant to and in furtherance of the common scheme.'"  Opp'n at 62 (quoting *Halberstam*, 705 F.2d at 477).  However, under the plain language of JASTA, Plaintiffs are required to plausibly allege that the Moving Defendants "conspire[d] with the person who committed such an act of international terrorism" (in addition to plausibly alleging that the act of international terrorism was "committed, planned, or authorized" by a designated FTO).  18 U.S.C. § 2333(d)(2).

*First*, Plaintiffs fail plausibly to allege that the Moving Defendants "conspire[d] with the person who committed such an act of international terrorism."  18 U.S.C. § 2333(d)(2).  The Complaint does not plausibly allege facts showing that the Moving Defendants conspired with any entity, FTO or otherwise, that "committed" any of the attacks at issue.  Jt. Mem. at 33-34; Stay Dec. at 13-14.  Plaintiffs assert that "[c]onspiracy law does not require a direct connection between all the conspirators, nor do they even need to know all the persons involved."  Opp'n at 66.  But this is plainly not the case in the JASTA context, because JASTA requires that the defendant "conspire[d] with" the person who committed the act of international terrorism.  *Linde*, 882 F.3d at 322.  Nothing in the Findings and Purpose of JASTA displaces this express statutory requirement.  18 U.S.C. § 2333(d)(2).  *Shaffer* applied the plain language of JASTA to dismiss a complaint where plaintiffs alleged that Deutsche Bank entered into "a conspiracy with Iran" rather than an FTO (or some other entity that committed an act of terrorism that was "planned or authorized" by an FTO).  *Shaffer*, 2017 WL 8786497 at *1, n.1.

*Second*, to establish a conspiracy claim, "a plaintiff must show that a defendant joined the conspiracy with the intent to commit the offenses that are its object." *Zito v. Leasecomm Corp.*, 2003 WL 22251352, at *20 (S.D.N.Y. Sept. 30, 2003). In an ATA case, the object of the conspiracy is an act of terrorism. *See* Jt. Mem. at 35. Plaintiffs fail plausibly to allege that the Moving Defendants possessed an intent to support an act of terrorism. *See id.* at 34-37; *Shaffer*, 2017 WL 8786497 at *10-11.[9] Plaintiffs rely on *Halberstam* for the proposition that "Just as the girlfriend agreed to be part of the illegal burglary conspiracy, Defendants agreed to be part of the illegal conspiracy alleged in the Complaint." Opp'n at 63. Plaintiffs' assertion makes clear one of several distinctions between *Halberstam* and the allegations here. In *Halberstam*, the conspiracy was to commit burglary, 705 F.2d at 487, whereas here, the purported conspiracy was to evade economic sanctions, *see, e.g.*, Compl. ¶ 2498. Plaintiffs illogically assert that a "'conspiracy to evade economic sanctions' is in fact a conspiracy to provide material support to terrorism". Opp'n at 61. But "[p]rocessing funds for Iranian financial institutions, even if done to evade U.S. sanctions, is not the same as processing funds for a terrorist organization." *Shaffer*, 2017 WL 8786497, at *4; *Rothstein*, 708 F.3d at 97.

## CONCLUSION

For the reasons set forth above and in the Moving Defendants' Joint Memorandum, the Complaint fails to state a claim and should be dismissed with prejudice.

---

[9] Plaintiffs assert that "[t]o oppose the conspiracy allegations, Defendants rely exclusively on *Shaffer*". Opp'n at 62. Not so, the Joint Memorandum includes a thorough analysis and discussion of the statutory requirements to state a claim of conspiracy under JASTA— requirements that Plaintiffs choose to ignore. Jt. Mem. at 33-36.

Dated: June 1, 2018

Respectfully submitted,

COVINGTON & BURLING LLP,

by

  */s/ John E. Hall*
     (with permission)

     John E. Hall
     Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
jhall@cov.com
mgimbel@cov.com

     David M. Zionts
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
dzionts@cov.com

*Attorneys for Defendant Deutsche Bank AG*

MAYER BROWN LLP,

by

  */s/ Mark G. Hanchet*
     (with permission)

     Mark G. Hanchet
     Robert W. Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mhanchet@mayerbrown.com
rhamburg@mayerbrown.com

     Andrew J. Pincus
     Marc R. Cohen
     Alex C. Lakatos
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
apincus@mayerbrown.com
mcohen@mayerbrown.com
alakatos@mayerbrown.com

*Attorneys for Defendants HSBC Bank USA, N.A., HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited and HSBC North America Holdings, Inc.*

21

CLEARY GOTTLIEB STEEN &
HAMILTON LLP,

by

   */s/ Jonathan I. Blackman*
     (with permission)

     Jonathan I. Blackman
     Carmine D. Boccuzzi, Jr.
     Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jblackman@cgsh.com
cboccuzzi@cgsh.com
aluft@cgsh.com

*Attorneys for Defendants Commerzbank*
*AG, Commerzbank AG, New York Branch,*
*and BNP Paribas, S.A.*

SULLIVAN & CROMWELL LLP,

by

   */s/ Michael T. Tomaino, Jr.*
     (with permission)

     Michael T. Tomaino, Jr.
     Jeffrey T. Scott
     Jonathan M. Sedlak
125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com

*Attorneys for Defendant Barclays*
*Bank PLC*

SULLIVAN & CROMWELL LLP,

by

   */s/ Sharon L. Nelles*
     (with permission)

     Sharon L. Nelles
     Bradley P. Smith
     Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard
Chartered Bank*

CLIFFORD CHANCE US LLP,

by

   */s/ Robert G. Houck*
     (with permission)

     Robert G. Houck
     Michael G. Lightfoot
31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

*Attorneys for Defendants The Royal Bank of
Scotland N.V. (formerly known as ABN
AMRO Bank N.V.) and The Royal Bank of
Scotland plc*

SULLIVAN & CROMWELL LLP,

by

___/s/ Joseph E. Neuhaus_____
      (with permission)

      Joseph E. Neuhaus
      Alexander J. Willscher
      Colin A. Chazen
125 Broad Street
New York, NY 10004
(212) 558-4000
neuhausj@sullcrom.com
willschera@sullcrom.com
chazenc@sullcrom.com

*Attorneys for Defendant Crédit Agricole*
*Corporate & Investment Bank*

CRAVATH, SWAINE & MOORE LLP,

by

___/s/ John D. Buretta_____

      Richard W. Clary
      John D. Buretta
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*