UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY O'SULLIVAN, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　-against-<br><br>DEUTSCHE BANK AG, HSBC BANK USA, N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc; HSBC BANK MIDDLE EAST LIMITED; HSBC NORTH AMERICA HOLDINGS, INC.; COMMERZBANK AG; COMMERZBANK AG, NEW YORK BRANCH; BARCLAYS BANK Plc; BNP PARIBAS S.A.; STANDARD CHARTERED BANK; ROYAL BANK OF SCOTLAND N.V.; ROYAL BANK OF SCOTLAND PLC; CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK; CREDIT SUISSE AG; and BANK SADERAT Plc,<br><br>　　　　　　　　　　Defendants. | 17-CV-08709-LTS-GWG |

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW OF
DEUTSCHE BANK AG, HSBC BANK USA, N.A., HSBC HOLDINGS PLC,
HSBC BANK PLC, HSBC BANK MIDDLE EAST LIMITED, HSBC NORTH AMERICA
HOLDINGS, INC., THE ROYAL BANK OF SCOTLAND N.V.,
AND THE ROYAL BANK OF SCOTLAND PLC
<u>IN FURTHER SUPPORT OF MOTION TO DISMISS</u>**

Defendant Deutsche Bank AG ("Deutsche Bank"), the HSBC Defendants,[1] defendant The Royal Bank of Scotland N.V. (f/k/a ABN AMRO Bank N.V.), and defendant The Royal Bank of Scotland plc respectfully submit this supplemental reply memorandum in further support of the Moving Defendants' motion to dismiss. These defendants join the Moving Defendants' joint reply memorandum in full. The purpose of this supplemental brief is to correct certain inaccurate statements about these defendants made in Plaintiffs' opposition brief, which are not supported by the complaint and contradicted by documents incorporated therein.

## Deutsche Bank

Plaintiffs' opposition brief contains several inaccurate statements about Deutsche Bank that are unsupported by the complaint and contradicted by two orders incorporated into the complaint: a consent order that Deutsche Bank entered into with the New York State Department of Financial Services ("DFS"), Consent Order, *In the Matter of Deutsche Bank AG* (N.Y. State Dep't of Fin. Servs. Nov. 3, 2015), https://www.dfs.ny.gov/about/ea/ea151103.pdf ("Consent Order"), and an order Deutsche Bank entered into with the Federal Reserve, Order, *In the Matter of Deutsche Bank AG*, No. 15-034-B-FB (Bd. Gov. Fed. Res. Sys. Nov. 4, 2015), http://tinyurl.com/FedResDB ("Federal Reserve Order").

1. Plaintiffs assert that their complaint "alleges transfers to and for specific entities within the Iranian terrorist apparatus—specially designated entities known for sponsoring terrorism, including the FTOs ["Foreign Terrorist Organizations"] responsible for Plaintiffs' injuries." *See* Opp'n at 37-38. The complaint does not include any allegation that Deutsche Bank processed transfers that were for the benefit of an Iranian entity designated by the Treasury Department as a

---

[1] The HSBC Defendants are HSBC Holdings plc, HSBC Bank plc, HSBC North America Holdings Inc., HSBC Bank Middle East Limited, and HSBC Bank USA N.A.

Specially Designated National ("SDN") or Specially Designated Global Terrorist ("SDGT"), much less a designated FTO. The Consent Order on which Plaintiffs' claims are based states only that Deutsche Bank conducted U.S. dollar clearing transactions on behalf of Iranian financial institutions, not FTOs. *See* Consent Order at 2.

Moreover, contrary to Plaintiffs' assertions, the Iranian financial institutions Plaintiffs allege are relevant here, *see* Compl. ¶ 3 n.4, were not even designated as an SDN or SDGT at the relevant time. Plaintiffs assert, for example, that Defendants provided Bank Melli with access to U.S. dollars, and they highlight separate transfers that Bank Melli made to the IRGC between 2002 and 2006. *See* Opp'n at 32. But as the complaint acknowledges, Bank Melli was not a designated SDN until 2007. Compl. ¶ 1174; *see also id.* ¶ 1185 (Bank Mellat designated in 2007), ¶ 1199 (Bank Sepah designated in 2007), ¶ 1972 (Bank Refah designated in 2011), ¶ 2332 (Bank Saderat designated in 2007); *see also generally id.* (no allegation that Bank Tejarat or Bank Markazi was designated). Moreover, the Consent Order on which Plaintiffs base their claims against Deutsche Bank states that in 2006, Deutsche Bank "instituted a series of policies" to end the practice of processing U.S. dollar clearing transactions non-transparently and to "wind down business with U.S.-sanctioned entities." Consent Order ¶ 9; Compl. ¶ 1502. *See also* Federal Reserve Order at 2 (indicating that the relevant time period for Deutsche Bank's non-transparent processing practices ended in January 2006).

2. Plaintiffs assert in their opposition that "[f]rom at least 1999 through 2006, DB used . . . non-transparent methods and practices to conduct more than 27,2000 USD clearing transactions valued at over $10.86 billion *on behalf of SDNs, including Iranian sanctioned entities*." Opp'n at 21-22 (emphasis added) (citing Compl. ¶ 1491, which is based on the Consent Order at 2). This is false. As explained above, the Iranian banks for which Deutsche Bank is alleged to have

2

conducted U.S. dollar-clearing transactions were not designated as SDNs during the 1999-2006 period.

3. Plaintiffs claim that Deutsche Bank "knew its conduct" (i.e., the non-transparent processing of transactions) "was illegal and violated terrorism sanctions." Opp'n at 21; *see also id.* at 32 (stating that Defendants "worked directly with Iranian Banks . . . to conceal and disguise their financial transactions, with the knowledge and intent that such 'OFAC-safe' transactions would . . . evade counter-terrorism sanctions"). This is doubly misleading: nearly all of these transactions did not violate sanctions, and none are alleged to have violated *terrorism* sanctions. Until 2008, "U-Turn" transactions that benefitted Iranian banks were expressly authorized by the U.S. government and did not violate U.S. sanctions. *See* Joint Opening Br. at 7. As a result, virtually all of the transactions identified in the Consent Order were found not to violate sanctions. Consent Order at 2 & n.2  Specifically, 98% of the transactions identified in the Consent Order (26,600 out of 27,200), or over 99% by dollar volume ($10.82 billion out of $10.86 billion), did not involve sanctions violations. *Id.* The Federal Reserve similarly found that Deutsche Bank's practices resulted in only "intermittent violations of OFAC [sanctions] Regulations." Federal Reserve Order at 2.

Moreover, nothing in the Consent Order or the Federal Reserve Order suggests that the 1% of transactions that were sanctioned involved "*counter-terrorism* sanctions." *See* Opp'n at 21, 32. At the relevant time, the United States imposed a general embargo on Iran, and the provision of financial services for any person in Iran was illegal unless subject to a license (such as the U-Turn exception). *See* Exec. Order No. 12,959, 60 Fed. Reg. 24,757; (May 6, 1995); Exec. Order No. 13,059, 62 Fed. Reg. 44,531 (Aug. 19, 1997)*.* Given that the relevant Iranian financial institutions were not designated for terrorism-related sanctions at the relevant time, nothing in the complaint

or the orders suggests any Deutsche Bank transactions violated *counter-terrorism* sanctions, rather than (for a tiny fraction) the general Iran embargo.

4. Plaintiffs appear to suggest that they have alleged that Deutsche Bank "provided trade financing for materials specifically designed for use in terror attacks." Opp'n at 38. Nothing in the complaint or materials incorporated therein supports this assertion.

5. Plaintiffs attempt to link the settlements Deutsche Bank entered into with the Federal Reserve and the DFS and Deutsche Bank's supposed knowledge that Iranian financial institutions "were acting as agents of terror." *See id.* at 41. Deutsche Bank's civil settlements with banking regulators say absolutely nothing about terrorism.

## HSBC Defendants

Plaintiffs' opposition brief likewise mischaracterizes the public record and the complaint with respect to the HSBC Defendants. Specifically, Plaintiffs (1) misrepresent a 2012 report into various banking practices at HSBC by the U.S. Senate Permanent Subcommittee on Investigations (the "Senate Report"),[2] (2) misstate their own allegations against the HSBC Defendants and (3) conflate allegations against HSBC Bank USA N.A. ("HSBC Bank USA") with those pertaining to other Defendants in support of their 18 U.S.C. § 2332d claim.

1. In an effort to show that the HSBC Defendants participated in a conspiracy with Iran to evade OFAC sanctions, Plaintiffs rely repeatedly on portions of the Senate Report that have nothing to do with Iran or sanctions evasion. Specifically, after describing the stripping of payment messages and facilitation of wire transactions involving Iranian counterparties, Plaintiffs attempt to support allegations against the HSBC Defendants by stating that the Senate "issued a report

---

[2] Incorporated by reference in the Complaint, the Senate Report is publicly available at: https://www.hsgac.senate.gov/imo/media/doc/PSI%20REPORT-HSBC%20CASE%20HISTORY%20(9.6).pdf

4

regarding the HSBC Defendants, finding, among other things, that HSBC-US ***provided U.S. correspondent accounts to some foreign banks despite evidence of links to terrorist financing***." Opp'n at 23 (emphasis in original). Plaintiffs repeat and rely on this quotation again in another section of the opposition titled "Evading Sanctions In Not Routine Banking," to support their contention that HSBC (among other Moving Defendants) "actively violated laws and falsified banking records so the transactions would not be identified or halted by the U.S. authorities." *Id.* at 38. Plaintiffs return to the well a third time (this time expanding on the quote) to support their assertion that the HSBC Defendants had knowledge that "Iran and its banks were acting as agents of terror." *Id.* at 41-42.

However, this language that Plaintiffs parrot throughout their opposition briefing is not drawn from the section of the Senate Report discussing Iran or sanctions circumvention, but rather HSBC's banking relationship with a Saudi commercial bank. While that bank was alleged to have had ties to terrorist financing, thus raising questions as to the propriety of HSBC's relationship with it, nowhere in the Senate Report is there any allegation that HSBC "stripped" transactions involving that bank or that the relationship implicated banking transactions with Iran. *See* Senate Report at 189. In fact, the Senate Report's section on the Saudi bank is entirely separate from its discussion of OFAC sanctions circumvention and transactions involving Iranian counterparties. *See* Senate Report at 113 (HSBC Affiliates: Circumventing OFAC Prohibitions) and 119 (Transactions Involving Iran). Thus Plaintiffs' contention that the HSBC Defendants participated in a so-called conspiracy with Iran and others is based on a conflation of unrelated sections of the Senate Report.

2. Plaintiffs mischaracterize their own allegations as they relate to the HSBC Defendants. To support their broad contention that "Defendants dealt directly with SDNs and SDGTs,"

5

Plaintiffs state that the "Complaint alleges transfers to and for specific entities within the Iranian terrorist apparatus—specially designated entities known for sponsoring terrorism, including the FTOs responsible for Plaintiffs' injuries." Opp'n at 37-38. But the HSBC Defendants are not alleged to have dealt directly with any SDNs or SDGTs, much less the "FTOs responsible for Plaintiffs' injuries." Plaintiffs further posit that "Defendants" financed raw materials for creating weapons and "provided trade financing for materials specifically designed for use in terror attacks." *Id.* at 38. But again, no such allegation is made against the HSBC Defendants.

3. Plaintiffs' opposition makes clear that their § 2332d claim against HSBC Bank USA—a U.S. clearing bank—relies exclusively on "knowledge" allegations against other Defendants. As set forth in the Moving Defendants' opening brief (Joint Opening Br. at 30 n.11), even if Plaintiffs could equate Iranian commercial banks with the government of Iran for the purposes of § 2332d (they cannot), Plaintiffs do not plausibly allege that HSBC Bank USA *knew* that Iranian banks were the beneficiaries of wire transfers it cleared. *See* 18 U.S.C. § 2332d(a) (prohibiting knowing engagement in financial transactions with foreign countries that support terrorism). Plaintiffs themselves allege that the identity of Iranian counterparties were scrubbed from payment messages *before* they reached the United States. *See* Compl. ¶ 1418. Plaintiffs dismiss the argument that HSBC Bank USA lacked requisite knowledge as "ludicrous," reasoning that the complaint amply alleges that *other* Defendants knew that Iran was involved in stripped transactions. Opp'n at 46 n.26. Thus Plaintiffs do not even attempt to argue that HSBC Bank USA *itself* had knowledge that it was dealing with Iran or Iran's "instrumentalities," nor do they provide any basis to impute the knowledge of other Defendants for the purposes of § 2332d. Plaintiffs' § 2332d claim against HSBC Bank USA must be dismissed.

6

**The "RBS" Defendants**

In relation to The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.) ("ABN AMRO") and The Royal Bank of Scotland plc ("RBS plc"), Plaintiffs' opposition (1) improperly fails to differentiate between the two defendants by using the term "RBS," (2) makes up an allegation against "RBS" that has no basis in the complaint, and (3) mischaracterizes allegations against "RBS" that are in the complaint.

1. Plaintiffs' opposition continues to use the term "RBS" to refer to allegations that either relate to (a) ABN AMRO or (b) RBS plc, but not both. As explained in the defendants' joint motion to dismiss, this makes the Court's task difficult, if not impossible, as ABN AMRO and RBS are two different companies, even though they currently have similar names. To the extent that Plaintiffs do not differentiate between the two banks, their allegations and arguments should be disregarded. *See* Joint Opening Br. at 3 n.3. Moreover, to the extent that certain arguments against "RBS" relate to allegations in the complaint that clearly pertain to ABN AMRO government resolutions (e.g., Opp'n at 23-24 (arguments citing ¶¶ 2162-64, 2115, 2142, 2149-2155, 2158)), they have no applicability to RBS plc. Similarly, to the extent that certain arguments against "RBS" relate to allegations in the complaint that clearly pertain to RBS plc government resolutions (e.g., Opp'n at 24 (arguments citing ¶¶ 2169, 2174, 2113), they have no applicability to ABN AMRO.

2. Plaintiffs have made up an allegation against "RBS" that has no basis whatsoever in the complaint. They argue that "RBS" "maintained accounts for [The National Iranian Oil Company ("NIOC")] when it was IRGC-controlled, and after being designated by the U.S." Opp'n at 19. There are no such allegations against either ABN AMRO or RBS plc in the complaint, in either the paragraphs that plaintiffs cite or anywhere else. *See Troy v. City of New York*, 2014 WL

7

4804479, at *1 (S.D.N.Y. Sept. 25, 2014 ) ("[I]t is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.") (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)).

     3. Plaintiffs argue that "Royal Bank of Scotland N.V [ABN AMRO]. . . facilitated illegal funds transfers through the United States on IRISL's behalf . . . ." Opp'n at 19 (citing Compl. ¶ 2161). Paragraph 2161 actually refers to "RBS's then-New York branch"—leaving it up to the Court to guess whether that means ABN AMRO's New York branch or RBS plc's New York branch—and alleges only that the branch "was the conduit for" IRISL-related transactions, not that the branch "facilitated" such transfers, which are two very different things. Again, the argument in the brief is not supported by the allegation in the complaint. This is equally true of the blunderbuss arguments against "RBS" at pages 38 and 41 of Plaintiffs' opposition, neither of which are supported by the paragraphs of the complaint that Plaintiffs cite (¶¶ 2111-80).

\*     \*     \*

     To be clear, Plaintiffs' inaccurate portrayal of the allegations in the complaint, and their attempts to contradict the documents incorporated in the complaint, are not material. For example, even if every transaction was with an Iranian SDN (contrary to the complaint and settlement documents), Plaintiffs claims would be no stronger. *See Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013) (dismissing claims based on delivery of currency directly to the Government of Iran, a state-sponsor of terrorism, in violation of sanctions). But Plaintiffs' inaccurate statements do highlight the extent to which Plaintiffs must stretch the record even to attempt, however implausibly, to link Defendants' dollar-clearing transactions to battlefield injuries in Iraq.

Dated:  June 1, 2018          Respectfully submitted,

| COVINGTON & BURLING LLP, | MAYER BROWN LLP, |
|---|---|
| by<br> /s/ John E. Hall | by<br> /s/ Mark G. Hanchet<br>(with permission) |
| John E. Hall<br>Mark P. Gimbel<br>The New York Times Building<br>620 Eighth Avenue<br>New York, New York 10018<br>(212) 841-1000<br>jhall@cov.com<br>mgimbel@cov.com<br><br>David M. Zionts<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001<br>(202) 662-6000<br>dzionts@cov.com<br><br>*Attorneys for Defendant Deutsche Bank AG* | Mark G. Hanchet<br>Robert W. Hamburg<br>1221 Avenue of the Americas<br>New York, NY 10020-1001<br>(212) 506-2500<br>mhanchet@mayerbrown.com<br>rhamburg@mayerbrown.com<br><br>Andrew J. Pincus<br>Marc R. Cohen<br>Alex C. Lakatos<br>1999 K Street, N.W.<br>Washington, DC 20006-1101<br>(202) 263-3000<br>apincus@mayerbrown.com<br>mcohen@mayerbrown.com<br>alakatos@mayerbrown.com<br><br>*Attorneys for Defendants HSBC Bank USA, N.A., HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited and HSBC North America Holdings, Inc.* |

CLIFFORD CHANCE US LLP,

by

   */s/ Robert G. Houck*
      (with permission)

     Robert G. Houck
     Michael G. Lightfoot
31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.) and The Royal Bank of Scotland plc*