UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY O'SULLIVAN, et al.,<br><br>          Plaintiffs,<br><br>    -against-<br><br>DEUTSCHE BANK AG; HSBC BANK USA, N.A.; HSBC HOLDINGS Plc; HSBC BANK Plc; HSBC BANK MIDDLE EAST LIMITED; HSBC NORTH AMERICA HOLDINGS, INC.; COMMERZBANK AG; COMMERZBANK AG, NEW YORK BRANCH; BARCLAYS BANK Plc; BNP PARIBAS S.A.; STANDARD CHARTERED BANK; THE ROYAL BANK OF SCOTLAND N.V.; THE ROYAL BANK OF SCOTLAND PLC; CRÉDIT AGRICOLE S.A.; CRÉDIT AGRICOLE CORPORATE & INVESTMENT BANK; CREDIT SUISSE AG; and BANK SADERAT Plc,<br><br>          Defendants. | 17-CV-08709-LTS-GWG |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN RESPONSE
TO PLAINTIFFS' MOTION FOR PRESERVATION ORDER**

June 8, 2018

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

LEGAL STANDARD ..........................................................................................................2

ARGUMENT ......................................................................................................................3

I. THE GOVERNMENT AGENCIES SHOULD BE PROVIDED AN OPPORTUNITY TO RESPOND TO PLAINTIFFS' BROAD REQUEST .......................3

II. THERE IS NO NEED FOR ANY PRESERVATION ORDER DIRECTED TO THE PARTIES ..................................................................................................5

III. PLAINTIFFS' PRESERVATION REQUEST IS PREMISED ON NUMEROUS MISSTATEMENTS ...........................................................................................6

CONCLUSION ....................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bright Sols. for Dyslexia, Inc. v. Doe 1*, 2015 WL 5159125
  (N.D. Cal. Sept. 2, 2015) ..................................................................................................2

*Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*,
  220 F.R.D. 429 (W.D. Pa. 2004) .......................................................................................3

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009) ...........................................9

*In re Application of Chevron Corp.*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010) ...............................2, 5

*In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007) ......................................................8, 9

*Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*,
  2016 WL 1657922 (S.D. Ohio Apr. 27, 2016) .........................................................2, 3, 5, 6

*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) .....................................................2, 3, 7

**Statutes & Rules**

Fed. R. Civ. P. 26(f) .........................................................................................................................3

12 C.F.R. § 4.33 ...........................................................................................................................8, 9

12 C.F.R. § 4.35 ...............................................................................................................................8

**Other Authorities**

Exec. Order No. 12170, 44 Fed. Reg. 65729 (Nov. 14, 1979) .......................................................4

## INTRODUCTION

The Bank Defendants[1] respectfully submit this joint memorandum of law in response to Plaintiffs' Motion for Preservation Order (the "Motion") (Dkt. No. 129) and Memorandum of Law in support thereof (Dkt. No. 130) ("Pls.' Br.").

The Bank Defendants do not object in principle to the issuance of a document preservation order directed to the five nonparty government agencies referenced in the Motion: the United States Department of Treasury; the United States Department of Justice; the Federal Reserve Bank; the New York Department of Financial Services; and the New York District Attorney's Office (collectively, the "Government Agencies"). The Bank Defendants submit, however, that the Government Agencies should be given an opportunity to respond to Plaintiffs' Motion before it is decided. As it stands, Plaintiffs have not made a showing of exceptional circumstances to justify proceeding on, in essence, an ex parte basis against the Government Agencies.

Further, a portion of the Proposed Order[2] is improperly and unnecessarily directed to the parties to this action (including the Bank Defendants), and the Bank Defendants do object to the Proposed Order to that extent. Plaintiffs also attempt to support their request by invoking the purported conduct of the Bank Defendants and the Government Agencies regarding document preservation, but their presentation misstates the facts.

---

[1] The "Bank Defendants" are Deutsche Bank AG; HSBC Bank USA, N.A.; HSBC Holdings plc; HSBC Bank plc; HSBC Bank Middle East Limited; HSBC North America Holdings, Inc.; Commerzbank AG; Commerzbank AG, New York Branch; Barclays Bank PLC; BNP Paribas S.A.; Standard Chartered Bank; The Royal Bank of Scotland N.V. (f/k/a ABN AMRO Bank N.V.); The Royal Bank of Scotland plc; Crédit Agricole Corporate & Investment Bank; and Credit Suisse AG.

[2] Decl. of Christopher Paulos ("Paulos Decl.") (Dkt. No. 131), Ex. V, Plaintiffs' [Proposed] Order for the Preservation of Potential Evidence (Dkt. No. 130-22) (the "Proposed Order").

## LEGAL STANDARD

"While courts almost certainly have inherent authority to order those before them to preserve potentially relevant evidence, that authority ordinarily should not be used in the absence of some substantial basis for believing that it would serve a useful purpose." *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 787 (S.D.N.Y. 2010). While preservation orders are "generally directed to party-litigants", courts have also exercised their authority to issue such orders to third-party entities, especially given that, unlike litigants, such nonparties "have no duty to preserve absent a court order". *See, e.g.*, *Bright Sols. for Dyslexia, Inc. v. Doe 1*, 2015 WL 5159125, at *2-3 (N.D. Cal. Sept. 2, 2015) (applying the same standard as to orders directed to party-litigants). In determining whether to issue a preservation order, courts apply a balancing standard, taking into consideration:

> "1) the level of concern that the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation."

*Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (citation omitted).

"Courts must exercise restraint in using their inherent authority to issue preservation orders." *Bright Sols. for Dyslexia, Inc.*, 2015 WL 5159125, at *4. "[I]n general, preservation orders must be premised on a demonstration that a real danger of evidence destruction exists, a lack of any other available remedy, and a showing that the preservation order is an appropriate exercise of the court's discretion." *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 2016 WL 1657922, at *2 (S.D. Ohio Apr. 27, 2016) (citing the

2

Sedona Principles, Second Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 2007 at 33, *available at* https://thesedona conference.org/download-pub/81) (citation omitted). "Central to th[e] inquiry" of "whether the requested preservation order constitutes an appropriate exercise of [a court's] discretion" is "whether the requested preservation order is overbroad and/or unduly burdensome". *Id.* at *3. Before such an order is issued, courts should be provided with "information [about] the extent of the burden that would be imposed . . . if a preservation order were entered". *Biovail Corp.*, 233 F.R.D. at 372. The burden is on the party seeking the preservation order "to demonstrate that the requested preservation order is not unduly burdensome". *See id.* (internal quotation marks omitted).

**ARGUMENT**

**I.    THE GOVERNMENT AGENCIES SHOULD BE PROVIDED AN OPPORTUNITY TO RESPOND TO PLAINTIFFS' BROAD REQUEST**

"Preservation of evidence may be particularly burdensome for non-parties, considering that their interest in the pending civil action is minuscule while the restrictions that can be imposed in a motion for preservation may be expensive and voluminous." *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 436 (W.D. Pa. 2004). "Moreover, typically, a non-party is afforded the opportunity to object on the ground of undue burden or expense." *Swetlic Chiropractic & Rehab. Ctr.*, 2016 WL 1657922, at *3 (denying in part a preservation order against a nonparty where the nonparty was not given "an opportunity to voice any . . . objection"). "Ex parte preservation orders should issue only in exceptional circumstances." 2006 Advisory Committee notes to Fed. R. Civ. P. 26(f).

Plaintiffs fail to show any exceptional circumstances required to justify proceeding without affording the Government Agencies the opportunity to respond to Plaintiffs'

3

preservation request.  Plaintiffs do not show that any particular documents related to Plaintiffs' claims here are at imminent risk of destruction.  The Government Agencies are best equipped to help the Court determine what, if any, relevant documents might be discarded prior to when any discovery in this action goes forward, should discovery occur.

Likewise with respect to the burden of the Proposed Order, the Court would be well served by input from the Agencies.  On its face, the Proposed Order is very broad.  It would require five large Government Agencies "and their employees and agents" to "take reasonable steps to preserve every document, data or tangible thing in their possession, custody or control, containing information that is relevant to, *or may reasonably lead to the discovery of information relevant to*, the subject matter involved in the pending litigation".  Proposed Order at 1 (emphasis added).

While the Proposed Order itself offers no specification, in their brief in support of the Motion, Plaintiffs state that they contemplate that the Government Agencies would be expected to preserve, in addition to materials relating to 30 enforcement actions against various of the Bank Defendants, "[m]aterials and data relating to Specially Designated Nationals ('SDN') case files supporting or leading to the designation of Iranian and Sudanese entities or individuals as 'sanctioned' entities/individuals (including SDNs, Specially Designated Global Terrorists ('SDGT'), and Foreign Terrorist Organizations ('FTO'))".  Pls.' Br. at 2.  This request is not limited by any date range and apparently would require the Government Agencies to preserve documents dating back to 1979 when U.S. sanctions against Iran were first imposed. *See* Exec. Order No. 12170, 44 Fed. Reg. 65729 (Nov. 14, 1979).  The request is also not limited to the two entities designated as FTOs at the time of the attacks, *see* Defs.' Jt. Mem. in Support of Mot. to Dismiss (Dkt. No. 103), at 33 n.12 (Kata'ib Hizballah and Ansar al-Islam), or the 15

4

other Iranian entities on U.S. sanctions lists that the Complaint states are somehow relevant to their claims, *see* Compl. ¶ 3 n.4, but instead would apparently encompass hundreds of Iranian or Sudanese sanctioned entities or individuals.[3]  Particularly in light of the broad terms of the Proposed Order, the Government Agencies are best positioned to assist the Court in determining whether the Order "is unduly burdensome", and thus whether the issuance of a preservation order is an appropriate exercise of the Court's discretion.  *See Swetlic Chiropractic & Rehab. Ctr.*, 2016 WL 1657922, at *2.

Although Plaintiffs' Proposed Order states, "[i]n the event an agency has concerns with this Order, it may promptly present its position to this Court", Plaintiffs offer no reason why the Government Agencies should not be given an opportunity to be heard *prior* to the issuance of any preservation order.  *See* Proposed Order at 2.

## II. THERE IS NO NEED FOR ANY PRESERVATION ORDER DIRECTED TO THE PARTIES

Although nowhere mentioned in their brief, Plaintiffs have included in their Proposed Order a provision "remind[ing]" the parties "that they also have a similar duty to preserve evidence relevant to this case", Proposed Order at 2, evidently seeking to turn into a court order the common law preservation obligations imposed on parties.  Were the Court to determine that a preservation order should be issued as to the Government Agencies, after they have had an opportunity to respond, there is no need for such a preservation order to address the *parties'* preservation obligations in this case.  As defendants in this matter, the Bank Defendants are already obligated to preserve relevant documents, and no further order is appropriate.  *See In re Application of Chevron Corp.*, 736 F. Supp. 2d at 787 (declining to enter a preservation order

---

[3] *See* Dept. of Treasury, Office of Foreign Assets Control, Specially Designated Nationals and Blocked Persons List ("SDN List"), *available at* https://www.treasury.gov/ofac/downloads/sdnlist.pdf.

5

directed to plaintiffs and their attorneys as they already "would be subject to the risk of serious adverse consequences" were document destruction to occur); *see also Swetlic Chiropractic & Rehab. Ctr.*, 2016 WL 1657922, at *2 ("Generally, preservation orders are unnecessary because parties to civil litigation have a duty to preserve relevant information", and "should therefore be employed in a very limited set of circumstances.") (citation and quotation marks omitted).

### III. PLAINTIFFS' PRESERVATION REQUEST IS PREMISED ON NUMEROUS MISSTATEMENTS

Plaintiffs' preservation request offers numerous factual misstatements regarding the asserted past retention policies and practices of the Government Agencies and the Bank Defendants, as well as mischaracterizations of the Bank Defendants' conduct as to this matter. While these assertions are largely irrelevant to the risk that relevant documents might be destroyed or the burden of a preservation order, the Bank Defendants offer below several examples of the misstatements and misleading insinuations on which Plaintiffs rely.

*First*, Plaintiffs assert that the need for a preservation order is heightened because the Government Agencies "have, in the past, been found to have inadequate preservation methods or to have purposefully withheld or destroyed documents in contravention of retention and production duties in other matters". Pls.' Br. at 9. But the isolated asserted failures that Plaintiffs identify do not relate to the sanctions-related investigations and resulting settlement agreements, *see* Paulos Decl., Ex. A, List of Applicable Enforcement Actions, and do not raise legitimate concerns regarding the Government Agencies' recordkeeping practices in relation to the now-concluded investigations into the Bank Defendants.[4] These assertions regarding the

---

[4] For example, Plaintiffs assert that the "Agencies at issue" have "[i]mplemented improper disposal methods for case files". Pls.' Br. at 9. The only support Plaintiffs provide for this assertion is a citation to a letter that states that one FBI case file was partially destroyed in 1993 in contravention of the FBI's record retention policies, *id.* at 9 n.10, which also states that the "FBI has taken steps to mitigate future incidents due to improper disposal implementation", *see*

6

Government Agencies' alleged recordkeeping failures do, however, further highlight why the Government Agencies should be provided an opportunity to respond to Plaintiffs' request.

*Second*, Plaintiffs assert that the Bank Defendants have been found to have, among other things, "destroyed documents". Pls.' Br. at 9. Plaintiffs emphasize, however, that they are not "making any allegation or claim that Defendants have destroyed documents or evidence in contravention of their standing duty to preserve". *Id.* at 9 n.9. The pertinent question is whether Plaintiffs have shown a real threat of future loss or destruction. *See, e.g.*, *Biovail Corp.*, 233 F.R.D. at 371 (describing the burden on the party moving for a preservation order as establishing "the risk that documents will be destroyed in the future"). Isolated asserted incidents in the past of document destruction or recordkeeping inadequacies in entirely unrelated matters are not predictive of the destruction of documents in the instant case. The Bank Defendants are well aware of their obligation to preserve relevant documents in this matter.

*Third*, Plaintiffs rely on an exchange of letters between the Office of the Comptroller of Currency (the "OCC") and the parties regarding Plaintiffs' request for non-public OCC information to assert erroneously that "Defendants have stifled [their] attempts to obtain and preserve records in the possession of the Agencies". *See* Pls.' Br. at 12-13. After receiving a request from Plaintiffs for non-public OCC information that Plaintiffs claimed related to this litigation, the OCC invited defendants to comment on the request. The Bank Defendants

---

*id.* (citing Letter from L. Brewer to M. Jupina (Dec. 5, 2016), *available at* https://www.archives. gov/files/records-mgmt/resources/ud-2017-0002-fbi-open-close-letter.pdf). Plaintiffs also assert that the "Agencies at issue" have [l]ost or destroyed records", Pls.' Br. at 9, but again provide a single citation to a source that lists instances in which the Bronx, Queens and Manhattan District Attorney's offices have been slow or unable to respond to New York Freedom of Information Law requests from inmates for records relating to the crimes for which they were serving prison sentences. *Id.* at 9 n.11 (citing Stan Johnson, *et al.*, "Inmates Want Files to Provide Innocence. DA Can't Find Them", CityLimits.org (Jan. 21, 2016), *available at* https://citylimits.org/ 2016/01/21/inmates-want-files-to-prove-innocence-da-cant-find-them/).

7

responded to Plaintiffs' request to the OCC, indicating that Plaintiffs' request was improper because (i) it constituted an attempted "end run" on discovery while a motion to stay all party and nonparty discovery was pending and (ii) failed to comply with the regulation governing the disclosure of non-public OCC information, 12 C.F.R. § 4.33, which requires that a party requesting non-public OCC information must "[s]how that other evidence reasonably suited to the requester's needs is not available from any other source".  See Paulos Decl., Ex. F. Following an exchange of letters, the OCC—not the Bank Defendants—chose to hold Plaintiffs' request for non-public OCC information in abeyance "in light of th[is] Court's ruling", Paulos Decl., Ex. H, granting the motion to stay discovery, Opinion & Order (Dkt. No. 118) (Apr. 26, 2018).  Moreover, contrary to Plaintiffs' assertion, the Bank Defendants' letter related solely to the production of non-public OCC information, and not to the preservation of such information. Plaintiffs also erroneously state, without citing any authority, that "Defendants have the authority to permit—by not objecting to—the release of the information in the possession of the Agencies, such as the OCC." Pls.' Br. at 13.  That is simply not the case. See, e.g., 12 C.F.R. § 4.35 ("The OCC decides whether to release non-public OCC information based on its weighing of all appropriate factors . . . . Each decision is at the sole discretion of the Comptroller").

*Finally*, Plaintiffs insinuate that the Bank Defendants' duty to preserve documents extends to records currently in the Government Agencies' possession because they are in the Bank Defendants' "control". Pls.' Br. at 13.  But the Bank Defendants plainly do not have "control" of such documents, because they do not have the "right, authority, or practical ability to obtain the documents from a non-party to the action". See In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007).  It is clear that the Bank Defendants do not have the "right" or "authority" to obtain such documents, and Plaintiffs appear instead to assert, albeit incorrectly,

8

that the Bank Defendants have the "practical ability to obtain documents", Pls.' Br. at 13 (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195), from nonparties. Courts have found a "practical ability to obtain documents" where the party had a contractual relationship with a nonparty that included a document-sharing provision, *see In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195-96, and have found no such "practical ability" where, as here, the party alleging such a relationship offered only conclusory allegations in support, *see Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009). Put simply, being asked by the OCC for input on a request for non-public information in connection with an adversarial matter, *see* 12 C.F.R. § 4.33(3), does not illustrate any "control" by the Bank Defendants over, or give rise to some ambiguous duty for the Bank Defendants to preserve, documents in the OCC's possession.

## CONCLUSION

For the reasons set forth above, the Court may wish to give the Government Agencies an opportunity to be heard prior to entering a preservation order affecting them. In any case, there is no need for entering any order touching on the preservation responsibilities of the parties, and the Court should not credit Plaintiffs' misstatements and misleading insinuations about the Bank Defendants' conduct.

Dated: June 8, 2018

Respectfully submitted,

| COVINGTON & BURLING LLP, | MAYER BROWN LLP, |
|---|---|
| by | by |
|   /s/ John E. Hall   |   /s/ Mark G. Hanchet   |
| (with permission) | (with permission) |
| John E. Hall<br>Mark P. Gimbel<br>The New York Times Building<br>620 Eighth Avenue<br>New York, New York 10018<br>(212) 841-1000<br>jhall@cov.com<br>mgimbel@cov.com | Mark G. Hanchet<br>Robert W. Hamburg<br>1221 Avenue of the Americas<br>New York, NY 10020-1001<br>(212) 506-2500<br>mhanchet@mayerbrown.com<br>rhamburg@mayerbrown.com |
| David M. Zionts<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001<br>(202) 662-6000<br>dzionts@cov.com | Andrew J. Pincus<br>Marc R. Cohen<br>Alex C. Lakatos<br>1999 K Street, N.W.<br>Washington, DC 20006-1101<br>(202) 263-3000<br>apincus@mayerbrown.com<br>mcohen@mayerbrown.com<br>alakatos@mayerbrown.com |
| *Attorneys for Defendant Deutsche Bank AG* | *Attorneys for Defendants HSBC Bank USA, N.A., HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited and HSBC North America Holdings, Inc.* |

| | |
|---|---|
| CLEARY GOTTLIEB STEEN & HAMILTON LLP, | SULLIVAN & CROMWELL LLP, |
| by | by |
|   */s/ Jonathan I. Blackman* <br> (with permission) |   */s/ Michael T. Tomaino, Jr.* <br> (with permission) |
| Jonathan I. Blackman <br> Carmine D. Boccuzzi, Jr. <br> Avram E. Luft <br> One Liberty Plaza <br> New York, NY 10006 <br> (212) 225-2000 <br> jblackman@cgsh.com <br> cboccuzzi@cgsh.com <br> aluft@cgsh.com | Michael T. Tomaino, Jr. <br> Jeffrey T. Scott <br> Jonathan M. Sedlak <br> 125 Broad Street <br> New York, NY 10004 <br> (212) 558-4000 <br> tomainom@sullcrom.com <br> scottj@sullcrom.com <br> sedlakj@sullcrom.com |
| *Attorneys for Defendants Commerzbank AG, Commerzbank AG, New York Branch, and BNP Paribas, S.A.* | *Attorneys for Defendant Barclays Bank PLC* |

11

SULLIVAN & CROMWELL LLP,

by  _/s/ Sharon L. Nelles_
    (with permission)

    Sharon L. Nelles
    Bradley P. Smith
    Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard Chartered Bank*

CLIFFORD CHANCE US LLP,

by  _/s/ Robert G. Houck_
    (with permission)

    Robert G. Houck
    Michael G. Lightfoot
31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.) and The Royal Bank of Scotland plc*

| | |
|---|---|
| SULLIVAN & CROMWELL LLP, | CRAVATH, SWAINE & MOORE LLP, |
| by  /s/ Joseph E. Neuhaus           (with permission) | by  /s/ John D. Buretta          |

    Joseph E. Neuhaus                         Richard W. Clary
    Alexander J. Willscher                John D. Buretta
    Colin A. Chazen                        Worldwide Plaza
125 Broad Street                          825 Eighth Avenue
New York, NY 10004                New York, NY 10019
(212) 558-4000                            (212) 474-1000
neuhausj@sullcrom.com           rclary@cravath.com
willschera@sullcrom.com         jburetta@cravath.com
chazenc@sullcrom.com

*Attorneys for Defendant Crédit Agricole Corporate & Investment Bank*     *Attorneys for Defendant Credit Suisse AG*