UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY O'SULLIVAN, et al.,

               Plaintiffs,

    -against-

DEUTSCHE BANK AG; HSBC BANK
USA, N.A.; HSBC HOLDINGS Plc; HSBC
BANK Plc; HSBC BANK MIDDLE EAST
LIMITED; HSBC NORTH AMERICA
HOLDINGS, INC.; COMMERZBANK AG;
COMMERZBANK AG, NEW YORK
BRANCH; BARCLAYS BANK Plc; BNP
PARIBAS S.A.; STANDARD CHARTERED
BANK; THE ROYAL BANK OF
SCOTLAND N.V.; THE ROYAL BANK OF
SCOTLAND PLC; CRÉDIT AGRICOLE
S.A.; CRÉDIT AGRICOLE CORPORATE &
INVESTMENT BANK; CREDIT SUISSE
AG; and BANK SADERAT Plc,

              Defendants.

17-cv-08709-LTS-GWG

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 3

I.      Plaintiffs Fail To Specify How the PAC Cures the Deficiencies in the Initial
        Complaint ......................................................................................................................... 4

II.     Plaintiffs Still Fail To State Any Primary Liability Claims (Claims VI-XIII) ................... 6

        A.      The PAC Does Not Adequately Allege Causation Under Binding
                Precedent ............................................................................................................... 6

        B.      Plaintiffs Still Fail To Plausibly Allege That Defendants Committed Any
                Acts of International Terrorism ............................................................................ 13

III.    Plaintiffs Still Fail To Plausibly Allege That Defendants Conspired to Commit
        Any Acts of International Terrorism (Claims I, IV, and V) ............................................ 16

IV.     Plaintiffs Still Fail To Plausibly Allege That Defendants Aided and Abetted Any
        Acts of International Terrorism (Claims II-III) ............................................................... 18

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

18 U.S.C. § 2331(1) ........................................................................................................ 13-14, 15

18 U.S.C. § 2332d .................................................................................................................. 13

18 U.S.C. § 2333 ..................................................................................................... 1, 16, 17, 19

18 U.S.C. § 2339A ................................................................................................................. 13

18 U.S.C. § 2339B ................................................................................................................. 13

**Cases**

*Burrage v. United States*,
571 U.S. 204 (2014).............................................................................................................. 13

*Giudice v. Harlan*,
No. 15 CV 7330-LTS-JCF, 2016 WL 6496255 (S.D.N.Y. Nov. 2, 2016) ........................ 3

*Health-Chem Corp. v. Baker*,
915 F.2d 805 (2d Cir. 1990).................................................................................................. 3

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005), *aff'd*, 551 F. Supp. 2d 173 (2008)........................ 6

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004).................................................................................. 6

*In re S. African Apartheid Litig.*,
56 F. Supp. 3d 331 (S.D.N.Y. 2014), *aff'd sub nom. Balintulo v. Ford Motor Co.*, 796
F.3d 160 (2d Cir. 2015)......................................................................................................... 4

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ................................................................................... 15, 17, 19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)................................................................................................. 18

*Linde v. Arab Bank*,
882 F. 3d 314 (2d Cir. 2018)........................................................................................... 13, 19

**Page(s)**

*Montanio v. Keurig Green Mountain, Inc.*,
276 F. Supp. 3d 212 (D. Vt. 2017) ..................................................................... 5

*O'Brien v. Price Waterhouse*,
740 F. Supp. 276 (S.D.N.Y. 1990), *aff'd*, *O'Brien v. Nat'l Prop. Analysts Partners*, 936
F.2d 674 (2d Cir. 1991) ..................................................................................... 3-4

*O'Neill v. Al Rajhi Bank*,
714 F.3d 118 (2d Cir. 2013) ........................................................... 2, 6, 9, 10

*Ong v. Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018) ................................................................ 5-6

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) ............................................................. 2, 6, 7, 13

*Smith v. Hogan*,
794 F.3d 249 (2d Cir. 2015) .............................................................................. 5-6

*Strauss v. Credit Lyonnais*,
S.A., No. 06CV702DLIRML, 2019 WL 1492902 (E.D.N.Y. Mar. 31, 2019), *appeal
docketed*, No. 19-865 (2d Cir. Apr. 4, 2019) ..................................................... 15

*TechnoMarine SA V. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) .............................................................................. 4

*Valentin v. City of Rochester*,
No. 11-CV-6238CJS, 2015 WL 1120256 (W.D.N.Y. Mar. 12, 2015) .............................. 5

*Weiss v. Nat'l Westminster Bank PLC*,
No. 05CV4622DLIRML, 2019 WL 1441118 (E.D.N.Y. Mar. 31, 2019), *appeal docketed*,
No. 19-863 (2d Cir. Apr. 2, 2019) ....................................................................... 14-15

Defendants[1] respectfully submit this opposition to Plaintiffs' Motion For Leave To Amend Their Complaint (Apr. 22, 2019), ECF No. 197 ("Motion To Amend").

## PRELIMINARY STATEMENT

On March 28, 2019, this Court issued a thorough and well-reasoned decision dismissing Plaintiffs' original 533-page Complaint (Nov. 9, 2017), ECF No. 1 ("Initial Complaint") in this action for failure to state any claim against Defendants under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) (the "ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"). In doing so, the Court identified several fundamental flaws in Plaintiffs' theories of liability. The Proposed Amended Complaint (Apr. 22, 2019), ECF No 197-1 ("PAC") suffers from the same deficiencies the Court previously identified. Plaintiffs' Motion To Amend should therefore be denied as futile.

In seeking leave to amend, Plaintiffs attempt to obscure the continued insufficiency of their claims by forcing Defendants and the Court to decipher what is actually new or different about the PAC. The virtually useless 1033-page blackline Plaintiffs submitted in support of their Motion To Amend purports to show large-scale dramatic changes between the Initial Complaint and the PAC, but in reality, the changes are cosmetic at best. Plaintiffs repeatedly assert in conclusory fashion (a practice the Court already rejected) that the PAC cures previously identified deficiencies without actually pointing to any specific factual allegations to support

---

[1] The "Defendants" are Deutsche Bank AG ("Deutsche Bank"); HSBC Bank USA, N.A.; HSBC Holdings plc; HSBC Bank plc; HSBC Bank Middle East Limited; HSBC North America Holdings, Inc.; Commerzbank AG ("Commerzbank"); Commerzbank AG, New York Branch; Barclays Bank PLC; BNP Paribas S.A. ("BNPP"); Standard Chartered Bank ("SCB"); The Royal Bank of Scotland N.V. ("RBS N.V.") (f/k/a ABN AMRO Bank N.V.); The Royal Bank of Scotland plc; Crédit Agricole Corporate & Investment Bank; and Credit Suisse AG. Crédit Agricole S.A. has not been served with any Complaint in this action. A certificate of default as to Bank Saderat Plc was entered on May 17, 2018. ECF No. 126.

those assertions.  Neither this Court nor Defendants should have to puzzle together the changes made in Plaintiffs' prolix PAC, and the Motion To Amend fails for that reason alone.

In any event, none of the purportedly "new" allegations should alter the Court's previous conclusion.  Most are not actually new, but simply rephrase or rearrange allegations previously made.  The rest simply add extraneous details about events or circumstances that the Court already has ruled are irrelevant as a matter of law.  Plaintiffs' thinly veiled attempt to have the Court reconsider its prior rulings that those allegations do not state a claim is without merit:

- *First*, Plaintiffs' primary liability claims (Claims VI-XIII) still rely on the same attenuated theory of causation that remains squarely foreclosed by *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) and *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2011)*, 714 F.3d 118 (2d Cir. 2013), as this Court recognized in its March 28 Order.  Mem. Op. and Order at 12-15 (Mar. 28, 2019), ECF No. 195 ("Op.").

- *Second*, the PAC still contains no factual allegations from which the Court could infer that Defendants' provision of banking services to Iranian entities plausibly involved violent or dangerous acts or appeared to be intended to coerce or intimidate a civilian population or government.  The PAC's primary liability claims thus also fail because Defendants are still not plausibly alleged to have themselves committed any acts of international terrorism.  *Id.* at 15-18.

- *Third*, Plaintiffs' conspiracy claims (Claims I, IV-V) remain insufficient as a matter of law because the PAC still does not allege any agreement with the actor(s) who carried out any of the attacks or that Defendants shared a common goal of supporting terrorism with those actors.  *Id.* at 19-21.

2

- *Finally*, Plaintiffs' aiding and abetting claims (Claims II-III) still are foreclosed by Plaintiffs' failure to plausibly allege that Defendants provided substantial assistance to the specific actor(s) who allegedly carried out any attack, or that Defendants had a general awareness that they were supporting such actors' terrorist activity.  *Id*. at 21-22.[2]

The PAC therefore still fails to allege facts that would make Defendants liable for Plaintiffs' injuries.  Because Plaintiffs do not plead facts plausibly showing that they are entitled to relief against Defendants under the ATA, the Court should deny Plaintiffs leave to amend their fundamentally (and incurably) deficient claims and dismiss the case against Defendants with prejudice.

## ARGUMENT

"Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  "'A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)' of the Federal Rules of Civil Procedure."  *Giudice v. Harlan*, No. 15 CV 7330-LTS-JCF, 2016 WL 6496255, at *3 (S.D.N.Y. Nov. 2, 2016) (Swain, J.) (quoting *Ballard v. Parkstone Energy, LLC*, No. 06 CV 13099, 2008 WL 4298572 (RWS), at *3 (S.D.N.Y. Sept. 19, 2008)).  Leave to amend should be denied where the proposed amendments are "mere elaboration and increased verbiage concerning the same core allegations initially put

---

[2] Claims I, II, V (secondary liability) and VI, VII and XII (primary liability) are asserted against all defendants.  The remaining claims are directed at individual Defendants:  Claims III-IV (secondary liability against Commerzbank); VIII, X (primary liability against Commerzbank); IX (primary liability against SCB); XI (primary liability against HSBC); and XIII (primary liability against BNPP).

forward" in the complaint that did not survive a previous motion to dismiss. *O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 284 (S.D.N.Y. 1990) (dismissing amended pleading with prejudice based on the "expected futility" of further amendment), *aff'd sub nom. O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674 (2d Cir. 1991); *see also In re S. African Apartheid Litig.*, 56 F. Supp. 3d 331, 339 (S.D.N.Y. 2014) (denying motion to amend and dismissing claims with prejudice where amended complaint "would not survive a motion to dismiss"), *aff'd sub nom. Balintulo v. Ford Motor Co.*, 796 F.3d 160 (2d Cir. 2015).

## I.   PLAINTIFFS FAIL TO SPECIFY HOW THE PAC CURES THE DEFICIENCIES IN THE INITIAL COMPLAINT

As the Second Circuit has held, "[a] plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citations omitted). Here, Plaintiffs have superficially rewritten and/or reordered the vast majority of their previous allegations, but have not made any meaningful substantive changes.[3] It is virtually impossible to decipher from the 574-page PAC or Plaintiffs' accompanying 1033-page blackline what is substantively new from the Initial Complaint. The Motion To Amend offers no help in that regard: it does not for the most part point to any specific factual allegations, much less explain with specificity how those allegations cure the deficiencies this Court identified in Plaintiffs' claims. Instead, Plaintiffs' Motion simply cites to large blocks of the PAC in support of broad

---

[3] *Compare, e.g.*, Compl. ¶ 1944, *with* PAC ¶ 1166 (as shown on page 254 of the blackline). The paragraph in the PAC does not contain *any* new text apart from a change of abbreviation from "IAMIC" in the Initial Complaint to "HESA" in the PAC, yet all the text appears new in the blackline. Many of the purportedly "new" allegations in the PAC also simply copy portions of Defendants' sanctions-related settlement agreements that were already largely included in and fully incorporated by reference into the Initial Complaint. *Compare, e.g.*, PAC ¶¶ 1592, 1595, *with* Compl. ¶ 687.

and conclusory statements that the deficiencies have been cured.[4]  Defendants have attempted to

identify the PAC's new substantive (though insufficient) allegations, but it should not be their

responsibility, and certainly not the Court's, "to ferret out well-hidden changes" in a proposed

amended pleading.  *Montanio v. Keurig Green Mountain, Inc.*, 276 F. Supp. 3d 212, 223 (D. Vt.

2017) (citation omitted); *see also Valentin v. City of Rochester*, No. 11-CV-6238 (CJS), 2015

WL 1120256, at *3 (W.D.N.Y. Mar. 12, 2015) ("Defendants should not be expected to" identify

"any new or modified allegations" in a proposed amended complaint "absent an identification

and explanation of the proposed changes by plaintiff, the party seeking leave to make those

changes," particularly where "a side-by-side comparison" would be "an extremely difficult and

time-consuming undertaking").  The Court should deny Plaintiffs' Motion To Amend for this

reason alone.[5]

Plaintiffs also appear to believe they can make up for a lack of actually new and

sufficient factual allegations in the PAC by attaching four declarations from purported witnesses

and numerous exhibits of dubious authenticity.  The Court should not consider these materials in

evaluating whether the PAC states any claims because only "written instruments" that "evidence

legal rights or duties" may be incorporated into a pleading pursuant to Federal Rule of Civil

---

[4] *See, e.g.*, Mem. of Law in Supp. of Pls.' Mot. for Leave To Amend Compl. at 17 (Apr. 22, 2019), ECF. No. 198 ("Pl. Mem.") ("The amendments summarized above and set forth in Section V and VI of the Amended Complaint . . . cure the perceived deficiencies with respect to—the conspiracy theory of liability."); *id.* at 23 ("[T]he Amended Complaint details how the acts not only presented and created a risk to human life but in fact served as a conduit and indispensable link in the chain of events that caused actual harm to and loss of human life.  *See, e.g.*, Amended Complaint, Section VIII.").

[5] It may be that Plaintiffs are waiting to highlight any new allegations for the first time in their reply brief. If so, the Court should not countenance this tactic, and should not consider any such allegation.  *See Montanio*, 276 F. Supp. 3d at 223 ("And because Plaintiff waited until his reply brief to highlight this allegation, Defendants were deprived of an opportunity to argue that, even considering this allegation, amendment would be futile.  Generally, courts do not consider arguments raised for the first time in a reply brief.  The court sees no reason to depart from this rule here." (internal citation omitted)).

Procedure 10(c).  *See Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (affidavit prepared for litigation cannot be incorporated into pleading); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223-24 (S.D.N.Y. 2018) (striking expert declaration attached to complaint). Likewise, the Court "cannot[] consider any conclusory allegations in the" PAC based on statements in these declarations and exhibits.  *Ong*, 294 F. Supp. at 224.[6]

## II.   PLAINTIFFS STILL FAIL TO STATE ANY PRIMARY LIABILITY CLAIMS (CLAIMS VI-XIII)

### A.   The PAC Does Not Adequately Allege Causation Under Binding Precedent

Relying on binding Second Circuit precedent, this Court dismissed the Initial Complaint's primary liability claims for failure to plausibly allege that Defendants' conduct was the "proximate cause" of Plaintiffs' injuries.  The Court held that "the provision of financial services to Iran or various Iranian entities is insufficient on its own to support a plausible inference that the transferred funds were subsequently used to finance terrorism."  Op. at 15; *see also Rothstein*, 708 F.3d at 97; *Al Rajhi*, 714 F.3d at 123-24.  The PAC tries to shorten the causal chain by alleging that the purported acts of international terrorism at issue were carried out not

---

[6] Further, the PAC makes only passing reference to the declarations, meaning they cannot be considered as "integral" to the PAC.  *Smith*, 794 F.3d at 254 (document may be considered as integral to complaint only if the complaint "relies heavily upon its terms and effect"(citation omitted)).  And even leaving all that aside, the declarations are also inappropriate and should be disregarded because they purport to express impermissible "expert" opinions speculating on the supposed knowledge, intent, and motivations of Defendants and their employees.  *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) (Gorenstein, M.J.) (excluding expert "speculation regarding the state of mind and motivations of certain parties who were involved in" relevant transactions, including impermissible assertions that individuals were "likely aware" or "knew" what others were doing, because such "comments consist simply of inferences that [the expert] draws from other evidence in the case"), *aff'd*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) ("Furthermore, plaintiffs' experts propose improperly to assume the role of advocates for the plaintiffs' case by arguing as to the intent or motives underlying the conduct of [defendant] or others, a transgression that has resulted in the exclusion of 'expert' testimony as to the 'real motive' behind certain business transactions.").

by militias acting at the behest of by foreign terrorist organizations ("FTOs"), but rather by FTOs themselves.  *See* Pl. Mem. at 5.[7]  But, *as to Defendants*, the PAC still does not plead anything more than "the provision of financial services to Iran or various Iranian entities," which the Court and the Second Circuit have found insufficient as a matter of law.  Op. at 15; *see also Rothstein*, 708 F.3d at 97; Op. at 12 (comparing allegations in Initial Complaint with allegations in *Rothstein*).  The new allegations in the PAC do not correct the pleading deficiencies with respect to proximate cause, and the PAC therefore does not state any primary liability claims.

This Court noted that the Initial Complaint suffered all of the same flaws as the complaint in *Rothstein*.  Op. at 12-13.  Those same flaws remain in the PAC:

- **Defendants did not participate in the attacks:**  This Court held that, "[a]s in *Rothstein*, the [Initial] Complaint does not allege that Defendants participated in the attacks or provided money or goods directly to . . . any . . . direct perpetrator of a relevant attack."  Op. at 12.  Nor does the PAC.

- **Defendants did not provide banking services directly to terrorists:**  This Court held that "the [Initial] Complaint does not even allege that Defendants provided money directly to the IRGC-QF, Hezbollah, or Al-Qaeda, but rather alleges that Defendants indirectly supported those organizations by providing financial services to Iranian banks, airlines, shipping and oil companies with relationships to those organizations."  *Id*.  The same is true of the PAC.

- **Defendants' actions were not necessary to Iran's terrorism funding:**  This Court held that "[t]he [Initial] Complaint proffers no nonconclusory allegation that the funds processed by Defendants for various Iranian entities were in fact transferred to [terrorists], nor does it allege facts sufficient to support plausibly the inference that Iran and its Agents and Proxies would have been unable to assist [terrorists] in carrying out the attacks without Defendants' assistance."  *Id*.

---

[7] *See also*, *e.g.*, PAC ¶¶ 2259 ("The Iranian-supported FTO Hezbollah, working in concert with the JAM Special Groups, committed, planned and authorized the attack, as evident from operational data, including but not limited to the date and location of the attack, the munitions used, as well as the tactics, techniques, and procedures utilized."), 2265 ("The Iranian-supported FTO AQ committed, planned and authorized the attack, as evident from operational data, including but not limited to the date and location of the attack, the munitions used, as well as the tactics, techniques, and procedures utilized.").

at 12-13.  As in the Initial Complaint, the allegations in the PAC that Defendants' actions were necessary to Iran's terrorism funding are entirely conclusory.[8]

- **Iran has legitimate uses for financial services:**  This Court held that "Plaintiffs' argument . . . ignores the fact that Iran 'is a sovereign state with many legitimate agencies, operations, and programs to fund.'"  *Id*. at 14 (quoting *Owens v. BNP Paribas*, 897 F.3d 266, 276 (D.C. Cir. 2018) and *Rothstein*, 708 F.3d at 97).  The PAC, in discussing the U-Turn exemption, even admits this point:  "[t]he purpose of the U-Turn exemption was to permit Iranian parties indirect access to USD funds, provided that these transactions . . . were strictly for Iran's legitimate agencies, operations and programs."  PAC ¶ 378.

Instead of adding new allegations that would be sufficient under *Rothstein*—which they cannot do—Plaintiffs try to distinguish *Rothstein* (and *Al Rajhi*) by pointing to allegations that the Court *already* has rejected as insufficient to state a claim.  In particular:

***Alleged Volume of U.S. Dollars and Timing of Dollar Clearing.***  Plaintiffs point to conclusory allegations in the PAC that, because of the volume and timing of financial services Defendants provided to Iranian entities, it supposedly is plausible to infer that Defendants "enabled over $2 billion to be transferred to Hezbollah."  Pl. Mem. at 22.  But this merely repackages similar allegations Plaintiffs made in the Initial Complaint, which the Court found insufficient.[9]  In particular, the Court has already ruled that Plaintiffs' argument—that "the

---

[8] *Compare* PAC ¶ 1713(f) ("Without the Defendant Banks' participation in the Conspiracy, Iran and its Agents and Proxies could not have funded terrorism to the extent it did.  Indeed, without Defendants participation in the Conspiracy, Iran and its Agents and Proxies could not have carried out the terrorist attacks that resulted in the injury or death of Plaintiffs."), *with* Compl. ¶ 64 ("Without the massive, active, and intentional participation of Defendants in the Conspiracy with Iran and its Agents and Proxies, as well as the Terrorist Groups, Iran's goals of directing lethal terrorist attacks against U.S. nationals, including Plaintiffs, could not have occurred, and certainly would not have occurred on so large a scale, which involved thousands of terrorist attacks resulting in thousands of casualties and injuries, including the deaths and injuries to Plaintiffs or Plaintiffs' family members.").

[9] *Compare* PAC ¶¶ 1668-1669 ("Thus, all Defendants admitted to committing fraud and falsifying financial documents for Iranian banks and their customers – during the exact same time period as the fraudulent transfers, totaling over $2 billion, were sent to Hezbollah.  Other than Defendants, no plausible suspect exists that could have helped the Iranian entities process over $2 billion in fraudulent transactions through the OFAC filters in New York."), *with* Compl. ¶ 1477 ("Each of the Defendants respective criminal pleas, DPAs, and/or settlements map out the period during which each participated in the

magnitude of the transfers, combined with Iran's status as a state sponsor of terror, render it implausible that none of the funds were used to support" the groups that allegedly carried out the attacks—"is unpersuasive because it ignores the fact that Iran is a sovereign state with many legitimate agencies, operations and programs to fund."  Op. at 14 (quoting *Owens*, 897 F.3d at 276 and *Rothstein*, 708 F.3d at 97 (internal quotation marks omitted)).  Even if Plaintiffs' conclusory argument were somehow enough to plausibly allege that funds processed by Defendants were transferred to Hezbollah (and it is not), it would still not be enough to plead proximate cause.  The Second Circuit ruled in *Al Rajhi* that allegations that a bank "provided funding to a known state sponsor of terrorism, that, in turn, provided funding to" the FTO that allegedly carried out the attacks are "insufficient for proximate causation purposes" absent allegations that the defendants "participated in the . . . attacks," or that they "provided money directly to [the FTO]," or that the funds "actually [were] transferred to [the FTO] and aided in the [attacks at issue]."  714 F.3d at 124.

> *Alleged Evasion of Economic Sanctions*.  The PAC adds allegations regarding Defendants' processing of non-transparent transactions to evade U.S. sanctions on Iran, *see, e.g.*, PAC ¶¶ 383-384, including that this was contrary to industry guidelines, PAC ¶¶ 63-160.  But here again, substantively identical allegations were also included in the Initial Complaint, and this Court held they did not give rise to a private cause of action.[10]  This Court ruled:

---

Conspiracy, which corresponds to the period during which Iran was supporting and facilitating attacks in Iraq on the U.S. men and women stationed in Iraq, who are now Plaintiff's in this case.").

[10] *Compare* PAC ¶ 384 ("The Western Bank Defendants, despite their duties and obligations to prevent terrorism financing, knowingly and intentionally agreed to, and did, manipulate tens of thousands of payment order messages (SWIFT-NET MT 103 and MT 202) and the records of such transactions to defeat such monitoring and screening, and prevent transparency, in order to provide USD funds to Iran for unlawful uses, which foreseeably included the support of Iranian terrorism and terrorist organizations."), *with* Compl. ¶ 1413 ("To effectuate the Conspiracy and to avoid being caught, Defendants, with the knowledge, assistance, and agreement of Iran, (1) stripped wire transfer information; (2) made non-

> [T]he Court cannot properly infer a causal connection between Defendants' conduct and Plaintiffs' injuries simply because one of the primary purposes of U.S. sanctions is to prevent terror financing, or because Defendants opted to use non-transparent methods, rather than the U-Turn exemption, to facilitate transfers. While wrongful, Defendants' alleged evasion of U.S. sanctions and provision of financial services to sanctioned Iranian entities does not support a plausible inference that those services played a substantial role in bringing about the attacks that injured Plaintiffs.

Op. at 15 n.11.[11]

*Alleged Transfers to Specially Designated Nationals ("SDNs").* Plaintiffs assert that they have added new allegations that Defendants admitted to processing transactions on behalf of unnamed SDNs. *See* Pl. Mem. at 22. Again, these allegations are nothing new.[12] This Court and the Second Circuit already have ruled that allegations of transactions with SDNs, including Specially Designated Global Terrorists, who allegedly provided assistance to the FTOs that carried out the attacks are insufficient to allege causation under the ATA. *See* Op. at 13-15; *Al Rajhi*, 714 F.3d at 123-25. Moreover, this argument is a mere reframing of the Initial Complaint's characterization of the various Iranian banks, airlines, and shipping and oil companies as the "Iranian terrorist apparatus," *see* Op. at 13, and the PAC still "does not allege facts demonstrating that these entities exist solely to further terror," Op. at 14. Furthermore as

---

transparent cover payments; and (3) utilized U-turn exemptions from certain wire transfers in their concerted effort to hide information which would identify the fact funds being wired were originating from and/or being transferred to Iran and/or its Agents and Proxies. Monies exchanged in these wire transfers were used to fund Iran's Agents and Proxies, specifically including the Terrorist Groups, and to perpetrate the Terrorist Attacks which killed or injured Plaintiffs.").

[11] For instance, the PAC includes allegations (and appends declarations) restating details from a 2012 Deferred Prosecution Agreement entered by two HSBC Defendants and related regulatory investigations. But these are precisely the types of allegations Plaintiffs almost exclusively relied upon in asserting claims against the HSBC Defendants in the Initial Complaint and that the Court already has rejected.

[12] *Compare* PAC ¶ 2387 ("The Defendants provided access to the US financial system which enabled funds to be secretly transferred to, from and between SDNs."), *with* Compl. ¶ 1472 ("[D]espite being aware of their responsibility, and despite having both automated and manual systems in place to ensure that wire transfers are not made to SDNs, each of Defendants intentionally circumvented their own systems and as a result caused billions of dollars in wire transfers to be made to SDNs.").

the Court previously noted, in many instances the allegations make clear that the transactions at issue occurred long before the designation of the entity at issue.[13]  *See id.* at 21.  *Compare* PAC ¶ 1134 (alleging that SCB facilitated letter of credit transactions for Air Mahan between 2000 and 2006), *with id.* ¶ 1135 (Air Mahan designated as SDGT in 2011).

***Alleged Provision of Different Forms of Material Support.***  Plaintiffs purport to add new allegations that SCB and Credit Suisse "were involved in the fraudulent transactions that allowed Iran to procure the equipment necessary to manufacture EFP's."  Pl. Mem. at 22.[14] Again, these allegations are nothing more than a rewording of the allegations in the Initial Complaint that these banks facilitated trade finance transactions for Iranian banks and airlines, and that those banks and airlines at some point helped supply weapons to other Iranian agents such as the IRGC, which in turn assisted the terrorist groups that allegedly carried out the attacks at issue.  *See, e.g.,* PAC ¶¶ 1134-1287.  However, this Court already ruled that "[a]lthough the nature of the assistance allegedly provided to Iran and its Agents and Proxies differs from that alleged in *Rothstein*, it does not shorten the attenuated causal chain that links Defendants' conduct to Plaintiffs' injuries."  Op. at 13.[15]

---

[13] Although three allegations involve post-designation transactions, none of them is new.  *Compare* PAC ¶¶ 1017, 1120, 1373, *with* Compl. ¶¶ 1626, 1900, 2161.

[14] As to Credit Suisse, Plaintiffs add no more than the conclusory allegation it was, or "likely" was, involved in transactions for hydraulic pumps that  supposedly "could be used to manufacture weapons for FTOs."  PAC ¶ 1704; *see also id.* ¶¶ 1707, 1710.  To support these unfounded allegations, Plaintiffs cite to two pages of Exhibit 15A of the PAC (the "Promontory Report") that do not even mention Credit Suisse, let alone establish that it was "likely" involved in those transactions.  *Id.* at 368-369 nn. 369, 370, 373.

[15] The PAC includes allegations directed at SCB taken from the Promontory Report attached to the PAC as Exhibit 15A.  *See, e.g.*, PAC ¶¶ 1155, 1315, 1704-1711.  But these allegations are not new.  As noted in SCB's Supplemental Memorandum of Law in Support of Its Motion To Dismiss, the allegations regarding letter of credit transactions in the Initial Complaint already were based on the Promontory Report that is now attached to the PAC.  SCB's Suppl. Mem. of Law at 2 n.1 (Mar. 2, 2018), ECF No. 104.  The attachment of the Promontory Report does nothing to strengthen these allegations, which the Court has held were insufficient to state a claim.  The Promontory Report did not find that SCB

**Alleged Direct Support to FTOs (Claim X).**  Plaintiffs purport to add new allegations

that Commerzbank knowingly provided financial services directly to the FTO, Hezbollah.  *See*

Pl. Mem. at 24; PAC ¶¶ 1642-1650.  As in the Initial Complaint, however, these allegations are

entirely conclusory:  the factual allegations (to the extent there are any) do not remotely support

such conclusions.  The causal chain alleged is that (1) Commerzbank provided commercial

banking services to its German customer Waisenkinderprojekt Libanon e.V. ("Orphans Project

Lebanon"); (2) Orphans Project Lebanon, from its Commerzbank account, transferred funds to

the Martyrs Foundation; and (3) the Martyrs Foundation, in turn, provided support in some

unspecified form (having nothing to do with Commerzbank) to Hezbollah.  These allegations fail

to plead the requisite proximate cause element as a matter of law.  *See* Op. at 13 n.10 (noting that

"[e]ven where Plaintiffs allege that Defendants provided services to an alleged terrorist

fundraising organization, they plead no facts from which the Court can infer . . . that the funds

were subsequently transferred to one of the entities that committed the attacks.").[16]

_____

engaged in any transactions connected to terrorist activity.  Moreover, none of Plaintiffs' proposed
amended allegations shorten the "elongated" causal chain previously rejected by the Court.  *See* Op. at 12
n.9.  Plaintiffs' references to transactions involving Khoram Sanat Producing Co., Diamond Steel FZE,
and/or Alborz Steel in their Motion To Amend are no different.  Pl. Mem. at 16.  *Compare* PAC ¶¶ 1700-
1710 (describing transactions related to electromotors), *with* Compl. ¶¶ 2050-2061 (same).  Finally, the
Promontory Report draws no connection between electromotors and EFPs or other terrorist weapons or
activity.

[16] Plaintiffs baldly assert that "the Amended Complaint makes clear the HSBC Defendants also provided
financial services directly to FTOs."  Pl. Mem. 25.  Far from "making clear" any direct banking of FTOs,
the PAC simply repeats allegations from the Initial Complaint involving entities that were *not* FTOs.
These allegations already were considered and rejected by the Court.  *Compare* PAC ¶ 977-979 ("A July
13, 2012 article published by *Reuters* entitled 'Special Report:  HSBC's Money-Laundering Crackdown
Riddled With Lapses' reported that an HSBC-US compliance officer had identified suspicious
transactions involving Hezbollah, specifically Tajco and Kairaba Supermarket.  In December 2013, the
Treasury Department announced that Defendants HSBC-US agreed to remit $32,400 to settle potential
civil liability for three apparent violations of the Global Terrorism Sanctions Regulations, 31 C.F.R. Part
594.  The fine reflected the fact that HSBC-US facilitated transactions in late 2010 and early 2011 worth
about $40,000 that benefited Tajco."), *with* Compl. ¶ 1586-1588 ("A July 13, 2012 article published by
Reuters entitled 'Special Report:  HSBC's Money-Laundering Crackdown Riddled With Lapses' reported
that an HSBC-US compliance officer had identified suspicious transactions involving Hezbollah,

In sum, the PAC still fails to satisfy *Rothstein* and *Al Rajhi*.  The Court should therefore

deny the Motion To Amend as futile.[17]

      B.      <u>Plaintiffs Still Fail To Plausibly Allege That Defendants Committed Any Acts of International Terrorism</u>

Applying the Second Circuit's decision in *Linde v. Arab Bank*, 882 F.3d 314 (2d Cir.

2018), this Court dismissed the Initial Complaint's primary liability claims on the independent

ground that they fail to satisfy the ATA's "act of international terrorism" requirement.  The

Court based that ruling on the Initial Complaint's failure to "allege plausibly that the provision of

banking services, which are not inherently violent or dangerous, can be considered as acts

dangerous to human life."  Op. at 17-18.  Nothing in the PAC cures this defect.

*First*, the PAC adds additional Defendants to the previously asserted claims predicated on

alleged violations of 18 U.S.C. §§ 2339A, 2339B and 2332d, which penalize the provision of

material support to terrorism and processing financial transactions with state sponsors of

terrorism.  Even if the PAC plausibly alleged such predicate violations (it does not),[18] such

---

specifically Tajco and Kairaba Supermarket.  In December 2013, the Treasury Department announced that Defendants HSBC-US agreed settle potential civil liability for three apparent violations of the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594.  The fine reflected the fact HSBC-US facilitated transactions in late 2010 and early 2011 that benefited Tajco.").

[17] The proposed primary liability claims in the PAC are also subject to dismissal for failure to plausibly allege that Defendants were the "but-for" cause of Plaintiffs' injuries.  *See Rothstein*, 708 F.3d at 95 (noting that the "'by reason of' language chosen by Congress in creating a civil right of action under the ATA" was borrowed from statutes that "required a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well"); *see also Burrage v. United States*, 571 U.S. 204, 213 (2014) (statutes containing phrase 'by reason of' have been read to "require[] at least a showing of 'but for' causation" (citations omitted)).  The Second Circuit in *Linde v. Arab Bank*, 882 F.3d 314 (2d Cir. 2018), expressly left open the question of whether primary liability claims under the ATA require proof of both "but-for" and proximate causation, *id.* at 318-19, but the Court, although it need not reach this issue, could also find the PAC deficient on this basis.

[18] *See, e.g.*, Defs.' Joint Mem. of Law in Supp. of Mot. To Dismiss at 26-30 (Mar. 2, 2018), ECF No. 103 ("Jt. MTD Br."); Defs.' Joint Reply Mem. of Law in Further Supp. of Mot. To Dismiss at 8-12 (June 1, 2018), ECF No. 133 ("Jt. MTD Reply Br.").

violations are insufficient in themselves "to constitute an act of international terrorism under the ATA" if they do not *also* satisfy all of the definitional requirements of an "act of international terrorism" in 18 U.S.C. § 2331(1).[19]  Op. at 16 (citing *Linde*, 882 F.3d at 326).

*Second*, Plaintiffs purport to add new allegations "explaining in detail" how Defendants' "acts directly imperiled human life" and "served as a conduit for and indispensable link in the chain of events that caused actual harm to and loss of human life."  Pl. Mem. at 23 (citing PAC Section VIII).  The section of the PAC to which Plaintiffs refer consists of conclusory allegations that the evasion of U.S. sanctions generally facilitated *Iran*'s support of terrorism, *see* PAC Section VIII, but this Court has already ruled that such allegations provide no factual basis for a plausible inference that Defendants' conduct constituted acts of international terrorism, *see* Op. at 17-18.

The purportedly new allegations with respect to Commerzbank's provision of banking services to its customer, Orphans Project Lebanon (Claim X), do not compel a different result. The PAC asserts that Commerzbank's provision of banking services to Orphans Project Lebanon "were acts directly and unequivocally dangerous to human life" solely because they were purportedly knowingly provided to an agent of Hezbollah.  PAC ¶ 2608.  But the Initial Complaint contained similar allegations, *see, e.g.*, Compl. ¶ 1692, and this Court applied the holding of *Linde* that the banking services at issue, "which are not inherently violent or dangerous," could not "be considered as acts dangerous to human life," Op. at 17-18; *see also*

---

[19] 18 U.S.C. § 2331(1), which defines an act of "international terrorism" for purposes of the ATA, requires plausible allegations that Defendants' activities (1) involved violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States, § 2331(1)(A), *and* (2) would lead an objective observer to infer from Defendants' alleged financial transactions with Iran and/or Iranian banks that Defendants had the intent to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination or kidnapping," § 2331(1)(B).

14

*Weiss v. Nat'l Westminster Bank PLC*, No. 05-CV-4622 (DLI) (RML), 2019 WL 1441118, at *8 (E.D.N.Y. Mar. 31, 2019) (evidence that bank provided financial services to alleged alter egos of designated terrorist organization Hamas insufficient to satisfy violence prong of § 2331(1) as a matter of law because plaintiffs offered no evidence that defendant's banking services directly involved violence or were likely to cause serious bodily harm), *appeal docketed*, No. 19-863 (2d Cir. Apr. 3, 2019); *accord Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702 (DLI) (RML), 2019 WL 1492902, at *7 (E.D.N.Y. Mar. 31, 2019), *appeal docketed*, No. 19-865 (2d Cir. Apr. 5, 2019).

*Finally*, the PAC's purportedly new allegations also fail to plausibly assert the required apparent terroristic intent element from 18 U.S.C. § 2331(1)(B).[20]  *See* Jt. MTD Br. at 25-26; Jt. MTD Reply Br. at 6-8; *see also Weiss*, 2019 WL 1441118, at *8 (evidence that bank knowingly provided material support to an FTO in violation of Section 2339B insufficient to satisfy apparent terroristic intent requirement in Section 2331(1)); *accord Strauss*, 2019 WL 1492902, at *7.  Moreover, in alleging that Defendants committed sanctions violations because they "decided it would be more profitable to aid the Iranian banks and their customers," PAC ¶ 1681; *see also id.* ¶ 1665, the PAC itself defeats any plausible claim that the allegations appear to show "an intent to support terrorism."  *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 394 (7th Cir. 2018).

---

[20] Although this Court did not find it necessary to reach this argument in its March 28 Opinion, it provides a further basis for denying Plaintiffs' Motion To Amend.

III.    **PLAINTIFFS STILL FAIL TO PLAUSIBLY ALLEGE THAT DEFENDANTS CONSPIRED TO COMMIT ANY ACTS OF INTERNATIONAL TERRORISM (CLAIMS I, IV, AND V)**

The Court correctly dismissed Plaintiffs' conspiracy claims "because Defendants' alleged provision of material support to Iranian entities is so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common goal of committing an act of international terrorism."  Op. at 20.  In their Motion to Amend, Plaintiffs cite generally to a 200-page section of the PAC and four improper declarations that purportedly "simultaneously establish the plausibility of—and cure the perceived deficiencies with respect to—the conspiracy theory of liability."  *See* Pl. Mem. at 17 (citing PAC Sections V-VI).  Even setting aside Plaintiffs' failure to identify the new allegations with specificity as required, the allegations in those sections of the PAC fail to cure any of the deficiencies that this Court identified; they instead seek to re-litigate this Court's prior rulings on the requirements for stating a JASTA conspiracy claim.

*First*, the PAC alleges that each of the Defendants "knowingly entered into an agreement with Iran and its agents . . . for the purpose of funding Iran's illegitimate activities, including sponsoring terrorism."  PAC ¶ 793.  The Court, however, already rejected Plaintiffs' argument that allegations of an agreement with Iran and/or its agents are sufficient to satisfy the "agreement" element of a JASTA conspiracy claim because the plain language of JASTA requires plausible allegations that the defendant "[conspired with] the principal tortfeasor," *i.e.*, the specific entity that committed the act of international terrorism.  Op. at 19 (alteration in original) (quoting *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 916 (N.D. Cal. 2018)); *see also* 18 U.S.C. § 2333(d)(2).  Although Plaintiffs emphasize new conclusory allegations in the PAC that each of the attacks at issue was "committed, planned, and/or authorized" by a designated

16

FTO, Pl. Mem. at 6—which is merely one of the requirements to support secondary liability

under JASTA, § 18 U.S.C. 2333(d)—this argument ignores that the Court dismissed the Initial

Complaint's secondary liability claims *despite* "infer[ring] for the purposes of [that] motion [to

dismiss]" that the Initial Complaint satisfied this element for all attacks except those allegedly

committed by Jayesch al Mahdi and Asa'ib Ahl al Haq.  Op. at 19 n.13.  As the Court ruled,

"even accepting that Defendants knew generally about the purpose of U.S. sanctions, Plaintiffs'

allegations do not demonstrate that Defendants entered into any agreements with the FTOs that

committed the attacks at issue."  Op. at 21.

    *Second,* the PAC again conflates an alleged conspiracy to violate sanctions with a

conspiracy to commit terrorist acts, asserting that Defendants participated in a conspiracy with

the goal of "providing Iran and the Iranian Bank Co-conspirators (including Defendant Bank

Saderat Plc) the ability to illegally transfer billions of dollars (undetected) through the United

States," PAC ¶ 795, and that each Defendant thereby "understood that its conduct was part of a

larger scheme engineered by Iran to further its sponsorship of terrorism," PAC ¶ 796.  There are,

however, still no plausible allegations of a "connection between Defendants' activities and those

of various Iranian entities and FTOs [that] was so coordinated or monolithic that Defendants

shared a common purpose or plan with FTOs" to commit any of the attacks.  Op. at 21.

Moreover, even if the PAC plausibly alleged that Defendants participated in a conspiracy to

provide *material support* for terrorism (it does not), this Court has ruled that such a conspiracy is

not "equivalent to a conspiracy whose object is to commit an *act* of international terrorism," as

JASTA requires.  *Id*. at 20 n.14 (emphasis added); *see also Kemper*, 911 F.3d at 395.[21]

---

[21] The conspiracy claim against Commerzbank (Claim IV) fares no differently.  The PAC contains conclusory (and nonsensical) allegations that Commerzbank provided financial services and expert advice on how to violate sanctions to Orphans Project Lebanon, *see* PAC ¶¶ 2453-56—even though Orphans

## IV.    PLAINTIFFS STILL FAIL TO PLAUSIBLY ALLEGE THAT DEFENDANTS AIDED AND ABETTED ANY ACTS OF INTERNATIONAL TERRORISM (CLAIMS II-III)

The Court correctly dismissed Plaintiffs' aiding and abetting claims for failure to plausibly allege "that, in providing financial services, Defendants were 'generally aware' that they were thereby playing a 'role' in an FTO's violent or life-endangering activities."  Op. at 22. The PAC also fails on these grounds, as it too is "devoid of any factual allegations from which the Court can properly infer that Defendants knew that the financial services they provided to the various Iranian entities were destined to aid the FTOs responsible for the attacks that injured plaintiffs."  *Id.*  The purportedly "new" allegations in the PAC that supposedly show Defendants' general awareness—including lengthy but irrelevant allegations regarding the processing of non-transparent transactions, the purpose of U.S. sanctions, banking industry guidelines and Iran's designation as a state sponsor of terrorism, *see supra* at 8-12[22]—are all based on the argument squarely rejected by this Court that the knowing violation of U.S. sanctions imposed on Iran equates to general awareness of actual participation in terrorist activity allegedly sponsored by Iran.  As the Court ruled, "[a]llegations regarding Iran's status as a state sponsor of terrorism, as

---

Project Lebanon was never subject to U.S. sanctions—but again, a conspiracy to violate sanctions does not constitute a conspiracy to materially support terrorism, much less a conspiracy to commit terrorist acts, as JASTA requires.  *See* Op. at 20.  The PAC also fails to plead personal jurisdiction as to the claims predicated on Commerzbank's transactions with Orphans Project Lebanon because those transactions are not plausibly alleged to be part of any conspiracy to violate sanctions and the PAC alleges no nexus between the transactions that Commerzbank allegedly processed for Orphans Project Lebanon and either the United States or the attacks at issue.  *See, e.g.* PAC ¶ 1650; *see also* Commerzbank's Suppl. Mem. of Law in Supp. of its Mot. to Dismiss at 9 (Mar. 2, 2018), ECF No. 107; Commerzbank's Suppl. Reply Mem. of Law in Further Supp. of its Mot. to Dismiss at 5-7 (June 1, 2018), ECF No. 137; *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) ("[W]e by no means suggest that a foreign defendant's 'mere maintenance' of a correspondent account in the United States is sufficient to support the constitutional exercise of personal jurisdiction over the account-holder in connection with any controversy.").

[22] *See, e.g.*, PAC ¶ 1686 (alleging that Defendants must have been generally aware that they were assuming a role in terrorist activities because the purpose of the U.S. sanctions regime is "to ensure that the Defendants were not doing business with known terrorists").

well as allegations regarding the purpose of U.S. sanctions are, on their own, insufficient to

allege plausibly that Defendants were 'generally aware' that they had taken a 'role' in the attacks

that killed or injured Plaintiffs."  Op. at 22 (citing *Siegel v. HSBC Bank USA, N.A.*, No. 17 Civ.

6593 (DLC), 2018 WL 3611967, at *4-5 (S.D.N.Y. July 27, 2018)).  Preventing terrorism is not

the only purpose of the Iranian sanctions regime.  *See Kemper*, 911 F.3d at 394 ("[A]lthough the

Iran sanctions may have begun because of Iran's support for terrorism, the actual sanctions

extend far beyond commerce that could support terroristic endeavors.  Instead, the sanctions

prohibit virtually all trade between the United States and Iran, regardless of whether that trade

could conceivably facilitate terrorism.").

        Plaintiffs' invocation of *Linde* on this issue, Pl. Mem. at 16, only further demonstrates the

insufficiency of the allegations in the PAC.  In *Linde*, there was a question of fact as to Arab

Bank's general awareness due to evidence that Arab Bank processed payments "explicitly

identified as payments for suicide bombings."  882 F.3d at 321.  Nothing of the sort is alleged

here.

        The PAC also fails to cure the deficiencies in the Initial Complaint with respect to the

other elements of an aiding and abetting claim.  The PAC fails to plausibly allege that

Defendants aided and abetted the parties that performed the "wrongful act[s]," as it contains no

plausible allegations that Defendants directly aided the FTOs that allegedly carried out the

attacks.  *See* Op. at 21-22 (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)); *see*

*also* 18 U.S.C. § 2333(d) ("[L]iability may be asserted as to any person who aids and abets . . .

the person *who committed such an act* of international terrorism") (emphasis added).  As

described *supra* at 6-7, this Court has already ruled that allegations regarding Defendants'

"provision of financial services to Iran or various Iranian entities" do not support "a plausible

inference that the transferred funds were subsequently used to finance terrorism," Op. at 15, let alone a plausible inference that Defendants directly assisted any particular terrorist group in carrying out the attacks by which Plaintiffs were injured.  Allegations regarding Defendants' provision of support to Iran, whether new to the PAC or not, do nothing to demonstrate that Defendants aided the FTOs that allegedly injured Plaintiffs.  *See Halberstam*, 705 F.2d at 477.

Finally, the PAC also fails to demonstrate that Defendants "substantially assisted" the terrorist attacks for essentially the same reasons it fails to plausibly allege that Defendants proximately caused the same attacks.  *See* Jt. MTD Br. at 39-40; Jt. MTD Reply Br. at 17-18.

## CONCLUSION

For the reasons set forth above, the Motion To Amend should be denied as futile because the PAC fails to state any claims against Defendants, and the case against Defendants should be dismissed with prejudice.

Dated: May 20, 2019
        New York, New York

Pursuant to section 8.5(b) of the Electronic Case Filing Rules & Instructions for the United States District Court for the Southern District of New York, the use of conformed electronic signatures is with the consent of all signatories to this filing.

COVINGTON & BURLING LLP

By

_____/s/ John E. Hall_____

     John E. Hall
     Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
jhall@cov.com
mgimbel@cov.com

     David M. Zionts
One City Center
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
dzionts@cov.com

*Attorneys for Defendant Deutsche Bank AG*

MAYER BROWN LLP

by

_____/s/ Mark G. Hanchet_____

     Mark G. Hanchet
     Robert W. Hamburg
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mhanchet@mayerbrown.com
rhamburg@mayerbrown.com

*Attorneys for Defendants HSBC Bank USA, N.A., HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited, HSBC North America Holdings, Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

by

     /s/ Jonathan I. Blackman

    Jonathan I. Blackman
    Carmine D. Boccuzzi, Jr.
    Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jblackman@cgsh.com
cboccuzzi@cgsh.com
aluft@cgsh.com

*Attorneys for Defendants Commerzbank AG,
Commerzbank AG, New York Branch, BNP
Paribas S.A.*

MAYER BROWN LLP,

by

     /s/ Marc R. Cohen

    Marc R. Cohen
    Alex C. Lakatos

1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
mcohen@mayerbrown.com
alakatos@mayerbrown.com

*Attorneys for Defendant Credit Suisse AG*

SULLIVAN & CROMWELL LLP,

by

     /s/ Sharon L. Nelles

    Sharon L. Nelles
    Bradley P. Smith
    Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard
Chartered Bank*

CLIFFORD CHANCE US LLP,

by

     /s/ Robert G. Houck

    Robert G. Houck
    Michael G. Lightfoot

31 West 52nd Street
New York, NY 10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
michael.lightfoot@cliffordchance.com

Katie Barlow
2001 K Street NW
Washington, DC 20006-1001
(202) 912-5000
Katie.Barlow@cliffordchance.com

*Attorneys for Defendants The Royal Bank of
Scotland N.V. (formerly known as ABN AMRO
Bank N.V.), The Royal Bank of Scotland plc*

SULLIVAN & CROMWELL LLP,

by
 /s/ Joseph E. Neuhaus
_____

   Joseph E. Neuhaus
   Alexander J. Willscher

125 Broad Street
New York, NY 10004
(212) 558-4000
neuhausj@sullcrom.com
willschera@sullcrom.com


*Attorneys for Defendant Crédit Agricole*
*Corporate & Investment Bank*


SULLIVAN & CROMWELL LLP

by
 /s/ Michael T. Tomaino, Jr.
_____

   Michael T. Tomaino, Jr.
   Jeffrey T. Scott
   Jonathan M. Sedlak

125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com


*Attorneys for Defendant Barclays Bank PLC*


23