

KIMBERLY LAMBERT ADAMS   JOSHUA R. HARRIS   CHRISTOPHER G. PAULOS   OF COUNSEL:
BRIAN H. BARR   FREDRIC G. LEVIN   EMMIE J. PAULOS   WILLIAM F. CASH III
MICHAEL C. BIXBY   MARTIN H. LEVIN   A. RENEE PRESTON   LAURA S. DUNNING
M. ROBERT BLANCHARD   ROBERT M. LOEHR   ROBERT E. PRICE   (LICENSED ONLY IN ALABAMA)
BRANDON L. BOGLE   STEPHEN A. LUONGO   MARK J. PROCTOR   BEN W. GORDON, JR.
W. TROY BOUK   M. JUSTIN LUSKO   TROY A. RAFFERTY   ARCHIE C. LAMB, JR.
WESLEY A. BOWDEN   NEIL E. McWILLIAMS, JR.   MATTHEW D. SCHULTZ   PAGE A. POERSCHKE
VIRGINIA M. BUCHANAN   CLAY MITCHELL   W. CAMERON STEPHENSON   (LICENSED ONLY IN ALABAMA)
JEFF GADDY   PETER J. MOUGEY   THOMAS A. TAYLOR   CHRISTOPHER V. TISI
RACHAEL R. GILMER   DANIEL A. NIGH   REBECCA K. TIMMONS   (LICENSED ONLY IN WASHINGTON, D.C.
BRENTON J. GOODMAN   TIMOTHY M. O'BRIEN   BRETT VIGODSKY   AND MARYLAND)
   MIKE PAPANTONIO
   LEFFERTS L. MABIE, JR. (1925-1996)
   D.L. MIDDLEBROOKS (1926-1997)
   DAVID H. LEVIN (1928-2002)
   STANLEY B. LEVIN (1938-2009)

September 20, 2019

**VIACM/ECF**
**The Honorable Laura Taylor Swain**
**United States District Judge**
**Daniel Patrick Moynihan United States Courthouse**
**Southern District of New York**
**500 Pearl Street**
**New York, New York 10007**

Re: *O'Sullivan, et al. v. Deutsche Bank AG, et al.*, Case No. 1:17-cv-8709-LTS-GWG

Dear Judge Swain:

Plaintiffs write in response to Defendants' September 18, 2019 letter regarding the recent opinion by Judge Pamela K. Chen of the Eastern District of New York in *Freeman, et al. v. HSBC Holdings plc, et al.*, No. 14 Civ. 6601 (E.D.N.Y.). Plaintiffs do not dispute that some allegations in *Freeman* are similar to those set forth in Plaintiffs' Complaint, as well as Plaintiffs' Proposed Amended Complaint ("PAC"). However, the conspiracy, as alleged in the instant matter, is more direct and involved multiple acts of international terrorism throughout the causal chain leading up to *and* including the final violent terror attacks against Plaintiffs. This is a critical and substantial difference between this case and the narrow hub-and-spoke conspiracy alleged in *Freeman*. *See, e.g.*, PAC, ¶¶ 1660 – 1670; 771 – 787; and 2306 – 2319.

In *Freeman*, Judge Chen found, *inter alia*, the following:

1. "Defendants' actions in flouting U.S. sanctions are deplorable . . . ." *Freeman* at 36;

2. The plaintiffs' injuries arose "from an act of international terrorism that was committed, planned, or authorized by an FTO that has been officially designated as such." *Id.* at 42; and

3. "JASTA's inclusion of societies and associations within its definition of 'person' clearly indicates that the 'person' committing an act of terrorism need not be the literal triggerman . . . ." *Id.* at 43.

The Honorable Laura Taylor Swain
Re:  *O'Sullivan, et al. v. Deutsche Bank AG, et al.*,  Case No. 1:17-cv-8709-LTS-GWG
September 20, 2019
Page 2

In holding that the *Freeman* plaintiffs failed to allege secondary conspiracy liability, the *Freeman* court reasoned that "the conspiracy alleged [in *Freeman*] appears to have been limited to the evasion of U.S. sanctions on Iran." *Id*. at 16. Judge Chen further stated the allegations "only indicate that *Iran* conspired with IRISIL, Mahan Air, and others to provide material support to Hezbollah and other terrorist organizations in order to facilitate acts of terrorism in Iraq," (*Id*. at 28) and that "Plaintiffs have only alleged that Defendants dealt with Iranian intermediaries, all of whom have significant legitimate operations and are not merely fundraising fronts for terrorist organizations." *Id*. at 31-32. However, Judge Chen specifically recognized that a defendant bank could be liable under JASTA "where the defendant banks were alleged to have dealt directly with an FTO or known FTO fundraiser or front organization." *Id*. at 29. That is precisely what Plaintiffs have alleged in the case at bar.

Judge Chen's Order, by its own terms, only considered claims of "primary liability under [18 U.S.C.] § 2333(a) and secondary *conspiracy* liability under [18 U.S.C.] §2333(d)(2)". *Id*. at 46 (emphasis added). It did not consider secondary *aiding and abetting* liability under §2333(d)(2). Judge Chen noted in footnote 41 of her opinion that "the plain text of JASTA's *conspiracy* liability provision requires that a defendant conspire directly with the person or entity that committed the act of international terrorism that injured the plaintiff." *Id.* at 45 n.41 (emphasis original). Notably, the *Freeman* complaint (unlike Plaintiffs' PAC) never even mentions the phrase "aiding and abetting." Judge Chen noted in that same footnote 41 that under *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223 n.5 (2d Cir. 2019), "the provision of indirect assistance may suffice to give rise to aiding and abetting liability under §2333(d)."

Plaintiffs' allegations far exceed what was pled in *Freeman* and establish that Defendants not only knew their conduct was unlawful generally, but that Defendants also specifically knew they were aiding and abetting the FTOs in the commission of the underlying acts of international terrorism. To be certain, the PAC alleges in great detail—and cites numerous official sources to demonstrate—that Defendants were generally aware their misconduct was "assuming a role in the financing of terrorism," thereby establishing that they aided and abetted the underlying attacks for purposes of this Court's interpretation of JASTA. *See* PAC ¶¶ 1670–1714. Further, Section VI of the PAC alleges plausibly and in detail, not only that Iranian banks and their customers funneled **over $2 billion** to Hezbollah during the same time period as the attacks at issue in this case, but also that the transfer of such funds would not have been possible *without* the Defendants' assistance; that Defendants were generally aware that their fraudulent and otherwise unlawful conduct was necessary to avoid OFAC filters specifically designed to interdict *terrorism* financing; and that it was reasonably foreseeable that Defendants' misconduct directly aided Iran and its agents, proxies, and strategic partners (including Hezbollah, Kata'ib Hezbollah, al Qaeda, al Qaeda in Iraq, the IRGC, and the IRGC Quds Force) in carrying out or otherwise funding at least some of the acts of international terrorism at the heart of this case.

Further, this case (*i.e. O'Sullivan*) addresses Defendants' illegal and fraudulent provision of falsified, non-routine banking services to Iran, a designated State Sponsor of Terrorism throughout the relevant time period of the allegations. As detailed in Plaintiffs' recent pleadings accompanying the motion for leave to amend the complaint, the allegations in *O'Sullivan* go far

The Honorable Laura Taylor Swain
Re:  *O'Sullivan, et al. v. Deutsche Bank AG, et al.*, Case No. 1:17-cv-8709-LTS-GWG
September 20, 2019
Page 3

beyond the specificity of the allegations in the *Freeman* complaint and fully detail the facts supporting each element required for civil aiding-and-abetting liability.[1]

    Finally, the operative complaint in *Freeman* did not include sworn declarations with directly relevant information from:

1. A money laundering subject matter expert (Robert Mazur) supporting the contention that the transactions alleged here are not the product of routine banking services, but instead tantamount to illicit money laundering;

2. A banking regulations subject matter expert (Thomas Nollner) supporting the contention that Defendants were fully cognizant of the risks posed by their Iranian and Sudanese customers, yet deliberately sidestepped applicable standards to conduct business with SDNs, which speaks directly to Defendants' scienter;

3. A lead investigator of the United States Senate HSBC investigation (Donald Semesky, Jr.), which supports the plausibility of the allegations against Defendants; and

4. A former HSBC employee (Everett Stern) with first-hand knowledge of HSBC's business dealings with FTOs between at least 2003 and 2012.

The agreement by Defendants to *directly* participate in the specified unlawful acts, including acts of international terrorism, render Defendants liable for their own acts, together with those foreseeably committed by their co-conspirators in furtherance of the jointly undertaken illegal acts.

    Accordingly, as to the conspiracy claims alleged by Plaintiffs, *Freeman* simply did not include the necessary detail provided in Plaintiffs' PAC. As the memorandum in support of the motion for leave to amend explains in detail, it is the unique—and uniquely specific—nature of the allegations in this case that, if proven, should and would establish secondary liability under JASTA where other plaintiffs, as in *Freeman*, have been unable to do so.

                                                       Respectfully submitted,

                                                       */s/ Christopher G. Paulos*
                                                       Christopher G. Paulos

cc:
Hon. Gabriel W. Gorenstein via U.S. Mail and ECF
All Counsel via ECF

---

[1] Doc Nos. 197-202 (April 22, 2019); 210 (June 10, 2019).