**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TIMOTHY O'SULLIVAN, et al.,
    Plaintiffs,

   -against-

DEUTSCHE BANK AG, et al.,
    Defendants.

Civil Action No. 1:17-cv-08709-LTS-GWG
Hon. Laura Taylor Swain

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**<u>FOR FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)</u>**

### **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    RELEVANT PROCEDURAL HISTORY ........................................................... 2

III.   LEGAL STANDARD............................................................................................ 3

IV.   ARGUMENT ........................................................................................................ 4

     A.     Entry of Judgment Under Rule 54(b) is Appropriate............................... 4

     B.     This Matter Involves Multiple Claims and Multiple Parties ................... 5

     C.     The Court's Order is Final With Respect To Plaintiffs' Claims Against the
           Dismissed Defendants.............................................................................. 5

     D.     There Is No Just Reason To Delay This Appeal....................................... 7

           1.     Judicial Efficiency ...................................................................... 8

           2.     Finality and Fairness ................................................................ 10

           3.     Risk of Hardship Through Delay............................................... 12

           4.     Novel Issues of Law of Great Public Importance..................... 13

V.     CONCLUSION................................................................................................... 16

## AUTHORITIES TO MEMORANDUM

### *CASES*

*Barboza v. Liberty*,
No. 13-cv-4067, 2016 U.S. Dist. LEXIS 189635 (S.D.N.Y. Jan. 21, 2016) ......................4

*Bldg. Indus. Fund v. Local Union No. 3, IBEW*,
992 F. Supp. 162 (E.D.N.Y. 1996) ................................................................................11

*Carson v. Waterfront Comm'n of New York Harbor*,
73 F.3d 24 (3d Cir. 1995) ..............................................................................................7

*Cold Metal Process Co. v. United Eng'g & Foundry Co.*,
351 U.S. 445 (1956).......................................................................................................6

*Core-Vent Corp. v. Nobel Industries AB*,
11 F.3d 1482 (9th Cir. 1993) .......................................................................................10

*Cullen v. Margiotta*,
811 F.2d 698 (2d Cir. 1987) ("*Cullen II*") ............................................................4, 6, 11

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980)................................................................................................ *passim*

*Daniel v. Am. Bd. of Emergency Med.*,
212 F.R.D. 134, 139 (W.D.N.Y. 1999),
*report and rec. adopted*, 212, F.R.D. 134 (Aug. 20, 2002). ...........................................11

*Dig. Equip. Corp. v. Desktop Direct*,
511 U.S. 863, 114 S. Ct. 1992, (1994)............................................................................6

*Farrell v. Piedmont Aviation, Inc.*,
411 F.2d 812 (2d Cir.), cert. denied, 396 U.S. 840 (1970) ..............................................10

*Freeman, et al. v. HSBC Holdings plc, et al.*,
No. 14 Civ. 6601 (E.D.N.Y.) .................................................................................. *passim*

*Ginett v. Computer Task Group, Inc.*,
962 F.2d 1085 (2d Cir. 1992)...........................................................................................3

*Gumer v. Shearson, Hammill & Co.*,
516 F.2d 283 (2d Cir. 1974).............................................................................................4

*Hudson River Sloop Clearwater, Inc. v. Department of the Navy*,
891 F.2d 414 (2d Cir. 1989)..................................................................................8, 12, 13

*Hunt v. Mobil Oil Corp.*,
  550 F.2d 68 (2d Cir.) cert. denied, 424 U.S. 984 (1977) ...........................................10, 11

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ..............................................................................................................6

*Kers & Co. v. Bank of Am. Corp.*
*(In re Bank of Am. Corp. Sec., Derivative, & Empl. Ret. Sec. Act (ERISA) Litig.*,
  No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 159132 (S.D.N.Y. 2013) ......................9

*L.B. Foster Co. v. Am. Piles, Inc.*,
  138 F.3d 81 (2d Cir. 1998) ...................................................................................................7

*Lelchook v. Islamic Republic of Iran*,
  393 F. Supp. 3d 261 (E.D.N.Y. 2019) ..................................................................................9

*Lombard v. Econ. Dev. Admin.*,
  94 Civ. 1050(BJS), 1998 U.S. Dist. LEXIS 7822 (S.D.N.Y. May 22, 1998)...................11

*Malarkey v. Texaco, Inc.*,
  704 F.2d 674 (2d Cir. 1983) ...................................................................................................7

*Newspaper and Mail Deliverers' Union of New York v. United Magazine Co.*,
  829 F. Supp. 561 (E.D.N.Y. 1993) ........................................................................................7

*Presbyterian Church of Sudan v. Talisman Energy*, Inc.,
  01 Civ. 9882 (DLC), 2006 U.S. Dist. LEXIS 86609 (S.D.N.Y. Dec. 1, 2006)................10

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002)..............................................................................................6, 7

*Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*,
  47 F.3d 34 (2d Cir. 1995) .......................................................................................................7

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981)................................................................................................................6

## STATUTES AND RULES

18 U.S.C. § 2333(a) ...................................................................................................................2

18 U.S.C. § 2333(d)2 .................................................................................................................2

28 U.S.C. § 1291.................................................................................................................3, 5, 6

Fed. R. Civ. R. 54(b)............................................................................................................ *passim*

***TREATISES***

10 C. Wright & A. Miller, 10 Fed. Prac. & Proc. Civ. § 2656 (4th ed.).....................................3, 8

## I.   <u>INTRODUCTION</u>

In its February 25, 2020 Memorandum and Order (Doc. No. 227, the "Order"), this Court denied Plaintiffs' motion for leave to file their proposed Amended Complaint and dismissed Plaintiffs' Complaint with prejudice as to all claims against Defendants Deutsche Bank AG ("Deutsche Bank"), HSBC Bank USA, N.A., HSBC Holdings Plc, HSBC Bank Plc, HSBC Bank Middle East Limited, HSBC North America Holdings, Inc. (together, the "HSBC Defendants"), Commerzbank AG ("Commerzbank"), Commerzbank AG, New York Branch, Barclays Bank Plc ("Barclays"), BNP Paribas S.A. ("BNPP"), Standard Chartered Bank ("SCB"), Royal Bank Of Scotland N.V., Royal Bank Of Scotland Plc (together, the "RBS Defendants"), Crédit Agricole S.A. ("CASA"), Crédit Agricole Corporate & Investment Bank ("CACIB"), Credit Suisse AG ("Credit Suisse"). The foregoing Defendants are collectively referred to herein as the Dismissed Defendants.[1]

Plaintiffs now respectfully move the Court for an order, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, entering final judgment as to all Plaintiffs' claims against the Dismissed Defendants.

Entry of a final judgment pursuant to Rule 54(b) is appropriate here. ***First***, the matter concerns multiple claims and multiple parties sufficient to invoke Rule 54(b). ***Second***, the Court's Order carries the finality contemplated by Rule 54(b). ***Finally***, there is no just reason to delay entry of final judgment on those issues fully resolved by the Order. The dismissal is on grounds entirely separate from the issues that remain pending against Bank Saderat in this matter. Plaintiffs should be afforded the opportunity to appeal their dismissed claims without delay. Certification pursuant

---

[1] As explained below, the Order did not dismiss claims against Defendant Bank Saderat, Plc ("Bank Saderat"), which is subject to this Court's entry of default judgment after failing to appear in, defend against, or otherwise respond to Plaintiffs' original Complaint.

to Rule 54(b) will prevent attenuation of valuable evidence in Plaintiffs' case. And, Plaintiffs' case should be heard with other ATA cases involving claims for secondary liability, which are presently being appealed to the Second Circuit Court of Appeals.[2]

## II.   RELEVANT PROCEDURAL HISTORY

Plaintiffs are U.S. nationals and the families of U.S. nationals who were serving as members of, or contractors for, the U.S. armed forces at the time they were injured or killed in terrorist attacks in Iraq from 2003 to 2011. Plaintiffs filed suit against seventeen (17) financial institutions (the Dismissed Defendants and Bank Saderat) pursuant to the civil liability provision of the Antiterrorism Act of 1992, 18 U.S.C. § 2333(a) (the "ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 854 (2016) ("JASTA") (codified at 18 U.S.C. § 2333(d)(2)).[3]

Defendant Bank Saderat has not appeared or otherwise defended this action. The Clerk of the Court entered a certificate of default as to Bank Saderat on May 17, 2018 (Doc. No. 126).

The Dismissed Defendants jointly filed a motion to dismiss Plaintiffs' Complaint (Doc. No. 102). The Court granted that motion on March 28, 2019 (Doc. No. 195) and dismissed Plaintiffs' claims against the Dismissed Defendants for primary liability under the ATA (Doc. No. 195 at 10-18), JASTA conspiracy liability (*id.* at 19-21), and JASTA aiding and abetting liability (*id*. at 22). The Court granted Plaintiffs an opportunity to move for leave to amend their Complaint. *Id*. at 23.

---

[2] *See,e.g*., *Freeman, et al. v. HSBC Holdings plc, et al*., No. 14 Civ. 6601 (E.D.N.Y.)

[3] Plaintiffs filed a related case, *O'Sullivan, et al. v. Deutsche Bank A.G. et al.,* Case No. 1:18-cv-12325 ("*O'Sullivan II*") on December 29, 2018. This second matter involves similar factual allegations, albeit additional causes of action and an additional group of plaintiffs, "seek[ing] damages for deaths and serious injuries to hundreds of U.S. nationals in Iraq… arising out of the same terrorist attacks set forth in the earlier filed action. In essence, both actions involve the same acts and instances of terrorism, conspiracy, and material support provided by Defendants." *See O'Sullivan II* Related Case Statement, Case No. 1:18-cv-12335, Doc. No. 3, filed Dec. 29, 2018.

Plaintiffs filed their motion for leave to file their proposed Amended Complaint ("PAC") on April 22, 2019 (Doc No. 197). On February 25, 2020, the Court's Order denied Plaintiffs' motion and thereby dismissed Plaintiffs' original Complaint with prejudice in its entirety as against the Dismissed Defendants.

## III.   <u>LEGAL STANDARD</u>

The Courts of Appeals are authorized to hear appeals from all final decisions of the District Courts. *See* 28 U.S.C. § 1291. Federal Rule of Civil Procedure 54(b) empowers the District Court to act as "dispatcher" and "determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S. Ct. 1460, 1465 (1980). Rule 54(b) provides in part:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). In evaluating a Rule 54(b) motion, the District Court should first establish (1) the action involves multiple claims or multiple parties; (2) at least one claim, or the rights and liabilities of at least one party, have been finally decided within the meaning of 28 U.S.C. § 1291; and (3) there is no just reason for delay. *See Curtiss-Wright Corp*, 446 U.S. at 8; *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014); *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091-92 (2d Cir. 1992); *see generally* Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2656 (4th ed.). Here, all three criteria are met.[4]

The District Court must make an express finding of "no just reason for delay" in its order, accompanied by its analysis of judicial administrative interests and the equities involved. *Curtiss-*

---

[4] Bank Saderat has already been found liable, in default, for materially supporting similar terrorist attacks. *See Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 269-70 (E.D.N.Y. 2019)

*Wright Corp*, 446 U.S. at 8; *Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987) ("*Cullen II*") (District Court must provide a "reasoned, even if brief, explanation of its conclusion"); *Barboza v. Liberty*, No. 13-cv-4067, 2016 U.S. Dist. LEXIS 189635, at *4 (S.D.N.Y. Jan. 21, 2016) (stating that a district court also "must take into account…the equities involved"); *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir. 1974). The analysis in the Court's order should address "such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id*. Upon such findings, which must be clearly stated in its order, the District Court should certify the claims by expressly directing the entry of judgment. *See id*. at 5.

Rule 54(b) provides the District Courts with latitude to achieve maximum judicial efficiency and the most efficient possible resolution of complex litigation. *See Ginett*, 962 F.2d at 1095. If the question of whether to enter final judgment is a close one, the court should err on the side of entering judgment if to do so "will make possible a more expeditious and just result for all parties." *Gumer*, 516 F.2d at 286. The Second Circuit has explained the outlet provided by Rule 54(b) is particularly significant in light of the complexities of modern litigation. *Ginett*, 962 F.2d at 1093-97. Here, Plaintiffs now move for an entry of an Order pursuant to Rule 54(b), certifying the dismissal of the claims against the Dismissed Defendants as final, so that the parties may seek an immediate review of the decision to dismiss these defendants by the Second Circuit Court of Appeals.

## IV. __ARGUMENT__

### A. __Entry of Judgment Under Rule 54(b) is Appropriate__

Because this Court's Order related to the Dismissed Defendants does not dispose of all claims against all defendants (the claims against Bank Saderat remain pending), it is not an

appealable final judgment under 28 U.S.C. § 1291. However, this Court is empowered by Rule 54(b) to certify the Order as a partial final judgment, and allow the Parties to submit the legal and factual issues resolved therein to the Second Circuit Court of Appeals for immediate review.

The Court should enter final judgment of the claims against the Dismissed Defendants because (A) this matter involves multiple claims and multiple parties; (B) the Court's Order is final with respect to those claims; and (C) there is no just reason for delay. *Curtiss-Wright Corp*, 446 U.S. at 8.

**B.      This Matter Involves Multiple Claims and Multiple Parties**

This case involves multiple claims. *See id.* at 1092. As it relates to the Dismissed Defendants, the Court's March 28, 2019 order (Doc. No. 195) dismissed Plaintiffs claims for primary liability under the ATA (Doc No. 195 at 10-18), Plaintiffs' JASTA conspiracy liability claims (*id.* at 19-21), and Plaintiffs' aiding and abetting liability claims under JASTA (*id*. at 22).

Additionally, this case involves multiple parties. *See Ginett*, 962 F.2d at 1091. The Order dismissed, with prejudice, Plaintiffs' claims against the Dismissed Defendants. As such, the first requirement for entry of final judgment pursuant to Rule 54(b) is satisfied.

**C.      The Court's Order is Final With Respect To Plaintiffs' Claims Against the Dismissed Defendants**

The second requirement for entry of final judgment under Rule 54(b) is that the judgment be considered "final." *Curtiss-Wright Corp.*, 446 U.S. at 7. To be final, the decision must be made upon "a cognizable claim for relief," and there must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id*. Finality under Rule 54(b) means the same degree of finality required to meet the appealability requirements of 28 U.S.C. § 1291: a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute

the judgment." *Ginett*, 962 F.2d at 1092; *Dig. Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 867, 114 S. Ct. 1992, 1995 (1994).

In cases involving multiple claims, a judgment disposing of the claims against a party are considered final so long as those are separable from the surviving claims. *Cullen II*, 811 F.2d at 711. The separability analysis turns on whether the claims involve "at least some different questions of facts and law," could be separately enforced, and would not exclude the possibility of multiple recoveries. *Id*. "[C]laims may be considered separable even if they have arisen out of the same transaction or occurrence." *Id*. (citing *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 452 (1956)). Indeed, claims are deemed inseparable only under extraordinary circumstances. "Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification. When the claims are 'separable' or 'extricable' from each other, there is generally no reason to disturb the district court's exercise of its discretion [to enter partial judgment]." *Ginett*, 962 F.2d at 1096.

This Court's Order dismissed with prejudice all of Plaintiffs' claims with against the Dismissed Defendants. The Court's decision is based upon Fed. R. Civ. P. 12(b)(6). The decision is final under 28 U.S.C. § 1291, as nothing remains for the Court to do other than enter judgment on those claims. *See Ginett*, 962 F.2d at 1092; *see also Dig. Equip. Corp*., 511 U.S. at 867.

Dismissals based on failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6) are routinely certified for judgment under Rule 54(b) as being sufficiently final. *See, e.g.*, *Texas Industries, Inc. v. Radcliff Materials, Inc*., 451 U.S. 630, 633 (1981) (partial judgment granted to review whether an antitrust defendant claiming right of contribution from co-conspirators had stated valid claim); *Imbler v. Pachtman*, 424 U.S. 409, 416 (1976)*; Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (approved 54(b) certification to review dismissal on failure to state a proper

claim under ERISA*); Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 36 (2d Cir. 1995) (approved 54(b) certification to review dismissal on failure to state a proper claim based upon exclusion clause in insurance policy); *Malarkey v. Texaco, Inc.*, 704 F.2d 674 (2d Cir. 1983); *Newspaper and Mail Deliverers' Union of New York v. United Magazine Co.*, 829 F. Supp. 561, 565 (E.D.N.Y. 1993); *Carson v. Waterfront Comm'n of New York Harbor*, 73 F.3d 24, 26 (3d Cir. 1995).

As such, the second requirement for entry of final judgment pursuant to Rule 54(b) is also satisfied.

### D.      There Is No Just Reason To Delay This Appeal

The last requirement for entry of judgment pursuant to Rule 54(b) is the Court's express determination that there is "no just reason for delay." Fed. R. Civ. P. 54(b); *Ginett*, 962 F.2d at 1092; *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998) (internal quotation omitted). "The function of the district court under the Rule is to act as a 'dispatcher.'" *Curtiss-Wright Corp.*, 446 U.S. at 8 (citation omitted). "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Id.* This discretion is to be exercised "in the interest of sound judicial administration." *Id.*; *see Ginett*, 962 F.2d at 1095.

The Court should "consider such factors as whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8; *see Ginett*, 962 F.2d at 1095-96 ("only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for Rule 54(b) certification. When the claims are 'separable' or 'extricable'

from each other, there is generally no reason to disturb the district court's exercise of its discretion.").

There is no bright-line rule for determining whether "no just reason for delay" exists. Instead, the *Curtiss-Wright* decision noted that "because the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines for the district court to follow." 446 U.S. at 10-11. This statement has led leading commentators to the conclusion that "the district court should feel free to consider any factor that seems relevant to a particular action." Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2659 (4th ed.). So long as Rule 54(b) certification would serve "the interest of sound judicial administration," by whatever factors are relevant in the instant case, it should be granted. *Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 419 (2d Cir. 1989) (noting that *Curtiss-Wright* explicitly rejected the prior "infrequently harsh" standard).

While there is no singular method for evaluating whether no just reason for delay exists, the courts in this Circuit have consistently found that judicial efficiency, fairness, the novelty and importance of the legal issues presented, and the potential risk of hardship through delay are all relevant factors. In the present case, all of these factors favor Rule 54(b) certification of the dismissal of the claims against the Dismissed Defendants.

### 1.    Judicial Efficiency

Here, by granting partial final judgment, the Court will enhance judicial efficiency and aid in proper judicial administration.

As a threshold matter, Plaintiffs have no alternative mechanism for appeal at this juncture. If this Court does not afford them the opportunity to appeal by means of a Rule 54(b) order, Plaintiffs will have no other path toward final resolution of their claims.

8

This matter does not pose the risk of piecemeal appeals. Nothing remains for litigation at the District Court level with regard to the Dismissed Defendants. The Court's Order dismissed Plaintiffs' claims against the Dismissed Defendants with prejudice. All that remains at the District Court level is entry of default judgment against Defendant Bank Saderat and a determination of the amount of damages. Certification of the judgments entered for the Dismissed Defendants will not delay the resolution of the default proceedings against Bank Saderat. While limited discovery may be required in furtherance of the issues related to the claims against Defendant Bank Saderat, Plaintiffs anticipate that any such discovery will concern the amount of damages for which Bank Saderat is liable.[5] Such discovery will not implicate any appeal on the merits as to the Dismissed Defendants. Nor will any decision as to these issues implicate such an appeal. Given the narrow remaining issues, there is no risk of piecemeal appeals, and certification promotes the sound interest of judicial administration. *Kers & Co. v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec., Derivative, & Empl. Ret. Sec. Act (ERISA) Litig.*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 159132, at *32 (S.D.N.Y. 2013) ("The proposed appeal would not go to the merits of the pending summary judgment motions in the Individual Action, and would not implicate the merits of either the Individual Action or the class action settlement. It would be limited to a discrete record concerning [plaintiff's] communications related to the opt-out deadline and authority related to the excusable neglect standard. There appears to be no risk that granting [plaintiff's] Rule 54(b) motion would subject multiple panels to a review of the same issues."). The remaining issues before the trial court are wholly "separable" and "extricable" from the dismissed claims. *See Ginnett*, 962 F.2d at 1096.

---

[5] Bank Saderat has already been found liable, in default, for materially supporting similar terrorist attacks. *See Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 269-70 (E.D.N.Y. 2019).

In fact, by clarifying the legal principles governing the jurisdictional and Rule 12(b)(6) defenses in this case, immediate appeals of the dismissals of these defendants will provide the parties with a clear and entirely applicable set of standards to evaluate the likelihood of success on the similar claims at issue in *O'Sullivan II*, which has been stayed "until 30 days after the entry of a final judgment in *O'Sullivan I* and the resolution of any appeal of that final judgment." Doc. No. 231 at 2-3. By doing so, certification of the dismissals of these defendants under Rule 54(b) will almost certainly limit the number of future appeals, and also considerably streamline future proceedings in this Court.

### 2. Finality and Fairness

The sound interests of judicial administration counsel in favor of certification. First, a number of Plaintiffs are Gold Star families—the victims of heinous terrorist attacks perpetrated by entities funded, trained, controlled, and/or otherwise materially supported by Iran. Plaintiffs' claims that these attacks took place by means of the Defendants' assistance deserve the fullest extent of redress afforded under the law. This includes appealing the Court's Order expeditiously. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 01 Civ. 9882 (DLC), 2006 U.S. Dist. LEXIS 86609, at *5-6 (S.D.N.Y. Dec. 1, 2006) (noting plaintiffs and the consortium representing them had invested significant resources in litigation for many years and deserved to know as early as possible whether their claims against dismissed defendants could be resurrected on appeal).

Second, in cases dealing with preliminary jurisdictional and pleading issues, considerations of fairness to the dismissed parties weigh heavily in favor of early appeal. *See, e.g.*, *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 70 (2d Cir.) cert. denied, 424 U.S. 984 (1977) (affirming grant of Rule 54(b) motion from dismissal based on Rule 12(b)(6); dismissal occurred early in the action before the commencement of discovery); *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993); *Farrell v. Piedmont Aviation, Inc.*, 411 F.2d 812, 814-15 (2d Cir.), cert. denied,

396 U.S. 840 (1970). Appeal poses no risk of delay to trial. *Compare Hunt*, 550 F.2d at 70 (Rule 12(b)(6) dismissal before discovery) with *Bldg. Indus. Fund v. Local Union No. 3, IBEW*, 992 F. Supp. 162, 191-92 (E.D.N.Y. 1996) ("Here, the parties have already engaged in extensive discovery, and the case is essentially ready for trial on the narrow issues delimited in the court's Order …. If the court were to follow the course urged by plaintiffs, a trial on those claims would be delayed until the resolution of the appeal—a process that could take many months.").

In such cases, should this Court's order of dismissal ultimately be sustained, these parties are entitled to the finality that such relief promises as soon as possible, not years in the future, and without the substantial costs and uncertainty of being forced to monitor this litigation until an appeal finally ripens. *See Lombard v. Econ. Dev. Admin.*, 94 Civ. 1050(BJS), 1998 U.S. Dist. LEXIS 7822, at *5 (S.D.N.Y. May 22, 1998) (if entry of a final judgment were delayed against dismissed parties, "in all likelihood they would incur additional litigation costs.") It benefits <u>all</u> parties to have finality achieved at the earliest feasible date.

Moreover, an appellate ruling as to these issues will speed the ultimate resolution of this complex case, by providing all parties with a proper assessment as to their chances for success in the related action, *O'Sullivan II*. Here, if on appeal the claims against the Dismissed Defendants are reinstated, they may yet be consolidated with the claims in *O'Sullivan II*. Such considerations of judicial economy have been held to justify judgment pursuant to Rule 54(b) where the disposition of the remaining issues would not moot the legal basis for dismissal, and where years might pass before the ultimate disposition of the remaining claims. *Cullen II*, 811 F.2d at 712 (when the remedy phase of surviving claims "could last years", no just reason for delay); *Daniel v. Am. Bd. of Emergency Med.*, 212 F.R.D. 134, 139 (W.D.N.Y. Feb. 12, 1999), *report and rec. adopted*, 212 F.R.D. 134 (Aug. 20, 2002)).

###### 3.      Risk of Hardship Through Delay

The danger of hardship or injustice to parties through delay which could be alleviated by immediate appeal also serves as grounds justifying Rule 54(b) certification. *Hudson River Sloop Clearwater, Inc*., 891 F.2d at 419. In this case, a delay to Plaintiffs' appeal of the Order poses new and growing difficulties. Should the Court not certify its Order related to the Dismissed Defendants until final disposition of all claims against all parties, Plaintiffs will certainly experience substantial hardship, and Plaintiffs' efforts to enforce their legal rights would be severely prejudiced. Given the inherent complexity of this litigation (and the related actions, *O'Sullivan II*) and the number of parties involved, it is conceivable that it will be several years before all the claims of the Plaintiffs are resolved in this Court. During that time, the reliability of evidence (including witnesses' memories) may degrade, and witnesses will disappear or become unavailable. Thus, delaying the appeals will severely impair Plaintiffs from effectively pursuing the claims against the Defendants, should those claims be reinstated. In fact, Plaintiffs have already been informed by third parties that, without subpoenas, requests to preserve documents are not binding and that documents in their possession may be destroyed in the ordinary course. *See* Plaintiffs' Opposition to Defendants' Motion to Stay Discovery (ECF No. 98), at 17. Those third parties, which include the Office of the Controller of the Currency and the Office of Foreign Asset Control of the United States Treasury, are important records custodians because Defendants submitted at least some of the Iranian monetary transactions at issue to these agencies. *Id*.

Additionally, with specific regard to the availability of party and witness testimony, that testimony grows stale with each passing day. Many of the attack victims in this case suffered traumatic brain injuries, and their ability to recall crucial information becomes more difficult as time goes by. Further, most of the Plaintiffs who survived a terrorist attack at issue suffer from post-traumatic stress disorder ("PTSD"). PTSD poses a very real, challenging, and ever worsening

12

hardship to Plaintiffs' ability to provide testimony. Other Plaintiffs are aging family members of terrorist attack victims who may not live long enough to see their day in court. As Plaintiffs will be required to prove their case against the Dismissed Defendants, as well as their damages, if successful on appeal, testimony from all Plaintiffs will be crucial.

### 4.      Novel Issues of Law of Great Public Importance

In the Second Circuit, cases which involve novel issues of law on appeal that will recur during the litigation and/or are of great public importance lend themselves easily to Rule 54(b) certification. *Hudson River Sloop Clearwater, Inc*, 891 F.2d at 419 (regarding the alleged environmental threat caused by nuclear weapons on U.S. Navy ships stationed in New York harbor).

This Court's rulings on the Dismissed Defendants' motions to dismiss address innovative issues regarding the applicability of post-JASTA secondary liability for financial institutions that intentionally violate counterterrorism sanctions and launder money for terrorists including the newly-codified federal claims against conspirators and aiders and abettors of a terrorist organizations that attacks U.S. citizens abroad. These questions are of critical public importance as our nation continues to develop a comprehensive framework for dealing with the ongoing threat of terrorism, and will recur in *O'Sullivan II*, and other similar matters. Accordingly, these questions should be referred to the Second Circuit at this stage in this complex case.

*Freeman, et al. v. HSBC Holdings plc, et al*., No. 14 Civ. 6601 (E.D.N.Y.) is presently on appeal before the Court of Appeals for the Second Circuit. As Plaintiffs' counsel acknowledged in their letter to the Court dated September 20, 2019 (Doc. No. 214 "Plaintiffs' Letter"), *Freeman* also involves JASTA secondary liability conspiracy allegations like those set forth in Plaintiffs' Complaint, as well as Plaintiffs' PAC (Doc. No. 197-1). Plaintiffs respectfully submit that the Court of Appeals would benefit having before it for review these similar issues. Further, Plaintiffs

assert a heightened need on the Court of Appeals' part to hear the issues in this case along with those already before it. Plaintiffs' appeal in this case would rest on some (*but not all*) of the Court of Appeals' analysis of the issues arising from the cases already on appeal. Indeed, Plaintiffs here may suffer prejudice of the Court of Appeals reaches a decision in those cases without the benefit of Plaintiffs' full and fair presentation of their position.

This is especially true because Plaintiffs' case raises additional legal issues and causes of action that are absent in *Freeman*, even though the two cases have factual similarities.

In addition to the conspiracy claims raised by the *Freeman* plaintiffs, the case at bar includes claims for primary liability, and expressly includes claims for secondary liability aiding & abetting under JASTA. Specifically, while factually similar, Plaintiffs' allegations exceed in detail what was pled in *Freeman* and establish the Dismissed Defendants not only knew their conduct was unlawful generally, but that the Dismissed Defendants also specifically knew they were aiding and abetting the FTOs responsible for the terrorist attacks that killed or injured Plaintiffs. Plaintiffs' Letter, at 1. The Court of Appeals should have these additional issues before it as it reviews the broad factual pattern on which both Plaintiffs' case and *Freeman* arise.

Plaintiffs' PAC alleges in great detail—and cites numerous official sources to demonstrate—that the Dismissed Defendants were generally aware their misconduct was "assuming a role in the financing of terrorism," thereby establishing that they aided and abetted the underlying attacks for purposes of this Court's interpretation of JASTA. *See* PAC ¶¶ 1670–1714; Plaintiffs' Letter at 2. Further, the PAC alleges plausibly and in detail, not only that Iranian banks and their customers funneled over $2 billion to Hezbollah during the same time period as the attacks at issue in this case, but also that the transfer of such funds would not have been possible without the Dismissed Defendants' assistance; that the Dismissed Defendants were generally

14

aware their fraudulent and otherwise unlawful conduct was necessary to avoid OFAC filters specifically designed to interdict terrorism financing; and that it was reasonably foreseeable that Defendants' misconduct directly aided Iran and its agents, proxies, and strategic partners (including Hezbollah, Kata'ib Hezbollah, al Qaeda, al Qaeda in Iraq, the IRGC, and the IRGC Quds Force) in carrying out or otherwise funding at least some of the acts of international terrorism at the heart of this case. Plaintiffs' Letter at 2.

Moreover, Plaintiffs' case alleges the Dismissed Defendants' illegal and fraudulent provision of falsified, non-routine banking services to Iran, a designated State Sponsor of Terrorism throughout the relevant time period of the allegations. Plaintiffs' Letter at 2-3. The allegations in the instant matter go beyond the specificity of the allegations in the *Freeman* complaint and fully detail the facts supporting each element required for civil aiding-and-abetting liability. *Id*.

Plaintiffs' case also alleges that the Dismissed Defendants materially supported, directly and indirectly, acts of international terrorism that occurred along the casual chain leading up to and resulting in the final violent act of terrorism that injured or killed the *O'Sullivan* Plaintiffs.

Furthermore, Plaintiffs' have proffered sworn declarations with the following directly relevant information (which is notably absent from the operative *Freeman* complaint):

1.  A money laundering subject matter expert (Robert Mazur) supporting the contention that the transactions alleged here are not the product of routine banking services, but instead tantamount to illicit money laundering;

2.  A banking regulations subject matter expert (Thomas Nollner) supporting the contention that Defendants were fully cognizant of the risks posed by their Iranian and Sudanese customers, yet deliberately sidestepped applicable standards to conduct business with SDNs, which speaks directly to Defendants' scienter;

3.  A lead investigator of the United States Senate HSBC investigation (Donald Semesky, Jr.), which supports the plausibility of the allegations against Defendants; and

4.       A former HSBC employee (Everett Stern) with first-hand knowledge of HSBC's business dealings with FTOs between at least 2003 and 2012.

Plaintiffs' Letter at 3. The Court of Appeals has a heightened need to consider Plaintiffs' position as part of its overall analysis and adjudication of these issues. The Court of Appeals will benefit from reviewing, concurrently, this additional detail and the full breath of claims arising under this fact pattern of both Plaintiffs' case and *Freeman*.

Balancing the above-listed factors reveals significant advantages to the parties and to judicial administration of this matter by advancing the Court's judgment for review, and no obvious disadvantages. The legal issues to be appealed are discrete, and of great public importance. A grant of partial final judgment will provide finality for the parties, bring clarity to this area of law and hasten the ultimate resolution of *O'Sullivan I* and *O'Sullivan II*. Accordingly, there simply is no just reason to delay entry of judgments in favor of the Dismissed Defendants.

## V.       **CONCLUSION**

For the foregoing reasons, all of the requirements of Rule 54(b) are met here and Plaintiffs' are entitled to relief under Fed. R. Civ. P. 54(b). Accordingly, their motion should be granted. The Court should, by order an stating the reasons underlying its decision, direct the Clerk to enter final judgment pursuant to Fed. R. Civ. P. 54(b) on Plaintiffs' claims against the Dismissed Defendants.

Dated:  May 28, 2020.                              Respectfully submitted,

By: */s/ Christopher G. Paulos*
Christopher G. Paulos (*Pro Hac Vice*)
Florida Bar No. 0091579
**LEVIN, PAPANTONIO, THOMAS, MITCHELL,
RAFFERTY AND PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: 850.435.7000
Facsimile: 850.436.6123
Email: cpaulos@levinlaw.com
*Counsel for Plaintiffs*

16