UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TIMOTHY O'SULLIVAN et al.,

    Plaintiffs,

  -v-                                                                           No.  17 CV 8709-LTS-GWG

DEUTSCHE BANK AG et al.,

    Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

Plaintiffs, members of the United States armed forces who were injured in terrorist attacks in Iraq between 2003 and 2011, as well as estates and family members of deceased military victims of such attacks, bring this action against seventeen financial institutions pursuant to the civil liability provision of the Antiterrorism Act of 1992, 18 U.S.C. § 2333(a) (the "ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 854 (2016) ("JASTA") (codified at 18 U.S.C. § 2333(d)(2)).  On March 28, 2019, the Court granted the motion of sixteen of the defendants (the "Dismissed Defendants")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint (docket entry no. 1, the "Complaint" or "Compl.") for failure to state a claim upon which relief can be granted.

---

[1]     Defendants named in this action are Deutsche Bank AG, HSBC Bank USA, N.A., HSBC Holdings Plc, HSBC Bank Plc, HSBC Bank Middle East Limited, HSBC North America Holdings, Inc., Commerzbank AG, Commerzbank AG, New York Branch, Barclays Bank Plc, BNP Paribas S.A., Standard Chartered Bank ("SCB"), Royal Bank Of Scotland N.V., Royal Bank Of Scotland Plc, Crédit Agricole S.A., Crédit Agricole Corporate & Investment Bank, Credit Suisse AG Bank Saderat Plc.  The motion was granted as against all defendants other than Bank Saderat, which has not appeared or otherwise defended this action.  A certificate of default as to Bank Saderat was entered on May 17, 2018.  (See docket entry no. 126.)

(Docket entry no. 195, the "2019 Opinion").  On February 25, 2020, the Court denied Plaintiffs' motion for leave to file their proposed Amended Complaint.  (Docket entry no. 227, the "2020 Order").

Now before the Court is Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 54(b) for entry of partial final judgment against the Dismissed Defendants.  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2338.  The Court has reviewed the parties' submissions carefully and, for the following reasons, Plaintiffs' motion for entry of partial final judgment is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the background of this case, which is laid out in detail in the 2019 Opinion and the 2020 Order.  The following supplemental recitation of facts is drawn from the Complaint, the well-pleaded factual content of which is taken as true for purposes of this motion practice.

Plaintiffs are U.S. Nationals and the families of U.S. nationals who were serving as members of the U.S. armed forces at the time that they were injured or killed in terrorist attacks in Iraq from 2003 to 2011.  (Compl. at ¶ 11.)  The named Defendants are sixteen different multinational banks and Bank Saderat Plc ("Bank Saderat"), which is a wholly-owned bank subsidiary of one of the largest banks in Iran and is incorporated under the laws of the United Kingdom.  (Id. at ¶¶ 3, 3 n. 2, 817, 820.)

Plaintiffs allege that the Dismissed Defendants "used the U.S. banking system, in concert with [Bank Saderat], Iran, and its Agents and Proxies, to deliberately evade economic sanctions against Iran—sanctions put in place with the singular goal of stopping Iran, the world's leading state sponsor of terrorism, from sponsoring terrorism."  (Id. at ¶ 3) (footnote omitted).

Plaintiffs' claims arise, "at least in part, from the transactions facilitated through [the Dismissed] Defendants in the United States . . . on behalf and at the request of Iran and Defendant Bank Saderat." (Id. at ¶ 697.)  Such transactions and transfers of funds were allegedly "for the benefit of the Terrorist Groups being provided with material support that allowed them to perpetrate [ ] international terrorism[.]" (Id. at ¶ 698.)  For example, Plaintiffs allege that Bank Saderat has provided at least $50 million to Hezbollah, which has been found to be a "key component to Iran's modus operandi of sponsoring and/or directing international terrorism aimed primarily against the United States and its allies." (Id. at ¶¶ 925, 930, 1158.)

Plaintiffs further allege that, after Iran was designated a State Sponsor of Terrorism, it "developed various ways to circumvent U.S. economic sanctions levied against the regime and to facilitate the free movement of USD that Iran obtained without detection by the U.S. government in order to pursue foreseeably illicit objectives . . . ." (Id. at ¶ 1392.)  One of Iran's strategies involved enlisting "several Iranian state-owned banks, as well as Defendant Bank Saderat and various international financial institutions, including [the Dismissed] Defendants in this action, which agreed to alter, falsify, or omit information from payment order messages that involved Iran or Iranian parties, in particular several Iranian Banks (including Defendant Bank Saderat), for the express purpose of concealing Iran's financial transactions from detection, scrutiny, or monitoring by U.S. regulators, law enforcement, and/or depository institutions." (Id. at ¶ 1393.)  This practice, known as stripping, included removal of wire transfer information that would identify the origination or source of a financial transfer. (Id. at ¶ 1418.)  Plaintiffs allege that, as part of the conspiracy, "[the Dismissed] Defendants removed, and/or instructed Defendant Bank Saderat or other Iranian Agents and Proxies to remove any Iranian wire payment references from the wire transfer." (Id. at ¶ 1422.)

For example, Plaintiffs point to an internal memorandum issued by Standard Chartered Bank (SCB), one of the Dismissed Defendants, regarding SCB's procedures for processing payments sent through the United States from Iranian banks, which included detailed instructions regarding the omission of the Iranian remitting bank's bank identification code (BIC). (Id. at ¶ 1866.) Plaintiffs allege that this element of the conspiracy was "particularly important to Defendant Bank Saderat[,] which repeatedly served as the Reimbursing Bank on Letters of Credit for other Iranian banks that were financing various illegal, sanctions-evading transactions. . . ." (Id. at ¶ 1868.) Additionally, Plaintiffs point to a February 2006 internal SCB memorandum that Plaintiffs allege confirmed SCB's continued recognition that the alleged conspiracy "was expressly designed to enable Iran and other co-conspirators (including Defendant Bank Saderat) to evade U.S. detection of their transactions[.]" (Id. at ¶ 1892.) Over a six-year time period, Plaintiffs allege, "SCB transferred at least $250 billion through SCB's New York branch on behalf of the Iranian Bank co-conspirators, including . . . Defendant Bank Saderat." (Id. at ¶ 1897.)

Plaintiffs allege that, from 2002 forward, Defendant Bank Saderat continued its existing practice of: (1) illegally routing its USD transactions through the United states with the active assistance of the Dismissed Defendants; and (2) transferring tens of millions of dollars to Hezbollah and other designated terrorist groups. (Id. at ¶¶ 2320-21.) "Each time [the Dismissed] Defendants performed a transaction requested by Iran through Defendant Bank Saderat or other Iranian Agents and Proxies, Defendants knew or should have known Defendant Bank Saderat or other Iranian Agents and Proxies were acting as an agent for the Terrorist Groups that perpetrated the Terrorist Attacks . . . ." (Id. at ¶ 1416.)

D<small>ISCUSSION</small>

Plaintiffs move for partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) ("Rule 54(b)") as to all of Plaintiffs' claims against the Dismissed Defendants, which were dismissed by the 2020 Order. Rule 54(b) provides, in relevant part:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). In evaluating a Rule 54(b) motion, the court must establish: 1) the action involves multiple claims or multiple parties; 2) at least one claim, or the rights and liabilities of at least one party, have been finally decided within the meaning of 28 U.S.C. § 1291; and 3) there is no just reason for delay. See Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8, (1980). "Respect for the historic federal policy against piecemeal appeals 'requires that a Rule 54(b) certification not be granted routinely. The power should be used only in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" In re Bayou Hedge Fund Litig., No. 06 CV 3026 (CM), 2007 WL 2363622, at *3 (S.D.N.Y. Aug. 16, 2007) (quoting Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005)). Here, the parties agree that the second requirement for a partial Rule 54(b) certification has been met because the 2020 Order finally decides all claims against the Dismissed Defendants.

With regard to the first element, the Dismissed Defendants argue that Plaintiffs are not entitled to a Rule 54(b) certification because Plaintiffs' claims against them are inseparable from Plaintiffs' remaining claims against Bank Saderat. "In a case involving multiple claims, the court should not enter final judgment dismissing a given claim unless that

claim is separable from the claims that survive . . . Claims are normally regarded as separable if they involve at least some different questions of fact and law and could be separately enforced . . ." Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir. 1987) cert. denied, 483 U.S. 1021 (1987)) (internal citations omitted).  "Claims are generally deemed to be inseparable 'either because the remaining proceedings in the district court may illuminate appellate review of the dismissed claims or because those proceedings may suggest that the dismissal should be modified as is expressly permitted by Rule 54(b).'" In re Bayou Hedge Fund Litig., 2007 WL 2363622, at *4 (quoting Hogan v. Consol. Rail Corp., 961 F.2d 1021, 1026 (2d Cir.1992)); see also Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1095 (2d Cir.1992) (noting claims are interrelated where "district court's disposition of one or more of the remaining claims could render [the Circuit's] opinion advisory or moot.").  Here, while the 2020 Order dismissed all claims against the Dismissed Defendants, Plaintiffs' claims against Bank Saderat for providing material support to terrorist groups, participating in the conspiracy, and aiding and abetting an act of international terrorism in violation of the ATA remain unresolved, and the Complaint alleges that the Dismissed Defendants were instrumental in the violations allegedly committed by Bank Saderat.

        The Dismissed Defendants contend that because the remaining claims against Bank Saderat "arise out of the same general nucleus of operative facts . . . and involve the same legal framework that the Court addressed with respect to the Dismissed Defendants, the claims addressed in the [2020] Order are not separable from the remaining claims against Bank Saderat." (Docket entry no. 237, the "Opp." at 6).  The Dismissed Defendants cite Bayou Hedge Fund, in which investors brought a class action against Citibank, N.A. ("Citibank"), and other defendants for damages arising out of fraud perpetrated by Bayou Group L.L.C.  Id. at *1.  After the court dismissed all six causes of action against Citibank, Citibank sought a certification

pursuant to Rule 54(b) for final judgment.  2007 WL 2363622 at *3.  Citibank argued, inter alia, that certification was appropriate because the claims dismissed against Citibank were not implicated by the claims remaining before the court.  Id.  The court denied Citibank's motion, holding that the claims against Citibank were inseparable from the claims against the remaining Bayou defendants because the claims against Citibank were premised on the Bayou defendants' primary misconduct.  Id. at *4.  Therefore, the court noted, if it later found that the remaining Bayou defendants were not liable for the underlying misconduct, "then any appellate review of [the] court's dismissal of [the] claims against Citibank will be rendered either advisory or moot." Id.; Cf. Grimm v. Whitney-Fidalgo Seafoods, Inc., 61 F.R.D. 310, 311 (S.D.N.Y. 1974) (finding that Rule 54(b) certification was warranted where the claims asserted against the dismissed defendant "could have been enforced in an entirely separate lawsuit" and liability of dismissed defendant was "not vicarious, but direct, arising only from its own actions or omissions, rather than that of the joined [remaining] codefendants[,]" and independent of "the outcome of the case against any of the remaining co-defendants.")

    Here, like the relationship between Citibank and the Bayou defendants in Bayou Hedge Fund, the Dismissed Defendants' alleged liability under the Complaint is premised at least in part upon Bank Saderat's liability, such that the claims may be deemed inseparable.  The Complaint alleges that Bank Saderat was funding terrorist groups, including Hezbollah, and that it was able to do so because of the Dismissed Defendants' willingness to conceal from U.S. detection or scrutiny the funds it was transferring to Bank Saderat, Iran, and Iran's Agents and Proxies.  For example, Plaintiffs allege that the Dismissed Defendants colluded with Bank Saderat, among others, to strip wire transfers involving Iran or Iranian parties of information that would identify the origin or source of the financial transfers, thereby enabling Bank Saderat's

subsequent transfer of those funds to terrorist groups. As a result, the Dismissed Defendants' alleged wrongdoing, i.e. the altering, falsification, and omission of information from illegal wire transfers to Iran and Iranian banks, and subsequent liability under the ATA and JASTA, is dependent in part on Bank Saderat's alleged subsequent transfer of those illegal funds to terrorist groups in violation of the ATA. Indeed, Plaintiffs' allegations against the Dismissed Defendants are grounded in theories of derivative liability. Accordingly, if the Court of Appeals were to later find that the Court wrongfully dismissed the claims against the Dismissed Defendants and remand the claims against them, and the Court were to find that Bank Saderat was not liable for transferring any funds to terrorist groups, the Court of Appeals' decision on the Dismissed Defendants' liability could be rendered advisory or moot because, without Bank Saderat's illegal transfer of funds to terrorist groups, there would be no basis for finding Dismissed Defendants liable for their alleged wrongdoing in collusion with Bank Saderat. For these reasons, the Plaintiffs' claims against the Dismissed Defendants and Bank Saderat are inseparable and the first requirement for a Rule 54(b) certification has not been met.

In light of Plaintiffs' failure to establish the separability of the claims against the Dismissed Defendants from their remaining claims against Bank Saderat, the Court need not examine the third Rule 54(b) factor—whether there is a just reason for delay. Accordingly, Plaintiffs' motion for entry of partial final judgment under Federal Rule of Civil Procedure 54(b) is denied. The Dismissed Defendants' request in the alternative for a stay is denied as moot.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) is denied and the Dismissed Defendants' request for a stay is denied as moot.

This Memorandum Order resolves docket entry no. 232.  This action remains referred to Magistrate Judge Gorenstein for general pre-trial management.

SO ORDERED.

Dated: New York, New York
June 29, 2021

<u>/s/ Laura Taylor Swain</u>
LAURA TAYLOR SWAIN
Chief United States District Judge